**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MCHIGAN**

| | |
|---|---|
| JANE DOE, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>CIN-LAN, INC.; and,<br>DÉJÀ VU CONSULTING, INC.<br><br>        Defendants. | Case No.<br><br>Honorable:<br><br>**COMPLAINT**<br><br><br>**Jury Trial Demanded** |

### I.        INTRODUCTION

1.        This is a class action brought by Plaintiff Jane Doe, on behalf of herself and the Plaintiff Class, defined below, against Defendants Cin-Lan, Inc. and Déjà Vu Consulting, Inc. (hereinafter collectively referred to as "Defendants").  The Plaintiff Class is composed of female employees who, during the relevant time period, worked as exotic dancers for Defendants and were denied their fundamental rights under applicable federal and state laws.  Specifically, Plaintiff complains that Defendants misclassified Plaintiff, and all other members of the Class, as "independent contractors," as opposed to employees, at all times in which they worked as dancers at Defendants' Michigan-based nightclubs.  As a result, Defendants failed to pay Plaintiff, and all other members of the Plaintiff Class, the minimum wages that they were entitled to under both federal and state law.  Plaintiff brings this class action seeking injunctive relief, damages, backpay, restitution, liquidated damages, civil penalties, prejudgment interest, and any other relief that the Court deems just and reasonable in the circumstances.

1

## II.   **JURISDICTION & VENUE**

2.      This Complaint alleges causes of action under the laws of the United States, including the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.* ("FLSA").  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1331.

3.      This Complaint also alleges causes of action under the laws of the State of Michigan, including the Minimum Wage Law of 1964, M.C.L. §408.381 *et. seq.* ("MWL"), which arise out of the same set of operative facts as the federal causes of action and which would be expected to be tried in a single judicial proceeding with the federal claims.  Accordingly, this Court has pendent jurisdiction over those claims pursuant to 28 U.S.C. §1367(a).

4.      A substantial part of the events and conduct giving rise to the claims in this action occurred in this Judicial District.  Specifically, Defendants' illegal actions occurred in, and continue to occur in the State of Michigan, including within this district.  Certain Michigan Déjà Vu Nightclubs, as defined below, whose practices are contested within this Complaint are located in this district.  Further, Defendants Cin-Lan, Inc. and Déjà Vu Consulting, Inc. reside in this district.  As a result, venue is proper in this jurisdiction pursuant to 28 U.S.C. §1391.

## III.   **PARTIES & STANDING**

5.      Plaintiff Jane Doe (hereinafter "Plaintiff"), is a resident of the City of Lansing, Ingham County, State of Michigan.  Plaintiff is an employee of Defendants Cin-Lan, Inc. and Deja Vu Consulting, Inc., as defined in 29 U.S.C. §201 *et seq.* and M.C.L. §408.382, working as an exotic dancer at Déjà Vu - Lansing, located at 1000 W. Jolly Road, Lansing, Michigan, 48910 since approximately June, 2007.

6.      Pursuant to the principals set forth in Doe v Bodwin, 119 Mich. App. 264, 326 N.W.2d  473 (Mich. App., 1982), Plaintiff files this action under a fictitious name and proceeds

anonymously because: (a) she wishes to preserve her rights to privacy; (b) there is a significant social stigma attached to the Plaintiff's occupation as an exotic dancer; (c) there is an inherent amount of risk associated with Plaintiff's profession and she fears that disclosure of her legal name and address may subject to her risk of injury by current and former patrons; and (d) in addition to the fear of retaliation by the Defendants, she would be hesitant to maintain this action enforcing fundamental employment rights if her name were to be forever associated with the Defendants.

7.     It is customary in Defendants' business for employee-dancers, like Plaintiff, to use pseudonyms and stage names for both security and privacy purposes.  The use of these names allays any reasonable fear that proceeding anonymously would offend the "customary and constitutionally-embedded presumption of openness in judicial proceedings."   In <u>N.W. Enterprises, Inc. v. City of Houston</u>, 352 F.3d 162 (5th Cir.2003), the Fifth Circuit addressed the need for adult entertainers to remain anonymous stating:

> Adult entertainers may anonymously (or through stage names) put their bodies on display in front of strangers, but these actions do not imply a willingness to publicize the entertainers' personal information through which customers or other private persons may trace the entertainers to their homes or otherwise invade their privacy without permission. The fact that an entertainer is willing to dance publicly or a manager is willing to be employed in a sexually oriented business that deals with the public, or the fact that a determined harasser or stalker might conceivably follow an entertainer home after she leaves work, does not mean that adult entertainers and managers have voluntarily sacrificed all privacy rights and need for safety protections.

8.     There is no prejudice to Defendants if Plaintiff files this action under a fictitious name and proceeds anonymously.  In the ordinary course of business, Defendants themselves, identify the exotic dancers they employ through stage names and employee codes.  <u>See e.g</u>. copies of Plaintiff's "clock out" receipts provided by Defendants, true and correct copies of

which are attached hereto as Exhibit A.  Defendants will be made aware of Plaintiff's identity in a confidential manner so as to satisfy any due process concerns.

9.      Defendant Cin-Lan, Inc. (hereinafter "Cin-Lan") is a Michigan corporation located at 1000 W. Jolly Road, Lansing Michigan, 48910, and/or 3800 Capitol City Blvd, Lansing, Michigan 48906-2177.  Upon information and belief, Defendant Cin-Lan maintains ownership, recruitment, management and/or operational interests in various nightclubs featuring exotic dancing by class members, including the Deja-Vu-Lansing nightclub, located at 1000 W. Jolly Road, Lansing Michigan, 48910 where Plaintiff is employed.

10.      Defendant Déjà Vu Consulting, Inc. (hereinafter "Déjà Vu Consulting") is a Michigan Corporation doing business at 1000 W. Jolly Road, Lansing Michigan, 48910, 8252 E. Lansing Road, Durand, Michigan, 48429, and/or 3800 Capitol City Blvd, Lansing, Michigan 48906-2177.  The registered office for Déjà Vu Consulting is 8252 E. Lansing Road, Durand, Michigan, 48429.  Upon information and belief, Déjà Vu Consulting also maintains corporate offices in North Hollywood, California. See http://www.dejavu.com/club.asp?c=18518 ("Deja Vu - Corporate Office, North Hollywood, California … Corporate Contact, 818 503 4278, North Hollywood, California 91605 USA"). Upon information and belief, Déjà Vu Consulting maintains ownership, recruitment, management, controlling and/or operational interests in various nightclubs in Michigan and other states which feature exotic dancing by class members, including the Déjà-Vu-Lansing nightclub where Plaintiff works.

11.      Déjà Vu Consulting owns, manages and controls the business operations at the numerous nightclubs doing business under the "Déjà Vu" moniker in the state of Michigan and listed on the www.Déjàvu.com website, including but not limited to: "Déjà Vu Showgirls," 2402 S. Dort Hwy, Flint, Michigan; "Déjà Vu Greektown," 415 E. Congress St., Detroit, Michigan;

"Déjà Vu Showgirls," 16549 Woodward Ave., Highland Park, Michigan; "Little Darlings," 1336

Ravine Road, Suite A, Kalamazoo, Michigan "Déjà Vu Showgirls," 1336 Ravine Road, Suite C,

Kalamazoo, Michigan; "Déjà Vu-Showgirls," 1000 W. Jolly Road, Lansing, Michigan (also

referred to herein as "Déjà Vu - Lansing"); "Déjà Vu - Port Huron," 3811 24th Avenue, Fort

Gratiot, Michigan; "Déjà Vu – Saginaw," 6530 Bay Road, Saginaw, Michigan; and "Déjà Vu –

Ypsilanti," 31 N. Washington, Street, Ypsilanti, Michigan (hereinafter collectively referred to as

the "Michigan Déjà Vu Nightclubs").  Upon information and belief, Déjà Vu Consulting owns a

majority stake in each of the aforementioned Michigan Déjà Vu Nightclubs, controls the

operations in each, and dictates the common employment policies applicable to each.

12.     All major business decisions regarding the operations and management of the

Michigan Déjà Vu Nightclubs, including the decision to classify dancers as independent

contractors as opposed to employees are made by Déjà Vu Consulting.

13.     Wikipedia, a encyclopedia available on the Internet describes Déjà Vu Consulting

as follows at <http://en.wikipedia.org/wiki/D%C3%A9j%C3%A0_Vu_(company)>:

> Déjà Vu Consulting, Inc. is a U.S. company which (as of 2006) owns about 75
> strip clubs in 16 U.S. states, as well as one club in Toronto and one in Paris.
>
> The company is headquartered in Lansing, Michigan; it was founded and is
> controlled by Harry Mohney, who partners with Roger Forbes and opened his first
> Déjà Vu strip club in Seattle in 1987. At the time, his main business was the
> large-scale distribution of pornography; beginning in 1991 he served three years
> in prison for tax evasion.
>
> The strip clubs are called "Déjà Vu Showgirls" or "Dream Girls" or (by agreement
> with Mohney's long-time friend Larry Flynt, who is not involved in the
> management of the clubs) "Larry Flynt's Hustler Club". Déjà Vu also owns most
> of the adult theatres and clubs in San Francisco; these however carry different
> names.
>
> The clubs typically aim for a clean and upscale atmosphere and offer fully nude
> stage dancing as well as lap dances. Many do not serve alcohol, to avoid stringent
> liquor license requirements. Several clubs have associated boutiques selling sex

toys, cigars, Déjà Vu merchandise etc. The chain organizes nation-wide competitions for the "Déjà Vu Showgirl of the Year".

Dancers in the clubs have the legal status of independent contractors. Their income results from tips and lap dance fees; about one third of this money is handed over to the house and other employees. In a landmark case in Minneapolis in 1994, dancers at the Déjà Vu club there won the right to be recognized as employees, arguing that they did not have full control over their working conditions. This resulted in payment of back wages and led to similar cases in several other states, often ending in confidential settlements out of court. Repeated attempts to unionize the Déjà Vu-owned clubs in San Francisco (modeled on the earlier unionization of the Lusty Lady peep show there) have so far been unsuccessful.

Upon information and belief, the foregoing description of Déjà Vu Consulting is accurate in all material respects.

14.     The registered agent for both Déjà Vu Consulting, Inc. and Cin-Lan, Inc. is Modern Bookkeeping, Inc., 8252 E. Lansing Road, Durand, Michigan, 48429 (hereinafter "Modern Bookkeeping").  The mailing address for Modern Bookkeeping is 3800 Capitol City Blvd., Lansing, Michigan, 48906, the same address of Déjà Vu Consulting.

15.     Upon information and belief, Modern Bookkeeping is an entity that is controlled by Déjà Vu Consulting and that is responsible, either through contract or practice, for maintaining the records and system that help perpetrate the misclassification of the Class as independent contractors.

16.     Upon information and belief, the majority ownership share of Defendants, all of the Michigan Déjà Vu Nightclubs and Modern Bookkeeping is held, directly or indirectly, by Harry Mohney ("Mohney").  Upon information and belief, Mohney plays a significant role in managing and controlling the business operations of Defendants, all of the Michigan Déjà Vu Nightclubs and Modern Bookkeeping.  Upon information and belief, at all relevant times

Mohney has been employed by Déjà Vu Consulting, conducting his work from California and other foreign locations.

17.     Upon information and belief, Déjà Vu Consulting employs entities such as Cin-Lan to create the appearance that those entities own and operate the Michigan Déjà Vu Nightclubs when in reality the Michigan Déjà Vu Nightclubs are controlled, operated and managed by Déjà Vu Consulting.  In addition, upon information and belief, Mohney and Deja Vu Consulting employ sham consulting agreements to control, operate, manage and hold majority interests in the vast network of business entities used at the club-level.  Cin-Lan and those entities are the alter-egos of Déjà Vu Consulting.

18.     At all relevant times, Defendants have owned and operated a night club business engaged in interstate commerce and which utilized goods which moved in interstate commerce. Déjà Vu Consulting and Cin-Lan own, manage and control the business operations at numerous nightclubs doing business under the Déjà Vu moniker in Michigan, as well as in other states.  On information and belief, during the relevant time period the annual gross revenues of each Defendant exceeded $500,000.00 per annum.

19.     By reason of the foregoing, Defendants, along with the Michigan Déjà Vu Nightclubs, were at all relevant times enterprises engaged in commerce as defined in 29 U.S.C. §203(r) and §203(s).  Defendants and the Michigan Déjà Vu Nightclubs constitute an "enterprise" within the meaning of 29 U.S.C. §203(r)(1), because they perform related activities through common control for a common business purpose.  At relevant times, Plaintiff and the Class were employed by Defendants, enterprises engaged in commerce within the meaning of 29 U.S.C. §206(a) and §207(a).

20.     Both the FLSA and the MWL applied to each class member while they worked at the Michigan Déjà Vu Nightclubs.

21.     No exceptions to the application of the FLSA and the MWL apply to Plaintiffs and the Class.  For example, Plaintiff and the Class have never been professionals or artists exempt from the provisions of the FLSA or the MWL.  The exotic dancing performed by class members while working at the Michigan Déjà Vu Nightclubs does not require invention, imagination or talent in a recognized field of artistic endeavor, and class members are not compensated on a set salary, wage or fee basis, but rather by tips given to them by patrons.

## IV.  GENERAL  ALLEGATIONS APPLICABLE TO ALL COUNTS

22.     At all relevant times, Plaintiff and each member of the Class, defined below, were employees of Defendants under the FLSA and the MWL.  Upon information and belief, during the relevant time period over 500 different women have worked as exotic dancers at the Michigan Déjà Vu Nightclubs without being paid any minimum wages.

23.     At all relevant times, Déjà Vu Consulting was a joint employer of Plaintiff, and all members of the Class, under the FLSA and the MWL.  Plaintiff's and the other class members' employment for one Defendant is not completely disassociated from their employment by the other Defendant.  Cin-Lan and Déjà Vu Consulting do not act entirely independent of each other and are not completely dissociated with respect to the employment of Plaintiff.  Déjà Vu Consulting maintains control over Plaintiff and all Class members while working at the Michigan Déjà Vu Nightclubs.  Déjà Vu Consulting establishes the employment policies that are to be applied to Plaintiff and all Class members while working at the Michigan Déjà Vu Nightclubs.  Déjà Vu Consulting benefits financially from the work Plaintiff and the Class perform while working at the Michigan Déjà Vu Nightclubs.  Additionally, joint employers like

Cin-Lan act directly or indirectly in the interest of Déjà Vu Consulting in relation to any supervision it provides Plaintiff and the other class members. As a joint employer of all class members Déjà Vu Consulting is responsible both individually and jointly for compliance with all of the applicable provisions of the FLSA and the MWL. 29 C.F.R. §791.2(a) and (b).

24.     Throughout the relevant time period, Defendants owned and operated several nightclubs in the state of Michigan where Plaintiff and the other members of the Class worked as exotic dancers. Those nightclubs are identified above as the Michigan Déjà Vu Nightclubs.

25.     During the relevant time period, the employment terms, conditions and policies that applied to Plaintiff were the same as those applied to the other class members who worked as exotic dancers at the Michigan Déjà Vu Nightclubs.

26.     Throughout the relevant time period, Defendants' policies and procedures regarding the classification of all exotic dancers (including Plaintiff) at the Michigan Déjà Vu Nightclubs were the same.

27.     Plaintiff's injury was caused by Defendant's application of those common policies in the same manner as they were applied to absent class members.

28.     As a matter of common business policy, Defendants misclassified Plaintiff and all class members as independent contractors, as opposed to employees. Defendants' classification of Plaintiff as an independent contractor as opposed to as an employee was not due to any unique factor related to her employment or relationship with Defendants. As a matter of common business policy, Defendants misclassified Plaintiff and all class members as independent contractors, as opposed to employees. As a result of this classification, Plaintiff, and the members of the Class, were not paid the minimum wages required under the FLSA and the MWL.

29.     During the relevant time period, no class member received any wages or other compensation from Defendants.  Members of the Class generated their income solely through the tips received from customers when they performed dances.

30.     The members of the Class are tipped employees under both the FLSA and the MWL as they are engaged in an occupation in which they customarily and regularly receive more than $30 a month in tips.  Throughout the relevant time period Plaintiff and each class member have averaged more than $7.40 per hour in tips while working at the Michigan Déjà Vu Nightclubs.  Nevertheless, as employees of Defendants, class members remain entitled to: (i) receive minimum wages under the FLSA and MWL, and (ii) to retain all tips given to them by customers when they performed dances.

31.     Defendants' misclassification of Plaintiff and other class members as independent contractors was designed to deny class members their fundamental rights as employees to receive minimum wages, to retain all tips given to them by customers, and done to enhance Defendants' profits.

32.     Defendants' misclassification of class members was willful.  Defendants knew, or should have known, that Plaintiff and the Class were improperly misclassified as independent contractors.  For instance, in Harrell v. Diamond A Entertainment, Inc., 992 F.Supp. 1343, 1347-48 (M.D. Fla. 1997) the United States District Court for the Middle District of Florida confirmed:

> Arrangements factually similar to the one in this case have been tested by federal courts in Texas, Indiana and Colorado. See Reich v. Circle C. Investments, Inc., 998 F.2d 324 (5th Cir.1993) (whether dancer was "employee" under FLSA); Reich v. ABC/York-Estes Corp., 1997 WL 264379 (N.D.Ill.1997) (whether dance fees were "tips" under FLSA); Reich v. Priba Corp., 890 F.Supp. 586 (N.D.Tex.1995) (whether dancer was "employee" under FLSA); Reich v. ABC/York-Estes Corp., 157 F.R.D. 668 (N.D.Ill.1994) (whether dance fees were "tips" under FLSA), rev'd on other grounds, 64 F.3d 316 (7th Cir.1995); Martin v.

10

Priba Corp., 1992 WL 486911 (N.D.Tex.) (whether dancer was "employee" under FLSA); Martin v. Circle C Investments, Inc., 1991 WL 338239 (W.D.Tex.); Donovan v. Tavern Talent & Placements, Inc., 1986 WL 32746 (D.Colo.) (whether "tips" could be used to offset completely the minimum wage requirement). *Without exception, these courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage.*

(Emphasis added).

33.     The touchstone for determining whether an individual is an "employee" under the FLSA and MWL is the "economic reality" test.  Under the test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself.  Here, as a matter of economic reality, Plaintiff, and all class members, were not in business for themselves and truly independent, but rather were "economically dependent" on Defendants.

34.     Courts utilize six factors to determine economic dependence.  They are: (i) the degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.  The totality of circumstances surrounding the employment relationship between Defendants and the Class establishes economic dependence by the Class on Defendant.  Class members are not in business for themselves but dependent upon finding employment in others, namely Defendants.

### A.     *Degree Of Control – Plaintiff And The Class Exercise No Control Over Their "Own" Or Their Employers' Business.*

35.     Plaintiff, and the members of the Class, do not exert control over a meaningful part of the nightclub business and do not stand as separate economic entities from Defendants. Defendants exercise control over all aspects of the working relationship with the Class.

36.     Class members' economic status is inextricably linked to those conditions over which Defendants have complete control.  Plaintiff and the other members of the Class are completely dependent on the nightclub for their earnings.  The club controls all of the advertising and promotion without which the dancers in the Class could not survive economically.  Moreover, Defendants create and control the atmosphere and surroundings at the Michigan Déjà Vu Nightclubs, the existence of which dictates the flow of customers into the club.  The dancers have no control over the customer volume or the atmosphere at each of the nightclubs.

37.     Plaintiff, and the other members of the Class, are restricted from working at other exotic dance nightclubs while in a working arrangement with Defendants.

38.     Defendants employ guidelines and rules dictating the way in which a dancer must conduct herself while working at the Michigan Déjà Vu Nightclubs.  Defendants set the hours of operation, the show times during which a dancer may perform, determine the sequence in which a dancer may perform on stage during her "stage rotation," the format and themes of class members' performances (including their costuming and appearances), theme nights (for which class members are required to dress in a particular manner or style for), conduct while at work (i.e., that they be on the floor as much as possible when not on stage and mingle with patrons), and all other terms and conditions of employment.

39.     Defendants require that Plaintiff and the other members of the Class work a minimum number of shifts each week.  Further, the Class is required to clock-in and clock-out at the beginning and end of each shift.  If late or absent for a shift, a class member is subject to fine, penalty, or reprimand by Defendants.  Once a shift starts, a dancer is required to complete the shift and cannot leave early.

40.    While working at the Michigan Déjà Vu Nightclubs class members perform exotic stage, table and VIP room dances for patrons offering them tips.  Defendants, not the class members, set the minimum tip amount that class members must collect from patrons when performing exotic table dances, "Deal of the Century" dances, special of the night dances, dances in the VIP room, and/or other dances.  Defendants announce the minimum tip amounts to patrons in the nightclub.  Defendants dictate the manner and procedure in which tips are collected from customers and tracked.

41.    Each time a class member performs an exotic dance for a patron (i.e. an individual table dance, "Deal of the Century" dance, special of the night dance and/or dance in the VIP room), the class member is required to immediately account to Defendants for their time by entering data on Defendants' computer system either manually or by using a magnetic or electronic "FOB" device.  As a result, for every dance performed the amount received, along with the identity of the class member, is meticulously recorded by Defendants.  At the end of a work shift, the class member is required to "clock out" and account to Defendants for all dances performed for the patrons of the nightclub. Defendants' computer system provides an itemization of the time worked and the number of each type of dance performed by the class member.  *See* Exhibit A.  In addition to a "base rent" payment,  the class member is required pay a portion (approximately 30-40%) of the tips given to them by patrons over to Defendants.

42.    Defendants alone establish the split which each class member is required to pay it for each type of dance they receive tips for during the work shift.  The tip split percentage is not negotiable.  For example, a class member must pay Defendants approximately seven dollars ($7.00) for every twenty dollars ($20.00) in table dance tips they receive.  At the end of each work shift, the employee receives a printed "clock out" report from Defendants detailing the time

they arrived at work, the time they left work, the total number of hours worked during the shift and the week, the "base rent" fee, a breakdown listing of every dance service they performed that night, and the "balance due" to be paid Defendants out of the gratuities provided to them from patrons. *See e.g.* Exhibit A.

43.    Ultimately, Defendants set the terms and conditions of Plaintiff's and all class members' work.  This is the hallmark of economic dependence.

### B.    Skill and Initiative of a Person in Business For Themselves

44.    Plaintiff and the other members of the Class do not exercise the skill and initiative of a person in business for themselves.

45.    Plaintiff and the other members of the Class are not required to have any specialized or unusual skills to work at the Michigan Déjà Vu Nightclubs.  Prior dance experience is not required to perform at the Michigan Déjà Vu Nightclubs.  Class members are not required to attain a certain level of skill in order to work at the Michigan Déjà Vu Nightclubs.  There are no dance seminars, no specialized training, no instruction booklets, and no choreography provided or required in order to work at the Michigan Déjà Vu Nightclubs.   The dance skills utilized are commensurate with those exercised by ordinary people who choose to dance at a disco or at a wedding.

46.    Plaintiff and the other members of the Class do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of independent contractors.   Class members own no enterprise.   Class members exercise no business management skills.  Class members maintain no separate business structures or facilities.  Class members exercise no control over customer volume or atmosphere at the Michigan Déjà Vu Nightclubs.  Class members do not actively participate in any effort to increase the nightclub's

client base, enhance goodwill, or establish contracting possibilities. The scope of a class member's initiative is restricted to decisions involving what clothes to wear (within Defendants' guidelines) or how provocatively to dance which is consistent with the status of an employee opposed to an independent contractor.

47.    Plaintiff and the other members of the Class are not permitted to hire or subcontract other qualified individuals to provide additional dances to patrons, as an independent contractor in business for themselves would.

### C.    Relative Investment

48.    Plaintiff's and class members' relative investment is minor when compared to the investment made by Defendants.

49.    Plaintiff and the Class make no capital investment in the facilities, advertising, maintenance, sound system and lights, food, beverage and other inventory, or staffing of the Michigan Déjà Vu Nightclubs. All investment and risk capital is provided by Defendants. Class members' investment is limited to expenditures on costumes and make-up which they may choose to wear while working, and their own labor. But for Defendants' provision of the lavish nightclub work environment the dancers in the Class would earn nothing.

### D.    Opportunity For Profit and Loss

50.    Defendants, not class members, manage all aspects of the business operation including establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff (managers, waitresses, bartenders, bouncers/doormen, etc.). Defendants, not class members, take the true business risks for the Michigan Déjà Vu Nightclubs.

51.     Class members do not control the key determinants of profit and loss of a successful enterprise.  Specifically, Plaintiff and the Class are not responsible for any aspect of the enterprises' on-going business risk.  For example, Defendants, as opposed to Plaintiff or the Class, are responsible for all financing, the acquisition and/or lease of the physical facilities and equipment, inventory, the payment of wages (for managers, bartenders, doormen, and waitresses), and obtaining all appropriate business' insurance and licenses.  Defendants, not class members, establish the minimum tip amounts that should be collected from patrons when dancing.  Even with respect to "base rent" payments, the Class does not truly "pay" the Club's "rent" for facilities.

52.     The extent of the risk that dancers are confronted with is the loss of the "base rent" fee due to Defendants when the employee clocks out after each shift.  Defendants, not the dancers, shoulder the risk of loss. The tips the dancers receive are not a return for risk on capital investment.  They are a gratitude for services rendered.  From this perspective, it is clear that a dancers' "return on investment" (i.e. tips) is no different than that of a waiter who serves food during a customer's meal at a restaurant.

### E.     *Permanency*

53.     Plaintiff has worked at Déjà Vu-Lansing since June 2007.  Other members of the Class have worked at the Michigan Déjà Vu Nightclubs for longer periods of time.

### F.     *Integral Part*

54.     Dancers like Plaintiff and the other members of the Class are essential to the success of the Michigan Déjà Vu Nightclubs.  The continued success of the Michigan Déjà Vu Nightclubs depend to an appreciable degree upon their provision of stage, table and VIP room

dances by class members for patrons.  In fact, the primary reasons the nightclubs exist are to showcase the dancers' physical attributes for customers.

55.      The Michigan Déjà Vu Nightclubs do not serve alcohol and therefore are not truly in direct competition with other enterprises in the nightclub, tavern or bar business.  Absent the provision of exotic dances by dancers (such as those in the Class) for customers, a nightclub serving only non-alcoholic beverages would have difficulty remaining in business.  Moreover, Defendants are able to charge a much higher price for their drinks (e.g. $10 for soft drinks) than establishments without exotic dancers because the dancers are the main attraction of the Michigan Déjà Vu Nightclubs. As a result, the class members are an integral part of the Michigan Déjà Vu Nightclubs' business.

56.      The foregoing demonstrates that class members' are economically dependent on Defendants.  Therefore, class members were misclassified as independent contractors and should have been paid minimum wages throughout the relevant time period and otherwise afforded the rights of an employee.

## V.  DEFENDANTS' INTENT

57.      All actions by Defendants were willful and not the result of mistake or inadvertence.

58.      Defendants were aware that the FLSA and MWL applied to their operation of the Michigan Déjà Vu Nightclubs at all relevant times.  Déjà Vu Consulting and their affiliated companies, were aware of and/or the subject of previous litigation and enforcement actions relating to wage and hour violations where the misclassification of exotic dancers as independent contractors, as opposed to employees under the FLSA, was challenged.  In those prior cases, exotic dancers working under conditions similar to those employed at the Michigan Déjà Vu

Nightclubs were determined to be employees under the FLSA, as opposed to independent contractors. Despite being on notice of their violations, Defendants chose to continue to misclassify class members and withhold payment of minimum wages to them in effort to enhance their profits. Déjà Vu Consulting conspired with Cin-Lan and any other shareholders in the Michigan Déjà Vu Nightclubs to misclassify class members as independent contractors, as opposed to employees, for their own financial gain.

### VI.  INJURY AND DAMAGE

59.     Plaintiff and all members of the Class have suffered injury, incurred damage and financial loss as a result of Defendants' conduct complained of herein.

### VII.  CLASS ALLEGATIONS

60.     Plaintiff brings this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. All requirements of Fed.R.Civ.P. 23 (a) and (b) are satisfied.

61.     The Class to be certified is defined as follows:

All individuals, who at any time during the relevant time period, worked as an exotic dancer at any of the Michigan Déjà Vu Nightclubs, but were designated as an independent contractor and therefore, not paid any minimum wages.

(Referred to herein as the "Class").

62.     The relevant time period dates back three years from the date in which this Complaint was filed and continues forward through the date of judgment. The MWL provides for a three-year statute of limitations. M.C.L. § 408.393. FLSA provides a three-year statute of limitations for claims involving a willful violation of the act. 29 U.S.C. §255(a).

63.     The individuals in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such individuals is currently unknown, Plaintiff

believes that number of individuals who have worked as exotic dancers at the Michigan Déjà Vu Nightclubs during the relevant time period but not paid any minimum wages exceeds 500 women.

64.     There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members, including, but not limited to:

a.     whether Defendants violated the FLSA and/or the MWL by classifying all exotic dancers at the Michigan Déjà Vu Nightclubs as "independent contractors," as opposed to employees, and not paying them any minimum wages;

b.     whether Defendants unlawfully required class members to split their tips with Defendants;

c.     if Defendants violated the FLSA and/or the MWL, the amount of damages and other relief (including all applicable civil penalties and liquidated damages) Plaintiff and the Class are entitled to; and

d.     whether Defendants should be permanently enjoined from continuing to misclassify, and in turn, refuse to pay minimum wages, to the Class.

65.     Plaintiff's claims are typical of those of the Class.  Plaintiff, like other members of the Class, was misclassified as an independent contractor and denied her rights to wages and gratuities under the FLSA and the MWL.   The misclassification of Plaintiff was done pursuant to a common business practice which affected all class members in a similar way.  Plaintiff challenges Defendants' business practices under legal theories common to all class members.

66.     Both Plaintiff and the undersigned counsel are adequate representatives of the Class.  Plaintiff is a member of the Class.  Given Plaintiff's loss, Plaintiff has the incentive and is committed to the prosecution of this action for the benefit of the Class.  Plaintiff has no interests

that are antagonistic to those of the Class or that would cause her to act adversely to the best interests of the Class. Plaintiff has retained counsel experienced in class action litigation, including wage and hour disputes.

67.     This action is maintainable as a class action under Fed.R.Civ.P. 23(b)(1) and (c)(4) because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants.

68.     This action is maintainable as a class action under Fed.R.Civ.P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. The challenged practices are ongoing and Defendants continue to refuse to comply with the law. The predominant relief sought in this case is injunctive and equitable.

69.     This action is maintainable as a class action under Fed.R.Civ.P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class and because a class action is superior to other methods for the fair and efficient adjudication of this action.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FLSA
(Failure to Pay Statutory Minimum Wages)

70.     Plaintiff hereby incorporates all of the preceding paragraphs by reference as if fully set forth herein.

71.     At relevant times, Defendants employed Plaintiff and all other members of the Class within the meaning of the FLSA.

72.    29 U.S.C. § 206 requires that Defendants pay all employees minimum wages for all hours worked.  29 U.S.C. § 206(a) provides in pertinent part:

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

(1) except as otherwise provided in this section, not less than--

(A) $5.85 an hour, beginning on the 60th day after May 25, 2007;

(B) $6.55 an hour, beginning 12 months after that 60th day; and

(C) $7.25 an hour, beginning 24 months after that 60th day;

73.    Prior to 2007, 29 U.S.C. 206(a)(1) read: "except as otherwise provided in this section, not less than $4.25 an hour during the period ending on September 30, 1996, not less than $4.75 an hour during the year beginning on October 1, 1996, and not less than $5.15 an hour beginning September 1, 1997;".

74.    29 U.S.C. § 207(a) provides in pertinent part:

... no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

75.    Defendants failed to pay class members the minimum wages set forth in 29 U.S.C. §206 or §207, or any wages whatsoever.  In fact, Defendants required that Plaintiffs actually pay them in order to work.

76.    Defendants failed to pay Plaintiff and all other class members minimum wages throughout the relevant time period because it misclassified them as independent contractors.

77.     The amounts paid to Plaintiff and the Class by customers in relations to dances performed were tips not wages and cannot be used to offset Defendants' obligation to pay class members minimum wages.

78.     The FLSA permits an employer to allocate an employee's tips to satisfy a portion of the statutory minimum wage requirement provided that the following two conditions are satisfied: (1) the employer must inform the tipped employees of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and (2) tipped employees must retain *all the tips* received except those tips included in a tipping pool among employees who customarily receive tips. 29 U.S.C. § 203(m).

79.     Neither of these conditions were satisfied.  Defendants did not inform class members of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and class members did not retain all the tips received except those tips included in a tipping pool among employees who customarily receive tips. 29 U.S.C. § 203(m).   Defendants never notified class members that their tips were being used to reduce the minimum wages otherwise due under FLSA's tip-credit provisions and that they were still due the reduced minimum wage for tipped employees (as such, at a minimum, Plaintiff and the Class, are entitled to the "tipped wage" amount).  Rather, Defendants have always maintained that class members were never due any minimum wages due to their classification as independent contractors and, in turn, paid none.  Further, Defendants' requirement that Plaintiff and other members of the Class split their tips and pay Defendants approximately 30-40% of all tips paid in relation to dances they performed was not part of a valid tip pooling or sharing arrangement.  The amounts Class members paid Defendants from their tips were not shared with co-employees who customarily receive tips.  Rather, the amounts

collected from Class members when they clocked out were retained in their entirety by Defendants.

80.     Based on the foregoing, Plaintiff and all members of the Class are entitled to the full statutory minimum wages set forth in 29 U.S.C. §206 for all periods in which they worked at the Michigan Déjà Vu Nightclubs.  Alternatively, pursuant to 29 U.S.C. §203(m), Plaintiff and members of the Class are entitled the lower minimum wage of $2.13 per hour worked for tipped employees, in addition to any tips they have received during the relevant time period.

81.     Defendants' conduct in misclassifying class members as independent contractors was willful and done to avoid paying class members minimum wages and the other benefits that they were legally entitled to.

82.     The FLSA provides that a private civil action may be brought for the payment of federal minimum wages and for an equal amount in liquidated damages in any court of competent jurisdiction by an employee on behalf of him/herself and other employees similarly situated pursuant to 29 U.S.C. §216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.").  Moreover, Plaintiffs may recover attorneys' fees and costs incurred in enforcing their rights pursuant to 29 U.S.C. §216(b). Federal district courts further have the authority to fashion injunctive relief pursuant to 29 U.S.C. §217.

83.     Based on the foregoing, Plaintiff seeks on behalf of herself, and all members of the Class, unpaid minimum wages at the required legal rate for all of their working hours during the relevant time period, reimbursement of any base rent, liquidated damages, prejudgment

interest, attorneys' fees and costs and all other costs and penalties allowed by law.  Plaintiff further seeks injunctive relief to compel Defendants to recognize class members' employee status, to provide all payments guaranteed by law, and for this Court's continuing jurisdiction to enforce compliance.

## SECOND CAUSE OF ACTION
## VIOLATION OF MICHIGAN MINIMUM WAGE LAW OF 1964
(Failure to Pay Statutory Minimum Wage)

84.     Plaintiff hereby incorporates all of the preceding paragraphs by reference as if fully set forth herein.

85.     At relevant times, Plaintiff and all members of the Class were employees of the Defendants within the meaning of MCL §408.382(b).

86.     At all relevant times, Defendants were the employers of Plaintiff and members of the Class within the meaning of MCL §408.382(c).

87.     The MWL requires that all employees be paid minimum wages by their employers.  MCL §408.384 provides that the minimum wage rate shall be:

(a)     Beginning September 1, 1997, $5.15.
(b)     Beginning October 1, 2006, $6.95.
(c)     Beginning July 1, 2007, $7.15.
(d)     Beginning July 1, 2008, $7.40.

88.     To the extent the MWL provides for a higher minimum wage and broader relief than the FLSA, the higher wages and broader relief available under the MWL apply to all class members' claims.  See, e.g., 29 U.S.C. §218(a); MCL §408.394.

89.     MCL §408.384a(1) provides that employees shall receive compensation at not less than 1 ½ times the regular rate for employment in a workweek in excess of 40 hours.

90.     MCL §408.387a provides in pertinent part:

408.387a   Employees receiving gratuities; minimum hourly wage; "gratuities" defined.

(1)   The minimum hourly wage rate of an employee shall be $2.65 per hour if all of the following occur:

(a)   The employee receives gratuities in the course of his or her employment.

(b)   The gratuities described in subdivision (a) equal or exceed the difference between $2.65 per hour and the minimum hourly wage established under section 4.

(c)   The gratuities are proven gratuities as indicated by the employee's declaration of federal insurance contribution act purposes.

(d)   The employee was informed by the employer of the provisions in this section.

(2)   As used in this section, "gratuities" means tips or voluntary monetary contributions received by an employee from a guest, patron, or customer for services rendered to the guest, patron or customer and that the employee reports to the employer for purposes of the federal insurance contribution act, chapter 21 of subtitle C of the internal revenue code of 1986, 26 U.S.C. §3101 to 3128.

91.   Defendants failed to pay Plaintiff, or any other member of the Class, any minimum hourly wages or overtime wages for their labor during the relevant time period. Rather, Defendants improperly classified Plaintiff, and the Class, as independent contractors so as to attempt to avoid paying class members any wages.

92.   The amounts paid to Plaintiff, and the Class, by customers in relation to dances performed were tips, not wages, and cannot be used to offset Defendants' obligation to pay them minimum wages.

93.   As a result, Plaintiff, and the Class, were injured, damaged and incurred financial loss. Further, due to the continuing nature of Defendants' violations class members stand to incur further injury until enjoined.

94.   Based on the foregoing, Plaintiff and all members of the Class, are entitled to full statutory minimum wages set forth in MCL §408.384 and MCL §408.384a(1) as Defendants

failed to satisfy all subsections of MCL §408.387a(1), which allows employers, under certain circumstances, to pay employees a lower minimum wage of $2.65 per hour in addition to any gratuities they may have received during the relevant time period.

95.     MCL §408.387a(1)(d) was not satisfied by Defendants with respect to any class member as Defendants never informed any members of the Class of any provisions of the MWL including the right to receive a reduced minimum wage of $2.65 per hour worked.  Rather, Defendants steadfastly denied to Plaintiff, and the Class, that the MWL, including MCL §408.387a, applied to their work at the Michigan Déjà Vu Nightclubs and entitled them to the reduced minimum wage of $2.65 per hour worked.  Consistent with this the reduced minimum wage for tipped employees was not paid by Defendants to any class member.

96.     As all prerequisites of MCL §408.387a(1) were not satisfied by Defendants, Defendants remain obligated to pay all members of the Class the full minimum wage under MCL §408.394, not the reduced minimum wage for tipped employees under MCL §408.387a. Alternatively, pursuant to MCL §408.387a(1), Plaintiff and members of the Class are entitled the lower minimum wage of $2.65 per hour worked for tipped employees, in addition to any gratuities they have received during the relevant time period.

97.     MCL §408.393 provides in pertinent part:

(1) If any employer violates this act, the employee affected by the violation, at any time within 3 years, may:

(a) Bring a civil action for the recovery of the difference between the amount paid and the amount that, but for the violation, would have been paid the employee under this act and an equal additional amount as liquidated damages together with costs and such reasonable attorney's fees as may be allowed by the court.
* * *
(3) In addition to bearing liability for civil remedies described in this section, an employer who fails to pay the minimum hourly wage in violation of this act, or who violates a provision of section 4a governing an employee's compensatory time, is subject to a civil fine of not more than $1,000.00.

26

98.     Based on the foregoing, Plaintiff seeks on behalf of herself and all members of the Class unpaid minimum wages at the required legal rate for all of their working hours during the relevant time period, reimbursement of any base rent, liquidated damages, overtime, prejudgment interest, attorneys' fees and costs and all other costs and penalties allowed by law. Plaintiff further seeks injunctive relief to compel Defendants to recognize class members' employee status, to provide all payments guaranteed by law, and for this Court's continuing jurisdiction to enforce compliance.

### THIRD CAUSE OF ACTION
### UNLAWFUL COLLECTION OF TIPS/GRATUITIES BY DEFENDANTS

99.     Plaintiff and the members of the Class hereby incorporate the preceding paragraphs by reference as if fully set forth herein.

100.    The amounts paid to Plaintiff and the Class by customers in relation to dances they performed were tips under the FLSA and MWL, not wages.

101.    Defendants required Plaintiff, and the Class, to share those tips with Defendants. Specifically, Defendants required Plaintiff, and the Class, pay them approximately 30-40% of the tips given to them by patrons in relation to dances they performed.  The tips split with Defendant were recorded by Defendants on the "clock out" statements and/or other documents presented to Plaintiff and the Class indicating the "amounts due" to be paid Defendants out of the tips received during each shift.  *See e.g.* Exhibit A.

102.    Under the FLSA and the MWL tipped employees are entitled to retain all the tips received from patrons except those tips included in a tipping pool among employees who customarily receive tips.

103.    Defendants' requirement that Plaintiff and other members of the Class split their tips with Defendants was not part of a valid tip pooling or sharing arrangement.  The amounts class members paid Defendants from their tips were not shared with co-employees who customarily receive tips.  Rather, the amounts collected from class members when they clocked out were retained in their entirety by Defendants.

104.    By reason of the foregoing, Defendants violated the FLSA and the MWL.

105.    As a direct result of Defendants' unlawful conduct, Plaintiffs and all members of the Class have suffered injury, incurred damage and financial loss in an amount to be determined at trial.  In addition to other relief due, all tips which class members split with Defendants should be refunded to the Class along with prejudgment interest.

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE FLSA AND MWL
### (Failure to Maintain Records)

106.    Plaintiff and the members of the Class hereby incorporate the preceding paragraphs by reference as if fully set forth herein, except to the extent the foregoing allegations are inconsistent with those set forth in this Count.

107.    12 U.S.C. §211(c) provides in pertinent part:

(c)  Records

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

108.    29 C.F.R.§516.2 and 29 C.F.R. §825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours

worked by each employee each workday and total hours worked by each employee each workweek.

109.    29 U.S.C. §215(a)(5) provides in pertinent part:

…[I]t shall be unlawful for any person—

(5) to violate any of the provisions of section 211(c) of this title…

110.    Further, MCL §408.391 provides in pertinent part:

Every employer, subject to the provisions of this act or of any regulation or order issued thereunder, shall furnish the employee a statement of the hours worked by the employee and of the wages paid to him listing deductions made each pay period and the employer shall furnish the commissioner upon demand a sworn statement of the same. Such records shall be open to inspection by the commissioner, his deputy or any authorized agent of the department at any reasonable time. Every employer subject to the provisions of this act or of any regulation or order issued under its provisions shall keep a copy of them posted in a conspicuous place in the area where employees are employed

111.    Defendants failed to maintain all records required by the aforementioned statutes and regulations, including those showing all hours each class member worked during the relevant time period.

112.    Defendants failed to furnish Plaintiff and the members of the Class comprehensive statements showing the hours that they worked and the wages they received during any pay period in the relevant time period.

113.    As a result of the foregoing, Defendants have violated the FLSA and the MWL.

114.    Defendants' conduct was willful and not the result of mistake or inadvertence.  It would be inequitable for Defendants to retain the benefits received as a result of its misconduct.

115.    As a direct result of Defendants' unlawful conduct, Plaintiffs and all members of the Class have suffered injury, incurred damage and financial loss.

116.     When the employer fails to keep accurate records of the hours worked by its employees, the rule in <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687-688 66 S.Ct. 1187 (1946) is controlling. That rule states:

> ... where the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

117.     The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA.  Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with ... the Act."  <u>Id.</u>

118.     Where the persons entitled to back wages cannot be found or refuse to accept the payments, the employer may not retain the funds but is required to pay them into the Treasury of the United States.  Alternatively, the sums should be paid to the State of Michigan.

119.     Accordingly, on behalf of the entire Class, Plaintiff seeks appropriate relief against Defendants including damages, restitution, estoppel from asserting the lack of employment records as a defense, penalties, liquidated damages, a permanent injunction barring Defendants from violating the foregoing laws requiring that they maintain employment records for their employees, attorneys' fees and costs and all other relief just and appropriate in the circumstances.

## FIFTH CAUSE OF ACTION
## UNJUST ENRICHMENT / QUANTUM MERUIT

120.    Plaintiff and the members of the Class hereby incorporate the preceding paragraphs by reference as if fully set forth herein.

121.    By unlawfully demanding and retaining Plaintiffs' and members of the Class' wages and gratuities, Defendants obtained a substantial benefit and were unjustly enriched. Such conduct was detrimental to the Class.

122.    By unlawfully receiving value from class members' labors without providing compensation therefore, Defendants obtained substantial benefits and were unjustly enriched at the expense of the Class.

123.    Defendants' conduct was willful and not the result of mistake or inadvertence. It would be inequitable for Defendants to retain the benefits received.

124.    As a direct result of Defendants' unlawful, unjust and inequitable conduct, Plaintiffs and all members of the Class have suffered injury, incurred damage and financial loss in an amount to be determined at trial.

125.    Accordingly, on behalf of the entire Class, Plaintiff seeks appropriate relief against Defendants including damages, restitution, a refund of all tips paid to Defendants, penalties, prejudgment interest, a permanent injunction, attorneys' fees and costs and all other relief that the Court deems just and appropriate in the circumstances.

## XIII.   JURY DEMAND

Plaintiff reserves her right to and hereby requests a trial by jury on all matters so triable.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and all members of the Class pray for relief as follows:

1.      For nominal damages;

2.      For compensatory damages;

3.      For restitution of all monies due Plaintiff and disgorged profits from the unlawful business practices of Defendants;

4.      For backpay;

5.      For all statutory damages, liquidated damages and/or penalties allowed by federal and state wage and hour statutes and regulations;

6.      For accrued interest;

7.      For costs of suit and expenses incurred herein;

8.      For reasonable attorneys' fees;

9.      For declaratory and permanent injunctive relief, as well as this Court's continuing jurisdiction to compel compliance;

10.     For an order determining that this matter can proceed as a class action pursuant to Fed.R.Civ.P. 23;

11.     For all other and further relief that the Court may deem just and proper in the circumstances.

Respectfully submitted,

J. THOMPSON & ASSOCIATES, PLC

Dated: June 24, 2008          By:     s/ Jason J. Thompson
                                      Jason J. Thompson ( P47184)
                                      2000 Town Center, Suite 1000
                                      Southfield, MI  48075
                                      Telephone:  (248) 436-8448
                                      Facsimile:   (248) 436-8453
                                      Email:        jthompson@jta-law.com

s/ with Consent of Caleb LH Marker
Caleb LH Marker (P70963)
CONSUMER LAW CENTER, PLLC
P.O. Box 1110
408 Wildwood Avenue
Jackson, Michigan 49204-1110
Telephone:  (517) 998-7400
Facsimile:  (888) 490-7755
E-mail:        Marker@ConsumerPractice.com


s/ with Consent of Kevin J. Stoops
Kevin Stoops (P64371)
SOMMERS SCHWARTZ PC
2000 Town Center, Suite 1000
Southfield, MI  48075
Telephone: (248) 355-0300
Facsimile:  ( 248) 936-2143
Email:        kstoops@sommerspc.com


Of Counsel:

Timothy J. Becker, MN Bar No. 256663
ZIMMERMAN REED, P.L.L.P.
651 Nicollet Mall, Suite 501
Minneapolis, MN  55402
Telephone:     (612) 341-0400
Facsimile:     (612) 341-0844
Email:          tjb@zimmreed.com

Hart L. Robinovitch, AZ Bar No. 020910
ZIMMERMAN REED, P.L.L.P.
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ  85254
Telephone:     (480) 348-6400
Facsimile:     (480) 348-6415
Email:          hlr@zimmreed.com