UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE, individually, and on behalf          Case No. 08-12719
of all others similarly situated,

                                                Paul V. Gadola
            Plaintiff,                          United States District Judge

vs.

                                                Michael Hluchaniuk
CIN-LAN, INC.; and, DÉJÀ VU                     United States Magistrate Judge
CONSULTING, INC.

            Defendants.
_____/

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S REQUEST FOR TEMPORARY
RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

## I.     PROCEDURAL HISTORY

        The present complaint was filed by plaintiff, Jane Doe,[1] on behalf of herself

and the plaintiff class, against defendants, Cin-Lan, Inc. and Déjà Vu Consulting,

_____

        [1]  "Pursuant to the principals set forth in *Doe v. Bodwin*, 119 Mich.App.
264, 326 N.W.2d 473 (1982), plaintiff files this action under a fictitious name and
proceeds anonymously because: (a) she wishes to preserve her rights to privacy;
(b) there is a significant social stigma attached to the plaintiff's occupation as an
exotic dancer; (c) there is an inherent amount of risk associated with plaintiff s
profession and she fears that disclosure of her legal name and address may subject
to her risk of injury by current and former patrons; and (d) in addition to the fear
of retaliation by the defendants, she would be hesitant to maintain this action
enforcing fundamental employment rights if her name were to be forever
associated with the defendants."  (Dkt. 1, pp. 2-3).

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

Inc., ("defendants"), on June 25, 2008.  (Dkt. 1).  In the complaint, plaintiff seeks

injunctive relief, damages, backpay, restitution, liquidated damages, civil

penalties, prejudgment interest, and any other relief that the Court deems just and

reasonable in the circumstances against defendants based on allegations that

defendants violated: (1) the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*

(FLSA); (2) Michigan Minimum Wage Law of 1964, Mich. Comp. Laws §

408.381 *et. seq.* (MWL); (3) engaged in the unlawful collection of tips/gratuities

by defendants; (4) that defendants failed to maintain proper employment records

for plaintiffs; and (5) a claim of unjust enrichment/quantum meruit.[2]  (Dkt. 1; Dkt.

11, p. 1).

On July 3, 2008, plaintiff filed an "Emergency Motion For Entry Of A

Temporary Restraining Order And/Or Preliminary Injunction And Request For A

Hearing" against defendants pursuant to Fed.R.Civ.P. 65(a) and (b) in response to

---

[2] In Counts III and IV of her complaint, plaintiff assert claims under both
the FLSA and the MWL.  Accordingly, Count I and portions of Counts III and IV
allege claims under federal law, whereas Count II and V, along with portions of
Counts III and IV describe claims under state law.  (Dkt. 1).  On July 8, 2008,
District Judge Paul V. Gadola entered an order dismissing, without prejudice,
Counts II, V, and the portions of Counts III and IV that are based on state law
pursuant to his authority under § 1367(c), and the holding of *City of Chicago v.
International College of Surgeons*, 522 U.S. 156, 172-173 (1997).  (Dkt. 11).

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

alleged "adverse employment actions" taken by defendants on July 2, 2008 after and in response to plaintiff's employment lawsuit against defendants. (Dkt. 8). Defendants responded to plaintiff's motion on July 10, 2008, arguing that it is without merit. (Dkt. 14). On July 8, 2008, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1, Judge Gadola referred this motion to the undersigned for report and recommendation. (Dkt. 12). A hearing was held on July, 11, 2008 before the undersigned and after which, each party submitted supplemental briefs to this Court. (Dkt. 16; Dkt. 18).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for preliminary injunctive relief be **GRANTED** in part.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Claims

Plaintiff, and plaintiff class, describe themselves as "exotic dancers" who were employed by defendants during the relevant time period. (Dkt. 1, p. 1, ¶ 1). According to plaintiff, defendant Cin-Lan, Inc. (Cin-Lan) is a Michigan corporation that maintains ownership, recruitment, management and/or operational interests in various nightclubs featuring exotic dancing by class members, including the Deja-Vu-Lansing nightclub. (Dkt. 1, p. 4, ¶ 9). Also, according to plaintiff, defendant Déjà Vu Consulting, Inc. (Déjà Vu Consulting) is a Michigan

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

Corporation that maintains ownership, recruitment, management, controlling and/or operational interests in various nightclubs in Michigan and other states which feature exotic dancing by class members, including the Déjà-Vu-Lansing nightclub where plaintiff works. (Dkt. 1, p. 4, ¶ 10). Further, plaintiff alleges that Déjà Vu Consulting owns a majority stake in each Michigan Déjà Vu Nightclub, controls the operations in each, and dictates the common employment policies applicable to each, and that all major business decisions regarding the operations and management of the Michigan Déjà Vu Nightclubs, including the decision to classify dancers as "independent contractors" as opposed to "employees" are made by Déjà Vu Consulting. (Dkt. 1, pp. 4-5, ¶ 11; p. 5, ¶ 12).

Plaintiff alleges that, as a matter of common business policy, defendants misclassified plaintiff and all class members as independent contractors, as opposed to employees, in violation of the FLSA. (Dkt. 1, p. 9, ¶ 23). Plaintiff claims that, as a result of this classification, she and class members were permitted to retain tips, but were not paid the minimum wages required under the FLSA. *Id.*; Dkt. 8, p. 1, ¶ 2. Plaintiff also claims that those dance fees classified as "service charges" or "wages" are actually tips. (Dkt. 1, p. 28, ¶ 100). As such, plaintiff claims that, under FLSA, tipped employees are entitled to retain all the tips received from patrons except those tips included in a tipping pool among

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

employees who customarily receive tips. (Dkt. 1, p. 27, ¶ 102). According to plaintiff, the members of the class are tipped employees under the FLSA and are engaged in an occupation in which they customarily and regularly receive more than $30 a month in tips. (Dkt. 1, p. 10, ¶ 30). Plaintiff claims that she and each class member have averaged more than $7.40 per hour in tips while working at the Michigan Déjà Vu Nightclubs. *Id.* Nevertheless, plaintiff argues that, as employees of defendants, class members remain entitled to: (i) receive minimum wages under the FLSA and (ii) to retain all tips (currently classified by defendants as service fees) given to them by customers when they performed dances. *Id.*

Plaintiff claims that she never signed a contract stipulating that she was an independent contractor or employee as defendants argue. (Dkt. 16, p. 1). Even if she had signed a contract, plaintiff suggests that an employee-employer relationship under the FLSA is not dependent on whether a person elects to become an independent contractor or employee, but is measured according to the six-part economic realities test under the FLSA. (Dkt. 16, pp.1-2). Plaintiff further alleges that defendants' reliance on common law and tax law employment tests is flawed. (Dkt. 1, p.11, ¶ 34; Dkt. 16, p.1).

B.    Plaintiff's Request for Temporary Restraining Order

In response to the filing of this lawsuit, plaintiff claims that defendants have

5

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

imposed restrictive and prohibited employment terms on plaintiff and plaintiff alone, and no other dancers, in violation of FLSA's anti-retaliation provision. (Dkt. 8, p. 1, ¶ 2).  In addition, plaintiff claims that defendants attempted to degrade and embarrass plaintiff while at work by requiring her to perform janitorial work, a function no other exotic dancer is required to perform.  *Id.*  In a correspondence dated July 2, 2008, counsel for both defendants, Bradley J. Shafer, faxed a letter to plaintiffs' counsel relating to the classification of plaintiff in her employment as an exotic dancer at defendants' Lansing, Michigan nightclub, addressing specific changes to plaintiff's work.  (Dkt. 8, Ex. A).  On the same day, plaintiff claims that while at work defendants instructed her that in order to continue working as a dancer at the Déjà Vu night club she must now execute agreements in an "employment package," signing away various legal rights and that defendants would now "confiscate and retain any tips earned by Doe when performing private dances for patrons."  (Dkt, 8, p. 3).

Plaintiff argues that the FLSA expressly prohibits retaliation, as in this case, and grants employees the right to injunctive relief.  (Dkt. 8, p. 8).  Plaintiff claims that she meets all the requirements of Fed.R.Civ.P. 65 and is entitled to a preliminary injunction because of defendants' retaliatory measures.  (Dkt. 8, p. 9). In the alternative, plaintiff requests that this Court enter an order against

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

defendants requiring them to pay plaintiff $1,000.00 per day (approximately one-half to three times the amount she would have earned [as can be evidenced by the defendants' extensive computer records for the preceding year]) until they allow her to be treated the same as the other exotic dancers and has fully refrained from engaging in any retaliatory actions.  (Dkt. 8, pp. 3-4).

C. <u>Defendants' Response to Motion for Temporary Restraining Order and/or Preliminary Injunction</u>

Defendants explain that Cin-Lan, doing business as  Déjà Vu , is an owner and operator of an adult nightclub in Lansing, Michigan, which presents live, non-obscene, clothed, semi-nude, and nude dance entertainment to the consenting adult public.[3]  (Dkt. 14, p. 7).  Defendants claim that plaintiff's status can be determined by the simple fact that Cin-Lan did not, and does not, pay [ ] [them] any remuneration.  Rather, the performers pay the club for the right to be able to utilize the club premises for their entertainment services."  (Dkt. 14, p. 15).  Furthermore, in their supplementary brief, defendants claim that the mandatory

_____

[3]   Déjà Vu  Consulting is a consulting company that provides expert consultation on operations to adult nightclubs, such as Cin-Lan. (Dkt. 14, p. 7). Defendants claim, contrary to plaintiff's position, that Déjà Vu Consulting is not the operator or owner of the Cin-Lan nightclub.  *Id.*  Déjà Vu Consulting only provides consulting services to Cin-Lan, does not present any dance entertainment, and has had no interaction whatsoever, legal or otherwise with plaintiff Doe.  *Id.*

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

7

dance fees charged by the club belong only to the club and are not considered

"tips" to the dancers because they are "service charges" under FLSA. (Dkt. 18, p.

9, ¶ A).

Defendants classified plaintiff as an "Independent Professional Entertainer"

who performed at Cin-Lan's nightclub as an exotic entertainer, and who was

allowed to perform at other places. *Id.* Defendants "believe" that plaintiff was

provided with the Entertainer Application and Dancer Performance Lease, through

which she elected to become an independent contractor, however, those

documents have not been produced. (Dkt. 14, p. 8). Defendants claim plaintiff

was an independent contractor and not employee, and as such, she set her own

schedule, selected her own costumes, props, make up, method of performance,

performance techniques, and also was free to determine whether or not to provide

dance performances to specific customers. *Id.* Moreover, defendants assert that

plaintiff could not be "disciplined" by Cin-Lan. Thus, according to defendants,

plaintiff is not an employee of Cin-Lan and is not a proper class representative.

*Id.*

Defendants claim that when they were advised that plaintiff had instituted

this litigation, "it became apparent that plaintiff had determined that she no longer

wished to be an Independent Professional Entertainer, and asked that she be

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

treated as an employee." *Id.*  On July 2, 2008, defendants' counsel advised

plaintiff's counsel that her election to be treated as an employee would be honored

in the exact manner that is freely available to all other dancers, and consistent with

the treatment of Cin-Lan's current employees.  *Id.*  Defendants claim that they did

not take retaliatory measures under FLSA because they treated plaintiff like an

employee, as she requested, and had a right to confiscate her "tips" and to give her

additional work.  (Dkt. 14, pp. 9-11).  Therefore, defendants contend that plaintiff

does not seek to maintain the status quo, but rather, wants to become an employee,

collect all tips/service charges, and to be paid minimum wage.  (Dkt. 14, p. 11).

Defendants also claim, in their supplementary brief, that plaintiff's injuries

(if any) are fully compensable by monetary damages, which is fatal to her claim.

(Dkt. 18, p. 15).  Defendants claim that "[h]arm is not irreparable if fully

compensable by monetary damages."  *Id.*, citing, *Overstreet v. Lexington-Fayette*

*Urban County Government*, 305 F.3d 566, 576 (6th Cir. 2002).  In addition,

defendants assert that, if this Court did grant preliminary injunctive relief, the

harm to defendants would outweigh plaintiff's harm because defendants would be

forced to continue to misclassify plaintiff as an independent contractor.  And, if

she is determined to be an employee, defendants would be violating tax and labor

laws.  (Dkt. 18, p. 16, § IV).  Finally, defendants argue that plaintiff does not have

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

a likelihood of success on the merits of her retaliation claim because they treated her as an employee, just as she requested, which cannot be considered retaliation. (Dkt. 18, p. 18). As a result, defendants request that this Court deny plaintiff's motion, or at the very least, estop plaintiff from accruing any damages after July 2, 2008. (Dkt. 18, p. 21).

## III. DISCUSSION

### A. Availability of Injunctive Relief Under FLSA

Despite defendants' suggestions to the contrary, the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, permits employees to obtain preliminary injunctive relief restraining retaliatory conduct by their employer. Specifically, § 216(b) provides in part:

> Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b). In turn, § 215(a)(3) makes it a violation of FLSA for an employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter..." 29 U.S.C. § 215(a)(3).

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

As many Courts, including the Sixth Circuit, have recognized, unlike other violations of FLSA, § 216(b) provides a private right of action for employees to pursue injunctive relief for violations of the anti-retaliation provision found in. § 215(a)(3).  *See, Bush v. State Indus., Inc.*, 599 F.2d 780, 782, 786-87 (6th Cir. 1979) (recognizing that the FLSA provides a private right of action for an employee seeking reinstatement); *Martinez v. Deaf Smith County Grain Processors, Inc.*, 583 F.Supp. 1200, 1212 (N.D. Tex. 1984) (granting an injunction to a private litigant and stating that the injunction was "consonant with the remedies explicitly suggested under § 216(b)" because these remedies are meant "to place the employee retaliated against in the same position he would have been in had the retaliation never taken place.").

As the Eleventh Circuit explained, § 216(b) was amended in 1977 for this very purpose - to allow employees to bring suit seeking legal or equitable relief for violations of the anti-retaliation provision.  *Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333, 1336 (11th Cir. 2002).  Before these amendments, "employees who suffered retaliation had to rely on the Secretary to file suit on their behalf, which 'place[d] a heavy burden on the Department of Labors resources' and left many wrongfully discharged employees without a remedy when the Secretary declined to file suit." *Id.*, quoting, Fair Labor Standards Amendments of 1977:  Hearings

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

on S. 1871 Before the Subcomm. on Labor of the Comm. on Human Res., 95th Cong. 15-16 (1977). The *Bailey* Court further noted that the "amendments provided greater protection to employees who suffer retaliation by affording them a private right of action to obtain legal or equitable relief, 'including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.'" *Id.*, quoting, 29 U.S.C. § 216(b); *see also*, *Moore v. Freeman*, 355 F.3d 558, 563 (6th Cir. 2004) ("[Section 216(b)] allows any legal or equitable relief that is appropriate to further the purposes of § 215(a)(3), one of which is to ensure that employees feel free to report grievances under the FLSA.").

Thus, there is no doubt that injunctive relief is available to employees aggrieved under § 216(b). There is also no doubt that such relief may be granted on a preliminary basis. Given the expansive language providing for equitable relief for violations of the antiretaliation provision ("including *without limitation* employment, reinstatement, [and] promotion," 29 U.S.C. § 216(b) (emphasis added)), there is no suggestion that "Congress intended to restrict courts from issuing preliminary injunctions to preserve the status quo during the pendency of the lawsuit." *Bailey*, 280 F.3d at 1337. Such a construction would be inconsistent with the purpose of the FLSA, which is "to foster a climate in which compliance

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

with the substantive provisions of the Act would be enhanced" by protecting

employees who come forward with complaints." *Mitchell v. Robert DeMario*

*Jewelry, Inc.*, 361 U.S. 288, 292 (1960).  Thus, when "an employee has

demonstrated a likelihood of success on the merits and satisfied the other

requirements for preliminary injunctive relief, allowing for such relief to put the

employee back in the position he held before the employer's retaliatory conduct is

consistent with § 216(b) - it is a form of equitable relief that effectuates the

purposes of the antiretaliation provision." *Bailey*, 280 F.3d at 1337.

B.     Injunctive Relief Under § 216(b).

In determining whether to grant a motion for a preliminary injunction, a

District Court must consider and balance four factors:

> (1) whether the movant has a strong likelihood of
> success on the merits; (2) whether the movant would
> suffer irreparable injury without the injunction; (3)
> whether issuance of the injunction would cause
> substantial harm to others [and balancing the harm to the
> moving party if the injunction is denied against the harm
> to others if the injunction is granted]; and (4) whether the
> public interest would be served by issuance of the
> injunction.

*Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.*, 110

F.3d 318, 322 (6th Cir. 1997).  Although the elements are to be balanced against

each other, each element need not be satisfied to issue a preliminary injunction.

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

*Franklin Jefferson, Ltd. v. Columbus*, 211 F.Supp.2d 954, 957 (S.D. Ohio 2002).

      1.     Success on the merits

There is some dispute between the parties on what issues must be evaluated for the "merits" of plaintiff's request for injunctive relief. The undersigned suggests that the answer is easily found in the two provisions of the FLSA at issue here. Specifically, to be liable for injunctive relief under § 216(b), an employer must have violated the terms of § 215(a)(3), which requires a showing the employer either discharged or "in any other manner *discriminate[d]* against any *employee*" because the employee filed a complaint under FLSA. (Emphasis added). Thus, to establish a likelihood of success on the merits, plaintiff must show that: (1) defendants took actions constituting discrimination after she filed her lawsuit; and (2) she is an employee. *See e.g.*, *Bailey*, 280 F.3d at 1334 n. 1 (For purposes of preliminary injunction, the Court of Appeals remanded to the District Court with instructions to determine whether the plaintiffs, who claimed that they were employees and that they were terminated because they "disavowed their independent-contractor relationship," were employees or independent contractors.). Here, there is no real dispute that the actions of defendants were taken in response to the filing of plaintiff's FLSA complaint. To succeed on her claim of retaliation, plaintiff must show, however, that defendant's actions

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

constituted "discrimination."

The standards under which plaintiff must establish a likelihood of success on the merits of whether she is an "employee" for purposes of FLSA are well-established. The Supreme Court has instructed that the term "employ" in the FLSA must be interpreted expansively. *Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318, 326-327 (1992)*. The definition has "striking breadth" and "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide*, 503 U.S. at 326; *see also, Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947)* ("The definition of 'employ' is broad.").

In light of this broad interpretation, the Supreme Court holds that the question of "whether there is an employment relationship under the FLSA is tested by 'economic reality' rather than 'technical concepts.'" *Goldberg v. Whitaker House Cooperative, 366 U.S. 28, 33 (1961)*. In making this inquiry, the Court must be mindful that "[t]he employer-employee relationship does not lend itself to rigid per se definitions, but depends upon the circumstances of the whole activity." *Reich v. ConAgra, Inc., 987 F.2d 1357, 1361 (8th Cir. 1993)* (internal quotation marks omitted); *see also, Lilley v. BTM Corp., 1989 WL 100763, *3 (E.D. Mich. 1989)* (same). "Where the work done, in its essence, follows the usual path of an

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

employee, putting on an 'independent contractor' label does not take the worker

from the protection of the Act." *Rutherford,* 331 U.S. at 729. Accordingly,

"[e]conomic realities, not contractual labels, determine employment status for the

remedial purposes of the FLSA" and the "common law concepts of 'employee'

and 'independent contractor' are not conclusive determinants of the FLSA's

coverage." *Real v. Driscoll Strawberry Associates,* 603 F.2d 748, 754 (9th Cir.

1979).

Rather, the definition is "to be determined in light of the purposes of the

legislation" so that "employees are those who as a matter of economic reality are

dependent upon the business to which they render service." *Donovan v. Brandel,*

736 F.2d 1114, 1116 (6th Cir. 1984) (quotation marks omitted) (quoting *Dunlop v.*

*Carriage Carpet Co.*, 548 F.2d 139, 145 (6th Cir. 1977)). Put another way, the

multi-factor "economic realities" test "looks to whether the putative employee is

economically dependent upon the principal or is instead in business for himself.

This test is a loose formulation, leaving the determination of employment status to

case-by-case resolution based on the totality of the circumstances." *Imars v.*

*Contractors Manufacturing Services, Inc.*, 1998 WL 598778, *2 (6th Cir. 1998)

(quoting, *Lilley v. BTM Corp.*, 958 F.2d 746, 750 (6th Cir. 1992) (citations

omitted)). Generally, the question of "[w]hether a particular situation is an

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

employment relationship is a question of law, however, where material facts are in dispute, the question of whether someone is an "employee" is a matter for the jury. *Imars*, at *3, citing, *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1542 (7th Cir. 1987) (Easterbrook, J., concurring) ("If we are to have multiple factors, we also should have a trial. A fact-bound approach calling for the balancing of incommensurables, an approach in which no ascertainable legal rule determines a unique outcome, is one in which the trier of fact plays the principal part.").

The Sixth Circuit generally analyzes six factors in applying the "economic realities" test: (1) the permanency of the relationship between the parties; (2) the degree of skill required for the rendering of the services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending on his skill; (5) the degree of the alleged employer's right to control the manner in which the work is performed; and (6) whether the service rendered is an integral part of the alleged employer's business. *Imars, at *3*, citing, *Donovan, 736 F.2d at 1117*; Debra T. Landis, Annotation, Determination of "Independent Contractor" and "Employee" Status for Purposes of § 3(e)(1) of the Fair Labor Standards Act (explaining that these factors are conventionally used by courts). The *Imars* Court observed that "few of these factors necessarily makes economic sense, and all of the factors are far too easy to manipulate and mold

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

during application to suit a preconceived result." *Imars*, at *5, citing, *Lauritzen, 835 F.2d at 1539-1543* (Easterbrook, J., concurring) (demonstrating how factors can be twisted and how they are not necessarily economically relevant). The district court had found two factors favored the plaintiff, two factors favored the defendant and one factor "cut both ways." Thus, the district court used the sixth factor (the parties' contract as a "tie-breaker." The Sixth Circuit rejected such a method because the evaluation of the factors provide such "mixed results" and "tell us very little." The Sixth Circuit also rejected the district court's method because the parties intentions as expressed in a contract should not dispose of a FLSA case where the "economic reality" and the level of dependence are "otherwise unclear." *Id*. at *6. Thus, the appropriate weight of the factors was for a jury to decide. *Id*.

In the instant case, however, it is the Court who must preliminarily evaluate these factors for purposes of the "success on the merits" test. Defendants do not specifically address the first factor (permanency) in their submissions to the Court. Plaintiff refers the Court to her complaint, in which she states that she has worked at Déjà Vu for approximately one year. (Dkt. 16, p. 7; Dkt. 1, ¶ 53). The Sixth Circuit has found that this factor weighed in favor of the defendant where the relationship between pickle-pickers and the pickle growers was a temporary one,

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

potentially renegotiated every year. *Donovan, supra.* Here, there is no evidence

to suggest that the terms under which plaintiff performs services at defendants'

establish is subject to any renewal or renegotiation procedure. Moreover, there is

recognition in the case law that the sometimes transient nature of the workforce is

"insufficient to remove the dancers from the protections of the FLSA." *See also,*

*Reich v. Circle C Investments, Inc.*, 998 F.2d 324, 328-329 (5th Cir. 1993). The

Fifth Circuit recognized that in evaluating the factors, the court should "not lose

sight of the economic reality," which is that the "dancers are not in business for

themselves but are dependant upon finding employment in the business of others."

*Id*. at 329. Thus, this factor weighs in favor of plaintiff.

The second factor, degree of skill, is also addressed by plaintiff in her

complaint. (Dkt. 1, ¶¶ 45). The complaint states that no special or unusual skills

are required to work as a dancer at Déjà Vu and no prior experience is required.

*Id*. The complaint also explains that no training, instructions, or seminars are

required or provided by Déjà Vu. *Id*. Defendants do not address this factor in

their submissions to the Court. "The lack of required specialized skills or

knowledge is considered indicia of an employer-employee relationship." *Bonnetts*

*v. Arctic Exp., Inc.,* 7 F.Supp.2d 977, 981 (S.D. Ohio1998) (citing *Dole v. Snell,*

*875 F.2d 802, 811 (10th Cir. 1989))*; *see also, Rumpke v. Rumpke Container Serv.,*

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

*Inc.*, 240 F.Supp.2d 768, 772 (S.D. Ohio 2002) ("Work that does not require extensive education or skill is a factor indicating the relation of employer-employee.").  Other courts have also recognized that where an exotic dancer has no prior experience and no training or highly developed skills are required, this factor weighs in favor of the plaintiff.  *Reich v. Circle C*, 998 F.2d at 328.  The undersigned agrees.

The third factor, a worker's investment in materials, also weighs in favor of plaintiff.  According to plaintiff's complaint, a dancer's relative investment is minor when compared to the investment made by defendants.  (Dkt. 1, ¶ 48).  As set forth in the complaint, the dancers make no capital investment in the facilities, advertising, maintenance, sound system and lights, food, beverage and other inventory, or staffing of the Déjà Vu Nightclubs.  (Dkt. 1, ¶ 49).  Plaintiff suggests that all investment and risk capital is provided by defendants and that a dancer's investment is limited to expenditures on costumes and make-up which she may choose to wear while working, and her own labor.  *Id*.  Defendants do not address this factor in their submissions to the Court.  It appears that this factor should be weighed similarly to *Fegley v. Higgins*, 760 F.Supp. 617, 620-22 (E.D. Mich. 1991), rev'd on other grounds, 19 F.3d 1126 (6th Cir. 1994), where the Court concluded that this factor weighed in favor of the worker given that he was

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

supplied with all materials needed to perform work except for hand-tools.  *See also, Reich v. Circle C*, 998 F.2d at 328 (Dancer's investment in costumes and padlock is relatively minor compared to the "obvious significant investment" in operating a nightclub.).

The fourth factor is the worker's opportunity for profit or loss, depending on the worker's skill.  When evaluating this factor, the Court considers whether the worker "had the opportunity to maximize his profits through the independent use of his own initiative, judgment, and skill."  *Bonnetts*, 7 F.Supp.2d at 983, citing, *McComb*, 331 U.S. at 730; *Lauritzen*, 835 F.2d at 1536; *Brandel*, 736 F.2d at 1119.  Where a worker's compensation is best characterized as "earnings," rather than "profit," this factor may weigh in favor of the worker.  *Richardson*, at 614. The Court must also consider whether the worker has a corresponding exposure to a risk of loss.  *Bonnetts*, 7 F.Supp.2d at 983.  However, evidence demonstrating the possibility of a reduction in the amount of money earned is insufficient to establish risk of loss.  *Id.*, at 983, citing, *Lauritzen*, 835 F.2d at 1536.

Plaintiff argues that the dancers do not exercise the skill and initiative of a person in business for themselves.  (Dkt. 1, ¶ 44).  Plaintiff suggests that this factor weighs in her favor because the dancers "do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

independent contractors." (Dkt. 1, ¶ 46). Plaintiff points out that dancers do not own any enterprise, exercise no business management skills, do not maintain any separate business structures or facilities, and exercise no control over customer volume or atmosphere. *Id.* Further, dancers do not actively participate in any effort to increase the nightclubs' client base, enhance goodwill, or establish contracting possibilities. *Id.* According to plaintiff, the "scope of a dancer's initiative is restricted to decisions involving what clothes to wear (within Defendants guidelines) or how provocatively to dance which is consistent with the status of an employee opposed to an independent contractor." *Id.* Lastly, plaintiff asserts that dancers are "not permitted to hire or subcontract other qualified individuals to provide additional dances to patrons, as an independent contractor in business for themselves would." (Dkt. 1, ¶ 47). Defendants, on the other hand, offer evidence that they do not control the schedules or costumes of the dancers who work as "independent professional entertainers," but all *employees* are subject to a regular schedule and that only "independent professional entertainers are permitted to work in other exotic entertainment establishments; employees who do so will be terminated." (Dkt. 18, p. 13, Ex. A, ¶ 9; Dkt. 14, Ex. B, ¶ 21).[4] While

_____

[4] The undersigned is doubtful that the non-competition agreement that defendants seek to impose on "employees" is sustainable under Michigan law,

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

the ability to control one's own schedule is not insignificant, other courts have

recognized that where the defendant is "responsible for advertisement, location,

business hours, maintenance of facilities, aesthetics, and inventory of beverages

and food," the defendant essentially "control[s the] determinants of customer

volume" and "exercises a high degree of control over a dancer's opportunity for

'profit.'" *Reich v. Circle C*, 998 F.2d at 328. Thus, on balance, this factor weighs

in favor of plaintiff.

   The fifth factor is degree of control of defendant versus the worker over the

manner in which the work is performed. Here, for example, the court should

examine the extent to which a worker must follow the alleged employer's rules

and guidelines. *See e.g., Richardson v. Genesee County Community Mental*

*Health*, 45 F.Supp.2d 610, 614 (E.D. Mich. 1999). In this vein, plaintiff suggests

which provides that a non competition agreement is enforceable as along as: (1) it
is reasonably drawn as to its duration, geographical scope, and line of business;
and (2) it protects the legitimate business interests of the party seeking
enforcement. *Lowry Computer Products v. Head*, 984 F.Supp. 1111, 1116 (E.D.
Mich. 1997). "Legitimate business interests" must include much more than a
prohibition on competition; reasonableness is based on several factors such as
consideration supporting the contract, economic hardship on the employee, and
whether the employer has reasonable competitive interests that need protection.
*Superior Consulting Comp. v. Walling*, 851 F.Supp. 839 (E.D. Mich. 1994).
Given that "independent contractors" who dance at defendants' establishment
freely compete, it is difficult to see what legitimate interest such a restriction
provides, other than to discourage dancers from "opting" to be "employees."

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

that defendants "manage all aspects of the business operation including establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff (managers, waitresses, bartenders, bouncers/doormen, etc.)." Dkt. 1, ¶ 50. Defendants do not deny these allegations. Defendants argue instead that plaintiff is an "independent professional entertainer" and as such, she selects her own costumes and make up; chooses her own stage name and stage persona, selects her own dance routines, and is free to refuse to perform for certain patrons, to develop and exploit her own fan base, including fan club activities, web page sites and the like and is free to perform at other clubs and venues. (Dkt. 14, pp. 18-19). Defendants offer a sample "independent professional entertainer" agreement and the affidavits of other "independent professional entertainers" to support their position. On one hand, defendants were unable to produce any such agreement signed by plaintiff. On the other hand, plaintiff does not address the claims made by defendant in this regard. Based on the submissions of the parties, this factor weighs slightly in favor of plaintiff.

The sixth factor is whether the services provided by plaintiff were an "integral" part of defendants' business. Plaintiff argues that the dancers are essential to the success of the Michigan Déjà Vu Nightclubs and a dancer's success is dependent on defendants' provision of stage, table and VIP room dances

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

by class members for patrons. (Dkt. 1, ¶ 55). Plaintiff points out that the Michigan Déjà Vu Nightclubs do not serve alcohol and are not in direct competition with other enterprises in the nightclub, tavern or bar business. *Id*. Thus, absent the provision of exotic dances by dancers for customers, a nightclub serving only non-alcoholic beverages would have difficulty remaining in business. *Id*. Moreover, defendants are able to charge a much higher price for their drinks (e.g., $10 for soft drinks) than establishments without exotic dancers because the dancers are the main attraction. *Id*. As a result, according to plaintiff, dancers are an integral part of the Déjà Vu Nightclub business. *Id*. Defendants do not address this factor in their submission to the Court, but do state that Cin-Lan is the "owner and operator of an adult nightclub, which presents live, non-obscene, clothed, semi-nude, and nude dance entertainment to the consenting adult public." (Dkt. 14, p. 1). This factor weighs in plaintiff's favor given that the entire purpose of defendants' establishment is to provide a venue in which exotic dancers perform. Without such the services of such dancers, the business would seemingly not exist. After evaluating all six factors, on balance, the Court concludes that plaintiff has shown a likelihood of success on the merits of whether she is an "employee" for purposes of FLSA.

Next, plaintiff must show that the actions of the defendant constituted

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

"discrimination" under § 215(a)(3).  The anti-retaliation provision found in the FLSA is substantially similar to the anti-retaliation provision in Title VII.[5]  The anti-retaliation provision in Title VII is broader than the substantive provisions of Title VII, which prohibit conduct that "affects the employee's 'compensation, terms, conditions, or privileges of employment.'"  *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  In *Burlington*, the Supreme Court rejected the argument that the "discrimination" prohibited in the anti-retaliation provision also requires a showing that the retaliatory conduct affected the "compensation, terms, conditions, or privileges of employment."  *Id.* at 61.  The

_____

[5]  FLSA's anti-retaliation provision states that is shall be unlawful for an employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter... ."  29 U.S.C. § 215(a)(3).  Title VII of the Civil Rights Act of 1964 contains the following anti-retaliation provision:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

Court concluded that the purpose of the anti-retaliation provision would be ill-served by interpreting it in such a limited manner because an employer could "effectively retaliate against an employee by taking actions not directly related to his employment or by causing harm *outside* the workplace." *Id*. at 63 (emphasis in original).  Thus, "unlike the substantive provision, [the anti-retaliation provision] is not limited to discriminatory actions that affect the terms and conditions of employment." *Id*. at 64.

According to plaintiff, after learning she had filed this lawsuit, defendants took several actions.   First, they told her that they would make her an employee, but that she would no longer receive any portion of the dance fees, which defendants call "service charges" and which plaintiff labels "tips."  (Dkt. 8, Ex. 2). Plaintiff would have to complete an "employment packet," including an arbitration provision and a non-competition clause.  (Dkt. 8, Ex. 2).  Plaintiff also claims that she could be forced to "mop floors," which no other dancer is forced to do.  *Id*.

In its first response to plaintiff's motion, defendants represented that plaintiff would not be required to perform any janitorial duties.  (Dkt. 14, pp. 8-9). In their supplemental response, defendants represented that plaintiff would not be required to sign any agreement containing a non-competition clause or an arbitration agreement.  (Dkt. 18, p. 13).  Defendants subsequent actions are not,

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

however, a bar to this Court granting injunctive relief.  *See, Martin v. Funtime, Inc.*, 963 F.2d 110, 114 (6th Cir. 1992) (an employer's current FLSA compliance does not prevent a court from issuing an injunction to remedy past wrongdoing).

The real crux of defendants' position is that because plaintiff is getting exactly what she asked for – to be an "employee" – its actions cannot constitute retaliation.  (Dkt. 18).  Defendants rely on *Blackie v. State of Maine*, 75 F.3d 716 (1st Cir. 1996) to support their argument that their actions cannot constitute retaliation because they are merely managing the "impact of compliance."  In *Blackie*, a public employer took certain action in order to comply with an order issued in another lawsuit.  The court concluded that interpreting the FLSA anti-retaliation statute in this manner would "mummify the status quo and prevent an employer from complying with a court order in the manner that it deems most compatible with the lawful operation of its business."  *Id.*  The court held:

> An employer may reorganize its affairs and take other necessary employment actions in order to manage the impact of compliance with the outcomes produced by a protected activity so long as it does so for legitimate reasons and not in reprisal for the fact of an employee's participation.

*Id.*, citing, *York v. City of Wichita Falls*, 48 F.3d 919, 920-921 (5th Cir. 1995)

Defendants argue that "the recharacterization of the relationship with the Plaintiff

28

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

cannot be construed to be 'retaliation' for the simple reason that Cin-Lan desires merely to give her what she asks for consistent with the law and the general employment policies related to all employees of the club."  (Dkt. 18, pp. 6-7). Defendants have not, however, changed their general practices for all dancers in response to the lawsuit, which might fall within the holding of *Blackie*.  Rather, they have singled out plaintiff for differential treatment, under the guise of giving her what she has requested in this suit.  The problem with defendants' analysis is that plaintiff and *all* other dancers are either employees or they are not.  As plaintiff points out, "putting on an 'independent contractor' label does not take the worker from the protection of the Act." *Rutherford*, 331 U.S. at 729.  Thus, if all dancers are employees and plaintiff is compensated differently from all other dancers (regardless of whether the table dance fees are correctly characterized as "service charges" or "tips,") defendants have taken actions that constitute "discrimination" within the meaning of § 215(a)(3).  Section 215(a)(3) "discrimination" may, but need not be, related to the terms and conditions of employment.  *See, Burlington, supra.*  Here, changing plaintiff's pay structure is clearly so related and thus, constitutes "discrimination."

Defendants argue, however, that there is no "non-economic" retaliation now that they have agreed to withdraw the other objectionable demands (i.e., mopping

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

floors and requiring plaintiff to sign an arbitration and non-competition agreement) Thus, according to defendants, plaintiff is not entitled to any injunctive relief because she only seeks money damages, which is insufficient to sustain a claim for injunctive relief. (Dkt. 18). A "monetary" award under FLSA can either be legal or equitable in nature. *Department of Treasury-I.R.S. v. Federal Labor Relations Authority*, 521 F.3d 1148, 1155 n. 4 (9th Cir. 2008), citing, *Dep't of Army v. Fed. Labor Relations Auth.*, 56 F.3d 273, 276 (D.C. Cir. 1995). A remedy will be considered "equitable if it is an attempt to give the plaintiff what he is entitled to as opposed to a substitute for a consequential loss." *I.R.S. v. FLRA*, 521 F.3d at 1155 n. 4. Moreover, a reduction in pay can be a violation of § 215(a)(3) unless an employer "can prove that employee wages were reduced out of fiscal concerns ... ." *Anderson v. City of Bristol, Tenn.*, 6 F.3d 1168 (6th Cir. 1993), quoting, *Blanton v. Murfreesboro*, 856 F.2d 731 (6th Cir. 1988); *see also, Cahill v. City of New Brunswick*, 99 F.Supp.2d 464 (D. N.J. 2000) (The purpose of the FLSA anti-retaliation provision is to prevent unilateral reductions in pay where such pay reduction is taken in response to the "possibility that plaintiffs' legal claims will succeed."). In *Anderson* and *Blanton*, the pay reductions were instituted against an entire class of employees. Defendants have not offered any evidence that, absent the reduction in plaintiff's compensation, they "could [not]

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

operate within [their] budget." *Anderson*, 6 F.3d at 1171.

In this case, defendants have not only taken actions that will reduce plaintiff's compensation, but have only taken such action against her, not all dancers. Significantly, defendants' restrictive interpretation of § 216(b) undermines its very purpose, which is "to place the employee retaliated against in the same position he would have been in had the retaliation never taken place." *Martinez*, 583 F.Supp. at 1212. Thus, the Court concludes that plaintiff has established a likelihood of success on the merits of whether defendants' actions constituted "discrimination" within the meaning of FLSA's anti-retaliation provision.

      2.     Irreparable Injury, Balancing of Harm, and Harm to the Public

In this case, the remaining three factors, while separate, are related and should be considered together in this balancing test. Several courts have held that "retaliation and the resulting weakened enforcement of federal law can itself be irreparable harm in the context of a preliminary injunction application" and "where a party has retaliated against another party attempting to enforce protected rights, such retaliation is an important factor to consider in determining whether irreparable harm has been established." *Centeno-Bernuy v. Perry*, 302 F.Supp.2d 128 (W.D.N.Y. 2003), citing, *Holt v. Continental Group*, 708 F.2d 87, 91 (2d Cir.

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

1983), cert. denied, 465 U.S. 1030 (1984); *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 938-939 (9th Cir. 1987); *Garcia v. Lawn*, 805 F.2d 1400, 1405-1406 (9th Cir. 1986); *Equal Employment Opportunity Comm'n v. Target Stores, Inc.*, 1984 WL 1071, *2 (D. Minn. 1984); *De Novellis v. Shalala*, 947 F.Supp. 557, 563 (D. Mass. 1996), aff'd, 135 F.3d 58 (1st Cir. 1998).  Thus, the Court will balance this harm, along with the specific harm alleged by defendants.

Defendants suggest that the harm to them far outweighs any harm to plaintiff because she may continue to "run up her potential damages in the event she succeeds on the merits of her employee status claim at trial."  (Dkt. 18, p. 15).  Specifically, if plaintiff turns out to be an "employee" under FLSA and does not report her tip income to the club, "Cin-lan is subject to draconian assessments for the FICA and FUTA taxes that are owed on that unreported tip income."  (Dkt. 18, p. 16).  In crafting an appropriate order, this Court may order plaintiff, on a going-forward basis, to report her tip income to defendants so that they may take the appropriate tax with-holdings and comply with the Internal Revenue Code.  Thus, the potential harm to defendants can be alleviated while the potential harm to the public interest and plaintiff is addressed.

C.    Service Fees Versus Tips.

The parties have spent a considerable amount of time arguing about whether

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

the dance fees charged by defendants are "service charges" (as defendants contend) or "tips" (as plaintiff contends).  The Court is aware that this is the real heart of this lawsuit.  Under the current arrangement with its dancers, defendants charge $20 for a "personal dance."  The dancer collects the "fee," retains $13, and pays $7 to defendants in "rent."  If the dancers are employees under FLSA and if the "fee" is in fact a "tip," then the dancers are entitled to retain the entire $20 and defendants are entitled to nothing.  Defendants offer affidavits from other dancers who perform at their establishment, who all attest that if they are treated as employees and are unable to retain any part of the dance "fees," they will cease performing at defendants' establishment.  (Dkt. 14, p. 19; Ex. D, E, F).  According to defendants, "[i]f this were to occur, then Defendant would suffer immediate and irreparable harm through the utter destruction of its business."  *Id*.  Defendants essentially admit that if all of its dancers choose (or were forced to be) "employees" (as defendants have constructed such a position), they would have no dancers.  It is obvious that defendants' business model is designed to both avoid FLSA and to provide incentives to the dancers to "opt out" of being an employee. Whether this model violates the FLSA is a fact-intensive inquiry that will ultimately have to be determined on summary judgment or at trial.  *See e.g., Reich v. Prima Corp.*, 890 F.Supp. 586 (N.D. Tex. 1995) (The court was only able to

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

determine that a table dance fee "is more closely related to a tip than to a wage" after a bench trial); *see also, Reich v. Circle C*, 998 F.2d at 328 (Defendant's arguments that "tip-out fees" were "stage rental" fees and that dancers were neither employees nor independent contractors, but rather, were "businesswomen renting space, stages, music, dressing rooms, and lights" were rejected.).

In *Reich v. ABC/York-Estes Corp.*, 157 F.R.D. 668 (N.D. Ill. 1994), rev'd in part on other grounds, 64 F.3d 316 (7th Cir. 1995), the court examined the Department of Labor regulations that apply to this inquiry. First, a "tip" is defined as:

> a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity. In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer.

29 C.F.R. § 531.52. And, where an "employer has clearly explained the practice to its employees, tips may satisfy as much as 50% of the employer's minimum wage obligation." *Reich*, 157 F.R.D. at 679, citing, 29 U.S.C. § 203(m); 29 C.F.R. § 531.50; *see also, Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, (S.D.N.Y.

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

2006) (If the banquet service fees were "tips," federal law prohibited defendants

from retaining any portion of them if defendants also relied on the "tip credit" to

satisfy the minimum wage.").  However, labor regulations distinguish a "tip" from

a "service charge":

> A compulsory charge for service, such as 10 percent of
> the amount of the bill, imposed on a customer by an
> employer's establishment, is not a tip and, even if
> distributed by the employer to his employees, cannot be
> counted as a tip received in applying the provisions of
> [29 U.S.C. § 203(m) and (t)].  Similarly, where
> negotiations between a hotel and a customer for banquet
> facilities include amounts for distribution to employees
> of the hotel, the amounts so distributed are not counted
> as tips received.

19 C.F.R. § 531.55(a).  As the *Reich* court pointed out, from the employer's

perspective, the distinction between a tip and a service charge is significant

because, while a tip may be credited against 50% of the employer's minimum

wage liability, a service charge may be used in full to reduce the minimum wage

amounts owed.  *Reich*, 157 F.R.D. at 680, citing 29 C.F.R. § 531.55(b) ("[S]ervice

charges and other similar sums which become part of the employer's gross receipts

are not tips for the purposes of the Act.  However, where such sums are distributed

by the employer to his employees, they may be used in their entirety to satisfy the

monetary requirements of the Act."); *see also, Reich v. ABC/York-Estes Corp.,*

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

1997 WL 264379 (N.D. Ill. 1997) (after remand) ("An employer may offset the full amount of a service charge against its minimum wage liability... ."). Further, a service charge may *not* be credited against unpaid minimum wage obligations unless it "becomes part of the employer's gross receipts." *Reich*, 157 F.R.D. at 680.

Nevertheless, for purposes of plaintiff's motion, the undersigned suggests that a preliminary determination of this dispute is unnecessary. The record has not been sufficiently developed to enable the undersigned to determine whether the dance fees are, in fact, service charges or tips under Department of Labor regulations. The undersigned further suggests that, to preserve the status quo and to avoid undue harm to any party, defendants must continue to pay $13 to plaintiff for every $20 dance fee collected (just as all other dancers are paid); the $13 will be treated as a "tip" under FLSA, and the remaining $7 may be treated as a "service charge" under FLSA. In treating plaintiff as an "employee" under FLSA on a going-forward basis under the preliminary relief recommended herein, defendants may offset plaintiff's tips against their minimum wage obligation under FLSA.[6]

---

[6] Defendants have indicated that similar employees are paid a direct minimum wage of $5.00 per hour, which is rate they must pay plaintiff should the

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the following preliminary relief be granted by the Court:

1.      Defendants must continue to pay $13 to plaintiff for every $20 dance fee collected (just as all other dancers are paid), which $13 will be considered "tip income" to plaintiff and which $7 will be considered a "service charge";

2.      Defendants will pay plaintiff a direct minimum wage of $5 per hour, and they may use plaintiff's tip income to off-set their minimum wage obligation to the extent permitted by FLSA;

3.      Defendants must permit plaintiff to work at their establishment in Lansing, Michigan under substantially the same schedule that she worked before this suit was filed;

3.      Plaintiff must report all of her tip income to defendants on a monthly basis; and

4.      Defendants may take the appropriate tax withholdings from plaintiff's reported tip income, her portions of the dance fees, and any additional wages she is paid.

District Court adopt this Report and Recommendation.

37

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service hereof, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not exceed 20 pages in length unless such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections by motion and order. If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

Date: August 4, 2008

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification to the following attorneys: Caleb L.H. Marker, Hart L. Robinovitch, Bradley J. Shafer, Kevin J. Stoops, Jason J. Thompson, David W. Warren, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Not applicable.

s/James P. Peltier
James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
810-341-7850
pete_peltier@mied.uscourts.gov

Report and Recommendation
Plaintiff's Motion for TRO
*Doe v. Cin-Lan, et al*; No. 08-12719