UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JANE DOE**, individually, and on behalf of all
others similarly situated,

              Plaintiff,                    Case No. 4:08-CV-12719

v.                                Honorable Stephen J. Murphy, III

**CIN-LAN, INC.;**                        Magistrate Judge Michael J. Hluchaniuk
**DÉJÀ VU CONSULTING, INC**.; and
**HARRY V. MOHNEY,**

              Defendants.

# DEFENDANTS DÉJÀ VU CONSULTING, INC.'S AND
# HARRY V. MOHNEY'S MOTION FOR SUMMARY JUDGMENT

      Defendants, Deja Vu Consulting, Inc. ("CONSULTING") and Harry V. Mohney ("MOHNEY"), through their attorney, Edith S. Thomas, for their Motion for Summary Judgment, state:

      1.     On November 11, 2008, Plaintiff, Jane Doe, filed an Amended Complaint and Jury Trial Demand ("Amended Complaint").  *See* **Dkt. No. 38**.

      2.     Plaintiff's Amended Complaint improperly names CONSULTING and MOHNEY as Defendants to her Fair Labor Standards Act and Michigan Wage Law claims even though the indisputable facts establish that neither CONSULTING nor MOHNEY qualify as Plaintiff's "employer," a prerequisite to relief under either statute.

3.      Accordingly, and for the reasons set forth more fully in the attached Brief in Support, Defendants request that the Court grant summary judgment to CONSULTING and MOHNEY on each and every claim that Plaintiff has lodged against them.

4.      Defendants engaged in a conference with Plaintiff's attorney on January 30, 2009, and explained the nature of this motion and its legal basis and requested but did not obtain concurrence in the relief sought.

Respectfully submitted,

By:      /s/Edith A. Thomas
         Edith A. Thomas (P41172)
         Attorney for Defendants, Deja Vu
            Consulting, Inc. and Harry V.
            Mohney
         214 North Ridge Drive, Suite B
         Fallbrook, California 92028
         Tel.:  (888) 349-3940
         Fax:  (760) 728-9518
Dated:  February 2, 2009          Email: edithomas1@aol.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JANE DOE**, individually, and on behalf of all
others similarly situated,

           Plaintiff,

v.

**CIN-LAN, INC.;**
**DÉJÀ VU CONSULTING, INC**.; and
**HARRY V. MOHNEY,**

           Defendants.

Case No. 4:08-CV-12719

Honorable Stephen J. Murphy, III

Magistrate Judge Michael J. Hluchaniuk

**BRIEF IN SUPPORT OF DEFENDANTS**
**DÉJÀ VU CONSULTING, INC.'S AND HARRY V.**
**MOHNEY'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................. i

INDEX OF AUTHORITIES ........................................................................... ii

STATEMENT OF QUESTION PRESENTED ....................................... iv

STATEMENT OF CONTROLLING
  OR MOST APPROPRIATE AUTHORITIES ................................... v

  I.     INTRODUCTION .............................................................. 1

  II.    PLAINTIFF'S CLAIMS AND THEORIES OF LIABILITY ................................. 3

    A. Enterprise Theory ......................................................... 4

    B. Joint Employer Theory of Liability .................................. 4

    C. Control Theory of Liability ........................................... 4

  III.   ARGUMENT ..................................................................... 4

    A.  SUMMARY JUDGMENT STANDARDS ................................ 4

    B.  THE ECONOMIC REALITY TEST CONTROLS THE ISSUE OF LIABILITY 5

    C.  CIN-LAN IS A PROPER AND ADEQUATE DEFENDANT ................................. 11

    D.  DÉJÀ VU CONSULTING, INC. IS NOT A PROPER DEFENDANT ................ 12

    E.  MOHNEY IS NOT A PROPER DEFENDANT ................................. 17

    F.  PLAINTIFF LACKS STANDING TO BRING CLAIMS AGAINST
        CONSULTING, MOHNEY, AND OTHER MICHIGAN NIGHTCLUBS
        LISTED IN THE AMENDED COMPLAINT ................................. 22

    V.     CONCLUSION ............................................................. 23

CERTIFICATE OF SERVICE ................................................................. 24

# INDEX OF AUTHORITIES

## Cases

Allee v. Medrano, 416 U.S. 802, 828-829 (1974) ................................................................. 20, 21
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)........................................................ 5
Bailey v. Patterson, 369 U.S. 31, 32-33 (1962) ........................................................................ 21
Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983)........ 13
Buttars v. Creekside Home Health, Inc., No. 07-0204-E-BLW, 2008
    WL 4411414, at *1 (D.Idaho Sept. 25, 2008)................................................................... 8, 13
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ............................................................... 5
Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 917 (9th Cir. 2003)........................................... 7
Dash v. FirstPlus Home Loan Owner Trust 1996-2, 248 F. Supp. 2d 489,
    504 (M.D.N.C. 2003).............................................................................................................. 21
Dole v. Elliott Travel & Tours, Inc., 842 F.2d 962 (6th Cir. 1991)................................... iv, 8, 16
Donovan v. Agnew, 712 F.2d 1509, 1513 (1st Cir. 1983)..................................................... 2, 10
Donovan v. Brandel, 736 F.2d 1114, 1117, 1119 (6th Cir. 1984) ....................................... 9, 11
Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 14 (2004).......................................... 20
Falk v. Brennan, 414 U.S. 190 (1973) ............................................................................ 7, 11, 12
Fegley v. Higgins, 19 F.3d 1126 (6th Cir. 1994)......................................................................... 8
Finke v. Kirtland Community College Bd. of Trustees, 359 F. Supp. 2d 593
    (E.D. Mich. 2005) .......................................................................................................... iv, 8, 16
Herlihy v. Ply-Gem Indus., Inc., 752 F. Supp. 1282, 1291 (D. Md. 1990) ............................... 21
Jackson v. Resolution GGF Oy, 136 F.3d 1130, 1132 (7th Cir. 1998) ................................ iv, 20
Kidder v. Miller-Davis Co., 455 Mich. 25, 42-46; 564 N.W.2d 872, 880-81 (1997) ........ 9, 13, 17
Kidder v. Miller-Davis Co., 455 Mich. 25; 564 N.W.2d 872 (1997) ........................................... iv
Laird v Capital Cities ABC, Inc., 68 Cal. App. 4th 727 (1990) .................................................. 16
Lehman v. Legg Mason, Inc., 532 F. Supp. 2d 726, 733 (M.D. Pa. 2007)........................... iv, 12
Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992) ................................................. 20
Mantei v. Michigan Public School Employees Retirement System
    and Michigan Public School Employees Retirement Bd., 256 Mich. App. 64, 79;
    663 N.W.2d 486, 494 (2003) .................................................................................................. 9
Manville v. Board of Governors of Wayne State Univ., 85 Mich. App. 628, 631-33;
    272 N.W.2d 162 (1978) .................................................................................................. 13, 17
Marshall v. Davis, 526 F. Supp. 325, 330-31 & n.9 (D. Tenn. 1981) .................................. iv, 7
Martin v. W.E. Monks & Co., 805 F. Supp. 500, 502 ..................................................... iv, 7, 8
Maryland v. Wirtz, 392 U.S. 183, 186 & n.4, 192 (1968)................................................... 7, 16
Miller v. Pacific Shore Funding, 224 F. Supp. 2d 977, 996 (D. Md. 2002) ........................... 9, 21
O'Shea v. Littleton, 414 U.S. 488, 494 (1974)................................................................... 20, 21
Patel v. Wargo, 803 F.2d 632, 636 (11th Cir. 1986) .......................................................... passim
Pierce v. Coleman Trucking, Inc., No. 1:04-CV-0544, 2005 WL 2338822,
    *3 & n.2 (N.D. Ohio Sept. 23, 2005)......................................................................................... 7
Tullous v. Texas Aquaculture Processing Co. LLC, 579 F. Supp. 2d 811, 820 & n.9
    (S.D. Tex. 2008)................................................................................................................. 8, 12

<u>United Food & Commercial Workers Union, Local 751 v. Brown Group, Inc.</u>,
   517 U.S. 544, 550 (1996)..................................................................................... 20
<u>Warth v. Seldin</u>, 422 U.S. 490, 502 (1975)................................................................ 20
<u>Watson v. Graves</u>, 909 F.2d 1549, 1553 (5th Cir. 1990)............................................. 12
<u>Wells v. Firestone Tire and Rubber Co.</u>, 421 Mich. 641, 647-50;
   364 N.W.2d 670, 672-73 (1984) .......................................................... iv, 9, 13, 17

**Statutes**

28 U.S.C. § 1332(d) ............................................................................................. 11, 17
28 U.S.C. § 1927 ......................................................................................................... 11
29 U.S.C. § 201, *et seq.*............................................................................................... 3
29 U.S.C. § 203(d) ............................................................................................. iv, 3, 11
29 U.S.C. § 203(r),(s) .................................................................................................. 6
M.C.L. § 408.382(b),(c)..................................................................................... iv, 3, 15, 17

**Rules**

29 C.F.R. § 779.203 ..................................................................................................... 7
Fed.R.Civ.P.12(f) ......................................................................................................... 1
Fed.R.Civ.P. 56 ........................................................................................................... 5
LR 7.1(c)(2) ............................................................................................................... iv

## <u>STATEMENT OF QUESTION PRESENTED</u>

Whether, in light of the indisputable facts, Defendants Déjà vu Consulting, Inc., and/or Harry V. Mohney are Plaintiff's "employers," as Plaintiff is required to establish a necessary element of liability under the Fair Labor Standards Act and the Michigan Wage Law.

       Defendants answer:       No

       Plaintiff will answer:       Yes

       The Court should answer:       No

## STATEMENT OF CONTROLLING
## OR MOST APPROPRIATE AUTHORITIES

Pursuant to LR 7.1(c)(2), Defendants state that the controlling or most appropriate authorities are 29 U.S.C. § 203(d); M.C.L. § 408.382(b),(c); <u>Patel v. Wargo</u>, 803 F.2d 632 (11th Cir. 1986); <u>Marshall v. Davis</u>, 526 F. Supp. 325 (D. Tenn. 1981); <u>Martin v. W.E. Monks & Co.</u>, 805 F. Supp. 500 (S.D. Ohio 1992); <u>Dole v. Elliott Travel & Tours, Inc.</u>, 842 F.2d 962 (6th Cir. 1991); <u>Finke v. Kirtland Community College Bd. of Trustees</u>, 359 F. Supp. 2d 593 (E.D. Mich. 2005); <u>Wells v. Firestone Tire and Rubber Co.</u>, 421 Mich. 641; 364 N.W.2d 670 (1984); <u>Kidder v. Miller-Davis Co.</u>, 455 Mich. 25; 564 N.W.2d 872 (1997); <u>Lehman v. Legg Mason, Inc.</u>, 532 F. Supp. 2d 726 (M.D. Pa. 2007); <u>Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.</u>, 515 F.3d 1150, 1160 (11th Cir. 2008); <u>Jackson v. Resolution GGF Oy</u>, 136 F.3d 1130 (7th Cir. 1998); <u>Allee v. Medrano</u>, 416 U.S. 802 (1974).

## I.  INTRODUCTION

Plaintiff is an exotic dancer who performed as an entertainer at Defendant Cin-Lan, Inc.'s ("CIN-LAN") adult nightclub business in Lansing, Michigan.  She filed her original complaint against CIN-LAN, alleging that she performed as an exotic dance entertainer at CIN-LAN and that she was misclassified as an independent contractor under the Fair Labor Standards Act ("FLSA") and the Michigan Wage Law ("MWL") rather than being classified as an "employee."  Apparently because CIN-LAN operates under the licensed trade name "Déjà Vu Showgirls," Plaintiff also named Deja Vu Consulting, Inc. ("CONSULTING"). Plaintiff alleges that although she never worked at CONSULTING or had any relationship with CONSULTING, it too was her "employer" because, she contends, it somehow owns, controls, and manages CIN-LAN.[1]  Thereafter, as a transparent attempt to gain a diverse defendant to provide CAFA jurisdiction over State law claims that this Court previously dismissed (Doc. No. 11), Plaintiff amended her Complaint to add Harry V. Mohney ("MOHNEY"), a Nevada resident and employee of CONSULTING, whom Plaintiff alleges also owns, controls, and manages CIN-LAN and/or CONSULTING.[2]

As the facts below establish, CIN-LAN is a viable corporation in good standing, which

---

[1]  Plaintiff also alleges that CONSULTING owns, manages and/or controls other nightclubs doing business under the "Déjà Vu moniker" throughout the nation, including 8 in Michigan which it collectively refers to as the "Michigan Déjà Vu Nightclubs."  Am. Compl. ¶ 14.  Plaintiff has not named these nightclubs as Defendants and their identification in the Amended Complaint appears to be purely anecdotal.  However, Plaintiff's counsel has orally asserted that they somehow consider these other 8 Michigan nightclub entities to be part of their case under a theory unknown to Defendants. *Since the Plaintiff never performed at, or worked at, any of the so-called Déjà Vu nightclubs other than CIN-LAN, she simply has no standing to sue other nightclubs because she has no case or controversy with them.*  While the Plaintiff may continue to assert that these other nightclubs are included in her lawsuit, they are not named as Defendants and, therefore, paragraph 14 is the subject of a separately filed motion to strike pursuant to FRCP 12(f).

[2]  Many of Plaintiff's allegations concerning entities other than CIN-LAN are premised on inadmissible evidence including quotes from newspaper articles, "Wikopedia", etc.  See, e.g., Am. Compl. ¶¶ 14, 17, 24, 25, 26, which are also the subjects of the aforementioned motion to strike.

honors all corporate formalities, and is the only "employer" relevant to this case under the FLSA and MWL, *assuming* arguendo that Plaintiff meets her burden of establishing that she is an "employee." On the other hand, neither CONSULTING nor MOHNEY is, nor can either be, Plaintiff's "employer" because neither meets the criteria for being an "employer" under the FLSA or MWL. Neither CONSULTING nor MOHNEY operate CIN-LAN, which is an individually incorporated entity authorized to use the "Déjà Vu Showgirls" trade name. Moreover, neither CONSULTING nor MOHNEY employs or contracts with entertainers at CIN-LAN (or at any other nightclub). Neither CONSULTING nor MOHNEY is involved in the day-to-day operations of CIN-LAN. Neither shares employees or commingles assets, profits or losses with CIN-LAN. Neither hires, fires, or enters into contracts on behalf of CIN-LAN. In fact, Plaintiff never worked for or had any relationship whatsoever with CONSULTING or MOHNEY. These two Defendants had no connection with Plaintiff's work at CIN-LAN, and there is no legitimate reason to disregard CIN-LAN's indisputable separate legal corporate identity.

While the corporate shield may be disregarded to some extent with respect to the analysis of ***coverage*** under the FLSA, "the shield from personal liability which is one of the major purposes of doing business in a corporate form" should not be lightly disregarded in analyzing ***liability*** under the FLSA. Donovan v. Agnew, 712 F.2d 1509, 1513 (1st Cir. 1983) Patel v. Wargo, 803 F.2d 632, 636 (11th Cir. 1986). There are no facts or laws upon which Plaintiff can base a valid claim against CONSULTING or MOHNEY, and, therefore, they are both entitled to Summary Judgment.

## II.  PLAINTIFF'S CLAIMS AND THEORIES OF LIABILITY

Plaintiff has sued claiming entitlement to unpaid wages from three separate Defendants, CIN-LAN, CONSULTING and MOHNEY, under the FLSA, 29 U.S.C. § 201, *et seq*.  She alleges that each is her employer, as defined in FLSA § 203(d) and MCL § 408.382(c).  (Am. Compl. ("AC") ¶ 11; *see* **Dkt. No. 38**.)

Specifically, Plaintiff alleges that she was "working as an exotic dancer at Deja Vu - Lansing, located at 1000 West Jolly Road, Lansing, Michigan, 48910 starting in approximately June, 2007."  (AC ¶ 6.)  Plaintiff makes no allegation that she was "working as an exotic dancer," or worked in any other capacity, at defendant CONSULTING or for defendant MOHNEY.

Under the FLSA, an employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Under the MCL, an employer means a person, firm, or corporation . . . and a person acting in the interest of the employer, who employs 2 or more employees at any 1 time within a calendar year."  MCL § 408.382(c).  An "employee" is defined by MCL § 408.382(b) as "an individual not less than 16 years of age employed by an employer ***on the premises of the employer or at a fixed site designated by the employer***."  MCL § 408.382(b) (emphasis added).  Plaintiff has not alleged, and cannot show, that CONSULTING or MOHNEY had any input as to the location of her work or caused her to work on their "premises."  Plaintiff appears to posit three theories on which she seeks to hold CONSULTING and MOHNEY liable for the injuries she claims arose out of her performances at CIN-LAN.

**A.  Enterprise Theory**

Plaintiff seems to allege that CONSULTING and MOHNEY are *liable* under an FLSA enterprise theory. (AC ¶¶ 30-32.)  Allegations of a single enterprise do not, however, provide a basis for assessing *liability* for violations of the FLSA against any person or entity that is not the "employer" of the plaintiff.  *See*, *e.g.*, *Patel*, 803 F.2d at 635, 637.

**B.  Joint Employer Theory of Liability**

Plaintiff appears to allege that CONSULTING and MOHNEY are *liable* for alleged FLSA violations by CIN-LAN on a joint employer theory.  (AC ¶ 37.)  However, the FLSA does not impose *liability* upon one employer for another employer's employees, unless both joint employers maintain an "employer-employee relationship" with the plaintiff.  Patel, 803 F.2d at 636-37.

**C.  Control Theory of Liability**

Plaintiff alleges, based on information and belief, that CONSULTING maintains ownership, recruitment, management, control and/or operational interests in defendant CIN-LAN where she performed.  (AC ¶ 13.)  Plaintiff alleges that MOHNEY owns, manages and controls CONSULTING and/or CIN-LAN and that he is "jointly and severally liable" for damages under the FLSA.  (AC ¶¶ 16, 29)

Not one of these theories is viable as a matter of fact and law to establish either MOHNEY or CONSULTING is Plaintiff's employer.

**III.   ARGUMENT**

**A.  SUMMARY JUDGMENT STANDARDS**

Summary judgment is properly granted when no genuine and disputed issues of material

fact remain, and, when viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed.R.Civ.P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

The moving party bears the burden of showing that there is no material factual dispute.  A fact is material if it is relevant to an element of a claim and its existence might affect the outcome of the suit.  Here, the material facts concern the status of moving parties as Plaintiff's employer under the FLSA and MWL, facts for which Plaintiff bears the burden of proof at trial.

Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case."  <u>Id</u>., 477 U.S. at 325.   Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Id</u>., 477 U.S. at 322.  As moving parties' evidence shows, Plaintiff will not be able to meet her burden of establishing employer status as to CONSULTING or MOHNEY, an element essential to her claims.  The bald assertions of ultimate fact in her Amended Complaint are not supported by "specific facts showing that there is a genuine issue for trial."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

**B.  THE ECONOMIC REALITY TEST CONTROLS THE ISSUE OF LIABILITY**

While Plaintiff attempts to impose liability upon Defendants CONSULTING and MOHNEY through theories of enterprise, joint employment, and control, the true test of liability under both the FLSA and MWL is the economic reality test.  The other theories are wholly inapplicable to the issue of liability, depend at base upon the economic reality test, or have been

subsumed within the economic reality test.

The "enterprise theory" is inapplicable to the issue of liability under the FLSA.  To the extent that Plaintiff seeks to impose *liability* upon any Defendant through the enterprise theory, Plaintiff's efforts are futile.  The basis of the enterprise theory appears to be the reference to "enterprise" in various sections of the FLSA.  *See*, *e.g.*, 29 U.S.C. § 203(r),(s) (defining "enterprise" and "enterprise engaged in commerce or in the production of goods for commerce"); Patel, 803 F.2d at 635-36 (addressing the scope of enterprise theory).  As noted above, the Eleventh Circuit has clearly explained that entities comprising an "enterprise" under the FLSA may be subject to *coverage* under the FLSA, which depends in part upon meeting an annual dollar volume test, but the enterprise theory has no bearing upon whether a defendant is jointly, severally, or otherwise *liable* under the FLSA.  Patel, 803 F.2d at 635, 637.  The court considered the plain language and legislative history of the FLSA before concluding that "we hold that the enterprise analysis is different from the analysis of who is liable under the FLSA.  The finding of an enterprise is relevant only to the issue of coverage. Liability is based on the existence of an employer-employee relationship."  Id. at 635-37.

The Patel court provided a useful illustration: a small snack bar located within a large bus terminal may be part of an "enterprise" with the bus terminal for purposes of *coverage* under FLSA even though the entities are separate; however, the small snack bar is not *liable* to the many employees of the large bus terminal for potential FLSA violations committed by the bus terminal.  See Id. at 636-37 (discussing two illustrations).  Likewise, even if CIN-LAN were part of a larger FLSA "enterprise" with separate entities or individuals, such as CONSULTING or MOHNEY, an attachment of liability to CIN-LAN for treatment of its alleged "employee" does not extend

6

liability to other members of the alleged enterprise, such as CONSULTING and MOHNEY.

The Patel court is not alone in its conclusion that the enterprise theory is a concept related purely to the issue of FLSA *coverage*.  In Maryland v. Wirtz, 392 U.S. 183, 186 & n.4, 192 (1968), the Supreme Court addressed the enterprise theory as the "'enterprise' definition of coverage" in the context of 29 U.S.C. §§ 206, 207, and 203(s).  The Court explained that the term "enterprise" is a device by which "Congress changed the basis of *employee coverage*" under the FLSA.  *Id*. at 186 (emphasis added); see also Marshall v. Davis, 526 F. Supp. 325, 330-31 & n.9 (D. Tenn. 1981) (citing Wirtz and clarifying that "enterprise coverage" involves "the reach of the Fair Labor Standards Act").  The Southern District of Ohio relied upon another Supreme Court decision to conclude that "the determination of an individual as an 'employer' addresses liability, while determination of an 'enterprise' is made to invoke FLSA coverage."  Martin v. W.E. Monks & Co., 805 F. Supp. 500, 502 (S.D. Ohio 1992) (citing Falk v. Brennan, 414 U.S. 190 (1973), and Patel, 803 F.2d 632).  Thus, the enterprise theory does not create liability for any Defendant.

Moreover, "enterprise theory" must not be blurred with the concept of joint liability.  In Martin, the court explained that the enterprise analysis expands the scope of the FLSA, but a defendant's "joint liability" is "established by the 'employer' analysis."  Martin, 805 F. Supp. at 502.  In an unpublished FLSA decision, the Northern District of Ohio cautioned against "blurring" the "distinct concepts" of "enterprise" and "joint employers."  Pierce v. Coleman Trucking, Inc., No. 1:04-CV-0544, 2005 WL 2338822, *3 & n.2 (N.D. Ohio Sept. 23, 2005) (attached as **Exhibit 5**) (quoting Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 917 (9th Cir. 2003) ("Whether two companies constitute a single enterprise for FLSA coverage and whether they are liable as joint employers under § 207 are technically separate issues."); and citing 29 C.F.R. § 779.203

(providing "distinction between 'enterprise,' 'establishment,' and 'employer.'")).  Thus, it is clear "enterprise theory" is not a means of establishing liability under the FLSA, nor does it provide a basis for joint liability under the FLSA.

Indeed, the "joint employer" theory of liability actually depends upon whether ***both*** "joint" employers meet the definition of "employer" under the economic reality test.  In <u>Dole v. Elliott Travel & Tours, Inc.</u>, 842 F.2d 962 (6th Cir. 1991), the Sixth Circuit addressed the question of whether, under the FLSA, a corporate officer was a jointly liable employer along with the employing corporation and held that "'economic reality' controls" whether the officer was an "employer."  <u>Id</u>. at 965-66.  The Sixth Circuit employed the economic reality test in <u>Fegley v. Higgins</u>, 19 F.3d 1126 (6th Cir. 1994), to decide whether a corporate officer qualified as an "employer" so as to become jointly liable with the corporate employer.  <u>Id</u>. at 1131-32.  This Court followed the Sixth Circuit in <u>Finke v. Kirtland Community College Bd. of Trustees</u>, 359 F. Supp. 2d 593 (E.D. Mich. 2005), and held that a professor's status as an "employer" under the economic reality test controlled whether the professor was jointly liable under the FLSA along with the university.  <u>Id</u>. at 597-99.

Various federal cases are similarly persuasive and confirm that "joint liability" simply reflects that multiple FLSA employers may exist, but each must meet the definition of an "employer" under the economic reality test.  <u>See</u>, <u>e.g.</u>, <u>Martin</u>, 805 F. Supp. at 501-02 (applying economic reality test to determine whether corporate officer was also an "employer" and jointly liable); <u>Tullous v. Texas Aquaculture Processing Co. LLC</u>, 579 F. Supp. 2d 811, 820 & n.9 (S.D. Tex. 2008) (applying economic reality test to determine whether separate entities were both "employers" and jointly liable); <u>Buttars v. Creekside Home Health, Inc.</u>, No. 07-0204-E-BLW,

2008 WL 4411414, at *1 (D. Idaho Sept. 25, 2008) (attached as **Exhibit 6**) (same).  Likewise, Michigan law holds that where an entity or individual is alleged to be a "dual" or "coemployer," the economic reality test controls.  See Wells v. Firestone Tire and Rubber Co., 421 Mich. 641, 647-50; 364 N.W.2d 670, 672-73 (1984); Kidder v. Miller-Davis Co., 455 Mich. 25, 42-46; 564 N.W.2d 872, 880-81 (1997).

Furthermore, the economic reality test subsumes any "control" test of liability.  The Sixth Circuit includes as an element of the economic reality test the "degree of the alleged employer's right to control the manner in which the work is performed."  Donovan v. Brandel, 736 F.2d 1114, 1117, 1119 (6th Cir. 1984).[3]  Similarly, Michigan courts have explicitly stated that control is only one factor in the economic reality test used to determine an employee-employer relationship.  See Wells, 421 Mich. at 648; 364 N.W.2d at 673 (holding that "control is a factor" among several others in the economic reality test and "assigning primacy to no single one"); Kidder, 455 Mich. at 37; 564 N.W.2d at 877 (holding that the economic reality test embraces "factors beyond the control element"); Mantei v. Michigan Public School Employees Retirement System and Michigan Public School Employees Retirement Bd., 256 Mich. App. 64, 79; 663 N.W.2d 486, 494 (2003) (holding that the element of control has been "abandoned as an exclusive factor" in favor of the economic reality test).[4]  Consequently, the economic reality test controls whether

---

3 The Brandel court listed six factors relevant to the economic reality test:
> "1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity to profit or loss, depending upon his skill; …5) the degree of the alleged employer's right to control the manner in which the work is performed"; and 6) "whether the service rendered is an integral part of the alleged employer's  business."

Id., 736 F.2d at 1117.

4 The Michigan "economic-reality test considers four basic factors: (1) control of a worker's duties, (2) payment of wages, (3) right to hire, fire, and discipline, and (4) performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal."  Mantei,  256 Mich. App. At 78; 663 .W.2d at 494.

CONSULTING or

MOHNEY meet the definition of "employer" relative to Plaintiff and, therefore, whether either has any liability under the FLSA or MWL.

### C.  CIN-LAN IS A PROPER AND ADEQUATE DEFENDANT

CIN-LAN operates an adult entertainment facility in Lansing, Michigan under the trade name "Déjà Vu Showgirls."  Due to unique licensing and zoning not present at other venues, CIN-LAN can lawfully permit adult-oriented (nude and semi-nude) entertainment to take place on its premises.  It generally contracts, through a Dancer Performer Lease, with entertainers who seek to use its licensed premises to perform such entertainment.

Plaintiff alleges she performed at CIN-LAN since June 2007. (AC ¶ 6.)  Plaintiff's allegations indicate that FLSA coverage is met entirely by CIN-LAN because CIN-LAN, the only entity at which she allegedly entertained, is a nightclub engaged in interstate commerce and has gross revenues exceeding $500,000 per annum.  (AC ¶ 30; 29 U.S.C. § 203(s)(1)(A).)

Aside from being the entity at which Plaintiff performed, CIN-LAN is a viable, stand-alone corporation which complies with all corporate formalities.  CIN-LAN operates its business independently.  CIN-LAN maintains its own facility, management, staff, payroll, bank accounts, and pays its own business expenses, including taxes.  CIN-LAN does not share its workers or commingle its monies with any other entity.  While the corporate shield may be disregarded with respect to the analysis of coverage under the FLSA, "the shield from personal liability which is one of the major purposes of doing business in a corporate form" should not be lightly disregarded in analyzing liability under the FLSA.  <u>Agnew</u>, 712 F.2d at 1513; <u>Patel</u>, 803 F.2d at 636.

No legitimate purpose is served by naming CONSULTING as a defendant or disregarding

its or CIN LAN's corporate form, nor have Plaintiffs alleged any legitimate basis for doing so. Likewise, no legitimate purpose is served by disregarding CIN-LAN's corporate form to include MOHNEY, nor have Plaintiffs alleged any legitimate basis for doing so.  It appears that naming MOHNEY was solely for the purpose of meeting the minimal diversity jurisdiction criteria under the Class Action Fairness Act ("CAFA", 28 U.S.C. § 1332(d)), in an effort to reinstate the state law claims previously dismissed by this Court. (Doc. No. 11.)

CIN-LAN is the only proper party to respond to Plaintiff's FLSA and MWL claims. Indeed, the inclusion of these other named defendants suggests that Plaintiff may be unreasonably and vexatiously multiplying this proceeding, in contravention of 28 U.S.C. § 1927.

Summary judgment in favor of MOHNEY and CONSULTING is appropriate because there is no genuine dispute of material fact as to their status as non-employers of Plaintiff, an element essential to Plaintiff's FLSA and MWL claims.

### D.  DÉJÀ VU CONSULTING, INC. IS NOT A PROPER DEFENDANT

Under the FLSA, an "employer" may include "any person acting directly or indirectly in the interest of an employer in relation to an employee."   29 U.S.C. § 203(d).   The FLSA contemplates that there may be simultaneous employers who may be responsible for compliance with the FLSA.  Falk, 414 U.S. at 195.  Whether a given party is an employer within the meaning of the FLSA is a legal determination.  Patel, 803 F.2d at 634; Brandel, 736 F.2d at 1116 ("[T]he determination of whether a particular factual setting gives rise to coverage under the FLSA is a matter of law.").

Both Federal and Michigan courts have developed tests within the economic reality test to determine whether a separate entity or parent company may be deemed an "employer" of another

entity's "employee."[5]  Defendants recognize the Middle District of Pennsylvania recently cited the Supreme Court for the proposition that a parent company may be liable as an FLSA employer for the acts of a subsidiary company "when the parent substantially controls the terms and conditions of employment at its subsidiary on a regular basis," and the court ordered limited discovery to resolve the issue.  Lehman v. Legg Mason, Inc., 532 F. Supp. 2d 726, 733 (M.D. Pa. 2007) (citing Falk, 414 U.S. at 195).  In Falk, the Supreme Court addressed an FLSA claim where one entity, D & F, performed all of the leasing, maintenance, and operating functions, including hiring and daily supervision of operation and maintenance employees for various apartment complexes, on behalf of the owners, which were entirely separate entities.  Falk, 414 U.S. at 192-93.  The Court held that D & F was liable under the FLSA to the employees of the apartment owners because of "the extent of D & F's managerial responsibilities at each of the buildings, which gave it substantial control of the terms and conditions of the work of these employees."  Id. at 195.

In Tullous, the Southern District of Texas applied a Fifth Circuit modified economic reality test for determining whether one entity, ProSource, was also the "employer" of Texas Aquaculture's employees.  Id., 579 F. Supp. 2d at 820 (citing Watson v. Graves, 909 F.2d 1549, 1553 (5th Cir. 1990)).  The Fifth Circuit factors included whether the alleged employer "(1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records."  Id.  The Tullous court held that ProSource was an employer because a written agreement permitted ProSource to hire, fire, and discipline the employees of Texas

---

5 This is a separate question from the issue of whether a worker qualifies as an independent contractor or an employee.  Assuming that the worker is deemed an "employee," the question remains whether the worker is an employee of all or only some of the defendants.

Aquaculture, and the employees would remain employed with ProSource even if fired by Texas Aquaculture.  Id.  The Ninth Circuit developed a similar economic reality test in Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983), that has been applied in distinguishing between the employees of a parent corporation and its subsidiary.  Buttars, 2008 WL 4411414, at *1 (**Exhibit 6**) (citing Bonnette).

Under Michigan law, a separate entity is considered a dual employer under the MWL based on factors such as "control, payment of wages, hiring, firing, the maintenance of discipline, and common objective," with primacy afforded to no single factor.  Kidder, 455 Mich. at 42; 564 N.W.2d at 880; Wells, 421 Mich. at 648; 364 N.W.2d at 673; Manville v. Board of Governors of Wayne State Univ., 85 Mich. App. 628, 631-33; 272 N.W.2d 162 (1978).

Here, the indisputable facts establish that CONSULTING does not meet any permutation of the economic reality test with regard to Plaintiff's employment.  As discussed below, CONSULTING did not provide regular control of the terms and conditions of Plaintiff's work at CIN-LAN or engage in the hiring, firing, and disciplining of Plaintiff.  Nor did CONSULTING establish Plaintiff's schedule, control her rate and method of pay, or maintain her "employment" files.

CONSULTING is a formally established and maintained Michigan Corporation with its principal place of business in Lansing, Michigan.[6]  (Decl. St. John, ¶ 5, Articles of Incorporation, **Exhibit 2**.)  CONSULTING owns intellectual property rights associated with several registered trademarks, service marks and trade names, including of relevance here, the trade name "Deja Vu Showgirls."  (Decl. St. John, ¶ 6, Federal Trademark Registration.)  CONSULTING licenses its

---

[6] CONSULTING also has two small business offices in California – in San Diego and North Hollywood,

trade names to qualifying nightclubs throughout the United States; CIN-LAN currently holds authority to use CONSULTING's "Déjà Vu Showgirls" trade name. (Decl. St. John ¶ 6.)

In addition to its principal business of securing, owning, maintaining and licensing valuable intellectual property rights, CONSULTING is in the business of providing consulting services to those nightclubs which are licensed to use its registered marks.  Broadly described, those consulting services generally include giving advice concerning sensitive adult zoning, licensing and regulatory issues with which CONSULTING has particularized expertise; as well as offering advice on construction and re-modeling designs, suggesting business procedures and promotions, providing advertising advice and services, as well as web site participation and support and negotiating isolated national product contracts (i.e., cola).  CONSULTING also sells to its licensees trademarked Déjà Vu "logo" items, including, for example, cups, hats, T-shirts, glasses, napkins and videos.  (Decl. St. John, ¶ 7.)

CONSULTING's  President, Chief Executive Officer, and sole director is Jim St. John, who has held this position for over a decade. (Decl. St. John, ¶ 2.)  St. John has no day-to-day responsibilities at CIN-LAN; no authority to hire, fire or discipline CIN-LAN employees; no authority to enter into business contracts on behalf of CIN-LAN; no authority to contract with CIN-LAN's entertainers or to set their schedules or compensation.  (Decl. St. John, ¶ 14.)

CONSULTING is a corporation in good standing; it honors corporate formalities and engages in no conduct to warrant disregarding its corporate form. It maintains its own offices, employees, payroll, books and records, bank accounts and files its own tax returns. (Decl. St. John, ¶ 9.)  It does not commingle funds or assets with nightclubs, nor does it share employees. (Decl.

---

where it has an advertising and consulting staff.  (Decl. St. John, ¶ 8.)

St. John, ¶ 11.)  CONSULTING does not own nightclubs in Michigan, nor does it "manage" nightclubs.   (Decl. St. John, ¶ 10.)   CONSULTING is not a "parent" of CIN-LAN. CONSULTING does not have offices at CIN-LAN, hire or fire CIN-LAN employees, pay or contribute to CIN-LAN'S payroll, enter into contracts on behalf of CIN-LAN, or control the day-to-day operations of CIN-LAN.  (Decl. St. John, ¶¶ 15-22.)

During none of the times and places alleged in Plaintiff's Amended Complaint did CONSULTING do business as a "nightclub."  (Decl. St. John, ¶ 10.)  CONSULTING does not operate nightclubs; moreover, it does not hire, employ, contract with, lease space to, or have business relationships with exotic dancers who perform at nightclubs.  (Decl. St. John, ¶ 10.)  It does not have any right to nor does it hire, contract with, terminate or discharge exotic dancers, and it does not collect rent or any other type of monies from exotic dancers.  (Decl. St. John, ¶¶ 20-21.) Nor did Plaintiff, or for that matter any CIN-LAN dancer work on the premises of CONSULTING or at a "fixed site designated" by CONSULTING.  See M.C.L. § 408.382(b) (defining MWL employee).  Moreover, the Dancer Performance Lease utilized by CIN-LAN is a contract between CIN-LAN and each individual performer.  CONSULTING is not a party to any of these contracts. (Decl. St. John, ¶ 21; see, e.g., Dancer Performance Lease, **Exhibit 4**.)

There is no merit to Plaintiff's claim that CONSULTING was her "employer."  (Decl. St. John, ¶ 4.)  Since CONSULTING is not a "nightclub" and did not hire, employ, contract with, lease space to, or otherwise have any individuals working for it as exotic dancers (including Plaintiff), it cannot be liable for any violation of the FLSA or the MWL with regard to the working circumstances of Plaintiff exotic dancers.  Only an "employer" can be liable for violation of employee rights under the FLSA and MWL.  Under no circumstances can CONSULTING qualify

16

as an "employer" of any of any individual in the proposed class of exotic dancers.  See, e.g., Laird v Capital Cities ABC, Inc., 68 Cal. App. 4th 727 (1990) (plaintiff worker unable to meet the heavy burden that a corporate entity separate from that at which she worked was her "employer").

CONSULTING is entitled to summary judgment based on the indisputable facts that it was not, and cannot be found to be, Plaintiff's "employer" either under the FLSA or MWL.

### E.  MOHNEY IS NOT A PROPER DEFENDANT

Defendant Mohney is not Plaintiff's "employer" under the FLSA and MWL.  The Sixth Circuit has held the FLSA is applicable to supervisors, corporate officers, and owners as "employers" under the economic reality test, only when the individual exercises "operational control of significant aspects of the corporation's day to day functions."  Dole, 842 F.2d at 966. By way of example, the Dole court found the corporate officer to be an "employer" based on his position as chief corporate officer, co-ownership of the corporation, day-to-day control of the operations, and control over employee salaries.  Id.  Following Dole, this Court held that a supervisor was an "employer" where, although he did not share ownership of the corporate employer, the supervisor hired the worker, supervised the worker, set the worker's wages, controlled the conditions of employment, authorized any off-site work, and approved the worker's time sheets.  Finke, 359 F. Supp. 2d at 598-99.

The Eleventh Circuit has enunciated a similar test.  An individual employer "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee."  Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2008) (citing Patel, 803 F.2d 632).  Significantly, the Eleventh Circuit provided the added clarification that "unexercised authority is insufficient to establish liability as an employer."  Id. at

17

1161 (citing <u>Patel</u>, 803 F.2d at 638; <u>Wirtz v. Pure Ice Co.</u>, 322 F.2d 259, 262 (8th Cir. 1963)).

As noted above, under Michigan law, a dual employer or coemployer determination is based on factors such as "control, payment of wages, hiring, firing, the maintenance of discipline, and common objective," with primacy afforded to no single factor.  Kidder, 455 Mich. at 42; 564 N.W.2d at 880; Wells, 421 Mich. at 648; 364 N.W.2d at 673; Manville, 85 Mich. App. at 631-33; 272 N.W.2d 162.  However, an MWL employer is limited to a person who annually "employs 2 or more employees," with "employee" defined in part as someone working "on the premises of the employer or at a fixed site designated by the employer."  M.C.L. § 408.382(b),(c).

MOHNEY was never a direct employer of Plaintiff, or those on whose behalf she wants to bring this action.  Neither was MOHNEY Plaintiff's indirect employer based on his alleged control of the co-defendant corporate entities CIN-LAN and CONSULTING.  Nor did any CIN-LAN dancer work on MOHNEY's premises or at a site designated by MOHNEY.

MOHNEY is a 65 year old individual and a resident of Las Vegas, Nevada. (Decl. Mohney, ¶ 5, **Exhibit 3**.)   As noted above (III.B.), it appears MOHNEY is named as a defendant solely for the purpose of diversity jurisdiction under CAFA (28 U.S.C. § 1332(d)), and to obtain reinstatement of Plaintiff's previously dismissed state law claims.

For many decades MOHNEY has been known for his wide involvement in various aspects of the adult entertainment industry.  For the past two decades he has been closely associated with the adult nightclub industry which includes nightclubs nationwide which operate under the "Déjà Vu Showgirls" trade name.  With his long history of adult entertainment experience, MOHNEY has accrued considerable expertise in matters related to the industry.  His expertise includes analysis of demographics as it relates to the opening of new adult entertainment businesses, and he has been instrumental in identifying sites that comply with local zoning laws that restrict the

location of adult entertainment businesses.  He is knowledgeable about the factors involved in the design and construction of facilities intended to house adult entertainment businesses, such as bookstores, theaters, nightclubs, boutiques, or erotic museums.  His creative skills include the design of trade names, trademarks, service marks, and logos for businesses that are engaged in the whole spectrum of activities identified as adult entertainment.  His knowledge of the adult entertainment services market enables him to offer unique insight and suggestions as to effective advertising and promotion of various adult entertainment businesses.  (Decl. Mohney, ¶¶ 6-8.)

Plaintiff seeks to capitalize on and leverage MOHNEY's personal accomplishments, extensive involvement in the adult industry, and broad nightclub experience to her advantage by claiming MOHNEY as her "employer."  Plaintiff has never performed as an exotic dancer for MOHNEY, nor otherwise provided any services to him as an employee. (Decl. Mohney, ¶ 4.)

MOHNEY is an individual who honors corporate formalities.  He does not personally receive monies from CIN-LAN.  He receives monies from CONSULTING because he is an employee of CONSULTING.

### 1.    MOHNEY'S RELATIONSHIP TO DEFENDANT CONSULTING

CONSULTING is a Michigan corporation in good standing that honors corporate formalities, as does CIN-LAN.  There is no fact, nor has the plaintiff alleged one, that would support disregarding these corporate formalities to hold MOHNEY personally liable for Plaintiff's claims.

MOHNEY identifies himself as a consultant to the adult entertainment industry because of his vast knowledge of all aspects of such businesses.  He performs these CONSULTING services as an employee of CONSULTING from his primary office in Nevada. (Decl. Mohney, ¶ 9.)

MOHNEY is not a shareholder, officer or director of CONSULTING. (Decl. Mohney, ¶ 10.) MOHNEY does not operate CONSULTING or control its business or day-to-day operations. (Decl. Mohney, ¶ 11.)  MOHNEY is not involved in the management of CONSULTING or its day-to-day business affairs.  (Decl. Mohney, ¶ 5.)  MOHNEY does not make financial decisions on behalf of CONSULTING; he does not control staffing or contracting decisions at CONSULTING. (Decl. Mohney, ¶ 12.)

## 2.    MOHNEY'S RELATIONSHIP TO DEFENDANT CIN-LAN

CIN-LAN is an established, viable Michigan corporation.  MOHNEY is not an employee of CIN-LAN, nor an officer or director. (Decl. Mohney, ¶ 13.)  MOHNEY does not operate CIN-LAN or control its business operations. MOHNEY is not involved in the management of CIN-LAN's day-to-day business affairs.  MOHNEY does not make financial decisions on behalf of CIN-LAN.  He does not make staffing decisions for CIN-LAN; he does not hire, fire, or discipline CIN-LAN employees; he does not contract with entertainers for their entertainment services at CIN-LAN; he does not schedule work shifts or set working hours; and he does not set compensation schedules.  (Decl. Mohney, ¶¶ 12-18.)

This evidence establishes that MOHNEY is not now, and was not at the times alleged by Plaintiff, involved in the business operations of either CONSULTING or CIN-LAN such that he could be considered Plaintiff's "employer."  The economic reality presented by these facts shows that MOHNEY was not an employer within the meaning of the FLSA or MWL, and he is not susceptible to personal liability for CIN-LAN's alleged failure to comply with the FLSA. Consequently, MOHNEY is entitled to summary judgment.

### F. PLAINTIFF LACKS STANDING TO BRING CLAIMS AGAINST CONSULTING, MOHNEY, AND OTHER MICHIGAN NIGHTCLUBS LISTED IN THE AMENDED COMPLAINT.

Plaintiff lacks standing to sue CONSULTING, MOHNEY, or any other nightclub presently listed in her Amended Complaint that was not her "employer" under the FLSA and MWL.  (See AC ¶ 14.)  "Standing cannot be acquired through the back door of a class action." Allee v. Medrano, 416 U.S. 802, 828-829 (1974).  To establish a case or controversy under Article III of the U. S. Constitution, a plaintiff must show (1) an injury in fact which is concrete and not conjectural; (2) a causal connection between the injury and defendant's conduct or omissions; and (3) a likelihood that the injury will be "redressed by a favorable decision."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992); United Food & Commercial Workers Union, Local 751 v. Brown Group, Inc., 517 U.S. 544, 550 (1996).  In addition, a claim must be for injury to a plaintiff's own legal rights and interests, rather than the legal rights or interests of third parties. See Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 14 (2004).

The fact that a case is brought as a class action does not change the basic requirements regarding a plaintiff's standing to sue.  Plaintiff must plead and show that she personally has been injured by each defendant.  As set forth in the United States Supreme Court case of O'Shea v. Littleton, 414 U.S. 488, 494 (1974): "[I]f none of the named plaintiffs purporting to represent a class establishes a requisite case or controversy with the defendant, none may seek relief on behalf of herself or himself or any other member of the class."  Moreover, the named plaintiffs in a multi-defendant class action must establish that they have been injured by *each and every defendant*.  See, e.g., Jackson v. Resolution GGF Oy, 136 F.3d 1130, 1132 (7th Cir. 1998) (citing Warth v. Seldin, 422 U.S. 490, 502 (1975)); Dash v. FirstPlus Home Loan Owner Trust 1996-2,

248 F. Supp. 2d 489, 504 (M.D.N.C. 2003) (citing Herlihy v. Ply-Gem Indus., Inc., 752 F. Supp.

1282, 1291 (D. Md. 1990)); Miller v. Pacific Shore Funding, 224 F. Supp. 2d 977, 996 (D. Md.

2002). "[A plaintiff] cannot represent a class of whom they are not a part." Bailey v. Patterson,

369 U.S. 31, 32-33 (1962).

     In short, "a named plaintiff cannot acquire standing to sue by bringing his action on behalf

of others who have suffered injury which would have afforded them standing had they been named

plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not

share. Standing cannot be acquired through the back door of a class action." Allee, 416 U.S. at

828-829 (citing O'Shea, 414 U.S. at 92-95).

     As fully discussed in the previous sections of this brief, Plaintiff cannot sustain an FLSA

or MWL claim against any entity or individual who was not her "employer." Consequently, to the

extent that this Court finds that Plaintiff was not employed by one or more of the Defendants,

Plaintiff and the putative class are without any standing to pursue claims against such Defendants.

## V.    CONCLUSION

     There are no material facts in dispute. Defendants CONSULTING and MOHNEY are

entitled to summary judgment because they are not, and cannot be, Plaintiff's "employer" under

either the FLSA or MWL.

Respectfully submitted,

Dated: February 2, 2009        By:    s/Edith A. Thomas_____
                                Edith A. Thomas (P41172)
                                Attorney for Defendants
                                214 North Ridge Drive, Suite B
                                Fallbrook, California 92028
                                Tel.: (888) 349-3940
                                Fax: (760) 728-9518
Z:\Staff\Steiniger, Valerie\Wjp\Cin-Lan\BIS D'S SJ Mot 2.doc        Email: edithomas1@aol.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 2, 2009, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to the

following: Walter J. Piszczatowski, Jason J. Thompson, Kevin J. Stoops, and Hart L. Robinovitch.

By:   /s/Edith A. Thomas
Edith A. Thomas (P41172)
Attorney for Defendants, Deja Vu
  Consulting, Inc. and Harry V.
  Mohney
214 North Ridge Drive, Suite B
Fallbrook, California 92028
Tel.: (888) 349-3940
Fax: (760) 728-9518
Email: edithomas1@aol.com