**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **JANE DOE**, individually, and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>**CIN-LAN, INC.**;<br>**DÉJÀ VU CONSULTING, INC.**; and<br>**HARRY V. MOHNEY,**<br><br>      Defendants. | Case No. 2:08-CV-12719<br><br>Honorable Stephen J. Murphy, III<br><br>Magistrate Judge Michael J. Hluchaniuk |

**REPLY BRIEF OF DEFENDANT DEJA VU CONSULTING, INC.**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**CERTIFICATE OF SERVICE**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. REPLY TO PLAINTIFF'S STATEMENT OF FACTS ....................................................... 2

 A. PLAINTIFF CITES NO "SPECIFIC FACTS" SHOWING CONSULTING DETERMINED PLAINTIFF'S OR OTHER DANCERS' STATUS AS AN INDEPENDENT CONTRACTOR ... 2

 B. PLAINTIFF CITES NO "SPECIFIC FACTS" SHOWING CONSULTING HAS BEEN DELEGATED CIN-LAN'S SENIOR MANAGEMENT FUNCTION ..................................... 3

 C. PLAINTIFF CITES NO "SPECIFIC FACTS" SHOWING THAT CONSULTING HAS THE ABILITY TO HIRE AND FIRE CIN-LAN'S EMPLOYEES OR DANCERS ......................... 5

III. LAW AND ARGUMENT .................................................................................................... 6

 A. PLAINTIFF HAS MISSTATED THE APPLICABLE LEGAL TEST ..................................... 6

 B. UNDER THE CORRECT LEGAL TEST, PLAINTIFF MUST SHOW, BUT CANNOT, THAT CONSULTING DETERMINED SALARIES AND WAGES FOR CIN-LAN ................ 8

IV. CONCLUSION................................................................................................................... 10

5954344.1 33004/130338

# **INDEX OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ................................................................................................................................ 1

*Beck v. Boce Group, L.C.*, 391 F.Supp.2d 1183 (S.D. Fla. 2005) ............................................ 4

*Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) ..... 8

*Carter v. Dutchess Community College*, 735 F.2d 8 (2nd Cir. 1984) ....................................... 8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ......... 1

*Dole v. Elliott Travel*, 942 F.2d 962 (6th Cir. 1991) ................................................................. 7

*Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir. 1984) ....................................................... 9

*Donovan v. Janitorial Services, Inc.*, 672 F.2d 528 (5th Cir. 1982) .......................................... 9

*Donovan v. Tavern Talent and Placements, Inc.*, 1986 U.S. Dist. LEXIS 20955 (D. Colo. 1986) ................................................................................................................................ 9

*Falk v. Brennan*, 414 U.S. 190 (1973) ...................................................................................... 6

*Finke v. Kirtland Community College*, 359 F.Supp.2d 593, 598 (E.D. Mich. 2005) ............... 7

*Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28 (1961) ....................................... 8

*Mendez v. Brady*, 618 F.Supp. 579, 582-583 (W.D. Mich. 1985) ......................................... 10

*Reich v. Circle C Investments*, 998 F.2d 324, 329 (5th Cir. 1993) ........................................... 9

*Reich v. Priba Corp.*, 890 F.Supp 586, 590-591 (N.D. Tex. 1995) ........................................ 10

*Usery v. Godwin Hardware*, 426 F.Supp. 1243, 1247 (W.D. Mich. 1976) .............................. 9

**Rules**

Fed. R. Civ. P. 56(e) ..................................................................................................................1

**Regulations**

29 C.F.R. § 791.2(b) ..................................................................................................................9

# STATEMENT OF QUESTIONS PRESENTED

A.     **WHETHER PLAINTIFF HAS MISSTATED THE APPLICABLE LEGAL TEST WHERE CONSULTING DOES NOT PERFORM VIRTUALLY ALL MANAGEMENT FUNCTIONS FOR CIN-LAN**

B.     **WHETHER CONSULTING IS A JOINT EMPLOYER WITH CIN-LAN WHERE CONSULTING DID NOT DETERMINE THE PAY ARRANGEMENTS FOR CIN-LAN'S ADULT ENTERTAINERS**

5954344.1 33004/130338

## REPLY BRIEF OF DEFENDANT DÉJÀ VU CONSULTING, INC. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.   INTRODUCTION

Plaintiff, an exotic dancer who performed at Defendant Cin-Lan, Inc.'s ("Cin-Lan") adult nightclub in Lansing, Michigan, seeks to prevent dismissal of Déjà Vu Consulting, Inc. ("Consulting") from this case based upon a faulty legal premise and misleading references to the record. When the correct legal standard is applied to the actual factual record developed during extensive discovery the propriety of summary judgment for Consulting is compelling.

As explained in Defendant's motion for summary judgment, Consulting owns intellectual property rights to several trademarks and trade names, including "Déjà Vu Showgirls," which it licenses to businesses such as Cin-Lan. [Dkt. No. 55 at 14-15] Consulting, as its names implies, also provides consulting services to nightclubs licensed to use its registered trademarks. [Id.] In effect, Consulting acts as a franchisor, not as a joint employer with Cin-Lan.

While Plaintiff has contested this conclusion by argument and hyperbole, this Court should require Plaintiff to do more. In responding to a summary judgment motion, the nonmoving party cannot rest on its pleadings but must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(e)). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis in original).

1

## II. REPLY TO PLAINTIFF'S STATEMENT OF FACTS

### A. PLAINTIFF CITES NO "SPECIFIC FACTS" SHOWING CONSULTING DETERMINED PLAINTIFF'S OR OTHER DANCERS' STATUS AS AN INDEPENDENT CONTRACTOR

Plaintiff argues that Consulting made the "specific decision" to adopt and "carry forward" the independent contractor classification system at Cin-Lan. [Dkt. No. 91 at 2, 11]  This claim misstates the record.  Donald Krontz in fact testified Cin-Lan did *not* follow a Consulting suggestion on using dancer performance leases; instead, Cin-Lan created that arrangement *before* Consulting existed, and Consulting then borrowed it from Cin-Lan. [Krontz Dep at 103-104]

Plaintiff also relies upon testimony of Harry Mohney, a Consulting employee, yet he testified contrary to Plaintiff's claim: "In all sincerity I don't recall any specific decision to make them [dancers] tenants or independent contractors, they just always had been that and it carried forward." [Mohney at 162]  While Mohney acknowledged he had been a part of industry *discussions* regarding dancer classification, he had no knowledge of any specific decision to classify "the girls," as Plaintiff's counsel referred to them, as employees or as independent contractors. [Id. at 164]  Instead, this was industry standard and their own choice. [Id. at 169]

Plaintiff's third reference to support her claim is Defendants' Responses to Interrogatories No. 1.  Yet again, however, the actual record is different than Plaintiff alleges.  Defendants' responses, consistent with Donald Krontz's testimony, show that Cin-Lan, not Consulting, adopted and improved upon the industry practice of classifying adult entertainers as independent contractors. [Dkt No 91, Ex. 1 at 4-6]  There is no assertion in those responses that Consulting was part of that decision-making process.

In short, Plaintiff has cited no evidence that Consulting directed, decided or otherwise determined *specifically for Cin-Lan* that its dancers must be independent contractors.  To the

contrary, the record evidence is that dancer classification was decided by Cin-Lan independent of, and in fact before the existence of, Consulting.

### B.   PLAINTIFF CITES NO "SPECIFIC FACTS" SHOWING CONSULTING HAS BEEN DELEGATED CIN-LAN'S SENIOR MANAGEMENT FUNCTION

The second prong of Plaintiff's argument is that Cin-Lan has delegated the "entire senior management function" over its operations to Consulting. [Dkt. No. 91 at 8-10]  This claim is also contrary to the actual record evidence.

Donald Krontz has been Cin-Lan's President and a member of its Board since the late 1980's. [Krontz Dep at 87, 89] Krontz explained that as President, it is his job to make sure Cin-Lan "abides by the law, that it's run properly, [that] the managers are doing what they are supposed to do. I deal directly with Tom [Sime]." [Id. at 97] He further testified:

> I look at the financials, I sign tax returns, I sign the resolutions and stuff like that. I'll sign contracts if I agree to them. I do not run the day-to-day operations, Tom [Sime] does. [Id. at 97]

Krontz also testified his duties for Cin-Lan include compliance with wage and hour laws. [Krontz Dep at 98]  In this regard, he has talked to many lawyers on the issue through the years, hired Modern Bookkeeping to oversee the payroll, and attended seminars on wage and hour matters. [Id. at 98-99]  Krontz testified that it was his decision, based upon the advice of attorneys and his own research, to classify dancers as independent contractors. [Id. at 100]

Tom Sime, Cin-Lan's General Manager for the last 18 to 20 years, confirmed that he is "in charge of the full operation at 1000 West Jolly, which is Cin-Lan or Déjà Vu." [Sime Dep at 15] This includes "full employment" responsibilities, advertising, and purchasing of any supplies; "the full operation, whatever it takes to run the business." [Id. at 15-16] Sime is in charge of "hiring, firing, [and] maintaining the operation of the building with those people," with no guidance or

3

recommendations from Consulting. [Id. at 34]  Sime reports to Donald Krontz, President of Cin-Lan [Id. at 16-17], and handles a three-person management team. [Id. at 53]

Plaintiff's underlying premise is that Consulting establishes policies through which it controls the workplace. [Dkt. No. 91 at 9, 12]  Again, this distorts the record.  While Sime receives advisories from Consulting "once every month maybe," he follows them only "if I agree with it." [Sime Dep at 83]  Although he received a club manual from Consulting many years ago, he only looked at it "once;" does not use the forms it contains; and does not look at it as "best practice." [Id. at 35-36]  While there have been one or two updates to the manual, Sime has not even read them [Id. at 60], *nor does he even provide the manual to his subordinate managers*. [Id. at 63]  In fact, Sime was doing the job of club manager "prior to the document being produced."[1] [Id. at 36]

Plaintiff also claims Consulting requires the use of standard-form "lease" contracts by Cin-Lan's dancers. [Dkt. No. 91 at 9]  In fact, however, while Krontz recommends that nightclubs forward copies of dancer contracts to Consulting, no club was required to *use* the contract; in his words, "it wouldn't have been mandatory." [Krontz Dep at 154]  Also, providing an employment manual or employee forms is insufficient to establish joint employer status.  See, *Beck v. Boce Group, L.C.*, 391 F.Supp.2d 1183 (S.D. Fla. 2005) (defendant not a joint employer although it consulted on employment issues and *required* the distribution of an employee handbook).

Plaintiff claims that Joe Hall, a Consulting employee, is involved in Cin-Lan's day-to-day operations. [Dkt No 91 at 9]  Yet, his role is to provide *advice*, not to direct operations.  Indeed, Sime only speaks to Hall "every couple weeks, maybe," they do not have regular meetings [Sime at 18], and Hall has never commented to Sime on Cin-Lan's "financial anything." [Id. at 91]

---

[1] Krontz confirmed this testimony, explaining, as noted *supra*, that the manual given out by Consulting was taken from Cin-Lan, not the other way around. [Krontz Dep at 102, 104]

4

Plaintiff also relies on the fact that dancers were "discussed" at a recent "corporate meeting" of Consulting [Dkt No 91 at 9]. Discussing this issue, however, is only logical for a company which provides consulting advice to adult nightclubs. More importantly, a discussion is not the same as a directive, and certainly does not constitute *control* over Cin-Lan's business.

Nor does the "Consulting Contract" ("CC") establish that Consulting has "control over" Cin-Lan. [Dkt No 91 at 9; Ex. 6] The CC expressly provides that Cin-Lan "shall be exclusively responsible for hiring and firing decisions of all employees," and "for making all contractual decisions and arrangements regarding entertainers." [Ex. 6, 15.2] While the CC allows Consulting access to Cin-Lan's premises and financial records, it does not dictate how Cin-Lan must operate its business beyond a generic "best efforts" clause. [Id., 3.1] Further, contrary to Plaintiff's claims, the CC does not require an "Industry Defense" in "litigation like this," rather, that clause is plainly directed toward government efforts to prohibit nude dancing [Id., 18]; it does not indemnify Consulting for its own misconduct, but rather does so only insofar as Consulting is performing "services contemplated by" the contract, which clearly would not include misconduct, and it excepts "gross negligence" by Consulting [Id., 8]; and finally, it does not require Cin-Lan to purchase insurance for Consulting's "own malfeasance," but rather simply includes Consulting as a named insured other than for workers' compensation. [Id., 3.6] Plaintiff's distortions of the CC aside, it does not amount to "control over" significant aspects of Cin-Lan by Consulting.

### C. PLAINTIFF CITES NO "SPECIFIC FACTS" SHOWING THAT CONSULTING HAS THE ABILITY TO HIRE AND FIRE CIN-LAN'S EMPLOYEES OR DANCERS

A third prong to Plaintiff's argument is that Consulting allegedly has the ability to hire and fire Cin-Lan's workers. [Dkt No 91 at 10] This claim is based on a contorted reading of the record. The Consulting Contract precludes such a role. [Ex 6, 15.2] Further, while Sime testified

5

Consulting's President, Jim St. John, informed him his bonus was being reduced, Sime understood that decision went through Cin-Lan's President, Donald Krontz [Sime at 69, 71], and Krontz specifically testified that he, as President of Cin-Lan, had made the decision to discipline Sime, not St. John. [Krontz Dep at 272-273]. As Cin-Lan's President, Krontz also negotiated Sime's original bonus arrangement. [Sime Dep at 68]  These are all critical facts Plaintiff omits.  They confirm that Krontz, not consulting, controlled Sime's employment at Cin-Lan.

While Plaintiff claims Consulting was "intimately involved" in the decision to end her performance contract, Plaintiff had no personal knowledge of this fact. [Doe Dep at 116-117] Further, Krontz testified the "ultimate decision" to change Plaintiff's status was "probably" his as Cin-Lan President. [Krontz Dep at 32]  Although Sime testified he did discuss the issue with Joe Hall of Consulting, he indicated the decision was made not by Hall but by Cin-Lan's attorney, Brad Shafer, and merely communicated by Hall. [Sime at 32-33]

Plaintiff's own experience is that Consulting had nothing to do with dancers at Cin-Lan. She admitted she never met St. John, Consulting's President, or Joe Hall, a Consulting employee; she conceded had never spoken to anyone at Consulting regarding her method of pay, her schedules, or her work at Cin-Lan; and she had no personal knowledge Consulting was involved in her alleged termination [Doe Dep at 87-88, 113, 84]

### III.  LAW AND ARGUMENT

#### A.  PLAINTIFF HAS MISSTATED THE APPLICABLE LEGAL TEST

Plaintiff misstates the holding in *Falk v. Brennan*, 414 U.S. 190 (1973), suggesting it stands for the principle that joint employer status may be found where the person or entity has operational control over the enterprise of which the nominal employer is part. [Dkt No 91 at 1, 23, 25] This purported legal standard is nowhere to be found in *Falk*. Instead, it appears to have been

6

derived by Plaintiff from *Dole v. Elliott Travel*, 942 F.2d 962 (6th Cir. 1991), which by its terms applies *not* to a separate corporate entity such as Consulting, but instead to Cin-Lan's own *corporate officers*. See, *Finke v. Kirtland Community College*, 359 F.Supp.2d 593, 598 (E.D. Mich. 2005) ("economic realities" test in *Dole* was designed "to determine whether a supervisor may be considered an 'employer' under the FLSA," not whether two separate entities could be deemed joint employers.)

Plaintiff claims *Falk* involved a "similar situation[]" to that involved here. This is far from true. The *Falk* Court explained that "virtually all management functions that are ordinarily required for the proper functioning of an apartment complex" were handled by the management company in question. 414 U.S. at 192. The Court went on to describe these functions in detail:

> D & F performs all functions required for leasing, maintaining, and operating the apartment buildings. These include advertising the availability of apartments for rent; signing, renewing, and canceling leases; collecting rents; instituting, prosecuting, and settling all legal proceedings for eviction, possession of the premises, and unpaid rent; making necessary repairs and alternation; negotiating contracts for essential utilities and other services; purchasing supplies; paying bills; preparing operating budgets for the property owners' review and approval; submitting periodic reports to the owners; and hiring and supervising all employees required for the operation and maintenance of the buildings and grounds.

To suggest that Consulting does all of these functions on behalf of Cin-Lan, or even a few of them, is simply false. Plaintiff stretches the record by claiming otherwise.

*Falk* does provide that joint employer status may be found where an entity's managerial responsibilities for another employer give it "substantial control of the terms and conditions of the work of [the] employees…" 414 U.S. at 195. As detailed above, however, Plaintiff's proofs fall well short of demonstrating that Consulting had "substantial control of the terms and conditions of the work" performed by Plaintiff or other exotic dancers at Cin-Lan's Lansing nightclub. As such, summary judgment for Consulting is warranted.

7

Defendants acknowledge that Krontz, Consulting's Vice President, is also the President of Cin-Lan. Yet, Krontz's role with Cin-Lan *pre-dates* his role with Consulting, and the "major corporate decisions" made by Cin-Lan were made before Krontz had any role at Consulting – in fact, before Consulting existed. Further, Krontz currently performs few functions for the nightclub, leaving it to Sime's experienced hands. Thus, on an ongoing basis, neither Krontz nor anyone else at Consulting is actively involved in *any* major corporate decisions for Cin-Lan.

### B.     UNDER THE CORRECT LEGAL TEST, PLAINTIFF MUST SHOW, BUT CANNOT, THAT CONSULTING DETERMINED SALARIES AND WAGES FOR CIN-LAN

Courts, in determining whether an employment relationship exists for purposes of the FLSA, must evaluate the "economic reality" of the relationship. *Carter v. Dutchess Community College*, 735 F.2d 8 (2nd Cir. 1984). Such an evaluation was first applied in the FLSA context in *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28 (1961). The "economic reality" test since has been refined and now is understood to include inquiries into:

> whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

*Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). The power to control a worker clearly is a crucial factor in determining whether an employment relationship exists. *Carter*, 735 F.2d at 9. Plaintiff likewise acknowledges the applicability of this test, while also citing the applicable Department of Labor regulation, 29 C.F.R. § 791.2(b).

Despite noting the correct test, Plaintiff has failed to identify a single case which would impose joint employer liability on Consulting based on the facts present here. Plaintiff has not shown Consulting hired and fired dancers or Cin-Lan employees; has not shown Consulting supervised the dancers or controlled their schedules; and has not shown Consulting determined the

8

dancers' rate and method of payment. At most, Consulting may receive copies of the dancers' lease agreements, yet this fact alone is insufficient to show joint employment. *Beck, supra*.

The cases cited by Plaintiff do not alter this conclusion. For example, in *Usery v. Godwin Hardware*, 426 F.Supp. 1243, 1247 (W.D. Mich. 1976), the two companies, one a hardware company and the other a plumbing company, were completely interconnected. *Reich v. Circle C Investments*, 998 F.2d 324, 329 (5th Cir. 1993) dealt *not* with separate corporate entities, such as Consulting and Cin-Lan, but rather with potential employer liability of the sole shareholder's husband, Cranford. Even if applicable, the individual in question, Cranford, exercised far more control than Consulting was shown to exercise.

*Donovan v. Tavern Talent and Placements, Inc.*, 1986 U.S. Dist. LEXIS 20955 (D. Colo. 1986), also involved significantly different facts. There, the consulting company and its president hired and fired nightclub managers, directly supervised employees who collected money at and made daily checks of the clubs, and "manage[d] the day-to-day activities of the clubs" and set their the "general employment policy." Id. at *8. Here, Consulting does none of these activities. It does not hire or fire Cin-Lan's manager, it does not collect money at Cin-Lan or make daily checks, it does not manage Cin-Lan's day-to-day activities (as even Plaintiff concedes), and it does not set Cin-Lan's employment policy.

*Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir. 1984) is also factually distinguishable. There, all five hotels, although separate corporations, shared the same president, secretary/treasurer, vice president and board of directors, operated in the same or similar manner, and were centrally connected, directed and interdependent. 747 F.2d at 970-971. These facts are simply not present here. See, also, *Donovan v. Janitorial Services, Inc.*, 672 F.2d 528 (5th Cir. 1982) (companies shared office space, clerical staff, and a common telephone system) *Mendez v.*

9

*Brady*, 618 F.Supp. 579, 582-583 (W.D. Mich. 1985) (employer "had the ultimate power to hire and set the employment conditions," and "computed each individual's pay, issued checks and deducted taxes."); *Reich v. Priba Corp.*, 890 F.Supp 586, 590-591 (N.D. Tex. 1995) (two companies jointly operated and managed a single nightclub and restaurant, shared office space, and "utilized a combined managerial and clerical staff to further the common purpose and related activity of promoting and operating a gentlemen's club.")  None of the most significant facts present in these cases applies to Consulting and Cin-Lan in this case.

## IV.    CONCLUSION

Consulting is not, and cannot be, Plaintiff's "employer" under either the FLSA or MWL. As such, summary judgment for Consulting must be granted.

                Respectfully submitted,

                **CLARK HILL PLC**

                /s/PaulW. Coughenour_____
                Paul W. Coughenour (P34335)
                Attorneys for Defendant
                Déjà Vu Consulting, Inc.
                500 Woodward Avenue, Suite 3500
                Detroit, MI 48226
                Tel: (313) 965-8300
                Fax: (313) 965-8252
                Email: pcoughenour@clarkhill.com

DATED:  August 3, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JANE DOE**, individually, and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 2:08-CV-12719 |
| v. | Honorable Stephen J. Murphy, III |
| **CIN-LAN, INC.;** **DÉJÀ VU CONSULTING, INC.**; and **HARRY V. MOHNEY,** | Magistrate Judge Michael J. Hluchaniuk |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2009, I caused to be electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification to the following attorneys: Timothy J. Becker, Kristin Beals Bellar, Ronald A. King, Walter J. Piszczatowski, Hart L. Robinovitch, Kevin J. Stoops, Edith A. Thomas, Jason J. Thompson, which will also provide copies of the foregoing document with the Chambers of U.S. District Judge Stephen J. Murphy, III and U.S. Magistrate Judge Michigan J. Hluchaniuk.

                                        **CLARK HILL PLC**

                                        /s/Stephen A. Holmes_____
                                        Administrative Assistant
                                        *sholmes@clarkhill.com*

DATED:  August 3, 2009

5954344.1 33004/130338