## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **JANE DOE**, individually, and on behalf of all others similarly situated,  Plaintiff,  v.  **CIN-LAN, INC.;**  **DÉJÀ VU CONSULTING, INC**.; and  **HARRY V. MOHNEY,**  Defendants. | Case No. 2:08-CV-12719  Honorable Stephen J. Murphy, III  Magistrate Judge Michael J. Hluchaniuk |

## JOINT STATEMENT OF RESOLVED AND UNRESOLVED ISSUES

Defendants Déjà Vu Consulting, Inc. ("DVC") and Harry V. Mohney ("Mohney") (collectively, "Defendants") and Plaintiff Jane Doe individually and on behalf of the putative class (collectively "Doe") respectfully submit this Joint Statement of Resolved and Unresolved Issues. On August 26, 2009, Defendants and Plaintiff conferred in good faith in an effort to narrow the areas of disagreement raised by Defendants' Motion for Protective Order. The Unresolved Issues are centered on the scope of relevant discovery in this putative class action case with respect to several categories of discovery.

## I.    Objections to Discovery Requests

A. Defendants' Position: Plaintiff generally seeks "any and all" documents without temporal limitation in some cases,[1] and dating to 1978[2] and 1990[3] in other cases. No relevant information is contained in documents created decades prior to the beginning of Plaintiff's relationship with Cin-Lan, Inc. ("Cin-Lan").[4] Plaintiff also seeks documents relating in any way to dancers working not only at Cin-Lan, but at other non-party nightclubs, without regard to when the records were created or their relevance to Plaintiff's claims, and encompassing every operational or personnel document ever created by primarily non-parties.[5] Plaintiff also seeks internal documents regarding the "relationship" among Defendants and various non-parties, regardless of date or relevance to Plaintiff's claims, including internal financial records of non-parties, any payments between any Defendant and various non-parties, and Mohney's complete work history; engaging on a fishing expedition concerning every entity Plaintiff believes is associated with Mohney.[6]

---

[1] Exhibit A, 1st Request for the Production of Documents ("RFP") Nos. 1-7, 9, 11-12, 15, 17-20, 22-29, 31-36, 41; Exhibit B, 2nd RFP Nos. 42-46.
[2] Exhibit A, 1st RFP No. 10, Exhibit C, Interrogatories ("Int.") Nos. 4-5, 8.
[3] Exhibit A, 1st RFP Nos. 13-14, 16, 39.
[4] *Siskonen v. Stanadyne, Inc.*, 124 F.R.D. 610, 613 (W.D. Mich. 1989) (preventing discovery with "excessive" temporal limitations.
[5] Exhibit A, 1st RFP Nos. 1-6, 23, 25-29, 31-34, Exhibit C, Int. Nos. 2, 9-12
[6] Exhibit A, 1st RFP Nos. 7-12, 15-16, 22, 24, 38, 39, 41-46, Exhibit C, Int. Nos. 3-8.

1

B. Plaintiff's Position:

Defendants' objections are rooted in two fundamental mistakes. First, they ignore the fact that <u>class</u> discovery has begun and is ongoing.[7] Deciding class certification will require, for example, the court to assess whether dancers from all the Michigan clubs had a sufficiently similar experience to Jane Doe when it came to classification as an independent contractor, withholding of tips, and the level of control Mohney and DVC exercised over those clubs. It therefore makes no sense whatsoever to object to discovery requests that seek information involving those issues and the other Michigan clubs.[8] Second, Defendants assume that because the other Michigan clubs are not named defendants, then dancers from other Michigan déjà vu clubs cannot be included within the putative class of dancers suing them. From this error, they posit many of their "overbroad" objections. Plaintiffs' motion for class certification will include evidence showing that: (1.) DVC and Mohney jointly employed all dancers at all nine Michigan Déjà Vu Nightclubs, not just the Lansing nightclub, and; (2.) that the employment policies misclassifying dancers at all nine nightclubs as independent contractors were common.

Furthermore, the Court, in denying Defendants motion for summary judgment on the joint employer issue, has determined the subject of many of the requests Defendants characterize as irrelevant and overly broad, are instead highly relevant to resolve the joint employer issue on its merits at trial.[9] The Court's Order (Dckt. No 103) specifically referred to Plaintiff counsel's Rule

---

[7] Plaintiff is preparing to formally raise this problem with the court. The error will be fully explained at that time as well as the related case management problems. Plaintiff only raises it now to indicate that the effects of Defendants' mistake are expanding beyond just the Protective Order Motion.

[8] Defendants make another mistake when they resist producing documents on the basis that Plaintiff is entitled to serve a subpoena on nonparty entities and request the same documents. While subpoenas are certainly among the discovery devices available to Plaintiff, they do not render all other discovery devises moot. Furthermore, Plaintiff is entitled to request information from more than one source, for example, to ensure that she receives as full and accurate a production as possible and to more completely understand the available evidence and complete her discovery depositions. Defendants' "subpoena" objection fall flat and is not basis to object to otherwise valid discovery requests.

[9] See Ex --, Transcript of August 13, 2009 Hearing on Motion for Summary Judgment at p. 5-6; 8.

2

56(f) affidavit and the need for Defendant's to respond to the outstanding discovery.[10]

Finally, any objections Defendants' have based on the purported over breadth of time is a red herring. Plaintiffs have offered to be reasonable in seeking the materials at issue and trying to narrow the requests to address any actual burdens, but Defendants have refused to produce any of the documents at issue regardless of any time or other restriction.

## II.    Deposition of Paulette Held[11]

A. Defendants' Position:  Plaintiff has not explained how the testimony of Paulette Held is relevant to her claims. Plaintiff has not alleged that Ms. Held or her employer, Modern Bookkeeping, Inc. ("Modern") are her "employer," but rather believes that Mohney used Held to exert control over Cin-Lan and other nightclubs. However, Held has produced a Declaration stating that she has not received direction, input or advice from Mohney as to any operational or other matters relating to dancers at Cin-Lan or any other nightclubs.[12] No other testimony or information could be relevant. "A showing that the proposed discovery is irrelevant can satisfy the good cause requirement of Rule 26(c) for the purposes of a protective order.[13]

B. Plaintiff's Position:

The deposition of Paulette Held is relevant because: (1.) she is the President of Modern Bookkeeping the so-called "nerve-center" of the Déjà Vu enterprise; (2.) she is the trustee of the Durand Trusts, which owns DVC, MIC Ltd and Modern Bookkeeping, companies which perform core business functions for the Déjà Vu Nightclubs, and; (3.) she is in regular and continuous contact with Harry Mohney. On August 13, 2009 the court held a hearing on Defendants' Motions for Summary Judgment on the issue of being a joint employer. At the hearing, Judge Murphy

---

[10] *See* Order, August 18, 2009 at 28-29:
[11] Exhibit D, Notice of Deposition of Paulette Held
[12] Exhibit E, Declaration of Paulette Held
[13] *Tribula v. SPX Corp.*, 2009 U.S. Dist. LEXIS 2175 (E.D. Mich. Jan. 12, 2009), Fed.R.Civ.P. 26(b)(1)

specifically referred to the multiple layers of corporate structure as a "shell game".[14] He referred to a chart placed before him in which the multiple layers of corporate control were depicted.[15] Modern is depicted in that chart. The motion was denied in part because of the "outrageous" idea that summary disposition was ripe when Defendants had failed to produce discovery.[16] Judge Murphy referred to items identified in plaintiff counsel's Rule 56(f) affidavit, which included Modern. (See Dckt No. 91-3) There is no reason to deny this discovery.

### III. Discovery Regarding Non-Party Trusts

A. Defendants' Position: Plaintiff appears to claim that because certain family trusts have an interest in DVC and Cin-Lan, she is entitled to further discovery regarding correspondence between Mohney and various entities and persons regarding the "operations and dealings," "dividends and distributions," and "payment of compensation" for the trusts.[17] Plaintiff does not allege that these trusts are her "employers," or "joint employers," and is therefore not entitled to discovery with respect to those trusts without demonstrating the relevance to her claims.[18]

B. Plaintiff's Position:

At the August 13, 2009 hearing, Judge Murphy referred to items identified in plaintiff counsel's Rule 56(f) affidavit, he specifically addressed discovery from "trustees". Here, the trusts at issue are the nominal owners of Defendants' DVC and Cin-Lan. Additional discovery regarding the trusts, therefore, is relevant and necessary to determine if Mr. Mohney and/or others exercised control and authority over the nightclubs in an indirect manner. If documents show that Mr. Mohney actually used the trusts and the companies the trusts held to control the nightclubs,

---

[14] See Ex --, Transcript of August 13, 2009 Hearing on Motion for Summary Judgment at p. 5-6; 8.
[15] See Ex--, copy of chart.
[16] See Ex --, Transcript of August 13, 2009 Hearing on Motion for Summary Judgment at p. 5-6; 8.
[17] Exhibit B, 2nd RFP Nos. 42-46
[18] *Tribula v. SPX Corp., supra,* Fed.R.Civ.P. 26(b)(1)

4

that evidence would be relevant as it would prove that Mohney and DVC are joint employers of the workers.

## IV. Discovery Regarding Non-Party Entities

A. Defendants' Position:  Plaintiff also seeks correspondence between Mohney and non-parties Held and Modern Bookkeeping, Inc. regarding the "operations and dealings," "dividends and distributions," and "payment of compensation" and other internal operational and financial records[19] of various non-party entities.[20] First, Defendants do not have custody or control over records of third parties.  Second, as with the non-party trusts discussed above, these non-party entities are not alleged to be Plaintiff's employer or joint employer, and therefore information regarding these entities has no relevance to her claims, rendering a protective order appropriate.[21]

B. Plaintiff's Position:

As demonstrated above, the Court has already determined that discovery regarding non-party entities within the Déjà Vu enterprise such as the other Déjà Vu Nightclubs, Modern Bookkeeping, MIC, Dynamic, Imagination, and the Durand Trusts is relevant and necessary.  In fact, Judge Murphy referred to the entire enterprise as a "shell game" designed to avoid liability in cases like this. Plaintiff has shown that Defendants do have control over the companies at issue. Defendants control and store business materials and records at Modern Bookkeeping.  DVC's contracts with each nightclub gives it access to all documents and records.  Plaintiff offered to serve subpoenas on companies such as Modern Bookeeping and Ms Held, if necessary. Defendants responded by filing this motion seeking a protective order.

---

[19] Exhibit B,  2nd RFP Nos. 42-46, Exhibit A, 1st RFP Nos. 7-12, 15, 18-20, Exhibit C, Int. Nos. 3-7.
[20] These entities include MIC Limited, Déjà Vu, Inc., Modern, Dynamic Industries, Ltd. and Imagination Corp.
[21] *Tribula v. SPX Corp., supra;* Fed.R.Civ.P. 26(b)(1)

5

Furthermore, Plaintiff reiterates her position in item I above and fn 8 as to the "subpoena" objection.

**V.      Discovery Regarding Non-Party Michigan Nightclubs**

A.  Defendants' Position:  Plaintiff's claims against her alleged "employer" do not include any other nightclubs besides the one operated by Cin-Lan. Accordingly, information relating to the classification and treatment of dancers and detailed information regarding operations,[22] ownership,[23] and financial records[24] of non-party nightclubs, information regarding "each and every dancer who has worked at any of the Michigan Déjà Vu Nightclubs since May 22, 2005"[25] and other information regarding other nightclubs[26] is not relevant to Plaintiff's claims. Plaintiff is using this lawsuit to investigate whether she could bootstrap her claims against Cin-Lan to create a class of all dancers who performed at other Michigan or national nightclubs.[27]

B.  Plaintiff's Position:

The class alleged in the operative complaint consists of dancers who worked at all nine Déjà Vu Nightclubs in Michigan. The class is not limited to those who worked at the single club in Lansing.  Plaintiff alleges that Defendants DVC and Mohney were the "employers" of each class member and subjected to common business practices dictates by those employers, namely misclassification as independent contractors.

---

[22] Exhibit A, 1st RFP Nos. 1-6, 23-24
[23] Exhibit A, 1st RFP Nos. 7-10
[24] Exhibit A, 1st RFP Nos. 14-16, 22, 38-39
[25] Exhibit C, Int. No. 9. The privacy rights asserted by Plaintiff as to her identity apply to all other dancers.
[26] Nearly every Request for Production and Interrogatory seeks information regarding other nightclubs. Exhibit B, 2nd RFP Nos. 42-46, Exhibit A, 1st RFP Nos. 1-16, 18-20, 22-34, 36, 38-39, 41, Exhibit C, Int. Nos. 1-7, 9-12.
[27] Discovery is "not relevant to 'subject matter involved' in the pending action if the inquiry is based on the party's mere suspicion or speculation." *Micro Motion, Inc v Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990).  See also *K.W. Muth Co. v Bing-Lear Mfg. Group LLC*, 219 F.R.D. 554, 575 (E.D. Mich. 2003) ("possibility" of relevance is not sufficient to justify broad discovery).

6

Furthermore, Plaintiff reiterates her position in item I above.[28]

Respectfully Submitted,

/s/Hart L. Robinovitch  
Hart L. Robinovitch (AZ 020910)  
Attorney for Plaintiff  
ZIMMERMAN, REED  
14646 N. Kierland Boulevard, Suite 145  
Scottsdale, AZ  85254  
(480) 348-6400  
Hart.Robinovitch@zimmreed.com  

/s/Paul W. Coughenour  
Paul W. Coughenour (P34335)  
Attorneys for Defendants  
Déjà Vu Consulting, Inc.  
CLARK HILL PLC  
500 Woodward Avenue, Suite 3500  
Detroit, Michigan 48226  
(313) 965-8300  
pcoughenour@clarkhill.com  

---

[28] It is Plaintiff's position that Defendants can oppose Plaintiff's motion for class certification on its merits, but they cannot hide or refuse to produce evidence related to that issue in discovery.  To the extent Defendants refuse to produce evidence related to the operations of the non-Lansing nightclubs, they should be estopped from presenting any arguments or evidence of their own on that issue in motion practice.  Clearly, the only parties in possession of this evidence are Defendants.   Due process does not allow Defendants to withhold evidence but then later present legal arguments to the court based on (1.) Plaintiff's failure to produce that very same evidence in support of their motion; and/or (2.) evidence withheld by Defendants in discovery, but which Plaintiff has been denied a fair opportunity to cross-examine witnesses on.

7