UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE, individually, and on behalf
of all others similarly situated,

    Plaintiff,

v.

CIN-LAN, INC.;
DEJA VU CONSULTING, INC.;
and HARRY V. MOHNEY,

    Defendants.
_____/

Case No. 08-cv-12719

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING DEFENDANT HARRY V. MOHNEY'S MOTION SEEKING RECUSAL OF JUDGE STEPHEN J. MURPHY, III** (docket no. 121)

In this proposed class action, named plaintiff Doe has sued Defendants Cin-Lan, Inc., Deja Vu Consulting, Inc., and Harry Mohney (personally), for violations of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. §§ 201 *et seq*. One of the contested issues in the case is whether Harry Mohney is considered a joint-employer for purposes of FLSA liability by reason of his alleged ownership and control over the other defendants. Once Mohney and Deja Vu were named as defendants, they quickly moved for summary judgment on the joint-employer issue. Docket no. 55. The motion was filed on the same day Mohney and Deja Vu answered the complaint and before any discovery had commenced.

Doe requested a Rule 16 conference with the Court to address her need for discovery to respond to Defendants' summary judgment motion. The Court decided it was prudent to begin discovery on the business relationships of Deja Vu and Mohney vís-a-vís Cin-Lan – where Doe was employed – to determine whether those relationships would

1

justify finding them to be joint-employers. Discovery began, but it did not, and still is not, complete. In her response to the Defendants' summary judgment motion, Doe filed an affidavit pursuant to Fed. R. Civ. P. 56(f), indicating that while Doe had received some relevant discovery on the joint-employer issue, she had not received full and complete discovery responses. Doe asked the Court to either deny the summary judgment motion or to postpone ruling on the motion until the discovery on the joint-employer issue had been completed.

The Court held a hearing on Defendants' summary judgment motion on August 13, 2009. The Court's statements on the record at that hearing – which were based solely on the Court's very limited experience with the case at that point – form the basis of Mohney's recusal motions and affidavit. After the hearing, the Court issued an opinion and order denying Deja Vu and Mohney's motion for summary judgment. Docket no. 103. The Court indicated that the record was "seriously incomplete" and that it would be "unfair to expect [Doe] to create a question of fact as to whether Mohney effectively controls Cin-Lan without access to these records." *Id.* p. 28-29.

On October 12, 2009, Mohney then filed a Motion Seeking Judge Stephen J. Murphy, III's recusal pursuant to 28 U.S.C. § 455 and 28 U.S.C. § 144 based on "the appearance of and actual bias against Mohney personally and for the reason that [Judge Murphy's] his impartiality is reasonably in question." Def. Mot. p. 1. For the reasons stated below, the Court will deny the motion.

## DISCUSSION

I. <u>Legal Standards for Recusal</u>

"A recusal motion is committed to the sound discretion of the district judge, and on

appeal [the court] asks only whether he has abused his discretion." *In re Ibrahim Khan, P.S.C.*, 751 F.2d 162, 165 (6th Cir. 1984) (citation omitted). The two principal statutes dealing with judicial recusal are 28 U.S.C. § 144[1] ("Bias or prejudice of a judge"), and 28 U.S.C. § 455[2] ("Disqualification of a justice, judge, or magistrate"). Section 455 substantially overlaps and subsumes section 144, though there are some material differences, the main one being that section 455 is self-executing, requiring the judge to disqualify himself for personal bias even in the absence of a party complaint. *Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988).

It is well settled that the two statutes must be read *in pari materia*, meaning they should be construed and interpreted together. *Youn v. Track,* Inc., 324 F.3d 409, 423 (6th Cir. 2003); *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983). This construction is especially important when applying sections 144 and 455(b)(1), both of which address actual personal bias or prejudice of a judge concerning a party.

---

[1] 28 U.S.C. § 144 provides in pertinent part:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

[2] 28 U.S.C. § 455 provides in pertinent part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> > (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding....

3

Section 455(a) deals not with actual bias, but the appearance of partiality. Under section 455(a) a judge must disqualify himself in those matters wherein his impartiality might reasonably be questioned, even when there is no showing of actual bias. Generally, disqualification under section 455(a) must be predicated on "extrajudicial conduct rather than on judicial conduct," *Easley*, 853 F.2d at 1355; *City of Cleveland v. Krupansky*, 619 F.2d 576, 578 (6th Cir. 1980), but in rare situations opinions gained from a judicial source will be sufficient for recusal if they "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 554 (1994).

The test for recusal under 28 U.S.C. § 455(a) is whether "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989). The standard is an objective one and the judge need not recuse himself under section 455(a) based on the subjective view of a party, no matter how strongly that view is held. *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990). Because a judge is presumed impartial, a party seeking to disqualify the judge bears a substantial burden of proving otherwise. *Scenic Holding, LLC v. New Bd. of Trustees*, 506 F.3d 656, 662 (8th Cir. 2007). "[I]n assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision." *In re Kansas Public Employees Ret. Sys.*, 85 F.3d 1353, 1538-59 (8th Cir. 1996) (citation omitted).

Sections 144 and 455(b)(1) both deal with claims of actual personal bias or prejudice of the judge. Section 144 makes recusal mandatory once a party submits a timely, sufficient affidavit and her counsel certifies that the affidavit is made in good faith. *Scott*

4

*v. Metropolitan Health Corp.*, 234 Fed. Appx. 341, 352 (6th Cir. 2007) (unpublished decision). A court is required to accept as true the factual allegations of the movant's affidavit, but the court "'may only credit facts that are sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient.'" *Id.* (quoting *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004)). A judge is not bound to accept the conclusions that the movant would draw from the alleged facts. *Id.*

The standard for recusal based on bias or prejudice under section 455(b)(1) is also an objective one and the question is whether a reasonable person would be convinced the judge was biased. *Brokaw v. Mercer County*, 235 F.3d 1000, 1025 (7th Cir. 2000) (citing *Hook v. McDade*, 89 F.3d 350, 355 (7th Cir. 1996)). Recusal under section 455(b)(1) is required only if actual bias or prejudice is proved by compelling evidence. *Id.*; *see also* Recusal: Analysis of Case Law Under 28 U.S.C. § 455 & 144, p. 6 (Federal Judicial Center 2002) (quoting *Brokaw*).

The language in both sections 144 and 455(b)(1), affirms that bias must be *personal*, or extrajudicial, in order to justify recusal. *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005). "Personal" bias is prejudice that emanates from some other source than the participation in the proceedings or prior contact with related cases. *Id.* "The critical test is whether the alleged bias 'stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" *Wheeler*, 875 F.2d at 1252-53. (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1965)).

Finally, a bit of discussion about the impatience of a judge. As the Supreme Court

5

has indicated, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Expressions of impatience, dissatisfaction, annoyance, and even anger, cannot establish bias or prejudice. *Id.* at 556. "A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune." *Id.*

II. Analysis

With the above principles in mind, the Court considers Mohney's motions and affidavit. The Court will analyze his motion under section 455(a) and then his 455(b)(1) motion and section 144 affidavit.

A. Motion under Section 455(a)

The Court begins with Mohney's claim under section 455(a) – that the court lacks impartiality. On this front, Mohney states that the Court's impartiality might reasonably be questioned for four reasons. First, although not during the same period, Judge Murphy served as a lawyer in the U.S. Attorney's Office in the Eastern District of Michigan, the same office that prosecuted Mohney for tax crimes.[3] Second, Judge Murphy served as a

---

[3] The Court will refer to itself as "Judge Murphy" in this order, even though it is awkward, due to the personal nature of the allegations made and the fact that the parties refer to the Court in such a manner. The Court finds that it sounds more appropriate to refer to itself as Judge Murphy rather than to use the first person in an order of the Court. No immodesty or self-aggrandizement is intended.

lawyer in the U.S. Attorney's Office for the Eastern District of Michigan at the same time that office prosecuted Mohney for civil tax liability (1992 - 1996). Third, Plaintiff Doe has attempted to make Mohney's tax cases relevant in this case. Fourth, Judge Murphy made statements at the hearing on Mohney's summary judgment motion which would cause a reasonable person to question his impartiality. Def. Br. p. 14.

Mohney's arguments regarding his tax cases are not persuasive. In fact, they border on the nonsensical. As Mohney admits, Judge Murphy did not work in the U.S. Attorney's Office in this District when Mohney was tried and convicted for tax crimes. Judge Murphy had no knowledge whatsoever of who Harry Mohney is or that he had a criminal tax case pending against him. The mere fact that Judge Murphy later worked in the office responsible for prosecuting Mohney cannot serve as the basis for disqualifying him on the basis of partiality, nor can the fact that Judge Murphy worked in the office when Mohney was proceeded against civilly. Mohney offers no evidence whatsoever that Judge Murphy had any contact with or knowledge of Mohney's case while he was in that office. Even if there were such evidence, the Sixth Circuit has refused to adopt a *per se* rule that a judge may never preside at a trial where he has had previous contact with the defendant as a prosecutor in totally unrelated charges; in such cases, the movant must make a showing of actual bias. *See, e.g.*, *Williams v. Anderson*, 460 F.3d 789, 814-15 (6th Cir. 2006); *Corbett v. Bordenkircher*, 615 F.2d 722, 723-24 (6th Cir.1980); *Jenkins v. Bordenkircher*, 611 F.2d 162, 167 (6th Cir. 1979).[4]

---

[4] It is crucial to remember that in considering a claim of the appearance of partiality of a judge, a Court must apply a *reasonable* person standard. This Court does not doubt that *some* persons might consider Judge Murphy's prior tenure at the U.S. Attorney's Office to make him partial against Mohney, e.g., Mohney and his counsel, but

7

The fact that Doe has made Mohney's prior encounters with the U.S. Attorney's Office in Detroit a relevant issue in this case does would not lead a reasonable person to question Judge Murphy's impartiality in any way. As Magistrate Judge Hluchaniuk indicated in his Order of May 29, 2009 in this case,

> [The references in the Complaint to Mohney's prior encounters] strengthe[n] the allegations that Defendants have engaged in certain practices and tactics to obfuscate and conceal Mohney's role in managing, directing and controlling the business operations of the Michigan Deja Vu Nightclubs. The Court agrees with plaintiff and concludes that merely because a case is 20 years old does not somehow take that information away from plaintiff and the information is supportive of plaintiff's theory of how Defendants' scheme operated.

Order, May 29, 2009, docket no. 74, p. 6. Thus, Doe's reference to Mohney's prior tax cases reasonably appears to have been done for the purpose of strengthening her theory on the joint-employer issue, and not simply for the purpose of bringing to Judge Murphy's attention the fact that Mohney had been convicted of tax crimes in the past.

Finally, Judge Murphy's statements at the hearing on Mohney's summary judgment motion do not raise an issue as to Judge Murphy's impartiality in the matter. Mohney argues that it became obvious to all present at the summary judgment motion hearing that Judge Murphy was hostile to Mohney and that he appeared to focus unduly on Mohney's prior criminal convictions. The Court considers this argument to be very close to preposterous.

Specifically, Mohney points to Judge Murphy's statements about Mohney's conduct during discovery. Judge Murphy stated:

---

those who hold such perceptions do not do so reasonably.

> This is a Rule 56 motion so we have to look at everything that is said in the light most favorable to the nonmoving party, Jane Doe, and I just don't see how setting up, you know, Cin-Lan Incorporated, which is owned by Imagination Incorporated, which is owned by the Harry Mohney Trust, which is the sole – Harry Mohney being the sole trustee and beneficiary, gets Mr. Mohney out of liability under the FLSA, under, you know, potential tax issues, or for whatever reason he may have set these companies up.
>
> I would also say, we are here looking at Rule 56 matters and I don't see how the plaintiff can be taxed with properly opposing this when Mohney has not turned over e-mail documents. When there is a lack of correspondence between the trustees, lack of correspondence – one of the most outrageous things I read is that Mohney says under oath in a deposition that he cannot locate most of the memos he sent to various Deja Vu nightclubs because his 16-year-old son had destroyed his computer. All right. This is ridiculous.

August 13, 2009 Hearing Tr., docket no.106, p. 5-6.

Nothing about these statements would lead a reasonable person to believe that Judge Murphy was relying on information about Mohney he had learned outside of this case. Rather, a reasonable person would conclude Judge Murphy thought it unfair for a party to move for summary judgment before the opposing party had a full chance to develop a factual basis for opposing the motion and that Judge Murphy was simply expressing displeasure therewith. A reasonable observer would also conclude that Judge Murphy's view of Mohney was based solely on his conduct throughout this case thus far. Taken in context, Judge Murphy's use of the term "ridiculous" referred not to Mohney personally, but rather to the decision of a party to seek summary judgment while at the same time failing to produce documents on the very matter placed in issue by the motion and the fact that Mohney blamed his sixteen-year-old son for destroying some of the documents. What Judge Murphy referred to as "outrageous" was clearly not Mohney personally, but the claim that Mohney could not produce emails because his minor son –

9

who is not party to the action – apparently had destroyed the computer Mohney used to draft the emails. Mohney's excuse fails because there necessarily would have been a recipient of these emails, so even if they could not be retrieved from Mohney's own computer, they would undoubtedly be recoverable from the recipient's computer. In addition, there was no evidence at the time that Mohney had made any effort to recover a mirror image of the hard drive or to conduct forensic analysis on it to retrieve the emails. Instead, it fully appeared that Mohney was trying to both win a summary judgment motion while at the very same time withholding evidence that was crucial to resolution of the motion.[5]

Mohney also points to Judge Murphy's following statement at the hearing:

> I think Mr. Mohney and the corporate entities, as well as Krontz, St. John, and the people that are employed by them, are engaged in a rather significant shell game here, possible aimed at avoiding liability in cases like this, who knows? ...
>
> * * * *
>
> Yeah, I called it an effort to avoid liability by setting up a bunch of corporations that separate the individual from those types of acts that you are citing from the cases, and I think that that is going to have to be explored by the plaintiffs further at the minimum .... I just do not see that we are going to let Mr. Mohney and Deja Vu Consulting, Incorporated out at this juncture in the blind of night with this sort of structure that has been, in my view, put in place to avoid the type of liability which Ms. Doe wants to attach to him. It's that simple.

*Id.* p. 5, 8.

Again, nothing in these statements would lead a reasonable observer to conclude that Judge Murphy was acting partially against Mohney. The shell game argument was first

---

[5] Very few tactics test the patience of a trial judge more than gamesmanship in the discovery process. This is not the first case in which Judge Murphy has sternly and in strong terms advised parties that such measures will not be tolerated.

10

made by Doe in her response to Mohney's summary judgment motion. *See* Doe Resp. Br. p. 2-3. Moreover, Judge Murphy never *concluded* that Mohney had engaged in this game to avoid liability, but simply thought it was *possible*, based on the evidence, that he did and that the question "who knows?" still needed to be answered. It was only in the context of considering Mohney's summary judgment motion – in which the Court had to view the evidence in the light most favorable to Doe and to make all reasonable inferences in her favor – that Judge Murphy concluded, at that point in time, Mohney could reasonably be considered a joint-employer and his attempt to escape FLSA liability was unavailing based on the economic realities of the situation presented at that stage of the case.

Additional context for the remarks is provided later in the same hearing, when Judge Murphy stated that he was open to considering a renewed motion by Mohney on the same issue after full discovery:

> [I]f you two get together and you come up with a complete record, and it looks like I'm wrong and you are right and Mr. Mohney had nothing to do with this outfit, then there is nothing further the plaintiffs can do to show that he did, I would entertain a renewed motion and dismiss the case as to Mr. Mohney.

*Id.* p. 9. The judge's willingness to reconsider the issue once a complete factual record had been created is additional evidence undercutting any allegations of prejudice. No reasonable person could doubt that Judge Murphy was being impartial and any argument that the judge was in fact biased is pure speculation, unsupported by any evidence. If Judge Murphy appeared to Mohney and his counsel to be perturbed at the hearing, the only reasonable conclusion to draw is that he was upset at Mohney's conduct in wasting the Court's time and resources moving for summary judgment on an issue on which all the facts had yet to be uncovered, facts which Judge Murphy concluded Mohney had

11

deliberately withheld. This perturbation was reasonably the result of a judicial source – Mohney's poor conduct in the case – and not an extrajudicial or personal one. No one could conclude that his demeanor was the result of twenty-year-old tax cases which, as Mohney admits, Judge Murphy had absolutely no involvement in.

Accordingly, because no reasonable person could conclude that Judge Murphy was acting with prejudice against Mohney based on information he had gleaned from some extrajudicial source, Mohney has not carried his substantial burden in rebutting the presumption that Judge Murphy was impartial. Mohney's motion under section 455(a) will be denied.

### B. Motion under Section 455(b)(1) and Affidavit under Section 144

As noted above, Mohney has also moved to disqualify Judge Murphy under section 455(b)(1) and filed an affidavit pursuant to section 144 seeking the Judge's disqualification. Both the motion and the affidavit claim that Judge Murphy should be disqualified on the basis of actual prejudice against Mohney personally, which purportedly arises not from Judge Murphy's experience with this case, but from his tenure with the U.S. Attorney's Office in this District, as well as with the Civil and Tax Divisions in Washington, D.C. Accepting all factual allegations in the affidavit as true, as required by section 144, they are not legally sufficient to require Judge Murphy's recusal.

As with his section 455(a) motion, Mohney's attempt to establish Judge Murphy's personal prejudice toward Mohney is based on the mere fact that Judge Murphy worked at the U.S. Attorney's Office *after* Mohney was tried for tax crimes and during Mohney's civil tax prosecutions, and because Judge Murphy demonstrated an impatience and annoyance for Mohney's conduct in discovery and because Mohney moved for summary

12

judgment and at the same time failed to produce evidence required by Doe to oppose the motion.

With respect to Judge Murphy's prior employment in the U.S. Attorney's Office, Mohney has cited no authority to support the claim that Judge Murphy's tenure alone requires that he recuse himself on the basis of prejudice. Indeed, the opposite is true. As the Supreme Court noted in *Liteky*, opinions held by judges as a result of what they learned in earlier proceedings do not qualify as personal bias or prejudice. *Liteky*, 510 U.S. at 551. The Sixth Circuit has expanded this proposition and held that information obtained by a judge through his former employment with a government entity "is akin to information learned in earlier proceedings," and cannot form the basis for an extrajudicial prejudice. *Williams*, 460 F.3d at 815. Therefore, as a matter of law, even assuming Judge Murphy gleaned information about Mohney during his tenure at the U.S. Attorney's Office in Detroit or in Washington, D.C., which he did not, those opinions cannot form the basis for an extrajudicial prejudice requiring his recusal in this case.

Mohney nevertheless claims that based on Judge Murphy's statements on the record at the motion hearing, "a reasonable person would be convinced that Judge Murphy has shown a high degree of antagonism such as to make a fair judgment impossible; that Judge Murphy is biased against Mohney is suggested by Judge Murphy's knowledge, awareness and/or connection to previous litigation and prosecution involving Mohney and the very same offices with which Judge Murphy was employed, and by Plaintiff's repeated attempts to seize on that awareness and make those ancient cases appear relevant, culminating in Judge's Murphy statements on the record during the hearing ...." Def. Br. p. 15. Mohney's attempt to argue that Judge Murphy's statements at the hearing can be

explained only by reference to his past employment is entirely unpersuasive. The Court would take issue with Mohney's assertion that Judge Murphy's demeanor was in any way out of the ordinary. Even if the Court were to accept that Judge Murphy appeared annoyed or impatient, Judge Murphy's statements and demeanor at the hearing, as stated above, are most reasonably explained by his reaction to Mohney's poor conduct in discovery, and especially by his motion for summary judgment at such an early and premature stage in the proceedings, before Doe's discovery requests on the issue had been answered.

In summary, the factual allegations in Mohney's section 144 affidavit are not legally sufficient to support disqualification. Assuming the allegations are true, they are not enough to convince a reasonable person that prejudice exists. Judge Murphy's purported hostility toward Mohney, to the extent it was present at the hearing, reasonably appears to be based on Mohney's behavior in this case ever since he moved for summary judgment, not on his 20-year-old conviction for tax crimes. Mohney's convictions are relevant only insofar as they strengthen Doe's case on the joint-employer issue and Judge Murphy will consider them for that purpose. Mohney's attempt to make them relevant to the issue of Judge Murphy's purported prejudice against Mohney is futile and no such basis for raising them exists.

Accordingly, Mohney's request for Judge Murphy's recusal or disqualification under section 144 is denied.[6]

---

[6] Because the Court finds that no reasonable person could conclude that Judge Murphy harbored any actual personal prejudice against Mohney for purposes of section 144, the Court also finds that no such prejudice exists for purposes of section 455(b)(1) and denies Mohney's request for disqualification under section 455(b)(1) as well. *Cf. Brokaw*, 235 F.3d at 1025 ("Because the phrase 'personal bias or prejudice' found in Section 144 mirrors the language of Section 455(b), our analysis under Section 144 is identical." (citation omitted)); *United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendant Harry V. Mohney's Motion seeking Judge Stephen J. Murphy III's Recusal (docket no. 121) is **DENIED**.

**SO ORDERED.**

        s/Stephen J. Murphy, III
        STEPHEN J. MURPHY, III
        United States District Judge

Dated:  February 1, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 1, 2010, by electronic and/or ordinary mail.

        s/Alissa Greer
        Case Manager

---

1985) ("[W]e shall view judicial interpretations of 'personal bias or prejudice' under § 144 as equally applicable to § 455(b)(1).").