# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

JANE DOE, individually, and on behalf of all others similarly situated,

        Plaintiff,

v.

CIN-LAN, INC.;
DÉJÀ VU CONSULTING, INC.; and
HARRY V. MOHNEY

        Defendants.

Case No. 4:08-CV-12719-PVG-MJH

Honorable Stephen J. Murphy III

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO STRIKE AND/OR FOR SUMMARY JUDGMENT ON PLAINTIFF'S COLLECTIVE AND CLASS CLAIMS AND/OR TO DISMISS**

SOMMERS SCHWARTZ, P.C.
BY: JASON J. THOMPSON (P47184)
2000 Town Center, Suite 900
Southfield, Michigan 48075
Telephone: (248) 355-0300
E-Mail: jthompson@jta-law.com

ZIMMERMAN REED, P.L.L.P.
BY: TIMOTHY J. BECKER, (MN BAR 256663)
651 Nicollet Mall, Suite 501
Minneapolis, Minnesota 55402
Telephone: (612) 341-0400
E-Mail: tjb@zimmreed.com

ZIMMERMAN REED, P.L.L.P.
BY: HART L. ROBINOVITCH, (AZ BAR 020910)
14646 N. Kierland Blvd., Suite 145
Scottsdale, Arizona 85254
Telephone: (480) 348 6400
E-Mail: hlr@zimmreed.com

*Attorneys for Plaintiff*

HERTZ SCHRAM, PLLC
BY: WALTER J. PISZCZATOWSKI, (P-27158)
1760 South Telegraph Road, Suite 300
Bloomfield Hills, Michigan 48302
Telephone: (248) 335-5000
E-Mail: wallyp@hertzschram.com

JACKSON LEWIS LLP
BY: ALLAN S. RUBIN (P-44420)
2000 Town Center, Suite 1650
Southfield, Michigan 48075
Telephone: (248) 936-1900
E-Mail: rubina@jacksonlewis.com

*Attorney for Defendant Cin-Lan, Inc.*

LAW OFFICES OF EDI THOMAS
BY: EDITH A. THOMAS, (P-41172)
214 North Ridge Drive, Suite B
Fallbrook, California 92028
Telephone: (888) 349-3940
E-Mail: edithomas1@aol.com

*Attorney for Defendants Déjà Vu Consulting, Inc. and Harry V. Mohney*

CLARK HILL, PLC
BY: KRISTIN BEALS BELLAR, (P69619)
    RONALD A. KING, (P45008)
313 East Grand River Avenue
Lansing, Michigan 48906
Telephone: (517) 318-3100
Email: kbellar@clarkhill.com
     rking@clarkhill.com

CLARK HILL, PLC
BY: PAUL W. COUGHENOUR, (P34335)
500 Woodward Avenue
Detroit, Michigan 48226-3435
Telephone: (313) 965-8300
Email: pcoughenour@clarkhill.com

*Attorney for Defendants Déjà Vu Consulting, Inc.*

# Table of Contents

Table of Authorities í í í í í í í í í í í í í í í í í í í í í í í í í í í .ii

I.    Introduction ...................................................................................................1

II.   Statement of Facts ..........................................................................................3

III.  Argument .......................................................................................................3

      A.    Applicable Legal Standards ..................................................................3

      B.    Plaintiff Has Standing To Assert Claims On Behalf On The Entire Class. ...........4

            1.    Plaintiff Has Article III Standing To Assert All Class Claims. ..................4

            2.    There Are No Claims Alleged Against Any õDefendant Classö ...............8

            3.    Plaintiff Has Standing To Represent All Dancers In The Class In Claims
                  Against Common Joint Employers DVC And Mohney Regardless Of
                  Which Deja Vu Location They Worked At. ................................................9

      C.    The MWL Applies To Plaintifføs Claims ............................................................12

      D.    Private Litigants Can Maintain Class Actions Asserting MWL Claims...............13

      E.    The Court Has Always Had Federal Subject Matter Jurisdiction Over This
            Action ...............................................................................................................14

            1.    Jurisdiction Exists Based On A Federal Question. ...................................14

            2.    Diversity Jurisdiction Exists Under CAFA...............................................15

      F.    Plaintifføs MWL Claim Is Not õInherently Irreconcilableö With Her FLSA
            Claim, Warranting Dismissal. ...........................................................................17

IV.   Conclusion ...................................................................................................20

## Table of Authorities

**Cases**

Allen v. MGM, 675 N.W.2d 907 (Mich.App. 2003) ............................................................ 13, 19

Alvarez v. IBP, Inc., 339 F.3d 894 (9th Cir. 2003) ..................................................................18

Alves  v. Harvard Pilgrim Health Care, Inc., 204 F.Supp.2d 198 (D.Mass. 2002) ........................9

Ansoumana v. Gristede øs Operating Corp., 201 F.R.D. 81 (S.D.N.Y. 2001) ..............................15

Bahramipour v. Citigroup Global Markets, Inc., 2006 WL 449132 (N.D. Cal. 2006) ................18

Bamonte v. City of Mesa, 2007 WL 2022011 (D.Ariz. July 10, 2007) ......................................15

Bonnette v. California Health & Welfare Agency, 704 F.2d 1465 (9th Cir.1983) ........................4

California Coalition of Undressed Performers v. Spearmint Rhino, Deja Vu Showgirls, et. al.,
     CV08-04038 (C.D.Calif.) ................................................................................................17

Chavez v. IBP, Inc., 2002 WL 31662302 (E.D. Wash., 2002) ..................................................18

Clark v. McDonalds Corp., 213 F.R.D. 198 (D.N.J. 2003) .........................................................11

Conley v. Gibson, 355 U.S. 41 (1957) .....................................................................................3

Cosme Nieves v. Deshler, 786 F.2d 445 (1st Cir. 1986) .........................................................13

Cranford v. City of Slidell, 25 F.Supp.2d 727 (E.D.La. 1998) ..................................................12

Déjà Vu Inc. v. Commissioner, 1996 WL 270943 (U.S. Tax Ct.) ..............................................16

DeKeyser v. Thyseenkrupp Waupeca, Inc. d.b.a Waupeca Foundry, Inc., 589 F.Supp.2d 1026,
     (E.D.Wis. 2008) ............................................................................................................18

Dep øt of Labor v. Cole Enterprises, Inc., 62 F.3d 775 (6th Cir. 1995) ........................................5

Diaz v. Scores Holding Co., et al., No 07-8718 (S.D.N.Y.) ........................................................18

Dole v. Elliott Travel, 942 F.2d 962 (6th Cir. 1991) ...........................................................4, 5, 6

Donovan v. Agnew, 712 F.2d 1509 (1st Cir. 1983) ....................................................................5

Donovan v. Grim Hotel Co., 747 F.2d 966 (5th Cir. 1984) ....................................................6, 8

Donovan v. Janitorial Services, Inc. 672 F.2d 528 (5th Cir. 1982) ................................................6

Donovan v. Tavern Talent and Placements Inc., 1986 WL 32746 (D. Colo. 1986).......................7

Ellison v. Autozone, Inc., 2007 WL 2701923 (N.D. Cal. 2007) .......................................3, 18, 20

Falk v. Brennan, 414 U.S. 190 (1973) ................................................................................5, 6

Fallick v. Nationwide Mutual Insurance Co., 162 F.3d 410 (6th Cir. 1998) ................ 1, 9, 10, 11

Finke v. Kirtland Community College Bd. of Trustees, 359 F.Supp.2d 593 (E.D.Mich. 2005)..6,7

Forbush v. J.C. Penney Co., Inc., 994 F.2d 1101 (5th Cir.1993) ............................................9, 11

Frank v. Golden Plump Poultry, Inc., 2005 WL 2240336 (D. Minn., 2005)................................18

Freeman v. Hoffman-Laroche, Inc., 2007 WL 4440875  (D.N.J., 2007).....................................18

Goldberg v. Whitaker House, 366 U.S. 28 (1961).........................................................................5

Goldman v. RadioShack Corp., 2003 WL 21250571 (E.D. Pa. 2003) ........................................15

Greene v. Robert Half Int'l, Inc., No. C05-03245 MJJ (N.D. Cal.) ............................................18

Harrell v. Diamond A Entertainment, Inc., 992 F.Supp. 1343 (M.D. Fla. 1997)...........................1

Henry v. Circus Circus Casinos, Inc., 223 F.R.D. 541 (D.Nev.2004).........................................10

Hernandez v. Butterball, LLC, 578 F.Supp.2d 816 (E.D.N.C.2008)...........................................12

Hovick v. Transunion Title Insurance Co., 545 F.Supp.2d 662 (E.D. Mich 2008)......................10

Howe v. City of St. Cloud 515 N.W.2d 77 (Minn. App. 1994) ..................................................13

In re Eaton Vance Corp. Sec. Litig., 220 F.R.D. 162 (D. Mass 2004) ........................................11

Kasten v. Saint-Gobain Performance Plastics, 556 F.Supp.2d 941 (W.D. Wis. 2008) ...............18

Kearns v. Ford Motor Co., 2005 WL  3967998 (C.D.Cal. 2005)...........................................15, 17

Kelley v. SBC, Inc., 1998 WL 1794379 (N.D. Cal., 1998) ........................................................18

La Mar v. H&B Novelty & Loan Co., 489 F.2d 461 (9th Cir. 1973) ...........................................11

Lenehan v. Sears, Roebuck & Co., 2006 WL 2085282 (D.N.J., 2006)......................................15

Lindsay v. Gov. Employees Ins. Co., 448 F.3d 416, (D.C. 2006)..........................................15, 17

Lopez v. Tyson Foods, Inc., 2008 WL 3485289 (D. Neb., 2008) ................................................18

Mantei v. Michigan Public School Emp., 663 N.W.2d 486, (Mich. 2003)....................................6

McDonald v. JP Marketing Assoc., 2007 WL 1114159 (D.Minn.,2007) .....................................6

McLaughlin v. Liberty Mutual Ins. Co., 224 F.R.D. 304 (D. Mass. 2004)..................................18

Mutchka v. Harris, 373 F.Supp.2d 1021 (C.D.Cal. 2005) ..........................................................10

O∩Brien v. Encotech Constr. Servs., Inc., 203 F.R.D. 346  (N.D. Ill. 2001)..............................18

O∩Brien  v. Ed Donnelly Enterprises, Inc., 575 F.3d 567 (6th Cir. 2009) ..................................15

Ontiveros v. Zamora, 2009 WL 425962 (E.D.Cal, 2009) .............................................................8

Overnite Trans. Co. v. Tianti, 926 F.2d 220 (2d Cir.1991)..................................................12, 20

Pacific Merchant Shipping Ass∩ v. Aubry, 918 F.2d 1409 (9th Cir. 1990), cert. denied 112 S.Ct.
2956...................................................................................................................... 12, 13, 20

Patel v. Wargo, 803 F.2d 632 (11th Cir., 1986) ...........................................................................5

Popoola v. MD-Individual Practice Ass∩, 230 F.R.D. 424 (D. Md. 2005)..................................11

Quinec Hills v. HDV #3, Deja Vu Consulting et al., LLC Case No. BC385610 (Sup. Ct. Los
Angeles County) .....................................................................................................................17

Ramirez v. RDO-BOS Farms LLC, 2007 WL 273604 (D. Or., 2007) ........................................18

Rawls v. Unum Life Insurance Co. of America, 219 F.Supp.2d 1063 (C.D. Cal. 2002)..............10

Reich v. Circle C Investments, 998 F.2d 324 (5th Cir.1993) .........................................................7

Reich v. Priba Corp., 890 F.Supp. 586 (N.D.Tex. 1995) ..............................................................7

RTC. v. Vanderweele, 833 F.Supp. 1383 (N.D.Ind.1993) .............................................................3

Saginaw Firefighters Assoc. v. City of Saginaw, 137 Mich. App. 625, 357 N.W.2d 908 (2004)í  í  ...4, 19

Salazar v. Agriprocessors, Inc., 527 F. Supp. 2d 873 (N.D. Iowa 2008)..............................18, 20

Saur v. Snappy Apple Farms, Inc., 203 F.R.D. 281 (W.D. Mich. 2001) ....................................19

Scholtisek v. The Eldre Corp., 229 F.R.D. 381 (W.D.N.Y. 2005)..............................................18

Scott v. Aetna Services, Inc., 210 F.R.D. 261 (D. Conn. 2002)...................................................18

Sims v. Chesapeake and Ohio Railway Co. 520 F.2d 556 (6th Cir. 1975)...................................15

Sims v. Parke Davis, 334 F.Supp. 774 (E.D. Mich. 1971)...........................................................13

Sjoblom v. Charter Communications, LLC, 2007 WL 4560541 (W.D. Wis., 2007)...................18

Spoerle v. Kraft Foods Global, Inc., 2008 WL 2002221 (W.D. Wis. May 6, 2008)...................18

Spoerle v. Kraft Foods Global, Inc., 626 F.Supp.2d 913 (W.D.Wis.2009) .................................12

Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496 (6th Cir. 2007)...................................19

Trotter v. Perdue Farms, Inc., 2001 WL 1002448 (D. Del., 2001)..............................................18

Tullous v. Texas Aquaculture Processing Co., 579 F.Supp.2d 811 (S.D.Tex. 2008)....................6

U.S. v. Fairchild Industries Inc., 766 F.Supp. 405 (D.Md. 1991) .................................................3

U.S. v. Marisol Inc., 725 F.Supp. 833 (M.D.Pa.1989) .................................................................3

U.S. v. Mohney, 723 F.Supp. 1197 (E.D.Mich.1989) .................................................................16

U.S. v. Rosenwasser, 323 U.S. 360 (1945) ..................................................................................5

Usery v. Godwin Hardware, 426 F.Supp. 1243 (W.D. Mich. 1976) .............................................6

Westerfield v. Wash. Mut. Bank, 2007 WL 2162989 (E.D.N.Y., 2007).....................................19

Williamson v. Gen. Dynamics Corp., 208 F.3d 1144 (9th Cir. 2000).........................................18

Wu v. MAMSI Life and Health Ins. Co., 256 F.R.D. 158 (D.Md. 2008)..............................10, 11

Zheng v. Liberty Apparel Co., 355 F.3d 61 (2d Cir., 2003).........................................................6

Zimmer v. Bergstrom, Quinn & Oole, 1989 WL 223 111 (W.D.Mich., 1989)....................13, 19

**Statutes**

28 U.S.C. §1331 ..................................................................................................2, 14

28 U.S.C. §1332 ..........................................................................................2, 14, 15

29 C.F.R. §791.2 ...........................................................................................5,6

29 U.S.C. §203 ...................................................................................................12

29 U.S.C. §218 .............................................................................................12, 20

MCL §408.387 ....................................................................................................12

MCL §408.393 ....................................................................................................14

MCL §408.394 ....................................................................................................12

**Rules**

Fed.R.Civ.P. 1 .....................................................................................................14

## I.  INTRODUCTION

In this class action, Plaintiff complains that Defendants Déjà Vu Consulting, Inc. ("DVC"), Harry V. Mohney ("Mohney") and Cin-Lan, Inc. ("Cin-Lan")(hereinafter collectively "Defendants") misclassified Plaintiff and all other members of the Class as independent contractors, as opposed to employees, at all times in which they worked as exotic dancers at Defendants' adult nightclubs.  As a result, Defendants failed to pay Plaintiff and all other class members the minimum wages that they were entitled to under federal and state law and engaged in unlawful tip-splitting.[1]  Facts supporting these claims are already in the court record from Plaintiff's previous motion seeking a TRO and Defendants' summary judgment motion on the joint employer issue.  Defendants now move to strike, for summary judgment and/or to dismiss Plaintiff's collective and class claims on several new grounds.  None have merit.

First, Defendants claim that Plaintiff lacks standing to represent a class that includes dancers who worked at all Déjà Vu locations and claim to be owed unpaid wages from common joint employers DVC and Mohney.  Defendants' argument completely ignores that fact that joint employers like DVC and Mohney are *directly* liable, jointly and severally, to all workers in the Class for their violations of the wage and hour laws.  Here, each class member presents identical claims against DVC and Mohney based on their status as common joint employers who are directly liable to them.  As a result, Article III standing clearly exists.  The Sixth Circuit in Fallick v. Nationwide Mutual Insurance Co., 162 F.3d 410, 422-23 (6th Cir. 1998) confirmed that a class representative has standing to represent a class challenging a common defendant's business practices even if other corporate entities that they dealt with directly are involved.

Second, Defendants erroneously contend that the MWL does not apply to any class member's claims.  Both the FLSA and MWL confirm that state wage laws like the MWL apply whenever the minimum wages applicable under those statutes exceed those in the FLSA.  Here,

---

[1]    See generally Harrell v. Diamond A Entertainment, Inc., 992 F.Supp. 1343, 1347-48 (M.D. Fla. 1997)("Without exception, these courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage.")

at all times during the class period, the wages applicable to tipped employees under the MWL exceeded those under the FLSA.  Hence, each class member has a valid MWL claim against Defendants for failure to pay minimum wages.  Defendants' far-fetched theory that in such circumstances the sole cause of action remains under the FLSA, only substituting the higher state rate for the FLSA rate, is simply wrong.  No case holds this.  In fact, case law holds the opposite.  Thus, it is clear that Plaintiff's MWL claim is valid, as made evident by the numerous cases where both state law wage and hour claims and FLSA claims proceeded simultaneously.

Third, Defendants declare that the MWL somehow bars all class actions by private litigants.  Again, no case has ever held this.  In fact, if Defendants' view of the MWL were valid, no court would have ever considered class certification of a MWL claim in the past.  For nearly forty years, however, courts have done so without ever announcing the alleged statutory bar Defendants now propose that this Court adopt.

Fourth, nearly a year and a half after the Amended Complaint ("AC") was filed, Defendants suddenly claim that the court now lacks federal subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA").  This argument fails.  This Court has original jurisdiction over Plaintiff's claims based both on diversity of citizenship and the existence of a federal question.  28 U.S.C. §§1331, 1332.  Contrary to Defendants' arguments, the "Home State Controversy" exception to federal jurisdiction in 28 U.S.C. §1332(d)(4)(B) does not apply because not *all* "primary defendants" are residents of Michigan.  Harry Mohney is a Nevada resident and is clearly a "primary defendant" since as a joint employer he is *directly and independently liable* to Plaintiff and the Class for all damages.  Further, the requirements for the "Local Controversy" exception to CAFA jurisdiction in 28 U.S.C. §1332(d)(4)(A) are not met since during the three years preceding the filing of this class action, another class action has been filed against Defendant DVC asserting similar allegations.

Finally, Plaintiff's MWL claims are not subject to dismissal due to any conflict with or preemption by the FLSA.  The vast majority of courts throughout the country have recognized that despite the "opt-in" feature of the FLSA, Plaintiffs are permitted to pursue Rule 23 class

actions for state law claims and FLSA collective actions simultaneously. For these reasons and those discussed below, all of Defendants' motions fail.

## II.    STATEMENT OF FACTS

Facts supporting the claims at issue are already in the court record from Plaintiff's previous motion seeking a temporary restraining order and the summary judgment proceedings. (Dkt 8-3, 26-2, 91, 91-8). Rather than restate those same facts again, Plaintiff incorporates the statement of facts from those proceedings by reference.

## III.    ARGUMENT

### A.    APPLICABLE LEGAL STANDARDS

The facts set forth in the Amended Complaint clearly satisfy the notice pleading requirements in Rules 8 and 12(b)(6) for stating a claim that both DVC and Mohney are joint employers of Plaintiff and the entire class. See Conley v. Gibson, 355 U.S. 41, 45-46, (1957) (a motion to dismiss can only be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). In fact, the Court previously denied Defendants' motion for summary judgment on many of these issues. (Dkt 103) As a result, Defendants' motions to dismiss and for summary judgment should be denied.

In turn, Defendants' companion motion seeking to strike all allegations related to the joint employer issue and referencing the "Michigan Deja Vu Nightclubs" should also be denied. A motion to strike brought under Fed.R.Civ.P. 12(f) is an extreme remedy that may only be granted when the allegations are redundant, immaterial, impertinent or scandalous. Before a motion to strike is granted, the court must be convinced that any questions of law or fact are clear and not in dispute, and that under no set of circumstances could the claim succeed.[2] Here, Defendants simply cannot satisfy the requisite standard as the allegations that Defendants seek to

---

[2]  Ellison v. Autozone, Inc., 2007 WL 2701923 *1 (N.D. Cal. Sep. 13, 2007). See RTC. v. Vanderweele, 833 F.Supp. 1383, 1387 (N.D.Ind.1993); U.S. v. Marisol Inc., 725 F.Supp. 833, 836 (M.D.Pa.1989); U.S. v. Fairchild Industries Inc., 766 F.Supp. 405, 408 (D.Md. 1991); Delano Farms v. Calif. Table Grape Com'n, 623 F.Supp.2d 1144, 1183 (E.D.Cal. 2009).

strike: (1) go directly toward establishing that they are common "joint employers" of Plaintiff and the entire Class; and, (2) at the very least, involve disputed issues of material fact. Therefore, the motion must fail.

**B.    PLAINTIFF HAS STANDING TO ASSERT CLAIMS ON BEHALF ON THE ENTIRE CLASS.**

    **1.    Plaintiff Has Article III Standing to Assert All Class Claims.**

Defendants' arguments attacking Plaintiff's standing to sue companies not even named as defendants in the AC are complete red-herrings.  Obviously, Defendants' arguments challenge claims that do not exist and need not be considered.  A plain reading of the AC shows that Plaintiff alleges that both DVC and Mohney are common joint employers of the entire class.  As such, DVC and Mohney are *directly and independently* liable to all class members for violations of the wage and hour laws regardless of which Deja Vu location the class member happened to work at.  In fact, that is the common and predominant class claim presented.  Since DVC and Mohney treated Plaintiff in the exact same manner as all other class members, Plaintiff has standing to assert claims against them on behalf of the entire class defined in ¶85 of the AC.

    **a.    Defendants' Ignore The Fact That They Are Each Directly And Individually Liable To The Entire Class.**

Defendants' entire motion is premised on a fundamental and critical misunderstanding of the wage and hour laws at issue in this case.  Under both the FLSA and the MWL joint employers are *jointly and severally liable* to employees for any violations of those laws, along with any other nominal employer of the worker.  Dole v. Elliott Travel, 942 F.2d 962, 965 (6th Cir. 1991); Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1469 (9th Cir.1983)("All joint employers are *individually responsible* for compliance with the FLSA.").[3]

---

[3]  The MWL applies the same economic realities tests as the FLSA to ascertain employee/employer status.  See Sims, 334 F.Supp. at 789 ("Since the economic reality test *is likewise applicable to plaintiffs' claim under the Michigan Minimum Wage Law,* defendants are similarly entitled to summary judgment on Count II.").  Cases in both Michigan state and federal courts have ruled that the MWL and FLSA are to be analyzed the same.  Saginaw Firefighters Assoc. v. City of Saginaw, 137 Mich. App. 625, 357

Contrary to the premise of Defendants' argument, their liability is not contingent on a finding of vicarious liability, piercing the corporate veil or certification of a defendant class. Rather, DVC and Mohney are *directly and independently* liable to all Class members *for their own violations* of the wage and hour laws, separate and apart from that of any other nominal employers, like Cin-Lan.

> **b.    Defendants Ignore The Critical Fact That Those Who Indirectly Control Workplace Conditions Are Joint Employers Who Are Directly and Independently Liable to Workers.**

The FLSA's definition of the term employer is the broadest . . . that has ever been included in any one act, U.S. v. Rosenwasser, 323 U.S. 360, 363, n.3 (1945). The FLSA "expansively" defines "employer" to include "any person acting directly *or indirectly* in the interest of an employer in relation to an employee....º 29 U.S.C. § 203(d); Falk v. Brennan, 414 U.S. 190, 195 (1973); see also 29 C.F.R. § 791.2. "The remedial purposes of the FLSA require the courts to define ÷employer' more broadly than the term would be interpreted in traditional common law applications." Dole v. Elliott Travel, 942 F.2d 962, 965 (6th Cir. 1991). "Congress has expressly disregarded the corporate shield with respect to analysis of coverage under the FLSA." Patel v. Wargo, 803 F.2d 632, 636 (11th Cir., 1986); Donovan v. Agnew, 712 F.2d 1509 (1st Cir. 1983). In turn, "the FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." Elliott Travel, citing Falk, supra; Dep't of Labor v. Cole Enterprises, Inc., 62 F.3d 775, 778 (6th Cir. 1995) ("More than one employer can be responsible for FLSA obligations."). Each is known as a "joint employer."

In deciding whether a party is a joint employer, "economic reality" controls rather than labels, contracts or common law concepts of agency. Goldberg v. Whitaker House, 366 U.S. 28, 33 (1961). Under this test joint employer status is found where the alleged joint employer, directly *or indirectly*: (1) "exercises control over the nature and structure of the employment

---

N.W.2d 908 (2004); Carpenter v. Werth Laundry, Inc., 1999 WL 33441201 (Mich. App. 1999); Allison v. Pepsi Bottling Co., 2004 WL 3926013 (W.D.Mich. 2004).

relationship,ö (2) öeconomic controlö over the relationship; or (3) has operational control over group of companies or enterprise of which the nominal employer is part.   Falk, 414 U.S. at 195; Elliott Travel, 942 F.2d at 965.  As Department of Labor regulations explain:

> (b)   Where the employee performs work which simultaneously benefits two or more employers...a joint employment relationship generally will be considered to exist in situations such as:
> * * *
> (2)   Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
> (3)   Where the employers are not completely disassociated with respect to the employment of a particular employee **and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.**

29 C.F.R. § 791.2(a) and (b) (emph. added).

To determine whether a joint employer relationship exists, courts balance a number of factors including whether the alleged employer *indirectly* controlled employment conditions, determined the method workers were paid, or had authority over the nominal employer.[4]

The test in no manner involves piercing the corporate veil or adding a ödefendant class,ö as Defendants suggest.  Courts routinely find corporate officers, shareholders, owners, separate management companies and business öconsultantsö to be joint employers, who are *directly* and *individually* liable to employees, along with the workeros nominal employer, for violations of the wage and hour laws.[5]  In fact, in a number of similar cases involving the misclassification of

---

[4]   See generally Finke v. Kirtland Cmty. Coll. Bd. of Tr., 359 F.Supp.2d 593, 599 (E.D. Mich.2005); Zheng v. Liberty Apparel Co., 355 F.3d 61 (2d Cir., 2003); Tullous v. Texas Aquaculture Processing Co., 579 F.Supp.2d 811, 820 (S.D.Tex. 2008); McDonald v. JP Marketing Assoc., 2007 WL 1114159 (D.Minn.,2007); Mantei v. Michigan Public School Emp., 663 N.W.2d 486, 495 (Mich. 2003).

[5]   Elliott Travel, 942 F.2d at 965; Depot of Labor v. Cole Enterprises, Inc., 62 F.3d 775, 778 (6th Cir. 1995); Donovan v. Grim Hotel Co., 747 F.2d 966, 970 (5th Cir. 1984) (the founder/president of a company that managed and oversaw the operations of five separate hotel corporations, was a joint employer of the workers at each of the five hotels under FLSA); Donovan v. Janitorial Services, Inc. 672 F.2d 528, 530-31 (5th Cir. 1982) (the principal of a group of companies was the joint employer of the workers of those companies because, as a practical matter, his significant investment and position as the majority owner of the enterprise gave him öultimate authorityö over their affairs); Usery v. Godwin Hardware, 426 F.Supp. 1243 (W.D. Mich. 1976)(managing agent who actively participates in the management of a business regarding the employment practices prevailing in the business is an employer under FLSA)

exotic dancers, owners and "consultants" of adult nightclubs have been found to be joint employers directly liable to dancers.  <u>Reich v. Circle C Investments</u>, 998 F.2d 324 (5th Cir.1993); <u>Donovan v. Tavern Talent and Placements Inc.</u>, 1986 WL 32746 at *3 (D. Colo. 1986); <u>Reich v. Priba Corp.</u>, 890 F.Supp. 586, 590-91 (N.D.Tex. 1995).  Additionally, since liability is joint and several, not all possible joint employers need be named by a plaintiff as defendants.  <u>See e.g.</u> <u>Finke v. Kirtland Community College Bd. of Trustees</u>, 359 F.Supp.2d 593 (E.D.Mich. 2005)(non-party qualified as a joint employer, but was not named as a defendant in the lawsuit).

      c.      **Facts Alleged Establish That DVC and Mohney Are Joint Employers of All Class Members and Directly Liable to Each Under the FLSA and MWL.**

Facts in the record establish that DVC and Mohney exercise a significant level of control over the workplace at all of the Déjà Vu locations, and therefore, are joint employers directly liable to each class member.  <u>See</u> Plaintiff's Opposition to Defs' Motion for Summary Judgment at pp. 8-14 (Dkt 91, 91-7).  <u>See</u> Order denying DVC's and Mohney's Motion for Summary Judgment, August 18, 2009 (Dkt 101).  First, facts show that DVC and Mohney are not completely disassociated with respect to the employment of the class.  Aside from any nominal employers like Cin-Lan, facts show that it was DVC and Mohney that managed, directed and controlled the operations in each Deja Vu Nightclub, and dictated the common labor policies applicable in each.  This included participating in the decisions to misclassify dancers as independent contractors, and to not pay any them any wages.  Mohney Dep. at 167-179; Krontz Dep. at 105.  That policy was implemented and perpetuated by DVC's officers (Jim St. John and Don Krontz) and Mohney, not simply lower-level club general managers like Tom Sime.

Second, nominal employers like Cin-Lan are controlled by and act in the interests of DJV and Mohney in relation to the class.[6] Defendants themselves concede that Mohney is the "head

---

[6]  <u>E.g.</u> *Numbers Tell the Story*, p. 3, 7 Exh. 11 (Dkt 91-7) ("Only during emergencies do P.E's [dancers] leave without paying."..."If you find staff that is [sic] underperforming, you need to FIRE them!")

honchoö of the entire Deja Vu enterprise.  See Mohneyøs Reply Brief in Support of Motion for SJ (Dkt 99)(õThat Harry Mohney is the head honcho - no one would doubt or decline to admit.ö).  Therefore, Defendantsø suggestion that Plaintiff somehow lacks standing to assert common claims against these common employers must fail.  Plaintiff and each class member share identical FLSA and MWL claims against DVC and Mohney which impose direct liability on both of them regardless of which particular Deja Vu location the dancer worked.

2. **There Are No Claims Alleged Against Any "Defendant Class."**

Illogically, on one hand, Defendants recognize that Plaintiff has not alleged a õdefendant classö yet on the other hand, strain to argue that claims against the so-called õdefendant classö must be stricken.  Hence, rather than address the claims that Plaintiff actually presents, Defendants resort to attacking claims that Plaintiff *did not even make*.  There is simply no need for the Court to address hypothetical claims that are not actually before the Court.

The claims Plaintiff actually makes are supported by case law.  A person can be a common joint employer of workers at several distinct corporations controlled in a similar manner.  Grim Hotel, supra; Ontiveros v. Zamora, 2009 WL 425962 (E.D.Cal) (holding that a class action complaint by single worker stated valid claims for relief against the owner of a group of several automotive corporations as the joint employer of the workers at each).

In the case at Bar, Plaintiff similarly has standing to assert common class claims against DVC and Mohney as joint employers of all dancers who worked at all Deja Vu locations.  Each dancer has identical, direct claims against DVC and Mohney.  Whether or not those claims can ultimately be certified for class action treatment is not yet before the court and is the subject of a distinct motion.  Facts, however, demonstrate that DVC and Mohney treated all dancers in the same manner by controlling the decisions to decisions to misclassify dancers, to not pay any them any wages, and to require them to split their tip income.  See Mohney Dep. at 167-179:

> Q.    During these discussions that you had with the corporate officers that you mentioned a moment ago, the decision was made to continue classifying the dancers as independent contractors; is that right?

A.    I don¢t think that was the discussion the way you stated. *I think it was more of, you know, how do we comply with the labor codes or how do they comply with the labor codes, how do they comply with the state laws, how could you make the girls employees if you had to*, would the girls become employees, do they want to become employees.

Since these common policies, established and perpetuated by DVC and Mohney, are central to the claims disputed in this case, Plaintiff clearly has standing to assert them on behalf of the entire Class of workers subjected to them. As a result, certification is proper regardless of which particular Deja Vu location each dancer worked.

### 3.    Plaintiff Has Standing to Represent All Dancers in the Class in Claims Against Common Joint Employers DVC and Mohney Regardless of Which Deja Vu Location They Worked At.

Courts confirm that a class representative has Article III standing to represent class members on claims against a common defendant that set common policies which caused them injury even if other distinct entities were involved in the transactions. In Fallick, 162 F.3d 410 (6th Cir. 1998), the Sixth Circuit confirmed that an employee had Article III standing to represent participants in benefit plans other than his own in a class action against a common plan administrator. The Court in Fallick explained critical distinction between a class representative *standing* to assert a class claim and his/her separate ability to eventually represent a class:

> The district court¢s analysis is fundamentally flawed in two important respects. First, conceptually, it confuses the issue of a plaintiff¢s standing under Article III vis-a-vis a defendant with the relationship between a potential class representative and absent class members, which is governed by Rule 23 of the Federal Rules of Civil Procedure. Second, the district court overlooks several apposite decisions of courts both in this Circuit and others that hold that an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff¢s challenge is to the general practices which affect all of the plans.
>
> * * *
>
> Where, as here, the crux of an ERISA plaintiff¢s complaint concerns the methodology used to determine benefits, courts have recognized that the standing-related provisions of ERISA were not intended to limit a claimant¢s right to proceed under Rule 23 on behalf of all individuals affected by the challenged conduct, regardless of the representative¢s lack of participation in all the ERISA-governed plans involved.

Id. at 422-23 (citations omitted). See Forbush v. J.C. Penney Co., Inc., 994 F.2d 1101 (5th Cir.1993)(same); Alves v. Harvard Pilgrim Health Care, Inc., 204 F.Supp.2d 198(D.Mass.

2002)("When a single defendant offers a range of ERISA plans, an individual in one plan can represent a class of plaintiffs--including some belonging to other plans--as long as 'the gravamen of the plaintiff's challenge is to the general practices [of the defendant] which affect all of the plans.'" citing Fallick and Forbrush.); Rawls v. Unum Life Insurance Co. of America, 219 F.Supp.2d 1063 (C.D. Cal. 2002)(same).

    While Defendants point out that many of these cases arise in the area of ERISA litigation, the doctrine is certainly not limited to ERISA cases.  For instance, in Mutchka v. Harris, 373 F.Supp.2d 1021, 1024 (C.D.Cal. 2005), the Court applied Fallick to statutory and common law claims against investment advisors.  The Court there explained the difference between challenges to a class representative's standing and class certification under Rule 23:

> At least on standing grounds, there is no basis for precluding the Mutchkas' from asserting claims against the defendants on the basis that they managed funds other than the one in which the Mutchkas invested. Fallick v. Nationwide Mutual Ins. Co., 162 F.3d 410, 422-24 (6th Cir.1998). They have pled facts which establish an actual controversy and injury with respect to each defendant, and that is sufficient for standing. Whether the Mutchkas can represent the holders of other funds on a class basis is a question to be addressed if and when they attempt to certify such a class.

Id.  Other cases, as well, show that the doctrine is not limited to ERISA cases. Hovick v. Transunion Title Insurance Co., 545 F.Supp.2d 662 (E.D. Mich 2008)(applying Fallick to home buyers claims against title insurance company for overcharges); Wu v. MAMSI Life and Health Ins. Co., 256 F.R.D. 158 (D.Md. 2008)(insured asserting claims for breach of contract, bad faith and violation of state statute had standing to represent class members insured by multiple health maintenance organizations that had same parent companies as defendant insurer).  Therefore, it is clear that Plaintiff has standing to assert class claims against these common defendants.

    In contrast, the cases upon which Defendants rely, such as Henry v. Circus Circus Casinos, Inc., 223 F.R.D. 541 (D.Nev.2004), are easily distinguished.  First, in Henry the Plaintiffs actually asserted claims against legal entities for whom they did not work and did not claim to work.  In the case at Bar, that is not the case.  Here, Plaintiff only asserts class claims against common joint employers.  Second and more importantly, review of the pleadings in

10

Henry makes clear that the plaintiffs there did not allege common "joint employer" claims against any of the named defendants, in stark contrast to the case at Bar.  This is confirmed by the Complaint and the parties' briefs in Henry which show that that joint employer issue was never before the court.  See Exhibits 6-9.  As a result, the district court never evaluated the merits of any such claim to determine if all defendants could be held directly liable to the named plaintiff or the class.  To the extent the Plaintiff had the ability to raise joint employer claims in Henry, they were waived and never considered.

Further, Popoola v. MD-Individual Practice Ass'n, 230 F.R.D. 424 (D. Md. 2005) and In re Eaton Vance Corp. Sec. Litig., 220 F.R.D. 162 (D. Mass 2004) do not help Defendants.  As the Court in Wu made clear both of those cases are inapposite and Fallick and Forbrush more directly on point.  The plaintiff in Popoola never sued a common parent applying an unlawful policy, as is the case here and in Wu.

> Fallick and Forbush demonstrate that a plaintiff may represent a class of individuals that are members of different plans when it is alleged that the plans are administered by the same defendant and the wrongful conduct or policy applies uniformly to all of those plans. [FN9...As the Sixth Circuit stated in Fallick, "once an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants." Fallick, 162 F.3d at 423].  In this case, similar to Fallick and Forbush but unlike Popoola, Wu's complaint alleges that MAMSI used a "secret agreement or illegal scheme with its preferred healthcare providers to do what it was specifically prohibited from doing under the express terms of the policy, namely requiring its preferred healthcare providers to first charge to exhaustion [Wu's] PIP coverage for such services."

Wu, 256 F.R.D. at 166.

Finally, Clark v. McDonalds Corp., 213 F.R.D. 198 (D.N.J. 2003) and La Mar v. H&B Novelty & Loan Co., 489 F.2d 461 (9th Cir. 1973) are also inapposite.  First, neither of those cases involved wage and hour claims and thus, did not address the broad standing provisions to assert direct claims against common joint employers.  Second, the parties in those cases had far more distant relationships than the intimately interrelated relationships that exist between the Defendants here.  Third, unlike those cases, Plaintiff here does not assert any claims against any defendant class.  Hence, Defendants' arguments challenging Plaintiff's standing lack support.

11

## C.    THE MWL APPLIES TO PLAINTIFF'S CLAIMS

Without any supporting case law, Defendants contend that the MWL does not apply to any class member's claims.  That is simply not true.  Both the FLSA and MWL confirm that state laws like the MWL apply when the minimum wages under those statutes exceed those in the FLSA.  29 U.S.C. §218(a); MCL §408.394.  There is no pre-emption of state laws.[7]  Rather, §218(a) is a savings clause which expressly provides that state laws "establishing a minimum wage higher" than under the FLSA must continue to be complied with.  When state statutes call for higher wages, those statutes apply and there is no preemption.[8]  See footnote 14, infra.

Here, at all times during the class period, the wages applicable to tipped employees under the MWL exceeded those under the FLSA.[9]  Under the MWL, the hourly wage applicable to tipped employees, as all dancers are alleged to be, was $2.65.  MCL §408.387a.  In contrast, under the FLSA, tipped employees were only entitled to a minimum hourly wage of $2.13.  29 U.S.C. §203(m).  Because wages under the MWL clearly exceed those under the FLSA Plaintiff and each class member has a valid MWL claim against Defendants.

Hoping to avoid this obvious conclusion, Defendants offer the convoluted argument that even in such circumstances a worker's sole cause of action remains under the FLSA, *only substituting* the higher state rate for the FLSA rate.  This argument lacks merit.  Tellingly, Defendants can cite no case where the court simply lifted the higher state rate into the FLSA

---

[7]    Overnite Trans. Co. v. Tianti, 926 F.2d 220, 222 (2d Cir.1991) (noting that "every Circuit that has considered the issue has reached the same conclusion-state overtime wage law is not preempted by ... the FLSA."); Pacific Merchant Shipping Ass'n v. Aubry, 918 F.2d 1409, 1417-19 (9th Cir. 1990).

[8]    See e.g. Hernandez v. Butterball, LLC, 578 F.Supp.2d 816 (E.D.N.C.2008)(claims under North Carolina wage and hour law applied because they were higher than FLSA rate and  not preempted by the FLSA); Spoerle v. Kraft Foods Global, Inc., 626 F.Supp.2d 913 (W.D.Wis.2009)(Employees' Wisconsin state law claims were not preempted, within meaning of express savings clause for state laws establishing a minimum wage higher than the minimum wage established under FLSA, by any conflict with FLSA); Pacific Merchant Shipping Ass'n v. Aubry, 918 F.2d 1409 (9th Cir. 1990), cert. denied 112 S.Ct. 2956 (Savings clause of FLSA allowed California to apply its more generous overtime pay laws to employees); Cranford v. City of Slidell, 25 F.Supp.2d 727 (E.D.La. 1998)(overtime wage provisions of Louisiana law, rather than in accordance with the FLSA, applied where state law was more generous than the FLSA).

[9]    Additionally, the regular minimum wage under for non-tipped employees under the MWL has exceeded the federal minimum wage at all times since October 2006.

claim and then found the plaintiff's state cause of action preempted. In truth, the case law holds the opposite. Specifically, in <u>Cosme Nieves v. Deshler</u>, 786 F.2d 445, 452 (1st Cir. 1986), the Court confirmed that §218(a) of the FLSA "*does not purport to incorporate existing state law*" and "does not guarantee Plaintiffs, as employees covered by the FLSA, the benefit of more favorable [state] laws that do not of their own force apply." "In order to prevail, plaintiffs cannot simply invoke §218(a) but must also show that the more beneficial [state law] provisions actually apply to them." <u>Id.</u> Further, in <u>Pacific Merchant Shipping Ass'n v. Aubry</u>, 918 F.2d 1409, 1421 (9th Cir.1990), the Court confirmed that "Congress did not delegate authority to the states through §218, but simply made clear its intent not to disturb the traditional exercise of the states' police powers with respect to wages and hours more generous than the federal standards." Thus, "the FLSA does not prevent a state from applying a more generous overtime or minimum wage law." <u>Howe v. City of St. Cloud</u> 515 N.W.2d 77, 80 (Minn. App. 1994) citing <u>Pacific Merchant</u>). <u>See</u>, <u>Zimmer v. Bergstrom, Quinn & Oole</u>, 1989 WL 223111 (W.D.Mich. Oct 16, 1989)(confirming that a plaintiff can pursue unpaid wage claims under both the FLSA and MWL). As a result, it is clear that Plaintiff's MWL claim remains a valid, stand-alone claim.

## D.    PRIVATE LITIGANTS CAN MAINTAIN CLASS ACTIONS ASSERTING MWL CLAIMS.

In what amounts to a glaring and chronic defect in Defendants' arguments, they once again proceed with no legal authority, this time arguing that the MWL somehow bars class actions by private litigants. No court has ever reached this conclusion. In fact if that were the case, no court would have ever considered class certification of a MWL claim in the past. For nearly forty years, however, courts have done so without ever finding any statutory bar to the ability of a private litigant to assert class claims under the MWL. <u>See e.g.</u> <u>Sims v. Parke Davis</u>, 334 F.Supp. 774, 781 (E.D. Mich. 1971)(showing that private litigants can assert classwide MWL claims); <u>Allen v. MGM</u>, 675 N.W.2d 907, n. 1 (Mich.App. 2003)(same).

The sole basis for Defendants' claim that MWL bars private class actions is the fact that the MWL contains a specific clause allowing the Commissioner to also file suit "on behalf of all

13

employees of that employer who are similarly situated" for violation of the MWL.   MCL §408.393(2).   But this provision does not expressly, or impliedly, preclude class actions by private individuals.   In fact, the class action provisions in Fed.R.Civ.P. 23 (and its state law counterpart MCR 3.501) are procedural rules of general application which require no express permission to apply to specific statutory claims.   Fed.R.Civ.P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts..."").   Each statute does not have to expressly provide for class action treatment before a claim can be certified under Rule 23.   Rather, unless a statutory exception is expressly created barring application of a specific rule, all procedural rules, including Rule 23, are presumed to apply.

## E.   THE COURT HAS ALWAYS HAD FEDERAL SUBJECT MATTER JURISDICTION OVER THIS ACTION

Despite the fact that the Amended Complaint was filed nearly a year and a half ago, Defendants suddenly claim for the first time that the court now lacks federal subject matter jurisdiction under the Class Action Fairness Act ("CAFA").   That is simply not the case.   This Court has original jurisdiction over this action based both on the existence of a federal question and diversity of citizenship.   28 U.S.C. §§1331, 1332.

### 1.   Jurisdiction Exists Based on a Federal Question.

The court has federal subject matter jurisdiction under 28 U.S.C. §§1331 as Plaintiff presents FLSA claims arising under federal law.   Recently, the Sixth Circuit confirmed that the court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

> To disjoin FLSA and supplemental claims in the manner proposed by defendants would defeat the purpose of supplemental jurisdiction, which is to facilitate the resolution of claims that are so closely related to claims for which federal jurisdiction originally lies that the supplemental claims are part of the same case or controversy as the claim independently invoking federal jurisdiction. *See* 13D Wright, Miller, Cooper, & Freer, Federal Practice and Procedure § 3657 at 317 n. 4 (3d ed. 2008). Notwithstanding the lack of express statutory authority in the FLSA for collective certification of non-FLSA claims, supplemental claims by definition are treated as part of the same controversy animated by a particular employee's FLSA claim. *See* 28 U.S.C. §1367(a).... Therefore, as long as someone in a collective action has a FLSA claim, employees who are similarly situated can be part of the collective action, even if the other employees only have supplemental claims.

14

O=Brien  v. Ed Donnelly Enterprises, Inc., 575 F.3d 567, 580 (6th Cir. 2009).[10]

### 2.    Diversity Jurisdiction Exists Under CAFA.

The Court also has original jurisdiction over Plaintiffs state law claims based on diversity of citizenship under CAFA. 28 U.S.C. §1332(d)(2)(A).  Here, both Plaintiffs and Defendants are completely diverse and the requisite amount in controversy is satisfied.  (AC ¶3).  The members of the Plaintiff class are residents of both Michigan and certain other states.  Defendants DVC and Cin-Lan are residents of Michigan while Defendant Mohney is a resident of Nevada.

### a.    The "Home State Controversy" exception does not apply.

Contrary to Defendants= arguments, the "Home State Controversy" exception to federal jurisdiction in 28 U.S.C. §1332(d)(4)(B) does not apply as not *all* "primary defendants" are residents of Michigan.  Harry Mohney is a Nevada resident and is clearly a "primary defendant" since as a joint employer he is directly liable to the class, along with the other defendants.

A primary defendant is someone who is directly liable to the class, as opposed to under a theory of secondary liability, e.g., based on theories of vicarious liability, or for indemnity and contribution.  Kearns v. Ford Motor Co., 2005 WL  3967998 *8 (C.D.Cal.); Sims v. Chesapeake and Ohio Railway Co. 520 F.2d 556 (6th Cir. 1975). As a joint employer Mohney is directly and independently liable to Plaintiff and all class members for any judgment.  As such, under any test, he is a "primary defendant." Since not all primary defendants are citizens of the state in which the action was filed, the exception in 28 U.S.C. §1332(d)(4)(B) does not apply.  Kearns.

Any attempt by Defendants to break diversity by portraying Mohney as nothing but a minor, peripheral player in the operations of the nightclubs from which "significant relief" is not sought is simply not credible.  As described more fully in Plaintiff=s brief opposing the summary

---

[10]    See also Lindsay v. Gov. Employees Ins. Co., 448 F.3d 416, 424 (D.C. 2006) (exercising supplemental jurisdiction over state law claims brought under Rule 23); Ansoumana v. Gristede=s Operating Corp., 201 F.R.D. 81, 93 (S.D.N.Y. 2001)(same); Lenehan v. Sears, Roebuck & Co., 2006 WL 2085282 (D.N.J. July 24, 2006)(same); Goldman v. RadioShack Corp., 2003 WL 21250571 (E.D. Pa. 2003) (same); Bamonte v. City of Mesa, 2007 WL 2022011, *4 (D.Ariz. July 10, 2007)(same).

judgment motion (Dkt 91, 91-8), Mohney owns the Deja Vu nightclubs, through Imagination Corp. and continues to play an active role in their management and in perpetuating the business policies employed.  See e.g. Exh. 14, Dkt 91-8 ("Joe Hall, Tom Simms:  Need Some Change"); Mohney Dep. at 219-227 (Exh. 1, Dkt 91-8).[11] He was involved in the decisions to try to have dancers "elect" to be independent contractors and waive their FLSA rights.  Mohney Dep. at 167-179.  He wrote sections of the manual describing the standard operating procedures for all Déjà Vu nightclubs.  Mohney Dep. at 243-44 ("I think I had some lines I probably wrote."). Mohney reviews and scrutinizes the weekly financial reports showing the "rent" income that the nightclubs derive from the dancers.  Mohney Dep. at 138-39, 145-55.  When the dancer "rent" or "average dance per customer" figures are considered substandard, Mohney writes notes questioning or scolding the nightclub's general manager.  See e.g. Financial Reports (Exh. 18, Dkt 91-8).  Defendants themselves concede that Mohney is the "head honcho" of the entire Deja Vu enterprise.  (Dkt 99).  In turn, numerous courts have already found that despite surface appearances which try to mask his involvement, Mohney actually owns and controls the operations throughout the Deja Vu enterprise, albeit indirectly.[12]

Given the facts in the record, it is simply not credible for Defendants to try to portray Mohney as a minor, role player from which "significant relief" is not sought.  At the very least his conduct falls within 29 C.F.R. § 791.2(a) and (b)(3)("...a joint employment relationship

---

[11]   For tax and licensing reasons, he placed Dynamic Industries, which holds all of the stock in DVC, Modern Bookkeeping (the company that performs all financial functions for the nightclubs) and MIC Ltd. (the company that owns the properties where the nightclubs are located) into his family trust and made a bookkeeper, the nominal trustee.  Mohney Dep. at 57-68, 77-79, 116 ("But I think part of it was licensing issues, so I gave my interest in the [Durand] Trust to the children and grandchildren." "If [convictions] debilitated me, it didn't do anything to them.").

[12]   Déjà Vu Inc. v. Commissioner, 1996 WL 270943 at *1-2 (U.S. Tax Ct.)("Donald Krontz (Mr. Krontz), who served as petitioner's president during the subject years, made all of petitioner's executive decisions in consultation with Mr. Mohney"); Mohney Dep. at 51-52 (testifying that he plead guilty to Count 1 and was convicted on the remaining count of the indictment appended to U.S. v. Mohney, 723 F.Supp. 1197, 1204 (E.D.Mich.1989)(describing how Mohney concealed his true ownership and control of numerous adult businesses, including Cin-Lan, by transferring record ownership to his nominees but continuing to "directly manage" them "under the ruse of an independent consultant.").

generally will be considered to exist in situations such as ... by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.ö).  As such, he is jointly and severally liable for any judgment.  Mohney cannot be considered anything but a öprimary defendantö and the exception in 28 U.S.C. §1332(d)(4)(B) does not apply.

      **b.**    **The "Local Controversy" exception to CAFA jurisdiction does not apply.**

The requirements for the öLocal Controversyö exception in 28 U.S.C. §1332(d)(4)(A) are not met for one simple reason: during the three years preceding the filing of this class action, another class action has been filed against Defendant DVC asserting similar allegations as the case at Bar.  Plaintiffs are aware of at least two class actions filed against DVC during that period.[13]  As the three clauses in §1332(d)(4)(A)(I-III) are öconjunctively joined,ö the failure to satisfy any one (here, §1332(d)(4)(A)(III)(ii)) is fatal to Defendantsø argument and the exception does not apply. Kearns, supra.

**F.**    **PLAINTIFF'S MWL CLAIM IS NOT "INHERENTLY IRRECONCILABLE" WITH HER FLSA CLAIM, WARRANTING DISMISSAL.**

Defendantsø final argument is that the opt-out class action mechanism applicable to Plaintifføs MWL claim under Fed.R.Civ.P. 23 is öinherently irreconcilableö with Plaintifføs FLSA claim which employs an opt-in mechanism.  This is simply not true.  Contrary to the handful of cases Defendant cite, the vast majority of courts hold that state wage and hour claims are in no manner ¬incompatibleö with FLSA claims simply due to the opt-out feature in Rule 23. See e.g. Lindsay v. Gov. Employees Ins. Co., 448 F.3d 416, 424 (D.C. 2006) (the difference between Rule 23 and 29 U.S.C. §216(b) is a ömere procedural difference...ö); Diaz v. Scores

---

[13]   See Quinec Hills v. HDV #3, Deja Vu Consulting et al., LLC Case No. BC385610 (Sup. Ct. Los Angeles County, filed February 14, 2008)(claiming that as a joint employer, DVC misclassified dancers as independent contractors, failed to pay them minimum wages and engaged in illegal tip-splitting)(Exh. 15). See also California Coalition of Undressed Performers v. Spearmint Rhino, Deja Vu Showgirls, et. al.;., CV08-04038 (C.D.Calif. filed June 19, 2008)(Exh. 16).

Holding Co., et al., No -07-8718 (S.D.N.Y. May 9, 2008)(... öThe courts in this circuit do not consider FLSA opt-in and state law opt-out class certification requirements conflicting.ö).[14]

---

[14]   See In re Farmers Ins. Exchange Claims Representatives Overtime Pay Litig., 481 F.3d 1119, 1134 (9th Cir. 2007)(discussing exemptions to the FLSA and stating that öthe purpose behind the FLSA is to establish a national floorí not to establish uniformity in minimum wage and overtime standards nationwide at levels established in the FLSAö); Freeman v. Hoffman-Laroche, Inc., 2007 WL 4440875 (D.N.J. Dec. 18, 2007)(rejecting öinherent incompatibilityö argument); Ellison, supra (öFLSA collective and Rule 23 class actions are not incompatibleö); Greene v. Robert Half Intøl, Inc., No. C05-03245 MJJ (N.D. Cal., Mar. 28, 2006)(öclaims based on opt-in procedures are not irreconcilable with pendant state claims based on Federal Rule 23 opt-out procedures.ö); Sjoblom v. Charter Communications, LLC, 2007 WL 4560541 (W.D. Wis. Dec. 19, 2007)(same); Salazar v. AgriProcessors, Inc., 527 F. Supp.2d 873, 884-885 (N.D. Iowa 2008)(same); DeKeyser v. Thyseenkrupp Waupeca, Inc. d.b.a Waupeca Foundry, Inc., 589 F.Supp.2d 1026, 1032 (E.D.Wis. 2008)(öI therefore conclude, despite the procedural differences, Plaintiffs may maintain an FSLA collective action and seek class certification of their state law claims in the same action.ö); Kasten v. Saint-Gobain Performance Plastics, 556 F.Supp.2d 941, 961-62 (W.D. Wis. 2008)(certifying Wisconsin state law class under Rule 23 alongside existing FLSA class); OøBrien v. Encotech Constr. Servs., Inc., 203 F.R.D. 346, 349-52 (N.D. Ill. 2001)(certifying Illinois wage claims under Rule 23 and FLSA claims under § 216(b)); Spoerle v. Kraft Foods Global, Inc., 2008 WL 2002221, *10 (W.D. Wis. May 6, 2008)(certifying a state law class under Rule 23 alongside a FLSA collective action); Alvarez v. IBP, Inc., 339 F.3d 894, 909-915 (9th Cir. 2003)(affirming judgment of liability under FLSA and Washington state wage laws); Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1150-51 (9th Cir. 2000)(finding that FLSA did not preempt state law claims and thus allowing simultaneous litigation of plaintiffsø FLSA and state claims); Ramirez v. RDO-BOS Farms LLC, 2007 WL 273604, *2 (D. Or. Jan. 23, 2007)(certifying a state law Rule 23 class alongside a FLSA collective action); Bahramipour v. Citigroup Global Markets, Inc., 2006 WL 449132, *5-6 (N.D. Cal. 2006)(finding öthat the UCLøs opt-out procedure does not stand as an obstacle to the congressional purpose in enacting the FLSA, as amendedö); In Re: Farmers Ins. Exchange Claims Representativesø Overtime Pay Litigation, 2003 WL 23669376, *7 (D. Or. May 19, 2003)(certifying claims under the wage and hour laws of seven separate states under Rule 23 even though FLSA claims already had been certified under § 216(b)); Chavez v. IBP, Inc., 2002 WL 31662302, *4 (E.D. Wash. Oct. 28, 2002)(certifying state wage and hour claims under Rule 23 even though FLSA claim already certified under § 216(b)); Kelley v. SBC, Inc., 1998 WL 1794379 *13-14 (N.D. Cal. Nov. 13, 1998)(certifying under Rule 23 California Labor Code claim even though plaintiffs also asserted FLSA claim and observing that ö[t]he opt-in provisions of the FLSA do not act as a complete bar to class certification under Rule 23 where pendent state claims are involvedö); Frank v. Goldøn Plump Poultry, Inc., 2005 WL 2240336, *5 (D. Minn. Sept. 14, 2005)(rejecting argument that Congressional intent precludes certification of state law class alongside FLSA class and stating öcourts routinely certify FLSA opt-in classes and Rule 23 opt-out classes in the same actionö); Lopez v. Tyson Foods, Inc., 2008 WL 3485289 (D. Neb. Aug. 7, 2008)(certifying a class pursuant to the FLSA and a state law class pursuant to Nebraska wage and hour statute); Trotter v. Perdue Farms, Inc., 2001 WL 1002448, *2-3 (D. Del. Aug. 16, 2001)(certifying a FLSA collective action and a Rule 23 action, where the broader definition of the Rule 23 class would necessarily include plaintiffs who were not included in the FLSA action); Scholtisek v. The Eldre Corp., 229 F.R.D. 381 (W.D.N.Y. 2005)(certifying both § 216(b) collective actions alleging FLSA overtime violations and Rule 23 class action alleging overtime violations under the New York Labor Law); Scott v. Aetna Services, Inc., 210 F.R.D. 261 (D. Conn. 2002)(certifying both § 216(b) collective action alleging FLSA violations and Rule 23 class action alleging violations of the Connecticut Minimum Wage Act); McLaughlin v. Liberty Mutual Ins. Co., 224 F.R.D. 304 (D. Mass. 2004)(certifying Rule 23 class action alleging violations of Massachusetts law even though plaintiffs also pursuing FLSA collective action).

Courts recognize that the FLSA does not preempt the MWL.  Rather, they are "parallel" acts that can apply simultaneously.  Zimmer, 1989 WL 223111 *3-4, n.1; Allen v. MGM, 675 N.W.2d at 909 ("This Court long ago established that the MWL parallels the FLSA."); Saginaw Firefighters Assćn, 357 N.W.2d at 911 ("the Michigan law obviously parallels the federal act.").

The Sixth Circuit in Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 501 (6th Cir. 2007) specifically recognized that FLSA claims and state claims can be certified in the same action despite the distinction in opt-in procedures. ("[W]e acknowledge that the district court conditionally certified Thomas's federal overtime claim as a collective action under 29 U.S.C. § 216(b) and her state overtime claim as a class action under Fed.R.Civ.P. 23.  FLSA collective actions require potential class members to notify the court of their desire to opt in to the action; in contrast, class actions governed by Fed.R.Civ.P. 23 require potential class members...to opt out of the action.").  Further, Michigan courts have certified claims for unpaid wages under Rule 23's opt-out provisions despite the fact the Plaintiff also asserted FLSA claims which required application of that statute's distinct opt-in procedure.  See Saur v. Snappy Apple Farms, Inc., 203 F.R.D. 281 (W.D. Mich. 2001).  Despite the fact Saur did not involve claims for unpaid wages under the MWL, but rather under Migrant and Seasonal Agricultural Worker Protection Act, the decision is nevertheless instructive here because it demonstrates that wage claims requiring out-out class certification procedures under Rule 23 are not incompatible with opt-in FLSA claims.

Defendants point to no Rule or standard by which the Court may strike claims simply for "incompatibility."  In rejecting this "incompatibility" argument, one court called it an "imaginary legal doctrine."  Westerfield v. Wash. Mut. Bank, 2007 WL 2162989 (E.D.N.Y. July 26, 2007).  As the Westerfield court held, "there is no legal doctrine, of which the Court is aware, that permits the Court to dismiss a cause of action solely on the grounds that it is -inherently incompatibleø with another action before it."  Westerfield at *7.

Moreover, Defendantsø logic is faulty.  Plaintiffćs Amended Complaint does not "effectively eviscerate" the FLSAćs opt-in requirement — Plaintiff properly brings her FLSA claims as an opt-in action. (AC ¶109)  Plaintiff invokes Rule 23 only to bring her MWL claims;

this does not offend the FLSA procedures at all.  See Ellison, 2007 WL 2701923 (N.D. Cal.) ("Plaintiff does not attempt to certify a FLSA collective class under Rule 23, but rather intends to prosecute both under their respective procedures.").

Under Defendants' logic, no state wage law claim could ever be brought as a class action. Congress, however, never intended to limit workers' rights under state laws.  To the contrary, the purpose of the FLSA is to "establish a floor under which wage protections cannot drop..." Pacific Merchants, 918 F.2d at 1425.  States are free to provide greater wage protections to their workers, subject to broader-reaching procedures.  See 29 U.S.C. § 218(a); Overnite Transp. Co., 926 F.2d at 222 ("[E]very Circuit that has considered the issue has reached the same conclusion─ state overtime laws are not preempted by the [Motor Carrier Act] or the FLSA."). As the Court in Salazar, 527 F.Supp.2d at 885 (N.D.Iowa, 2007) concluded:

> Since 1947, Congress has done nothing to add language to the FLSA to expressly prohibit the exercise of supplemental jurisdiction over claims based on state wage and hour laws... Congress has refrained from enacting a law which provides for FLSA preemption of this state counterpart.... The court is well-equipped to manage a case involving a FLSA collective action and a state-law class action.... Other district courts have proceeded well beyond the stage of exercising supplemental jurisdiction and have certified both FLSA collective actions and Rule 23 classes involving claims of violations of state wage payment collection laws.  (citations omitted).

For these same reasons, Plaintiff's MWL claims are not preempted or subject to dismissal.  There is simply no conflict or incompatibility between the FLSA and MWL that would permit the Court to make the conclusions Defendants seek.

### IV.  CONCLUSION

For all of the foregoing reasons, Defendants' motions to strike, for summary judgment and/or to dismiss Plaintiff's collective and class claims should be denied in their entirety.

**ZIMMERMAN REED, P.L.L.P.**

Dated: February 19, 2010

/s/ Hart L. Robinovitch
Hart L. Robinovitch, AZ Bar No. 020910
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ  85254
Telephone:    (480) 348-6400
Facsimile:     (480) 348-6415
Email:   Hart.Robinovitch@zimmreed.com

20

Jason J. Thompson (P47184)
SOMMERS SCHWARTZ, P.C.
2000 Town Center, Suite 900
Southfield, Michigan 48075
Telephone:     (248) 436-8448
Facsimile:      (248) 436-8453
Email:  jthompson@sommerspc.com

Timothy J. Becker, MN Bar No. 256663
ZIMMERMAN REED, P.L.L.P.
651 Nicollet Mall, Suite 501
Minneapolis, MN  55402
Telephone:     (612) 341-0400
Facsimile:      (612) 341-0844
Email:   Timothy.Becker@zimmreed.com

**Counsel for Plaintiff Jane Doe**

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2010, I served the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO STRIKE AND/OR FOR SUMMARY JUDGMENT ON PLAINTIFF'S COLLECTIVE AND CLASS CLAIMS AND/OR TO DISMISS** with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Jason J. Thompson, Hart L. Robinovitch, Timothy J. Becker, Walter J. Piszczatowski, Allan S. Rubin, Christina A. Daskas, Edith A. Thomas, Kristin Beals Bellar, Ronald A. King, and Paul W. Coughenour.

/s/      Stacy A. Bethea, C.P.
ZIMMERMAN REED, PLLP
14646 N. Kierland Blvd., Suite 145
Scottsdale, Arizona  85254
Telephone: 480-348-6400
Facsimile: 480-348-6415
Email: Stacy.Bethea@zimmreed.com