UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE, individually, and on behalf
of all others similarly situated,

    Plaintiff,

v.

CIN-LAN, INC.;
DEJA VU CONSULTING, INC.;
and HARRY V. MOHNEY,

    Defendants.
_____/

Case No. 08-cv-12719

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING, IN PART, PLAINTIFF'S
MOTION TO DISMISS AMENDED COUNTERCLAIM** (docket no. 107)

In this action Plaintiff Jane Doe, an exotic dancer, has sued her Defendants Cin-Lan, Inc., Deja Vu Consulting, Inc., and Harry Mohney (collectively referred to as "Cin-Lan") for violations of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and Michigan Minimum Wage Law of 1964 ("MWL"), Mich. Comp. Laws §§ 408.381 *et seq.* Doe claims that while employed, Cin-Lan failed to pay her a minimum wage, unlawfully retained a portion of her tips, failed to maintain records of her employment, and constructively fired her in retaliation for asserting her rights.

Cin-Lan has filed what it asserts is a compulsory counterclaim under Fed. R. Civ. P. 13(a). Docket no. 70. The counterclaim contains three individual counts:1) breach of contract, 2) unjust enrichment (alternatively); and 3) accounting. The breach of contract and unjust enrichment claims both seek an offset of the amounts it may be ordered to pay Doe by an amount it claims it allowed Doe to keep as a result of electing to be classified as an independent contractor. These two counts are contingent on Doe succeeding on her

1

FLSA and MWL claims, and seek only to prevent a windfall to Doe in that event. Cin-Lan's accounting claim seeks an accounting of all dance fees, dance tips, and any other compensation or benefits Doe received as a result of her performances at Cin-Lan. For the reasons stated below, the Court will grant the motion, in part, and dismiss Cin-Lan's counterclaim for an accounting.

## GENERAL FACTUAL ALLEGATIONS

The following relevant facts are alleged in Cin-Lan's counterclaim. Additional facts relevant to the specific counts are set forth in the analysis below.

Doe is a professional entertainer who performed as an exotic danger at Cin-Lan's business on various occasions in 2007 and 2008. Counterclaim ¶ 3. Cin-Lan offers its entertainers the opportunity to perform as an entertainer employee or, alternatively, as an independent contractor pursuant to a written contract called a Dancer Performance Lease ("Lease"). *Id.* ¶ 6. Through her actions, Doe represented to Cin-Lan that she agreed to the financial arrangement agreed to between the parties in the Lease, whereby she would retain a substantial portion of the mandatory dance fees paid by customers for individual dances, and pay to Cin-Lan a portion of the dance fees in the form of rent. Doe would also be entitled to retain all amounts paid over and above the mandatory dance fees in the form of tips. *Id.* ¶¶ 8, 10, 13. At all times Doe adopted a pattern and practice of non-employee conduct. *Id.* ¶ 17.

During each of Doe's performance dates, there was a mandatory, fixed and posted dance fee charged to patrons for individual dances. Patrons were permitted, at their discretion, to give a dancer a tip over the mandatory dance fee. Doe performed individual dances for patrons and collected the dance fee for each performance. Cin-Lan maintained

2

records concerning the number of dances and the price of dances performed, creating a record of the amounts Doe collected for dance fees, exclusive of tips she received. *Id.* ¶¶ 12-15.

During each of Doe's performance dates, she collected dance fees far in excess of the minimum wage, including at times, upwards of $75 per hour, exclusive of tips. In accord with her agreement with Cin-Lan, Doe retained a portion of the proceeds from individual dance fees and retained all of her tips. She agreed to an accounting of her collected dance fees and signed receipts generated by Cin-Lan at the end of each performance date, indicating her consent terms of the agreement outlined above. *Id.* ¶¶ 16, 18-21.

Doe has repudiated that agreement and now seeks to retain *all* monies she received in the form of dance fees, seeks to have the dance fees reclassified as "tips," seeks return of all rents paid, and seeks an hourly wage in addition to the substantial fees she retained under the terms of the agreement. *Id.* ¶ 23. Cin-Lan has abided by the terms of its agreement. *Id.* ¶ 24. At no time prior to filing her complaint did Doe advise Cin-Lan or in any way claim entitlement to any of the rights provided by the FLSA or MWL. *Id.* ¶ 25. After financially benefitting from the agreement with Cin-Lan, and representing to Cin-Lan that she wanted to be paid according to the parties' agreement, Doe now seeks payment of additional money and other benefits for all times that she performed as an entertainer at Cin-Lan's business. *Id.* ¶ 26.

### DISCUSSION

I. <u>Legal Standard - Motion to Dismiss under Rule 12(b)(6)</u>

"[W]hen the allegations in a complaint, however true, could not raise a claim of

entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citations omitted). Accordingly, Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *See Minger v. Green*, 239 F.3d 793, 797 (6th Cir. 2001) (citations omitted).

In assessing a Rule 12(b)(6) motion, a court must presume as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences from those allegations in favor of the non-moving party. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). A court may consider only the complaint and any written instruments attached as exhibits to the complaint. Fed. R. Civ. P. 12(b)(6) & 10(c). Although the pleading standard is liberal, and the court must accept as true all allegations in the complaint, the Court need not accept as true any legal conclusion alleged therein, even if couched as a factual allegation. *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1945 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a). This standard requires the claimant only to put forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the requisite elements of the claim]." *Bell Atl.*, 550 U.S. at 556. Thus, although "a complaint need not contain 'detailed' factual allegations, its '[f]actual

4

allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl.*, 550 U.S. at 555). Therefore, the Court will grant a motion to dismiss pursuant to Rule 12(b)(6) only in cases where there are simply not "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*, 550 U.S. at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

II. Analysis

Doe argues that all three counts in Cin-Lan's counterclaim should be dismissed for failure to state a claim. The Court will address each count in turn.

    A. Breach of Contract

Cin-Lan's counterclaim for breach of contract alleges that Doe has sought to nullify and/or repudiate her contract with Cin-Lan by claiming entitlement to the entire proceeds of her dance sales, an employee hourly wage, and return of her rent, all in breach of her agreement with Cin-Lan. Counterclaim ¶ 31. Doe has also refused to return the portion of the dance sales she was allowed to keep or allow an offset against her wages in the event she is deemed an employee, claiming that all the dance fees she retained were "tips." *Id.* ¶ 33. Cin-Lan requests that in the event the fact-finder determines Doe is an employee entitled to a minimum wage, the monies she is to receive as an award in this action should be reduced to the extent she retained dance fees that belong to Cin-Lan. *Id.* ¶ 34. That is, Cin-Lan requests return of the dance fees it allowed Doe to retain. The Court finds that

5

Cin-Lan has stated a valid breach of contract claim and will not dismiss the count for failure to state a claim.

Doe makes several arguments in support of dismissing the breach of contract count for failure to state a claim. The Court rejects these arguments and will address each in turn.

1. *Doe Argues the Entire Lease is Void as a Matter of Law*

Doe argues the breach of contract count must be dismissed because the Lease upon which it is based is void as violative of the FLSA and MWL. Specifically, Doe argues that the Lease purports to allow Doe to contract out of her "employee" status and into an "independent contractor" status, allowing Cin-Lan to dispense with the minimum wage requirement under the FLSA and MWL. Generally, an employee may not waive or "contract away" the protections afforded them under the FLSA. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate.") (internal quotation marks omitted); *cf. Imars v. Contractors Mfg. Servs., Inc.*, 165 F.3d 27, *5 (6th Cir. August 24, 1998) (unpublished table decision) ("[i]t makes very good sense to reject contractual intention as a dispositive consideration in our analysis [of whether the plaintiff is an employee]. The reason is simple: The FLSA is designed to defeat rather than implement contractual arrangements.") (internal quotation marks omitted). Rather, it is the economic realities of the relationship, rather than the labels the parties attach to the relationship, that determines the applicability of the FLSA. *See Donovan v. Brandel*, 736 F.2d 1114, 1116 (6 th Cir. 1984).

6

Cin-Lan counters that the Lease is valid to the extent it does not violate the FLSA or MWL and that any provision that does not violate the federal or state law is valid and should be enforced. This may include the provision defining Doe as an independent contractor in the event the Court finds Doe is properly considered an independent contractor. Any portion of the Lease that contravenes the FLSA or MWL, however, can and should be severed from the remainder of the agreement.

Specifically, Cin-Lan seeks to enforce paragraph 11 and subparagraphs 12(B), and 12(C). Read together, these provisions require that if the Court finds Doe to be an employee (¶ 12(C)), then the mandatory dance fees, which the Lease provides are the exclusive property of Cin-Lan (¶ 11), will be collectible in their entirety by Cin-Lan (¶ 12(B)) and Doe would receive her minimum wage reduced by any applicable tip credit. Subparagraph 12(C) also provides that if it is determined that Doe is entitled to a minimum wage, in order to prevent Doe's unjust enrichment, the parties agree that Doe will return all dance fees earned and retained by Doe while the parties treated Doe as an independent contractor.

In addition to terms of the Lease providing for alternative treatment in the event Doe is later found to be an employee, the Lease also contains a severability clause that indicates the parties' intent to enforce any provisions not found to be illegal or unenforceable. *Id.* ¶ 19. The clause contains an exception: "severability shall not apply, however, to the circumstance of a judicial, arbitration, or administrative determination that the business relationship between Entertainer and Club is something other than that of landlord and tenant, which shall be controlled by the provisions in subparagraph 12(C)." This exception indicates that parties' intent that in the event subparagraph 12(A)

7

(characterizing Doe as an independent contractor rather than an employee) is found to be void and is severed from the rest of the contract, subparagraph 12(C) still applies and should not be severed from the Lease.

Doe argues in response that the unlawful provisions go to the heart of the Lease and, as a result, void the entire Lease.[1]  Pl. Rep. Br. 3 ("Once the illegal provisions of the contract are severed, there is nothing left."). Because the entire Lease is void, Doe argues, the breach of contract claim should be dismissed for failure to state a claim. The Court disagrees. While the Court need not decide at this juncture whether the allegedly invalid provisions of the Lease should be severed from the Lease,[2] with the remainder of the

---

[1] Doe contends the central terms in the contract are found in paragraph 12, titled "Business Relationship of the Parties", which provides at subparagraph A:

> The parties acknowledge that the business relationship created between the Club and Entertainer is that of a landlord and tenant for the joint and non-exclusive leasing of the Premises ... and that this relationship is a material (meaning significant) part of this Lease.  THE PARTIES SPECIFICALLY DISAVOW ANY EMPLOYMENT RELATIONSHIP BETWEEN THEM and agree that this lease shall not be interpreted as creating an employer/employee relationship or any contract for employment. <u>ENTERTAINER UNDERSTANDS THAT THE CLUB WILL NOT PAY HER ANY WAGE (WHETHER HOURLY OR OTHERWISE), OVERTIME PAY, EXPENSES, OR OTHER EMPLOYEE-RELATED BENEFITS.</u>

The Court notes that Cin-Lan's attempt to characterize the relationship between it and Doe is not, simply by its attempt to do so, repugnant to the FLSA.  What makes the provision unenforceable, rather, is that it is the economic reality of the relationship, rather than the labels the parties place on their relationship, that determines "employee" status. *Cf. Donovan v. Tehco*, 642 F.2d 141, 143 (5th Cir. 1981) ("In deciding whether an individual is an 'employee' within the meaning of the FLSA, the label attached to the relationship is dispositive only to the degree that it mirrors the economic reality of the relationship."). Therefore, the Lease provision will only be unenforceable if the Court determines, based on the economic realities, that Doe is an employee rather than an independent contractor. And only in that event will the Court be required to take up severance.

[2] Cin-Lan's claim for breach of contract is contingent upon Doe succeeding in the main action.  The breach of contract claim, therefore, may be a non-issue in the event Doe

Lease fully enforced, the Court considers the law on severance and concludes that in the event Doe is successful in her FLSA and MWL claims, Cin-Lan has alleged sufficient facts to support it claim of breach of contract and related argument for severance.

Under Michigan law, if a void section of a contract is an essential part of the contract, severing the void portion is not possible and the entire contract is unenforceable. *Robinson v. A.Z. Shmina and Sons Co.*, 96 Mich. App. 644, 649 (1980); *cf. Samuel D. Begola Servs., Inc. v. Wild Bros.*, 210 Mich. App. 636, 641 (1995) ("Failure of a distinct part of a contract does not void valid severable provisions."). The primary consideration in severance is the intent of the parties. *Prof'l Rehab. Assoc. v. State Farm Mut. Auto. Ins. Co.*, 228 Mich. App. 167, 174 (1998).

Here, Cin-Lan's counterclaim alleges the parties agreed that if there was ever a legal determination that their business relationship was in fact an employment relationship, then the alternative provisions of the Lease would apply to define the parameters of that relationship. The counterclaim alleges that Doe agreed to such an arrangement. Counterclaim ¶¶ 7-9. The Lease's severability clause also demonstrates the parties' intent to such an arrangement. The provisions of the Lease setting out the parameters of the employment relationship (¶ 11, 12(B), 12(C)), do not appear on their face to violate the FLSA or MWL. Accordingly, Cin-Lan has alleged sufficient facts to demonstrate a plausible claim for relief based on the Lease in the event Doe succeeds in the main action.[3]

---

loses in the main action. The result of these propositions is that the argument for severance of the contract need only be considered and resolved in the event Doe is successful. The Court will not determine the severance issue before it is necessary to do so.

[3] Doe contends that the provisions outlining the parameters of the employment relationship also violate the FLSA. Doe refers primarily to paragraph 11 ("Entertainment

### 2. *Doe Argues Cin-Lan Cannot Plead A Contract Claim Because it has Suffered no Injury*

Doe claims that Cin-Lan cannot allege that it has suffered any injury or harm as a result of Doe's conduct, a requisite element of any claim for breach of contract. It claims that any injury is contingent upon Doe succeeding in the main action. Therefore, Doe argues, Cin-Lan's breach of contract claim must fail as a matter of law for lack of specific injury. The Court disagrees with this conclusion. The law permits contingent counterclaims. Indeed, the failure of a counter-claimant to allege a counterclaim, when compulsory, may foreclose the claimant from asserting the claim after the close of the main action. Professors Wright and Miller have summarized this area of the law: "A counterclaim will not be denied treatment as a compulsory counterclaim solely because recovery on it depends on the outcome of the main action. This approach seems sound when the counterclaim is based on pre-action events and only the right to relief depends on the outcome of the main action." 6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Fed. Practice and Procedure* § 1411 (2d ed. 2009) (footnotes omitted). The Sixth Circuit has further indicated that if the counterclaim meets the requirement of being "compulsory" under Fed. R. Civ. P. 13(a), it must be brought in the main action regardless of whether the counter-claimant's right to relief depends on the outcome in the main action. *See Kane v. Magna Mixer Co.*, 71 F.3d 555, 562 (6th Cir. 1995). The court in *Kane* noted that

---

Fees") and argues that the dancer fees are "tips" under the FLSA such that Doe could not "contract away" her tips. Pl. Br. pp.12-13. Whether the dance fees are tips, however, is a disputed issue. For purposes of deciding a motion to dismiss, it must be accepted that they are not tips, but mandatory service fees collectible by the employer. If the Court later determines the dance fees are "tips," and not the property of Cin-Lan, then paragraph 11 of the Lease would violate the FLSA and be unenforceable. But at this stage, the Court must accept that they are service fees and the property of Cin-Lan.

permitting a counter-claimant to hold its counterclaim in the wings, despite the assertion of a related claim by the original claimant would result in piecemeal litigation and a waste of resources. *Id.*

In this case, Cin-Lan's breach of contract counterclaim is compulsory because it arises out of the same transaction or occurrence that is the subject matter of Doe's claim, and existed at the time Doe filed her amended complaint. This makes the claim compulsory even if Cin-Lan's *right* to relief did not arise at that time. *See* Fed. R. Civ. P. 13(a). Furthermore, if Cin-Lan did not bring its counterclaim in this action, Cin-Lan might risk being permanently barred from bringing the claim against Doe in a later action. *See, e..g., McConnell v. Applied Performance Techs., Inc.*, 98 Fed. Appx. 397, 398-99 (6th Cir. 2004) (unpublished) (affirming grant of summary judgment on employee's FLSA claims based on res judicata because the employee's claims were compulsory counterclaims required to have been brought in earlier action based on overpayment of employee). The Court will allow Cin-Lan's compulsory counterclaims even though Cin-Lan's right to relief is contingent on the outcome of the main action.

3. *Doe Argues Cin-Lan is not entitled to a Set-Off*

Doe next argues that Cin-Lan is not entitled to a set-off against the amount it may owe Doe for past minimum wages because Cin-Lan did not satisfy the prerequisites for paying an employee a reduced minimum wage under 29 U.S.C. § 203(m) and Mich. Comp. Laws § 408.387a. These prerequisites apply when an employer seeks to pay a reduced minimum wage because the employee is a "tipped employee." The right to pay a reduced minimum wage, however, is not the relief Cin-Lan seeks in its counterclaim for breach of contract. Rather, Cin-Lan seeks the return of the portion of the dance fees Doe retained.

11

*See* Counterclaim ¶ 34 ("In the event there is a determination that Doe is entitled to minimum wage ... the monies she received as dance fees should be offset against her claim of entitlement to hourly wages ..."); *Id.* ¶ 36 ("Cin-Lan is entitled to an award of damages against Doe, in an amount equal to the proceeds from dance sales retained by Doe as a result of her performing at Cin-Lan..."). Therefore, Doe's argument that Cin-Lan cannot pay Doe a reduced minimum wage is not relevant to the question at issue here: whether Cin-Lan has sufficiently pleaded that it is entitled to a return of its dance fees.

Doe also argues that Cin-Lan's claim for offset must fail because the money Doe received directly from customers for private dances did not first enter into Cin-Lan's gross receipts. Doe argues that in order for a fee retained by the employee to be considered a "service charge" and considered property of the employer, the fee must first come into the employer's gross receipts, and then later be paid to the employee. Doe cites to 29 C.F.R. § 531.55(b) for support. This regulation states that, "services charges and other similar sums which become part of the employer's gross receipts are not tips for purposes of the act. However, where such sums are distributed by the employer to his employees , they may be used in their entirety to satisfy the monetary requirements of the Act." 29 C.F.R. § 531.55(b). Again, Doe's argument aims at defeating a claim Cin-Lan is not making in its counterclaim, i.e., whether it may ultimately pay Doe a reduced minimum wage. As stated above, Cin-Lan's claim is for return of a portion of the dance fees it allowed Doe to keep. Cin-Lan has alleged facts sufficient to show that in the event Doe is entitled to a minimum wage as an employee, Cin-Lan may be entitled to a return of its dance fees.

Even were the dance fees to have been required to enter into Cin-Lan's gross receipts in order for Cin-Lan to seek their return, as Doe argues, the Court must assume,

12

on a motion to dismiss, that the fees did in fact enter into Cin-Lan's gross receipts. This assumption is reasonable given the existence of sample receipts, attached to Cin-Lan's to its counterclaim, which seem to demonstrate that Cin-Lan did in fact account for Doe's nightly receipt of dance fees. This may demonstrate that the fees entered into Cin-Lan's gross receipts. Counsel for Cin-Lan also indicated at the hearing that dance fees likely were included in the gross receipts for Cin-Lan. Accordingly, even were the Court to accept Doe's legal argument about the necessity of the fees entering Cin-Lan's gross receipts, which it does not, Doe's argument fails since the Court must assume the dance fees entered into Cin-Lan's gross receipts.[4]

For the reasons stated above, the Court will deny Doe's motion to dismiss Cin-Lan's counterclaim for breach of contract.

B. Unjust Enrichment

Cin-Lan's counterclaim for unjust enrichment is pleaded as an alternative to its breach of contract claim. Cin-Lan argues that if the Court decides that certain provisions of the Lease later found to be void invalidate the entire Lease and cannot be severed, the Court should prevent Doe's unjust enrichment and prevent her from retaining a portion of the dance fees rightfully the property of Cin-Lan. That is, if there is no valid agreement between the two, and the dance fees are determined to be service charges, rightfully the property of Cin-Lan, and not tips, an action in unjust enrichment will be the vehicle for

---

[4] Doe also argues that Cin-Lan's counterclaim must be dismissed because the claim is essentially one for indemnification or contribution, which the FLSA and MWL do not permit. The Court declines to adopt Doe's characterization of Cin-Lan's claims. Cin-Lan does not suggest that Doe shares fault in any potential FLSA violation, as the case would be were Cin-Lan seeking indemnity or contribution. Rather, Cin-Lan is merely attempting to obtain what it believes it is entitled to in the event the relationship between it and Doe is deemed one of employment rather than contract.

recovering the dance fees. If, however, the Court finds that the Lease lawfully covers the subject matter of the dance fees then the unjust enrichment claim will be denied. *See Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375 (1993) ("[A] contract will be implied only if there is no express contract covering the same subject matter.").

Cin-Lan has sufficiently pleaded an action for unjust enrichment. A claim for unjust enrichment requires: 1) receipt of a benefit by the defendant from the plaintiff and 2) an inequality resulting to the plaintiff because of the retention of the benefit by the defendant. *Id.* Cin-Lan alleges that Doe has received a benefit in the form of a portion of the dance fees she collected for Cin-Lan, and it would be inequitable for her to be entitled to a minimum wage *and* be allowed to retain the dance fees. Counterclaim ¶ 40. The validity of this claim, as with the breach of contract claim, will ultimately require a determination of the nature of the dance fees. To recover on the counterclaims, Cin-Lan ultimately must establish the dance fees are mandatory service charges, not tips. At the pleading stage, however, Cin-Lan has sufficiently pleaded a claim for unjust enrichment and the Court will deny Doe's motion to dismiss the claim.

C. Accounting

Cin-Lan seeks an accounting of all dance fees, tips, and any other compensation or benefits Doe received as a result of her performances at Cin-Lan. Counterclaim ¶ 49. The amount of tips Doe received over and above the dance fees patrons paid her is solely in her possession and is relevant because: 1) it bears on whether the dance fees should be perceived as a "service charge" rather than a "tip" 2) tips may be used to partially offset any wages due; 3) the IRS requires taxes to be withheld based on reported tips. Cin-Lan claims that Doe's methods of accounting for all dance fees, tips, and other compensation

not reported to Cin-Lan nightly will be too difficult and complex to ascertain through interrogatories and depositions.

Doe's objects to an accounting, claiming it was Cin-Lan's duty, not Doe's, to maintain such data. Accordingly, Doe argues, Cin-Lan cannot seek an accounting of the amounts. The weakness in Doe's argument, however, is that even if Doe is considered an employee, to the extent Cin-Lan seeks information about tips Doe received, Cin-Lan had no duty to keep records of tips. The FLSA and MWL require the employer keep records only of the number of hours worked and the wages paid. 29 U.S.C. § 211(c); Mich. Comp. Laws § 408.391. Doe's tips, however, are relevant for the reasons Cin-Lan stated above and the only person with that information is Doe.

The relevance of the information, however, does not require that Cin-Lan be entitled to an accounting. An action for accounting is equitable in nature. *Boyd v. Nelson Credit Centers, Inc.*, 132 Mich. App. 774, 779 (1984). "An accounting is unnecessary where discovery is sufficient to determine the amounts at issue." *King v. Bank of Am. Corp.*, No. 09-12481, 2009 WL 2960425, *2 (E.D. Mich. Sept. 11, 2009) (quoting *Boyd*, 132 Mich. App. at 779). Cin-Lan must allege facts to demonstrate why an accounting, as opposed to ordinary discovery devices, are necessary. The counterclaim alleges:

> 46. Even with the opportunity to engage in liberal discovery, CIN-LAN cannot reasonably be expected to ascertain complete financial information that was in part in the sole possession of DOE, that was not otherwise reported to CIN LAN by DOE, involved approximately a one-year period, and that would require substantial re-creation of events of such a nature that it would be too complex to unravel through a series of interrogatories or through a thorough examination of DOE's memory during a deposition.
>
> 47. A jury would likewise be incapable of re-creating the total income earned by DOE from her dance sales and tips under the circumstances outlined above and to thereafter come to a just conclusion as to the actual

15

financial and other benefits DOE received through her performances at CIN-LAN.

Counterclaim ¶¶ 46, 47.

These paragraphs are the opinions and conclusions of Cin-Lan and not entitled to the presumption of truth on a motion to dismiss. *See Iqbal*, 129 S. Ct. at 1945. The factual allegations in Cin-Lan's counterclaim "'do not support an inference that the transactions at issue are so complex that ordinary discovery procedures would be inadequate.'" *Thomas v. City of Detroit*, No. 06-10453, 2007 WL 674593, *12 (E.D. Mich. Feb. 28, 2007) (quoting *Boyd*, 132 Mich. App. at 779-80). The allegations in the complaint do not demonstrate *why* Doe's method of accounting is so complex that Cin-Lan could not obtain the information through ordinary discovery devices. Cin-Lan has not alleged a plausible claim for accounting. Accordingly, Doe's motion to dismiss Cin-Lan's counterclaim for an accounting will be granted and the accounting claim will be dismissed.

## CONCLUSION AND ORDER

For the reasons stated above, the Court will retain Cin-Lan's counterclaims for breach of contract and unjust enrichment, and will dismiss its accounting claim.

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff Doe's Motion to Dismiss Cin-Lan's Amended Counterclaim (docket no. 107) is **GRANTED in part,** in that Cin-Lan's counterclaim for an Accounting (Count III) is **DISMISSED.**

**SO ORDERED.**


s/Stephen J. Murphy, III

STEPHEN J. MURPHY, III
United States District Judge

Dated: February 24, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 24, 2010, by electronic and/or ordinary mail.

                        s/Alissa Greer
                        Case Manager