**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **JANE DOE,** *et al* individually, and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 2:08-CV-12719 |
| v. | Honorable Stephen J. Murphy III<br>Magistrate Judge Michael J. Hluchaniuk |
| **CIN-LAN, INC.,** *et al,* | |
| Defendants. | |

<u>RELEASE AND SETTLEMENT AGREEMENT</u>

**I.     INTRODUCTION**

1.1     This Release and Settlement Agreement ("Agreement") is entered into between the Jane Does Nos. 1-4 on behalf of themselves and all others similarly situated (collectively referred to as "Plaintiffs"), and Defendants Cin-Lan, Inc. (hereafter "Cin-Lan"), Deja Vu Consulting, Inc. (hereafter "Consulting"), and Harry V. Mohney (hereafter "Mohney"), along with all of the additional Deja Vu-Affiliated Entities[1] identified on Exhibit A attached hereto and incorporated by reference (Cin-Lan, Consulting, Mohney, and the Deja Vu Affiliated Entities are collectively referred to in the balance of this Agreement as the "Defendants").  This Agreement settles collective claims brought pursuant to the provisions of the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.* -- the "FLSA") and class action claims under various state wage laws pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). Upon execution of this Agreement, Final approval of it by the Court, and the Judgment becoming Final, it is the express intent of the

---

[1] Capitalized terms and phrases contained in this Introduction and in the Recitals portion of this Agreement are specifically defined in Section III herein or elsewhere in this Agreement.

Parties to resolve all claims which were brought, or which could have been brought, by the Plaintiffs, by all "opt-in" Class Members who file a consent to join the Action, and by all persons who are members of the Rule 23 Settlement Class and who have declined to opt-out of the Settlement as set forth in this Agreement. The Settlement shall become effective upon the date that the Judgment becomes Final and will then be a full, final and binding settlement agreement.

## II.   <u>RECITALS</u>

2.1     On June 25, 2008, Plaintiff Jane Doe 1 filed suit in the United States District Court for the Eastern District of Michigan, Southern Division, Case No. 2:08-cv-12719, alleging that she and all entertainers who Performed at Cin-Lan and/or at eight (8) other Deja Vu-Affiliated Nightclubs in Michigan were misclassified as independent contractors by their alleged employer, Cin-Lan, and also by Consulting, and contending that Consulting was a joint employer of all the Michigan Deja Vu-Affiliated Nightclubs.  Plaintiff Jane Doe 1 claimed that the alleged misclassification resulted in her sustaining certain losses, including not being paid minimum wages, being subjected to impermissible tip sharing, and not being provided other employee benefits, all of which she contended was actionable under the FLSA and the Michigan Minimum Wage Act ("MWL").  Subsequent to the filing of Jane Doe 1's initial complaint, the complaint was amended to add Harry V. Mohney as a Defendant. (*See* Docket No. 38). Plaintiffs intend to file a Second Amended Class Action Complaint ("SAC") that more fully sets out the alleged facts, specific legal bases, and nationwide character and scope of the claims included in this Agreement and in the underlying Settlement. This Action is assigned to the Hon. Stephen J. Murphy, III.

2.2     Defendants have vigorously contested the joint employer allegations as well as the misclassification claims asserted by Plaintiff Jane Doe 1, and filed Counterclaims against her

and against the putative class for, among other things, breach of contract, fraud and unjust enrichment.

2.3    To date, seven (7) substantially similar lawsuits and three (3) state labor claims (hereinafter "the Pending Proceedings"), all alleging that entertainers performing at Deja Vu-Affiliated Nightclubs were misclassified as independent contractors or as non-employees, have been filed naming various individuals and entities as defendants, including Consulting, Mohney and many of the Deja Vu-Affiliated Nightclubs. These include:

(1)    *Arfat v Deja Vu North Hollywood* (Los Angeles Superior Court, Case No. BC367362), filed March 5, 2007;

(2)    *Hills v Deja Vu City of Industry* (Los Angeles Superior Court, Case No. BC 385610), filed February 14, 2008;

(3)    *Trauth v Deja Vu City of Industry* (Los Angeles Superior Court, Case No. BC 427315), filed December 4, 2009;

(4)    *Doe v Pacers/Hustler San Diego* (San Diego Superior Court, Case No. 37-2009-00097991-CU-OE-CTL), filed September 24, 2009 (dismissed without prejudice);

(5)    *Doe v CBDM* (Deja Vu Kearney Villa)  (San Diego Superior Court, Case No. 37-2009-00097992-CU-OE-CTL), filed September 24, 2009;

(6)    *Doe v Deja Vu Showgirls* (Déjà Vu Midway) (San Diego Superior Court, Case No. 37-2009-00097990-CU-OE-CTL), filed September 24, 2009;

(7)    *Blunt v. Deja Vu Showgirls of Las Vegas, LLC*, Case No.  A-09-603563-C Dept. 25 Clark County Nevada District Court), filed February 25, 2010;

(8)    *Corbin v BT California LLC*, State Case No. 11-39860-CT, California Division of Labor Standards Enforcement ("DLSE"), filed August 9, 2010;

(9)    *Corbin v. Gold Club SF, LLC*, State Case No. 11-39859-CT, California Dept. Industrial Relations, Division of Labor Standards Enforcement ("DLSE"), filed August 9, 2010; and

(10)    *Handelman v. Gold Club SF, LLC*, State Case No. 11-39926-CT, California Dept. Industrial Relations, Division of Labor Standards Enforcement ("DLSE"), filed August 17, 2010.

As used herein, the phrase "Pending Proceedings" shall also refer to any similar labor/employment claims filed or initiated against any of the Defendants prior to the Effective Date.

2.4     Class Counsel has obtained, through their own investigation, formal and informal discovery, information regarding Defendants' policies and practices regarding the putative class' activities at the Deja Vu-Affiliated Nightclubs, the Dancer Contracts or other agreements executed between those establishments and Entertainers, and information concerning the number of Class Members who Performed at the Deja Vu-Affiliated Nightclubs.

2.5     Class Counsel have engaged in extensive arms-length negotiations with Defendants' Counsel with a view toward achieving substantial benefits for the Members of the Settlement Class while avoiding the cost, delay and uncertainty of further litigations, trials, and appellate review.

2.6     During the course of the negotiations, and since this Action was filed, Defendants asserted, and continue to assert, that they have substantial defenses to the claims brought by the Plaintiffs and by the putative class.  Plaintiffs, for their part, dispute the validity of these defenses.  These defenses include, but are not limited, to the following:

    2.6.1   Entertainers are properly classified as non-employees because, among other things, they perform if, when, where and for whom they choose; they are not paid by the hour; they are not terminable at will; they control their profits and losses; they must exercise independent initiative in order to successfully engage in their professional occupation; they perform at other businesses; they intended to be independent contractors and/or non-employees; and they specifically rejected employment status when offered to them;

2.6.2   Defendants' policies and practices with respect to treating the Entertainers at the Clubs as independent contractors and/or as non-employees comply with industry standards, and the applicable agreements signed by the Entertainers are clear and unambiguous, and are not unlawful, unfair, deceptive, fraudulent, misleading, or wrongful in any way;

2.6.3   Entertainers make more money as independent contractors or as non-employees than they would as employees, and after offset of non-tip monies paid to the Entertainers pursuant to their contract arrangements, the Entertainers would not be entitled to any compensation, damages or restitution;

2.6.4   Joint employer liability cannot be imposed upon the Defendants;

2.6.5   There is substantial case law supporting the legal argument that mandatory dance fees are not "tips," and it is likely that this defense would establish that all Class Members earned far more than minimum wage, exclusive of tips, thereby negating any claims for monetary remuneration or damages;

2.6.6   This and/or other actions may be subject to binding arbitration;

2.6.7   A finding of "willfulness," and therefore liquidated damages or other penalties, cannot be sustained because, among other things, the Deja Vu-Affiliated Nightclubs have obtained rulings which hold that classifying Entertainers as independent contractors or as non-employees was both appropriate and "reasonable" under the law, and have obtained jury and administrative rulings holding that Entertainers were not in fact "employees" under the methods of operation at issue herein.

As such, Defendants deny applicability of the joint employer allegations as well as any and all claims of wrongdoing or liability that were asserted, or could have been asserted, by the Plaintiffs in the Action.  Defendants' decision to enter into this Agreement and to consent to class treatment of Plaintiffs' claims shall not be construed as any form of admission of liability. Rather, all liability is expressly disclaimed.

2.7    Notwithstanding their differing view on the merits of the various claims and counterclaims in this Action, and in measured consideration of the forgoing and as a consequence of the negotiations between the Parties and of Class Counsel's investigation, analysis, and discovery, the Parties agree to settle the Action under the terms and conditions memorialized in this Agreement, believing such Settlement to be fair, reasonable, adequate, and in the best interests of the Class and the general public.

**NOW THEREFORE,** in consideration of the foregoing and of the promises and mutual covenants contained herein, and other good and valuable consideration, it is hereby agreed, by and among the undersigned Parties, as follows:

## III.    DEFINITIONS

As used in this Settlement Agreement and the attached exhibits, the following words and phrases shall have the following meanings:

3.1    "Administrative Costs" means all administrative costs of settlement, including, but not limited to, Class Notice, mailing of the Class Notice, web site and claims administration, and any other reasonable fees and costs incurred or charged by a jointly approved Settlement Administrator in connection with the execution of his/her/its duties under this Agreement.

3.2    "Agreement" means this Release and Settlement Agreement, with exhibits.

6

3.3    "Attorneys' Fees" means the amount of money that Class Counsel or any other attorney receive either directly from Defendants, as a portion of the Rent Credits as described in this Agreement, or through an Order of the Court, to compensate them for their work in this Action and/or in the Pending Proceedings.

3.4    "Award" has a meaning as found in Section 11.3.

3.5    "Cash Payment" means the amount of money to be paid pursuant to the terms of this Agreement to Participating Class Members who elect to receive their Settlement benefit in the form of a one-time cash payment. Although the term "cash" is used, Cash Payments will be paid via check.

3.6    "Cash Payment Claim Form" means a form in all material respects identical to Exhibit B, which is to be provided to Class Members and returned to the Settlement Administrator in order for them to become eligible to receive a Cash Payment from the Cash Pool.

3.7    "Cash Payment Claims Period" means the time period between the date that the Settlement Administrator distributes the Class Notice and the date by which all Cash Payment Claim Forms must be submitted to the Settlement Administrator for consideration, the duration of which shall be sixty (60) days.  Any Cash Payment Claim Form that is not Properly Completed and postmarked prior to the expiration of the sixty (60) day period  shall be deemed untimely and not valid.

3.8    "Cash Pool" means the maximum of two million dollars ($2,000,000.00) made available pursuant to the terms of this Agreement to pay Participating Class Members who elect to receive their remunerative Settlement benefit in the form of a Cash Payment, and to pay Class Counsel for their work related to obtaining the Cash Pool benefit for the Class Members.

3.9     "Cin-Lan" has the meaning as is found in Section 1.1.

3.10     "Class Counsel" means the law firms and attorneys listed as Plaintiffs' counsel on the Second Amended Class Action Complaint.

3.11     "Class Member(s)," "Member(s)," or "Member(s) of the Settlement Class," means an individual member or members of the Settlement Class.

3.12     "Class Member Released Claims" has the meaning set forth in Section 11.1.

3.13     "Class Notice" means the proposed notice submitted in conjunction with the proposed Preliminary Approval Order, which shall conform in all material respects to the document attached as Exhibit F.

3.14     "Class Notice Documents" means the Class Notice, the Cash Payment Claim Form, and the Opt Out Form.

3.15     "Class Period" means the period commencing on June 25, 2005 or, for any of the Pending Proceedings, the earliest date of the applicable statute of limitations period thereof, whichever is earlier, through the Effective Date of this Agreement.

3.16     "Class Representatives" means Jane Does Nos. 1-4, or any other person(s) duly appointed as additional or successor representatives of the Settlement Class.

3.17     "Club(s)" means the Deja Vu-Affiliated Nightclubs.

3.18     "Court" means the United States District Court for the Eastern District of Michigan, Southern Division.

3.19     "Consulting" has the meaning as found in Section 1.1.

3.20     "Dancer Rent Credit Pool" means the amount of Rent Credit made available to Participating Class Members pursuant to the terms of this Agreement who are entitled to receive their Settlement benefit in the fashion as is set forth in more detail in Section 5.6 of this Agreement.

3.21 "Dancer Contract(s)" means a contract, agreement, or lease (sometimes denominated in certain Clubs as a "Dancer Performance Lease") entered into between an Entertainer and any of the Deja Vu-Affiliated Nightclubs, which permit the Entertainer the right and/or ability to Perform on the premises of that Club and to engage in personal dance performances for remuneration.

3.22 "Dancer Performance Lease" means a Dancer Contract in the form of a lease agreement where the Entertainer pays the Deja Vu-Affiliated Nightclub for the right to be able to utilize those premises for her Performances.

3.23 "Date of Performance" means the date(s) any Class Member Performs as an Entertainer at the Qualifying Club in order to obtain a Rent Credit. For purposes of this definition, one Date of Performance shall include any connected block of time that a Class Member is on the premises of her Qualifying Club in order to Perform, regardless of the fact that the Date of Performance extends over more than one calendar day or includes a meal or rest break. By way of illustration only, if a Class Member commences Performing on a Tuesday night at 9:00 p.m., and completes her Performances at 2:00 a.m. on Wednesday morning and then leaves the Club, that period will be considered for purposes of this Agreement to constitute one Date of Performance. If the same Class Member then returns to her Qualifying Club on Wednesday evening and again commences Performances (which may carry over to Thursday morning), that will constitute a second Date of Performance.

3.24 "Defendants" means Cin-Lan, Inc., Deja Vu Consulting, Inc., Harry V. Mohney, and those Deja Vu-Affiliated Entities listed on Exhibit A, and includes all of the Deja Vu-Affiliated Nightclubs.

9

3.25    "Defendants' Counsel" means Jackson Lewis LLP, Edith A. Thomas and Associates, Clark Hill, PLC, and Hertz Schram PC.

3.26    "Deja Vu-Affiliated Entities" means those entities identified on the attached Exhibit A, and includes all of the Deja Vu-Affiliated Nightclubs.

3.27    "Deja Vu-Affiliated Nightclub(s)" means those Deja Vu-Affiliated Entities identified on the attached Exhibit A that present female performance dance entertainment on their premises.

3.28    "Direct Attorneys' Fees" means Attorneys' Fees paid directly by the Defendants to Class Counsel to compensate them for their work in obtaining a settlement for the Class pursuant to their claims under Section 216(b) of the FLSA.

3.29    "Effective Date" means the day after the date the Judgment becomes both Final and no longer subject to appeal or review, whether by exhaustion of any possible appeal, lapse of time or otherwise.

3.30    "Entertainer(s)" means persons who dance, Perform, and/or entertain, or who have danced, Performed or entertained, on the premises of a Deja Vu-Affiliated Nightclub, but excludes those individuals who provide or provided services as "headliner" or "feature" performers unless such individual was otherwise a party to a Dancer Contract with a Deja Vu-Affiliated Nightclub.

3.31    "ERISA" means the Employee Retirement Income Securities Act of 1974, 29 U.S.C. § 1001, *et. seq.*

3.32    "Fairness Hearing" means the hearing to be held by the Court to consider whether to issue an order of Final Approval of the Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure.

3.33    "Final" means the later of:

(a)    The date of final affirmance of the Judgment on appeal, or on petition for review;

(b)    The date of denial of any appeal or any petition seeking review of the Judgment;

(c)    The date of final dismissal of any appeal from the Judgment or the final dismissal of any petition seeking review of the Judgment; or

(d)    If no appeal or petition seeking review of the Judgment is filed, the expiration date of the time for the filing or noticing of any appeal from the Judgment or any petition seeking review of the Judgment; i.e., thirty (30) days after entry of the Judgment.

3.34    "Final Approval" means formal and written approval of the Settlement by entry of the Judgment by the Court.

3.35    "FLSA" means the Federal Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.*

3.36    "Gross Settlement Amount" shall mean the sum of eleven million three hundred thousand dollars ($11,300,000.00).

3.37    "Indirect Attorneys' Fees" means the Attorneys' Fees Class Counsel shall receive in compensation for the benefit they have obtained on behalf of the Class in the form of the Rent Credit Pool.

3.38    "Judgment" means a final order and judgment fully disposing of the Action and approving the full Settlement embodied in this Agreement.

3.39    "Litigation Expenses" includes any expenses incurred by Class Counsel in connection with the prosecution and resolution of this Action and/or in the Pending Proceedings,

11

including all Court-approved litigation costs, as well as the costs associated with the Class Notice.

3.40    "Mohney" means Harry V. Mohney, as he is defined in Section 1.1.

3.41    "Opt Out Form" means the form identical in all material respects to the document attached as Exhibit D, which serves as the mechanism for a Class Member to opt out of the Settlement.

3.42    "Participating Class Member(s)" means the Class Representatives and all Class Members who either opt in to the Cash Pool or do not opt out of the Dancer Rent Credit Pool.

3.43    "Parties" means the Class Representatives, Class Members and Defendants, and "Party" means any one or group thereof.

3.44    "Pending Proceedings" has the meaning ascribed to it as set forth in Section 2.3.

3.45    "Perform(s)," "Performed," "Performing," and "Performances" means all acts of entertaining, dancing, and/or engaging in entertainment services, and all activities included thereof, associated with a Deja Vu-Affiliated Nightclub.

3.46    "Performance Date(s)" means the date(s) any Class Member Performed as an Entertainer for any amount of time at a Deja Vu-Affiliated Nightclub during the Class Period. For purposes of this definition, one Performance Date shall include any connected block of time that a Class Member was on the premises of a Deja Vu-Affiliated Nightclub in order to Perform, regardless of the fact that the Performance Date extended over more than one calendar day or included a meal or rest break.  By way of illustration only, if a Class Member commences Performing on a Tuesday night at 9:00 p.m., and completes her Performances at 2:00 a.m. on Wednesday morning and then leaves the Club, that period will be considered for purposes of this Agreement to constitute one Performance Date.  If the same Class Member then returns to the

12

Deja Vu-Affiliated Nightclub on Wednesday evening and again commences Performances (which may carry over to Thursday morning), that will constitute a second Performance Date.

3.47    "Plaintiffs" refers to Jane Does 1-4, as is found in Section 1, each of whom has been separately identified to Defendants' Counsel and whose identities will be filed under seal with the Court.

3.48    "Posted Notice" means a notification in a form materially identical to the document found as Exhibit G, which is to be posted in the Entertainer dressing room of each Deja Vu-Affiliated Nightclub announcing the existence of the Cash Pool and the Rent Credit Pool.

3.49    "Preliminary Approval Order" means an order entered by the Court preliminarily approving the Settlement, identical in all material respects to the document attached hereto as Exhibit E.

3.50    "Properly Complete(d)" means a document dated and personally signed by the Class Member, which provides accurate, to the best of the Class Member's knowledge, answers to all of the information requested in the document.

3.51    "Qualifying Club" means the Deja Vu-Affiliated Nightclub at which the Class Member last Performed prior to the Effective Date.

3.52    "Released Defendants" means Cin-Lan, Consulting, Mohney, and each and every one of the Deja Vu-Affiliated Entities identified in Exhibit A, together with each and every one of their respective current and former:  Owners (either direct or indirect, including but not limited to partners, shareholders, members, parent companies, holding companies, trusts and/or trustees), officers, directors, managers, employees, agents, representatives, contractors, insurers, reinsurers, attorneys, auditors, accountants, bookkeepers, experts, subsidiaries, affiliates,

divisions, licensees, consultants, heirs, executors, personal representatives, predecessors, successors and/or assigns, and any benefit plans sponsored or administered by any Defendant and/or by any of the Deja Vu-Affiliated Entities.

3.53    "Rent" means any amount of money paid by a Class Member to a Deja Vu-Affiliated Nightclub under the terms of a Dancer Contract, whether "flat," or payable on a per-dance basis, or a combination of both.  As used in this Agreement, Rent shall also refer to any amounts retained by a Club from the sale of personal/private dances (i.e., "stage fees," club "allocations," club "share," or club "split") by a Deja Vu-Affiliated Nightclub which uses a Dancer Contract that is not in the form of a Dancer Performance Lease.  The term "Rent," however, shall not refer to any "room rental" or other charge that is assessed against a patron or customer where the total amount, or a portion, of that "rent" is paid to, and/or retained by, the Deja Vu-Affiliated Nightclubs.

3.54    "Rent Credit Claim Form" means a form in all material respects identical to Exhibit C, which is to be provided to Class Members at, and which must be returned Properly Completed to the Qualifying Club in order for a Class Member to be entitled to redeem a Rent Credit.

3.55    "Rent Credits" means the amount of credit a Participating Class Member may use pursuant to the terms of this Agreement as a credit against the Rent to which the Club would otherwise be entitled.

3.56    "Settlement Class" means the "Class" as defined in Section 4.2 of this Agreement.

3.57    "Settlement" means the compromise and settlement embodied in this Agreement.

3.58    "Settlement Administrator" means an independent administrator mutually agreed upon by the Parties, identified in Section 8.3.

3.59    "Short-Form Notice" means the Posted Notice.

3.60    "Stage Name" means the name or pseudonym utilized by a Class Member while Performing at one or more of the Clubs.

3.61    "Valid Cash Pool Claim(s)" means a Cash Payment Claim Form Properly Completed and timely submitted (with postmark) by a Class Member to the Settlement Administrator within the Cash Payment Claims Period, demonstrating the Class Member's election to receive her remunerative settlement benefit in the form of a Cash Payment.

**IV.    PRELIMINARY APPROVAL ORDER AND CERTIFICATION OF PROPOSED CLASS FOR SETTLEMENT PURPOSES, STAY OF PENDING PROCEEDINGS, AND STIPULATION REGARDING AMENDMENT OF COMPLAINT.**

4.1    By October 22, 2010, or as soon as practicable after this Agreement is fully executed, counsel for the Parties will present to the Court the following documents: Proposed Cash Payment Claim Form, Rent Credit Claim Form, and Opt Out Form attached as Exhibits B, C, and D respectively; a Proposed Preliminary Approval Order attached as Exhibit E; a proposed Class Notice and Short-Form Notice attached as Exhibits F and G respectively; and a Motion for Leave to File a Second Amended Class Action Complaint.

4.2    The Class subject to this Agreement is defined as all Entertainers who Performed at any of the Deja Vu-Affiliated Nightclubs identified on the attached Exhibit A from June 25, 2005, through the present, or during the applicable limitations period for any Entertainer who Performed at a Deja Vu-Affiliated Nightclub involved in one of the Pending Proceedings, whichever is longer.

4.3    The Parties shall act in good faith to effectuate each and every term of this Agreement, and shall cooperate to promptly seek entry of the Preliminary Approval Order, to obtain Final Approval of this Agreement (including providing Class Notice under Rule 23(c) and

(e)), to take all acts so that the Judgment becomes Final, and to secure a prompt, complete, and final resolution of the Settlement of this Action.

4.4    Upon entry of the Preliminary Approval Order, Defendants shall seek an order from the Court, which Class Counsel shall not oppose, requesting the Court to enjoin all of the Pending Proceedings as listed in Section 2.3 and any other similar types of actions that involve matters and claims subject to this Agreement, pending Final Approval of this Settlement and pending the Judgment becoming Final; to enjoin in the future any claim or action by any Participating Class Member related to matters settled by this Agreement; and to enter a permanent injunction prohibiting such actions in the future.  The Court shall retain jurisdiction to enforce the terms of this Agreement, and specifically the provisions of this Section 4.4.

4.5    Class Counsel shall cooperate in moving to stay all Pending Proceedings in which Class Counsel has filed an appearance.

4.6    To the Parties' knowledge, the Pending Proceedings identified in Section 2.3 represent all currently pending Entertainer class/collective action cases or claims against any Defendant, any Deja Vu-Affiliated Nightclub, and/or any Released Defendants, related to the matters and claims at issue in the Action.

## V.    PAYMENTS BY DEFENDANTS TO THE PARTICIPATING CLASS MEMBERS.

5.1    The Gross Settlement Amount is eleven million three hundred thousand dollars ($11,300,000.00).   Under no circumstances shall Defendants be responsible for making payments, remunerations, reimbursements, or credits in excess of the Gross Settlement Amount.

5.2    The Gross Settlement Amount shall be allocated as follows:

5.2.1    Cash Pool:  A maximum of two million dollars ($2,000,000.00) will be made available by Defendants to provide cash compensation to those Participating

16

Class Members who elect to receive their Settlement in the form of a single monetary payment, and to pay Class Counsel their Direct Attorneys' Fees as provided for herein.  The sum of the Cash Pool remaining after subtracting the amount of Direct Attorneys' Fees to be paid to Class Counsel hereunder shall be distributed, on a claims-made basis as set forth in more detail in Sections 5.4 and 5.5 below, to those Participating Class Members who select a Cash Payment.  If, after subtracting from the Cash Pool the amounts of Direct Attorneys' Fees that are to be paid to Class Counsel in accordance with this Agreement, any remaining funds from the Cash Pool are not claimed by Participating Class Members, an equivalent amount shall be added to the Dancer Rent Credit Pool described in Section 5.2.2 immediately below in order to increase the total amount of available Rent Credits discussed therein.

5.2.2   Dancer Rent Credit Pool:  Defendants agree to make available Rent Credits to those Participating Class Members who do not participate in the Cash Pool but who appear to perform at, and claim -- in accordance with the provisions of Section 5.6 below -- Rent Credits from, their Qualifying Club.  The total Dancer Rent Credit Pool to be made available is nine million dollars ($9,000,000.00), along with an amount equivalent to any unused portion of the Cash Pool as discussed in Section 5.2.1.  Participating Class Members may redeem the Rent Credits in accordance with Section 5.6 below.  The amount of the Dancer Rent Credit Pool payable to Participating Class Members shall be reduced by the amount of Indirect Attorney Fees guaranteed to Class Counsel as described in Section 6.3.

5.3     *Class Member Election*:  Class Members will be mailed the Class Notice to their last known address as reflected on the most recent Dancer Contract they have executed at the last Deja Vu-Affiliated Nightclub at which they Performed prior to the entry of the Preliminary Approval Order.  Class Members who wish to participate in the Cash Pool are required to *opt-in* to the Cash Pool pursuant to the provisions of § 216(b) of the FLSA during the Cash Payment Claims Period. Class Members making such an election must complete and timely submit (pursuant to Sections 3.7 and 5.4.1) the Cash Payment Claim Form attached hereto as Exhibit B, which shall include a statement by the Class Member consenting to join this Action.  Those Class Members who do not elect to participate in the Cash Pool and who are Participating Class Members by not having "opted-out" of this Action pursuant to the provisions of Sections 9.3 – 9.5, are eligible to participate in the Dancer Rent Credit Pool and to receive Rent Credits as set forth in Section 5.6 below.  In no event may a Participating Class Member elect both a Cash Payment and a Rent Credit.

5.4     *Election to Participate in the Cash Pool*:  A Class Member who wishes to participate in the Cash Pool shall comply with the following procedures:

5.4.1   Cash Payment Claim Form:  In order to receive a Cash Payment from the Cash Pool, a Class Member must Properly Complete the Cash Payment Claim Form attached hereto as Exhibit B and mail the form, along with any and all supporting documentation, to the Settlement Administrator before the expiration of the Cash Payment Claims Period.  Class Members who do not timely submit a Properly Completed Cash Payment Claim Form to the Settlement Administrator (by having the same mailed and postmarked prior to the expiration of the Cash Payment Claims Period) will not be entitled to receive a Cash Payment from the

18

Cash Pool.  The Cash Payment Claim Form shall require the Class Member to attest, to the best of her knowledge, the number of Performance Dates she Performed up to that time during the Class Period at her Qualifying Club, as well as all other information requested on the Cash Payment Claim Form attached hereto as Exhibit B.

5.4.2   <u>Cash Payment Claim Forms Not Properly Completed</u>.  In the event that the Settlement Administrator receives, prior to the expiration of the Cash Payment Claims Period, a Cash Payment Claim Form from a Class Member that is not Properly Completed, the Settlement Administrator shall immediately email a copy of that Cash Payment Claim Form to both Class Counsel and to Defendants' Counsel, who shall be required to cooperate in order to determine whether enough information has been provided, or can be provided, to render the Cash Payment Claim Form a Valid Cash Pool Claim.  If additional information is needed, the Settlement Administrator shall immediately request the same from the Class Member.  Nevertheless,  unless Class Counsel and Defendants' Counsel  jointly conclude, before the expiration of the Cash Payment Claims Period, that the Class Member has provided sufficient information to have the document constitute a Properly Completed Cash Payment Claim Form, or the Settlement Administrator receives additional information so as to consider the document to constitute a Valid Cash Pool Claim, the Cash Payment Claim Form shall be deemed invalid for all purposes hereunder and such Class Member shall not be entitled to a Cash Payment.

5.4.3   <u>Claims Reporting</u>. At the end of the Cash Payment Claims Period, the Settlement Administrator shall furnish to Class Counsel a list of all Class Members who filed a Valid Cash Pool Claim and the number of their Performance Dates claimed.  Defendants, if they choose to contest the number of Performance Dates claimed by a particular Participating Class Member, shall request from the applicable Deja Vu-Affiliated Nightclub(s) a statement of the number of Performance Dates contained in the Club's records to enable a determination to be made of the amount of the Cash Pool to which the claimant may be entitled, along with a print out of the supporting data upon which the Deja Vu-Affiliated Nightclub relies. The applicable Deja Vu–Affiliated Nightclub(s) shall furnish its (their) records to the Settlement Administrator within a maximum thirty (30) days of receiving the Participating Class Member's claim information from the Settlement Administrator.

5.4.4   <u>Resolution of Cash Pool Claims (Both Disputed and Non-Disputed)</u>: Valid Cash Pool Claims submitted to the Settlement Administrator shall be paid based upon a uniform fifty dollars ($50) for each Performance Date that the Settlement Administrator determines, following review of the Cash Payment Claim Form (and any supporting documentation) as well as any information provided by the Deja Vu-Affiliated Nightclubs pursuant to Section 5.4.3 above, the claimant Performed at her Qualifying Club during the Class Period, up to a maximum of five hundred dollars ($500.00) per each Participating Class Member making a Valid Cash Pool Claim.  The number of Performance Dates will be determined by the Settlement Administrator in the following manner:

a)      If the Participating Class Member has valid receipts for the Performance Dates, those receipts shall be deemed reliable and the number of Performance Dates for that Participating Class Member shall be calculated based upon the receipts;

b)      If the Participating Class Member does not have valid receipts for all of her Performance Dates, the Deja Vu-Affiliated Nightclub's records shall control and the Cash Payment from the Cash Pool will be calculated using those records and the number of Performance Dates reflected therein; or

c)      If neither the Participating Class Member nor the Deja Vu-Affiliated Nightclubs have valid records reflecting the Participating Class Member's number of Performance Dates, that Participating Class Member shall be entitled to the greater of the following: Two-hundred fifty dollars ($250.00), or the amount claimed by the Class Member on her Cash Payment Claim Form, up to the maximum amount of a Cash Payment (or pro rata share) as set forth in this Agreement.

5.5    *Allocation of the Cash Pool*:  The Settlement Administrator shall be directed to allocate, and make payments from, the Cash Pool as follows:

5.5.1  <u>Distribution of Funds</u>:  Upon the determination by the Settlement Administrator of the total amount of Cash Payments to be made pursuant to Section 5.4.4 above, and upon the Judgment becoming Final, the Defendants shall, within ten (10) days of the latter thereof, fully fund that amount, up to a total of one million three hundred thirty-three thousand three hundred thirty-three dollars ($1,333,333.00), by deposit of the same into a bank account established

for this purpose.  Within thirty (30) days after the deposit of that amount, the Settlement Administrator shall make all Cash Payments out of this account to Participating Class Members who filed Valid Cash Pool Claims.

5.5.2    <u>Tax Considerations of Cash Payment Distributions</u>.  Plaintiffs and each Participating Class Member who submit a Valid Cash Pool Claim acknowledge and agree that the Cash Payments made to them pursuant to Sections 5.4 and 5.5 do not constitute "wages" within the meaning of § 3111(a) of the Internal Revenue Code, any other applicable provisions therein, or any applicable state tax or revenue code.  A Form 1099-MISC shall be issued by the Defendants, at their sole cost, to each Participating Class Member who selects to receive a Cash Payment reflecting the payments made in accordance with this Agreement, and copies of said forms shall be duly filed with the United States Internal Revenue Service and with the department of revenue and/or taxation of the state in which the Participating Class Member last Performed at a Deja Vu-Affiliated Nightclub prior to the Effective Date.

5.5.3    <u>Uncollected Cash Payment Pool Funds</u>:  If the Cash Payments do not fully deplete the amount remaining in the Cash Pool after reduction of the Direct Attorney Fees, then the difference between the Valid Cash Pool Claims paid and the sum of one million three hundred thirty three thousand three hundred thirty three dollars ($1,333,333.00) shall be added to the Dancer Rent Credit Pool in order to increase the amount of available Rent Credits.

5.5.4    <u>Excess Claims</u>:  If the total amount of Valid Cash Pool Claims or Cash Payments to be otherwise made exceeds one million three hundred thirty three

thousand three hundred thirty three dollars ($1,333,333.00), then the Cash Payments to each Participating Class Member who submitted a Valid Cash Pool Claim shall be reduced on a pro-rata basis.

5.6 *Allocation of the Rent Credits*:  The Rent Credits shall be administered as follows:

5.6.1 <u>Dancer Rent Credit Pool</u>:  Defendants will make a minimum of nine million dollars ($9,000,000.00) available for use as Rent Credits that can be used by any Participating Class Member who does not opt into the Cash Pool.  This amount is inclusive of Indirect Attorney Fees as described in Section 6.3.  Rent Credits may only be redeemed by Participating Class Members at her Qualifying Club. Defendants shall supply Class Counsel and each Deja Vu-Affiliated Nightclub a list of each Participating Class Member who is eligible to receive Rent Credits at that Club, along with the Participating Class Member's applicable Rent Credit Tier as established by Section 5.6.3 below.  The maximum amount of the Dancer Rent Credit Pool shall consist of the nine million dollars ($9,000,000.00), plus any increased sum that will be equivalent to any amounts unclaimed from the Cash Pool.  By way of example only, if five hundred thousand dollars ($500,000.00) of the Cash Pool remains unpaid after the Settlement Administrator has made all Cash Payments, the total amount of the Dancer Rent Credit Pool would increase to nine million five hundred thousand dollars ($9,500,000.00) in available Rent Credits.

5.6.2 <u>Application of Rent Credits</u>:  Each Class Member who does not opt out pursuant to Sections 9.3 and 9.4 below and who does not timely submit a Valid

Cash Pool Claim in order to be able to participate in the Cash Pool, will be eligible to receive Rent Credits.

5.6.3   <u>Determination of a Participating Class Member's Maximum Rent Credit</u>: Participating Class Members who do not validly select to receive a Cash Payment shall be entitled to a Rent Credit based on the number of Performance Dates that the Class Member Performed at her Qualifying Club prior to the Effective Date. Rent Credits shall be applied pursuant to the following 3-Tier schedule:

> (a)   TIER I.  A maximum Rent Credit of one hundred dollars ($100.00) for any Class Member who Performed ten (10) or less Performance Dates;
>
> (b)   TIER II. A maximum Rent Credit of five hundred dollars ($500.00) for any Class Member who Performed eleven (11) to twenty-four (24) Performance Dates; and
>
> (c)   TIER III.  A maximum Rent Credit of one thousand dollars ($1,000.00) for any Class Member who Performed more than twenty-four (24) Performance Dates.

5.6.4   <u>Redemption of Rent Credits</u>:  Rent Credits may only be redeemed by a Participating Class Member at her Qualifying Club. Participating Class Members electing to redeem Rent Credits are required to schedule a Date of Performance at her Qualifying Club and notify that Club of her intent to claim Rent Credit, both at least seven (7) business days before she desires to Perform and to redeem a Rent Credit, in order to allow Defendants time to confirm the Participating Class Member's entitlement to such Rent Credits, her applicable Rent Credit Tier, and the existence of a valid Dancer Contract between the Participating Class Member and her Qualifying Club.  Prior to redeeming a Rent Credit, the Participating Class Member must submit to the Qualifying Club a Properly Completed Rent Credit Claim Form, which shall, among other things, require the Participating

Class Member to attest, to the best of her knowledge, the number of Performance Dates she Performed at that Club during the Class Period, and to acknowledge: (1) that she understands that redeeming Rent Credits may constitute a taxable event and that if Defendants deem it required under the Internal Revenue Code, they will issue Form 1099-MISC's to Participating Class Members electing to receive Rent Credits; (2) that she is not receiving any tax advice from Class Counsel, Defendants' Counsel or Defendants, but that she should obtain her own tax advice; and (3) that Class Counsel is receiving approximately 31.489% of redeemed Rent Credits, not to exceed a total of two million eight hundred thirty-four thousand dollars ($2,834,000.00), as Indirect Attorneys' Fees.  Participating Class Members must personally sign, date and submit the Rent Credit Claim Form to her Qualifying Club before receiving any Rent Credit, and a copy shall be provided to Modern Bookkeeping, Inc., to assist it in the administration of the Rent Credits.  After the Rent Credits expire, copies of the Rent Credit Claim Forms shall be provided to Class Counsel. Rent Credits entitle the Participating Class Member to a sixty percent (60%) reduction of the established Rent for any Performance Date the Participating Class Member chooses to Perform at the Qualifying Club during the period set forth in Section 5.6.8, provided she has not exhausted the total amount of her Rent Credit as set forth in Section 5.6.3 and provided that the Dancer Rent Credit Pool has not been exhausted by Rent Credit claims.  The remaining forty percent (40%) of the established Rent shall be remitted to the Qualifying Club.  Participating Class Members may only redeem a

maximum of one hundred dollars ($100.00) in Rent Credits during any one Date of Performance.

5.6.5    Payment of Indirect Attorneys' Fees:  In order to obtain the Rent Credit, in addition to paying 40% of the established Rent, the Participating Class Member shall, subject to the limitations as set forth in Section 5.6.7, pay to the  Qualifying Club thirty-three and one-third percent (33.3%) of the Rent Credit (i.e., twenty percent (20%) of the total established Rent), which shall be held in trust by the Qualifying Club in order to compensate Class Counsel for their efforts in securing the common fund in the form of the Dancer Rent Credit Pool.

5.6.6    Exemplar of Application of Rent Credits:  By way of example only, if the total Rent for a given Date of Performance is one hundred dollars ($100.00), the Participating Class Member would be entitled to a sixty dollar ($60.00) Rent Credit to be offset against her total Rent Credit set forth in Section 5.6.3.  While the Participating Class Member is entitled to sixty dollars ($60.00) in Rent Credit, she will pay to the Qualifying Club thirty-three and one-third percent (33.3%; i.e., twenty dollars ($20)) of the sixty dollar ($60.00) Rent Credit as Indirect Attorneys' Fees for Class Counsel.  The Qualifying Club shall, subject only the limitations as set forth in Section 5.6.7, collect the Indirect Attorneys' Fees and forward the same to Modern Bookkeeping, Inc., which shall accumulate such funds in an escrow account held for Class Counsel's benefit and remit the same to Class Counsel as directed in Section 6.3.3 below.  The remaining forty dollars ($40.00) will be paid to the Qualifying Club as Rent. In other words, the Participating Class Member would pay the Qualifying Club a total $60.00, of

26

which it would retain forty dollars ($40.00) as Rent and, subject to the limitations set forth in Section 5.6.7, deposit twenty dollars ($20.00) in the escrow account as Indirect Attorneys' Fees.

5.6.7   <u>Termination of Collection of Indirect Attorneys' Fees</u>.  In the event that the Qualifying Clubs collect, in the aggregate, a total of two million eight hundred thirty four thousand dollars ($2,834,000.00) in Indirect Attorneys' Fees, the obligation of the Participating Class Members redeeming Rent Credits to pay Indirect Attorneys' Fees, and the obligation of the Qualifying Clubs to collect Indirect Attorneys' Fees, shall immediately cease.  Thereafter, until the Dancer Rent Credit Pool is extinguished, Participating Class Members redeeming Rent Credits will continue to receive a 60% Rent Credit of their Performance Rent obligations, they will continue to pay 40% of their Rent obligations, but they will no longer be required to pay 1/3 of their Rent Credits to their Qualifying Club as Indirect Attorneys' Fee.

5.6.8   <u>Redemption Period for Rent Credits</u>:  Rent Credits may not be redeemed prior to the last of: 1) the determination by the Settlement Administrator of the identity of all Class Members who have filed Valid Cash  Pool Claims pursuant to Section 5.4; 2) the expiration of the "opt out" period set forth in Sections 9.3 and 9.4 hereof; and 3) the Judgment becoming Final.  Regardless of whether the Participating Class Members have fully exhausted their allocated Rent Credits, the Participating Class Members' Rent Credits as determined pursuant to Section 5.6.3 shall expire one year from the date that Rent Credits may first be redeemed

by Class Members as set forth above in this Section 5.6.8. Expired Rent Credits shall have no value.

5.6.9  <u>Exhaustion of Rent Credit Pool</u>:  Rent Credits are considered redeemed by a Participating Class Member only after she has Performed a Date of Performance to which she is entitled to a Rent Credit. Defendants' obligation to provide Rent Credits shall be satisfied if the aggregate amount of the Dancer Rent Credit Pool is exhausted, regardless of whether all Participating Class Members have redeemed their total Rent Credit.

5.6.10  <u>Performing at Deja Vu-Affiliated Nightclubs</u>:  Nothing in this Agreement requires that any Deja Vu-Affiliated Nightclub permit any particular Class Member the right to Perform on its premises. A Participating Class Member who desires to Perform at a Deja Vu-Affiliated Nightclub in order to obtain a Rent Credit (which must be at her Qualifying Club) must either be a party to a current Dancer Contract or execute a Dancer Contract prior to Performing and receiving a Rent Credit. Should a Participating Class Member desire to Perform at her Qualifying Club in order to obtain Rent Credits pursuant to this Agreement but that Club refuses to allow her to Perform for a legitimate business reason, that Participating Class Member shall be given thirty (30) days thereafter to select to obtain a Cash Payment pursuant to the terms of this Agreement or to opt-out of the Settlement pursuant to the provisions of Sections 9.3 and 9.4 if the Cash Pool is depleted.

5.6.11  <u>Tax Considerations of Rent Credits</u>:  A Participating Class Member electing to obtain Rent Credits through this Agreement must complete and submit

28

to her Qualifying Club, prior to obtaining a Rent Credit, a Rent Credit Claim Form in which, among other things, she acknowledges and agrees that such Rent Credits do not constitute "wages" within the meaning of § 3111(a) of the Internal Revenue Code, any other applicable provisions therein, or any applicable state tax or revenue code. Defendants may seek advice from their accountants as to whether Forms 1099-MISC should be issued by them to each Participating Class Member who receives Rent Credits pursuant to this Agreement. Should it be determined that Forms 1099-MISC should issue in regard to the Rent Credits provided hereunder, Defendants, at their sole cost, shall issue such forms to each Participating Class Member who has elected to and has obtained Rent Credits. The Form 1099-MISC shall reflect the value of the Rent Credits received, and copies of said forms shall be duly filed with the United States Internal Revenue Service and the applicable department of revenue/taxation of the state in which the Qualifying Club is located.

5.7     *Taxation and No Tax Advice*: Each Participating Class Member shall be obligated to obtain her own independent tax advice concerning the proper income reporting and tax obligations regarding any and all payments and/or other remuneration she receives or obtains pursuant to this Agreement, and shall further assume the responsibility of remitting to the Internal Revenue Service and any other relevant taxing authorities any and all amounts required by law to be paid out of any monies received, or other remuneration obtained, under this Agreement, without any contribution whatsoever from any of the Released Defendants or Class Counsel. Nothing in this Agreement shall be construed as Class Counsel providing any advice

regarding the payment of taxes or the tax consequences of a Participating Class Members' participation in any portion of this Agreement.

5.8     *Audit and Data Rights*:  Throughout the existence of the Dancer Rent Credit Pool, Class Counsel shall be provided reasonable access to data and records used to determine any Class Member's eligibility, position in the 3-Tier graduated schedule, amount of individual Rent Credits used and remaining, and the total amount of the Dancer Rent Credit Pool used and remaining.

5.9     *Administration of Dancer Rent Credit Pool*:  The accounting for the Dancer Rent Credit Pool and collection of the one-third (1/3) Indirect Attorneys' Fees from redeemed Rent Credits shall be administered by Modern Bookkeeping, Inc.  Defendants shall pay all costs associated with Modern Bookkeeping, Inc., administering the Dancer Rent Credit Pool.  The Settlement Administrator selected pursuant to Section 8.3 shall have no obligations or duties related to the administration or allocation of Rent Credits through the Dancer Rent Credit Pool.

## VI.     ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVE INCENTIVE PAYMENTS.

6.1     *Payments of Attorneys' Fees – Generally*:  Payment of Attorneys' Fees shall be divided into two pools of fees, which will correspond to the two pools of remunerative relief afforded to the Class. The first pool of Attorneys' Fees is established to compensate Class Counsel for their work in obtaining the Cash Pool pursuant to Section 216(b) of the Fair Labor Standards Act.  The payment of these fees is discussed in Section 6.2 below.  The second pool of Attorneys' Fees is established to compensate Class Counsel for the benefit they created for the Class in the form of the Dancer Rent Credit Pool.  The payment of these fees is discussed in Section 6.3 below.

2:08-cv-12719-SJM-MJH   Doc # 189-2   Filed 10/22/10   Pg 31 of 84   Pg ID 4046

6.2     *Direct Attorneys' Fees Pursuant to Section 216 (b) of the FLSA:*   Defendants shall pay to Class Counsel out of the Cash Pool a total of six hundred sixty-six thousand six hundred sixty-six dollars ($666,666.00) in Direct Attorneys' Fees.  Defendants will deposit the Direct Attorneys' Fees into an escrow account to be established by Modern Bookkeeping, Inc., on the following schedule:

> 6.2.1   Three hundred sixty-six thousand six hundred sixty-six dollars ($366,666.00) within thirty (30) days of the Effective Date of this Agreement;

> 6.2.2   Three hundred thousand dollars ($300,000.00) within ninety (90) days of the Effective Date of this Agreement.

6.3     *Indirect Attorneys' Fees as Part of the Settlement of the Rule 23 Class*:   In addition to the direct payment of Attorneys' Fees by the Defendants as set forth in Section 6.2, Class Counsel shall also be eligible to receive from the Dancer Rent Credit Pool, Attorneys' Fees up to approximately thirty-one point four eight nine percent  (31.489%) of all used Rent Credits (sometimes referred to below as "Indirect Attorney Fees"),  but which shall not exceed two million eight hundred thirty four thousand dollars ($2,834,000.00). The collection of these Indirect Attorneys' Fees will be administered as follows:

> 6.3.1   The Indirect Attorneys' Fees will be collected by the applicable Qualifying Clubs from Participating Class Members as they use their respective Rent Credits.  Each Qualifying Club shall be responsible for collecting the Indirect Attorneys' Fees at the time the Class Member uses her Rent Credit. The Qualifying Clubs shall forward the Indirect Attorneys' Fees to Modern Bookkeeping, Inc., which shall, upon receipt of the same, deposit said fees into an escrow account established for this purpose for the benefit of Class Counsel.

31

6.3.2   The Qualifying Clubs shall forward a report identifying the amount of used Rent Credits and the corresponding Indirect Attorneys' Fees to Modern Bookkeeping, Inc., which shall forward the report to Class Counsel no later than seven (7) days after the last day of the month that the Qualifying Club is open for operation.

6.3.3   Beginning one hundred eighty (180) days after the Effective Date, and at thirty (30) day intervals thereafter for the next twenty two (22) months, Modern Bookkeeping, Inc., shall forward the following to Class Counsel: a) a report identifying the amount of used Rent Credits for each Participating Class Member who used the Credit; and b) $125,000.00 in Indirect Attorneys' Fees. A final payment of eighty four thousand dollars ($84,000.00) shall be paid by the Defendants out of the escrow account at the beginning of the 23rd month after the Effective Date.  If, at any time, there are insufficient funds in the escrow account for Modern Bookkeeping, Inc., to make the periodic payments of Indirect Attorneys' Fees as required by this Subsection 6.3.3, the Defendants shall deposit sufficient sums into the escrow account to permit the timely payments required hereby.

6.3.4   At no time shall the Indirect Attorneys' Fees be deemed to be the property of the Defendants; rather at all times these funds shall be deemed payments from the Participating Class Members to, and the property of, Class Counsel.

6.3.5   If, at any time, the collection of Indirect Attorneys' Fees by the Qualifying Clubs equals or exceeds, in the aggregate, the sum of two million eight hundred thirty four thousand dollars ($2,834,000.00), the obligation of the Qualifying

Clubs to collect Indirect Attorneys' Fees under this Agreement shall immediately terminate, and any excess funds shall be returned to the applicable Deja Vu-Affiliated Nightclub.

6.4     *Litigation Expenses and Administrative Costs*:  Class Counsel shall be responsible for the Administrative Costs, up to one hundred five thousand dollars ($105,000.00), and, with the exception of the payments made pursuant to this Section 6.4, all other Litigation Expenses incurred in connection with prosecuting this Action and in the Pending Proceedings.  Within ten (10) days of entry of the Preliminary Approval Order, Defendants shall remit to Class Counsel, for the benefit of the Settlement Administrator, thirty-three thousand three hundred thirty-three dollars and thirty-three cents ($33,333.33) towards the cost of mailing the Class Notice.  In addition, within one hundred twenty (120) days of the Effective Date, Defendants shall pay to Class Counsel one hundred sixty-six thousand six hundred sixty-six dollars and sixty-six cents ($166,666.66) toward Litigation Expenses incurred by Class Counsel in connection with this Action and in the Pending Proceedings.  Except as expressly stated in this Agreement, Class Counsel shall be responsible for all Litigation Expenses in excess of the payments set forth in this Section.

6.5     *Class Representative Incentive Awards*:  Class Counsel may apply to the Court for Class Representatives incentive awards for the time, effort and expense that Does 1-4 incurred in securing the Settlement in this Action (in addition to compensating them for their portion of the overall Settlement proceeds available to the Settlement Class), and as additional compensation to Plaintiff Jane Doe #1 for the filed retaliatory discharge claim that she has pending.  Subject to Court approval, the Class Representatives incentive awards shall be allocated amongst Does 1-4 by Class Counsel in their sole discretion. The incentive awards shall be paid by Defendants

within one hundred twenty (120) days of the Effective Date, and shall not exceed, in the aggregate, one hundred thousand dollars ($100,000.00).   Other than the Incentive Payments, Does 1-4 shall not be entitled to any other compensation from any of the Released Defendants, and the Parties acknowledge that the compensation paid pursuant to this Section accounts for any payments or other consideration Does 1-4 could have otherwise received as Participating Class Members.

6.6    *Allocation of Attorneys' Fees and Court Approval*:   Subject to Court approval, Class Counsel shall, within their sole discretion, allocate Attorneys' Fees awarded by the Court amongst the various firms that constitute Class Counsel.  As directed by the Court's Preliminary Approval Order, Class Counsel and any other attorney asserting an entitlement to Attorneys' Fees shall apply to the Court for an award of Attorneys' Fees and costs as set forth in this Agreement. The petition for Attorneys' Fees and costs shall set forth the proposed allocation of Attorneys' Fees endorsed by Class Counsel.  Defendants shall not oppose Class Counsels' application so long as the application requests an aggregate award of Attorneys' Fees and costs that complies with the terms of this Agreement, and in no event shall the Defendants be requested or required to pay any Attorneys' Fees, costs, or Litigation Expenses in excess of those set forth in this Agreement.  No attorney shall be entitled to any award or allocation of Attorneys' Fees prior to satisfying the following two conditions by:

6.6.1   Filing a petition for attorneys' fees with the Court as set forth in Section 6.6; and

6.6.2   Obtaining their clients' consent to be bound by the terms and conditions of this Agreement without objection.

6.7 *No Appeal*: Any attorney making a request for attorneys' fees in conformity with Section 6.6 shall be bound by the decision of the Court, and expressly waives any right to appeal the Court's fee award.

## VII. THE FAIRNESS HEARING

7.1 *The Fairness Hearing*: A Fairness Hearing will be set by the Court as set forth in the Court's Preliminary Approval Order.

7.2 *Briefing Schedule:* Any of the Parties, Class Counsel, and any person objecting to this Agreement, may file with the Court, as directed by the Court in its Preliminary Approval Order, a written brief setting forth their respective positions regarding the fairness of the Settlement. All submissions to this Court shall comply with the provisions set forth in Federal Rules of Civil Procedure and Local Rules for the Eastern District of Michigan, as well as the dates established by the Court in its Preliminary Approval Order.

## VIII. CLASS NOTICE AND CLAIM FORMS

8.1 *Information to be Supplied by each Deja Vu-Affiliated Nightclub*: Within fourteen (14) days of the entry of the Preliminary Approval Order by the Court, Defendants will provide the Settlement Administrator, to the extent available in Defendants' records, the following information:

8.1.1 Each Class Member's legal name;

8.1.2 Each Class Member's last known address from the Class Member's Qualifying Club's last Dancer Contract; and

8.1.3 The Deja Vu-Affiliated Nightclub at which each Class Member last Performed prior to the Preliminary Approval Order, as reflected in the Deja Vu-Affiliated Nightclubs' records.

35

8.2     *Confidentiality of Information:*   The Parties agree that the information to be disclosed pursuant to Section 8.1 shall be deemed confidential, attorneys' eyes only, pursuant to the protective order previously entered by the Court.   Notwithstanding these restrictions, the Deja Vu-Affiliated Nightclubs and their representatives may use this information in order to determine entitlement to, and the amount of, Cash Payments and Rent Credits.

8.3     *The Settlement Administrator's Obligations and Duties*:   The Settlement Administrator shall be Analytics of Minneapolis, Minnesota.   As set forth below, the Settlement Administrator shall be responsible for the mailing of the Class Notice and adjudication of all disputed claims related to the eligibility or payment of claims from the Cash Pool.

8.4     *Mailing of Notice*:   Within fourteen (14) days of receipt of the Class Member information identified in Section 8.1, and no later than twenty-eight (28) days from entry of the Court's Preliminary Approval Order, the Settlement Administrator shall mail the Class Notice to each Class Member. The envelope containing the Class Notice will identify the Settlement Administrator's return address only, and shall not contain *any* Deja Vu-Affiliated Nightclub-related information from which a reader of the envelope could glean that it relates to the adult nightclub industry.   The envelope shall include the Class Notice Documents.

8.5     *Claims Adjudication*:   As set forth in Section 5 above, the Settlement Administrator shall be responsible for issuing Cash Payments to Class Members seeking payment from the Cash Pool.   The Settlement Administrator shall be responsible for adjudicating all contested claims.

8.6     *Return of Class Notice*:   If the Class Notice Documents mailed to a Class Member are returned within twenty-one (21) days of the initial mailing, with a forwarding address provided by the Postal Service, the Class Notice Documents will be re-sent by the Settlement

36

Administrator to the forwarding address within seven (7) days of return, but a Properly Completed Cash Payment Claim Form must nevertheless be remitted to the Settlement Administrator and postmarked by the close of the Cash Payment Claims Period in order for the Class Member to have a Valid Cash Pool Claim.

8.7    *Posted Notice*:   In addition to the mailed notice identified in Section 8.4, Defendants shall post the Short Form Notice outlining the details of the Cash Pool and Dancer Rent Credit Pool ("Posted Notice").  The Posted Notice shall conform in all material respects to Exhibit G.  Each Deja Vu-Affiliated Nightclub shall prominently display the Posted Notice in the Deja Vu-Affiliated Nightclub's Entertainer dressing room. The Posted Notice shall remain posted until the Cash Pool is depleted or the redemption period for the Dancer Rent Credit Pool expires, whichever occurs first.

8.8    *Class Notice Verification*:   No later than thirty (30) days after the Settlement Administrator has completed the mailing of the Class Notice as set forth in Sections 8.4 and 8.6, and before the Fairness Hearing, the Parties shall file with the Court a declaration attesting that the Class Notice has been mailed to the Class Members.

## IX.    OBJECTIONS AND OPT-OUTS.

9.1    *Objections to Settlement*:   All objections to the Settlement must be in writing and must be filed with the Court in accordance with Section 7.2 of this Agreement and the Court's Preliminary Approval Order. All objections must be mailed to both Class Counsel and Defendants' Counsel.

9.2    *Procedures for Objections*: The procedures of objection shall be as set forth in the Preliminary Approval Order, a copy of which is attached as Exhibit E.

37

9.3     *Opting Out of the Settlement*:   Any Class Member who wishes to be excluded from the Settlement must mail to the Settlement Administrator, at the address that is set forth in the Class Notice, a request for exclusion from the Settlement in substance equivalent to the Opt Out Form, personally signed by the Class Member and postmarked no later than thirty (30) days from the date of mailing Class Notice or the re-mailing of a particular Class Notice as permitted in Section 8.6.  The Settlement Administrator shall date stamp the original of any Opt Out Form and serve copies on both Class Counsel and Defendants' Counsel via electronic mail and United States Mail within five (5) business days of receipt of any such statement.  Class Counsel shall file copies of all timely requests for such exclusion, not timely rescinded, with the Court prior to the Fairness Hearing.

9.4     *Failure to Properly Opt Out, and Opt-Out Limitations*:   Any Member of the Settlement Class who does not fully complete, personally sign, and timely mail notice of her intention to opt out of the Settlement will be deemed included as a Participating Class Member in accordance with this Settlement.  All Class Representatives waive any right to opt out of the Settlement.

9.5     *Conflicting Responses*:  If a Member of the Settlement Class submits both a Cash Payment Claim Form (or a Rent Credit Claim Form) and a request for exclusion, the request for exclusion will be invalid and the Member of the Settlement Class will be deemed to be a Participating Class Member and be bound by the terms of the Settlement and this Agreement.

9.6     *Notification to Counsel of Opt-Outs*:  Within ten (10) days following the last of the deadlines to opt out, the Settlement Administrator shall provide Class Counsel and Defendants' Counsel with information setting forth the total number of opt-outs and the

identities (which shall include the information required by the terms of this Agreement) of such individuals who have decided to opt out.

## X.    INJUNCTIVE RELIEF

10.1    *Posting of Contract Damages List:*    Upon the Effective Date, each Deja Vu-Affiliated Nightclub will post a list of all contract damages which an Entertainer may be charged while under contract with the Defendants.  The notice of contract damages shall be posted in the Entertainer dressing room.

10.2    *Limitation of Contract Damages:*    No Deja Vu-Affiliated Nightclub may impose any contract damage or monetary penalty on an Entertainer that is not identified on the notice of contract damages.

10.3    *Records of Contract Damages:*    Any Deja Vu-Affiliated Nightclub that charges an Entertainer contract damages, or imposes a monetary penalty thereon, shall provide a written explanation of the contract damage to the Entertainer and for the Deja Vu-Affiliated Nightclub's records. The Deja Vu–Affiliated Nightclub shall maintain said record for one (1) year. Entertainers will be provided, within the notice of contract damages, an avenue of complaint above that of the club manager. The person or entity responsible for resolving such complaints shall be provided with the written explanation by the Entertainer should she assert that the contract damage was wrongly imposed.

## XI.    RELEASES AND COVENANTS

11.1    *Release of Released Defendants:*    Each and every Participating Class Member shall be deemed to have, and have actually, knowingly and voluntarily, released, acquitted and forever discharged each and every one of the Released Defendants from any and all claims of every conceivable kind or nature whatsoever that she has, had, or may have up to the Effective

Date, against the Released Defendants, or against any one or group of them, whether known or unknown, whether fixed or contingent, whether asserted or unasserted, and whether filed or unfiled, at law, in equity or otherwise, that arise out of, relate to, are associated with, are based upon, or concern, in any way, manner, regard or fashion whatsoever, the conduct, events, or transactions that are set forth in the Second Amended Class Action Complaint filed with the Court in connection with this Agreement (the "Class Member Released Claims").  Such Class Member Released Claims include, but are not limited to, any FLSA claims, any state law wage or labor claims, any business practices or similar claims, any retaliation claims predicated upon a Class Member's assertion that any of the Released Defendants wrongfully terminated her Dancer Contract or right to Perform after she or any other person or entity asserted a claim that she was misclassified as an independent contractor and/or as a non-employee, any claims for liquidated, punitive, and/or exemplary damages based upon Defendants' wage policies and/or their employment classification of Entertainers, and any other employment, wage, or labor related claims that could be brought under any statute, regulation, or otherwise against the Released Defendants, or against any one or group of them,  that arise out of, relate to, are associated with, are based upon, or concern, in any way, manner, regard or fashion whatsoever, any act or omission that occurred during the Class Period and up to the Effective Date, including but not limited to any claims under any legal or equitable theory as a result of the alleged violation of any state or federal law or regulation, claims brought pursuant to breach of contract, claims brought pursuant to common law, claims of unjust enrichment and/or *quantum meruit*, and any and all claims pursuant to, or derived from, ERISA that arise, or may arise, from any alleged failure to pay wages, including any claims for benefits under any benefit plans subject to ERISA. Each and every Participating Class Member, in return for the complete and full considerations,

40

terms, covenants and conditions as set forth in this Agreement, further specifically releases and waives each and all of their rights to bring any claim, charge, action, proceeding, cause and/or causes or action predicated on the matters that comprise the Class Member Released Claims at any time in the future against the Released Defendants, or against any one or group of them, for any matters arising prior to the Effective Date. As part of the Settlement of this matter, each Participating Class Member acknowledges and agrees that the Court will enjoin, and maintain authority to enforce an injunction precluding, any claims released by this Agreement from being further litigated, brought or pursued by any Participating Class Member or otherwise.

11.2 *Indemnity Regarding Class Member Released Claims*: For and in return of the complete and full considerations, terms, covenants and conditions as set forth in this Agreement, the Participating Class Members, and each and every one of them, agree to waive their right to bring any claims against the Released Defendants, or any one or group of them, at any time in the future arising out of, relating to, associated with, based upon, or concerning, in any way, manner, regard or fashion whatsoever, the Class Member Released Claims set forth in Section 11.1 at any time in the future. The Participating Class Members further agree to individually INDEMNIFY the Released Defendants from any type of claim of any kind whatsoever that she had, has, or may have, against the Released Defendants or against any one or group of them, arising out of, relating to, associated with, based upon, or concerning, in any way, manner, regard or fashion whatsoever, the Class Member Released Claims arising prior to the Effective Date. The indemnification shall be limited to the recovery obtained by the Participating Class Member and shall not include any claim for Attorneys' Fees or Litigation Expenses.

11.3 *Waiver of Additional Compensation and Indemnity*: Except as otherwise specifically provided for in this Agreement, the Participating Class Members, and each and every

41

one of them, acknowledge and agree that they will not seek to enforce, recover or collect upon any damages, awards, remunerations, sanctions, costs and/or attorney fees assessed against the Released Defendants, or against any one or group of them, arising out of, relating to, associated with, based upon, or concerning, in any way, manner, regard or fashion whatsoever, the Class Member Released Claims set forth in Section 11.1, including but not limited to any investigations, proceedings, lawsuits, claims, charges, cause and/or causes of actions that she may have or that may be asserted by others, or by any governmental entity, organization or agency, on her behalf, in her interest, or for her benefit, either in whole or in part.

If, however, any court, tribunal, firm, third person or persons, business entity, or governmental entity, organization or agency brings, asserts, or assumes jurisdiction over any form of investigation, proceeding, lawsuit, claim, charge or cause of action for or on behalf of any such Participating Class Member, and/or in her interest or for her benefit, either in whole or in part, against the Released Defendants, or against any one or group of them, arising out of, relating to, associated with, based upon, or concerning, in any way, manner, regard or fashion whatsoever, the Class Member Released Claims, such Participating Class Member shall reasonably cooperate with any request from the Released Defendants, at the Released Defendants' cost, to demand the dismissal, with prejudice, of any such investigation, proceeding, lawsuit, claim, charge or cause of action, and/or, as may be appropriate, her withdrawal therefrom (by way of example and without limitation, "withdrawal" includes, where applicable, a formal written request for withdrawal of, or non-participation in, an administrative proceeding, formally "opting"-out of an opt-out class action lawsuit, and refraining from formally "opting"-in to an opt-in class or collective action matter).  In the event, however, that any court, tribunal, or governmental entity, organization or agency should assess any damages, awards, remunerations, sanctions, costs, and/or attorney fees of any kind

whatsoever against any Released Defendant (in this Section, sometimes generally hereinafter simply referred to as "Award") arising out of, relating to, associated with, based upon, or concerning, in any way, manner, regard or fashion whatsoever, the Class Member Released Claims set forth in Section 11.1, the Participating Class Members, and each and every one of them, agree to specifically waive entitlement to, and refrain from collecting upon, any such Award.

11.4    *Sufficiency of Consideration:* Each and every Participating Class Member specifically represents that sufficient and adequate consideration is being conveyed to her through this Agreement and the Settlement, including but not limited to the dismissal and release of the Defendants' counterclaims and the injunctive relief provided herein, to support the releases of any and all of the Class Member Released Claims set forth in Section 11.1, irrespective of the fact that the Participating Class Members are only entitled to one form of remunerative recovery by way of either the Cash Pool or the Dancer Rent Credit Pool.

11.5    *Satisfaction of Participating Class Member Claims*:   The Participating Class Members specifically acknowledge that the payments made, and other considerations conveyed, by the Defendants to the Participating Class Members as set forth herein represent valid compromises, settlements, resolutions, accords, satisfactions, waivers and releases of any and all claims for FLSA or state wage/labor law coverage; minimum wage; overtime; liquidated, punitive and/or exemplary damage payments; costs; attorney fees; and/or any other benefits allegedly due the Participating Class Members in regard to any matters or conduct arising from, relating to, associated with, based upon, or concerning, in any way, matter, regard or fashion whatsoever, the Class Member Released Claims set forth in Section 11.1.

11.6    *Acknowledgement of Other Claims:*   The Class Representatives, and each and every one of them, specifically represent that to their own personal knowledge: A) There are no other

43

lawsuits, claims, charges, actions, proceedings, investigations, cause and/or causes of actions of any kind whatsoever, other than those that are set forth in Plaintiffs' Second Amended Complaint in this Action, pending or anticipated against the Released Defendants, or against any one or group of them, whether filed or unfiled, and whether civil or criminal, arising from, relating to, associated with, based upon, or concerning, in any way, manner, regard, or fashion whatsoever, the Class Member Released Claims set forth in Section 11.1, with the exception of those matters set forth in Section 2.3; B) that none of them have filed, been served with, or have any personal knowledge of any such matters; and C) that they have not participated in, or have provided assistance or cooperation to, such matters.

11.7   *Release of Participating Class Members:*   Subject to any claims that they may have for libel, slander, business disparagement, or the like, each and every Released Defendant hereby, knowingly and voluntarily, releases, acquits, and forever discharges, each and every Participating Class Member from any and all claims of every conceivable kind or nature whatsoever that they have, had, or may have, against the Participating Class Members, or against any one or group of them, whether known or unknown, whether fixed or contingent, whether asserted or unasserted, and whether filed or unfiled, at law, in equity or otherwise, that arise out of, relate to, are associated with, are based upon, or concern in any way, manner, regard or fashion whatsoever, the conduct, events, or transactions that will be set forth in the Answer and Counterclaim to Plaintiffs' Second Amended Class Action Complaint to be filed with this Court in this Action, and which occurred during the Class Period and/or up until the Effective Date of this Settlement, including, but not limited to, any claim for breach of contract, any claim purportedly arising out a Dancer Contract, or any claim that could exist as a result of the Participating Class Member's election to declare herself an "employee" under the terms of a

44

Dancer Contract. Notwithstanding the foregoing, Defendants retain the right to bring claims based upon future violations of the terms of Dancer Contracts and for claimed breach of the terms of this Agreement.

11.8 *Performing in the Future at Deja Vu-Affiliated Nightclubs:* The Class Representatives acknowledge that they are no longer Performing at any Deja Vu-Affiliated Nightclub and that the considerations conveyed to them hereby release the Released Defendants, and each and every one of them, from any and all claims that arise out of, relate to, are associated with, are based upon, or concern in any way, manner, regard or fashion whatsoever, assertions of wrongful termination, failure to "hire," or the like. Nothing in this Agreement shall require any Deja Vu-Affiliated Nightclub to permit any Class Representative to Perform on its premises at any time in the future, and the Class Representatives release the Released Defendants from, and waive any right to assert at any time in the future, any claims of any conceivable kind or nature whatsoever that they may have that arise out of, relate to, are associated with, are based upon, or concern, in any way, manner, regard or fashion whatsoever, the refusal of any Deja Vu-Affiliated Nightclub to permit the Class Representatives, or any one or group of them, to Perform on its premises at any time in the future.

11.9 *Waiver of California Civil Code Section 1542.* To effect the full and complete general releases as described above, Plaintiffs and Defendants (which are also Counter-Plaintiffs) expressly waive and relinquish all rights and benefits of Section 1542 of the Civil Code of the State of California, and do so understanding and acknowledging the significance and consequence of specifically waiving Section 1542. Section 1542 of the Civil Code of the State of California states as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the

release, which if known by him or her must have materially affected his or her settlement with the debtor.

Thus, notwithstanding the provisions of Section 1542, and to implement the full and complete releases, satisfactions, indemnifications, waivers and discharges set forth above, Plaintiffs and Defendants (Counter-Plaintiffs) expressly acknowledge that, except as specifically reserved above, this Agreement is intended to include in its effect, without limitation, all claims Plaintiffs and Defendants (Counter-Plaintiffs) do not know or suspect to exist in their favor at the time of their signing this Agreement, and that this Agreement contemplates the extinguishment of any such claims. Plaintiffs and Defendants (Counter-Plaintiffs) warrant that they have read this Agreement, including this waiver of California Civil Code Section 1542, and that they have consulted with or had the opportunity to consult with counsel of their choosing about this Agreement, and specifically about the waiver of Section 1542, and that Plaintiffs and Defendants (Counter-Plaintiffs) understand this Agreement and the Section 1542 waiver and that they freely and knowingly enter into this Agreement.

Plaintiffs and Defendants (Counter-Plaintiffs) further acknowledge that they later may discover facts different from or in addition to those that they now know or believe to be true regarding the matters released or described in this Agreement, and even so, they agree that the releases, satisfactions, indemnifications, waivers and discharges contained in this Agreement shall remain effective in all respects, notwithstanding any later discover of any different or additional facts. Plaintiffs and Defendants (Counter-Plaintiffs) expressly assume any and all risks of any mistake in connection with the true facts involved in the matters, disputes or controversies released or described in this Agreement, or with regard to any facts now unknown to Plaintiffs and to Defendants (Counter-Plaintiffs) relating thereto.

11.10 *Non-Assignment of Claims:* Except as set forth in this Agreement regarding the payment of Indirect Attorney Fees, each Class Member represents and agrees that she has not and will not assign any of her Class Member Released Claims to any other person or entity, and each Participating Class Member shall be deemed to have, and have actually, knowingly and voluntarily, represented that she has not assigned any of her Class Member Released Claims to any other person or entity. These representations shall survive the execution of this Agreement and the approval by the Court of the Settlement contemplated herein.

## XII.   TERMINATION OF SETTLEMENT

12.1 *Events Permitting Termination:* This Agreement and the Settlement shall terminate and be canceled within ten (10) business days after any of the following events if one of the Parties provides written notification of an election to terminate this Agreement and the Settlement based upon the occurrence of any of the following circumstances:

   a.   The Court rescinds preliminary approval of this Agreement, or declines to enter, or materially modifies, the contents of the Preliminary Approval Order attached hereto as Exhibit E;

   b.   Each and every one of the Parties has not signed this Agreement at least fifteen (15) days prior to Final Approval;

   c.   The Court declines to provide Final Approval of this Agreement, or declines to enter a Judgment that fully adopts, or materially modifies, the terms of this Agreement;

   d.   The Court declines to, or is unable to, enjoin each and every one of the Pending Proceedings identified in Section 2.3, with the Parties acknowledging that the ability of the Court to enjoin all such Pending

47

Proceedings is a condition precedent to the Defendants entering into the Settlement and executing this Agreement;

e.    The Court's Judgment is vacated, reversed or modified in any material respect in any appeal or other review, or in any collateral proceeding occurring prior to the Effective Date;

f.    The Effective Date does not occur for some other reason; or

g.    Any federal or state authorities object to, or request material modifications of, the Agreement and the Court adopts such objections and/or modifications.

12.2   *Consequences of Termination:*   In the event this Agreement does not receive Final Approval by the Court, or in the event the Court's Final Approval is overturned, reversed, vacated, or modified in any material way on appeal or review or by or through any collateral proceeding, or in the event the Settlement is terminated or fails to become effective in accordance with the terms of this Agreement, the Parties shall request the Court to restore them to their respective positions in the Action as of July 6, 2010.   In such event, the terms and provisions of this Agreement shall have no further force or effect with respect to the Parties, and neither this Agreement nor any discussions or documents regarding it, or the Settlement prior to the termination/cancellation of this Agreement, shall be used in the Action or in any other proceeding for any purpose, and any order or judgment entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

12.3   *Costs of Termination:*   If any Party terminates this Agreement, either together or separately, both Plaintiffs and Defendants shall be equally responsible for the Administrative Costs incurred (whether Defendants initially paid for them or not).

12.4   *Effects of Termination:*   In the event the Settlement is terminated:

    a)   The Defendants shall have no obligations to make any payments to any Party, Class Representative, Class Member, attorney, fund, or account, or to the Settlement Administrator;

    b)   Any Preliminary Approval Order and the Judgment, including any order of class certification pursuant to the Agreement, shall be vacated and the Second Amended Class Action Complaint and any answer/counterclaim thereto shall be deemed withdrawn; and

    c)   Any monies paid by Defendants to Class Counsel pursuant to Section 6.4, except mailing costs to the extent actually spent on mailing Class Notice, shall be immediately returned.

## XIII.   NO ADMISSION OF WRONGDOING

13.1   Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance thereof, is, or may be deemed to be, or may be used as: (a) an admission or evidence of the validity of any of the Class Member Released Claims, or any alleged wrongdoing or liability of any of the Released Defendants; (b) an admission or evidence of any fault or omission of any of the Released Defendants in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal, other than such proceedings as may be necessary to consummate or enforce this Agreement, the Settlement memorialized herein, or the Judgment; (c) an admission that Consulting or Mohney is, or could be held to be, a "joint employer" of the Deja Vu-Affiliated Nightclubs; or (d) an admission that each of the Deja Vu-Affiliated Nightclubs' separate corporate identity is or can be disregarded. Notwithstanding the preceding, however, this Agreement and/or the Judgment may be filed and

49

used in any action or proceeding in any court, administrative agency or other tribunal to support a defense of *res judicata*, collateral estoppel, payment, release, good faith settlement, accord and satisfaction, claim preclusion, issue preclusion, or any similar defense or counterclaim.

## XIV.   PROTECTIVE ORDER

14.1    All documents and/or things produced or generated through discovery by any Party in this Action shall be destroyed within thirty (30) days of the Effective Date.  Each Party shall promptly certify to the other that all documents and/or things produced or generated through discovery have been destroyed. No Party shall be required, however, to destroy their own documents and things or any other document that the Protective Order entitles the Party or its Counsel to retain following the termination of litigation.

## XV.   MISCELLANEOUS PROVISIONS

15.1    This Agreement may be amended or modified only by a written instrument signed by or on behalf of all of the signatories hereto or their successors-in-interest.   No oral amendment or modification shall be permitted or effective.

15.2    This Agreement and the Settlement were entered into after substantial good faith, arms-length negotiations between the Parties, Class Counsel and Defendants' Counsel.  As such, no Party shall be deemed to have relied upon the representations of any other Party or opposing counsel in relation to the negotiation or execution of this Agreement.

15.3    Each counsel or other person executing this Agreement on behalf of any of the Parties hereto represents that such person has the authority to so execute this Agreement.

15.4    This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same Agreement. This Agreement may be executed by signature delivered by facsimile or PDF, and need not be the

original "ink" signature.  A complete set of executed counterparts shall be filed with the Court. This Agreement shall become binding upon its execution by the Class Representatives, the Defendants, all counsels of record, and upon approval by the Court.

15.5    This Agreement and the exhibits hereto constitute the entire fully integrated agreement among the Parties.  No representations, warranties or inducements have been made to any Party concerning the Settlement, this Agreement or its exhibits, other than the representations, warranties and covenants contained in such documents.

15.6    The failure of any of the Parties to perform any of their obligations hereunder shall not subject such Party to any liability or remedy for damages, or otherwise, where such failure is occasioned, in whole or in part, by acts of God, fires, accidents, earthquakes, other natural disasters, explosions, floods, wars, interruptions or delays in transportation, power outages, labor disputes or shortages, shortages of material or supplies, governmental laws, restrictions, rules or regulations, sabotage, terrorist acts, acts or failures to act of any third parties, or any other similar or different circumstances or causes beyond the reasonable control of such Party.

15.7    This Agreement shall be governed by the laws of the State of Michigan.  All actions or proceedings relating to this Agreement may only be brought in the United States District Court for the Eastern District of Michigan.

15.8    Upon the occurrence of the Effective Date, the Settlement shall be fully enforceable by the Court, and the Court shall retain exclusive and continuous jurisdiction over the Parties and the Members of the Settlement Class to interpret and enforce the terms and conditions of, and rights under, the Settlement until the terms of this Agreement are fully performed.

15.9    Unless otherwise indicated herein, where any Party's exercise of any right under this Agreement requires written notice, the Party shall serve such written notice on the counsel of record for the other Parties by First Class U.S. Mail or any method that is at least as reliable and timely as First Class U.S. Mail.

15.10   Each of the Parties acknowledges and represents that he/she/it has fully and carefully read this Agreement prior to execution; that he/she/it has been fully apprised by his/her/its counsel of the legal effect and meaning of this Agreement and all terms and conditions hereof; that he/she/it has had the opportunity to make whatever investigation or inquiry he/she/it deemed necessary or appropriate in connection with the subject matter of the Action; that he/she/it has been afforded the opportunity to negotiate any and all terms of this Agreement; and that he/she/it is executing this Agreement voluntarily and free from any undue influence, coercion, duress, or menace of any kind.  This Agreement reflects the conclusion of each of the Parties that this Agreement, the Settlement, the Judgment to be entered hereunder, and the releases, waivers and covenants provided for herein, are in the best interest of said Parties, the general public, and the Settlement Class.  Except as expressly provided herein, this Agreement is not intended to confer upon any other person or entity any rights or remedies.

15.11    In the event that any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall in no way affect any other provisions if Defendants' Counsel and Class Counsel, on behalf of the Parties and the Settlement Class, mutually elect in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement, except as otherwise provided herein. However, if any funds have been paid, or other consideration conveyed, to a Class Representative or a Participating Class Member, then the

releases and discharges granted, waivers conferred, and satisfactions conveyed by this Agreement may not be terminated.

15.12   The headings and captions inserted in this Agreement are for convenience only and in no way define, limit, or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.

15.13   Except as otherwise provided in this Agreement, the Parties shall bear their own respective costs and fees.

15.14   None of the Parties, or their respective counsel, shall be deemed to be the drafter of this Agreement or its exhibits for purposes of construing their provisions.  The language in all parts of this Agreement and its exhibits shall be interpreted according to its fair meaning, and shall not be interpreted for or against any of the Parties as the drafter of the language.

15.15   All time computations under this Agreement shall be done in accordance with the provisions of the Federal Rules of Civil Procedure, as amended by the Local Rule for the Eastern District of Michigan which governs the calculation of time.

15.16   The waiver by any of the Parties to this Agreement of any provision thereof shall not be deemed a waiver by that Party of any other provision of this Agreement.

15.17   Each and every one of the Parties hereto acknowledges and agrees that he/she/it will, and shall, at all times subsequent to the execution of this Agreement and upon reasonable request, make, do and execute, or cause to be made, done or executed, all such further documents and instruments to effectuate the full intent, purpose, covenants and conditions as set forth herein as any Party may require.

15.18   This Agreement shall be binding upon and inure to the benefit of the Parties, the Participating Class Members, Class Counsel, Defendants' Counsel, as well as their assigns,

successors-in-interest of any kind whatsoever, purchasers of any of their assets and/or liabilities,

heirs, executors, and administrators.

Respectfully submitted,

Dated: October____, 2010 _____ _____

Jason J. Thompson (P47184)
Sommers Schwartz, P.C.
Co-Counsel for Plaintiffs/Counter Defendants
2000 Town Center, Suite 900
Southfield, MI 48075
(248) 355-0300
jthompson@sommerspc.com

Dated: October____, 2010 _____ _____

Allan S. Rubin (P44420)
Jackson Lewis, LLP
Counsel for Defendant/Counter Claimant
Cin-Lan, Inc.
2000 Town Center, Suite 1650
Southfield, MI 48075
(248) 936-1900
rubina@jacksonlewis.com

Dated: October____, 2010 _____ _____

Timothy J. Becker
Zimmerman Reed
Counsel for Plaintiffs/Counter Defendants
651 Nicollet Mall, Suite 501
Minneapolis, MN 55042
(612) 341-0400
Timothy.becker@zimmreed.com

Dated: October____, 2010 _____ _____

Edith A. Thomas
Edi Thomas Associates
Counsel for Defendant/Counter Claimant
Harry V. Mohney
214 N. Ridge Drive, Suite B

Fallbrook, CA 92028
888-349-3940
edithomas.fb.calif@gmail.com

Dated: October___, 2010 _____

_____
Paul W. Coughenour (P34335)
Clark Hill
Co-Counsel for Defendant/Counter Claimant
Deja Vu Consulting, Inc.
500 Woodward Avenue, Suite 3500
Detroit, MI 48226-3435
(313) 965-8409
pcoughenour@clarkhill.com

Dated: October___, 2010 _____

_____
Bradley J. Shafer (P36604)
Shafer & Associates, P.C.
Co-Counsel for Defendant/Counter Claimant
Deja Vu Consulting, Inc.
3800 Capital City Blvd., Suite 2
Lansing, MI 48906
(517) 886-6560
brad@bradshaferlaw.com

Dated: October___, 2010 _____

_____
Walter J. Piszczatowski (P27158)
Hertz, Schram
Co-Counsel for Defendant/Counter Claimant
Cin-Lan, Inc.
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
(248) 335-5000
wallyp@hertzschrmam.com

**Exhibit A**

| | CORPORATE NAME | DOING BUSINESS AS: | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| 1 | GRAPEVINE ENTERTAINMENT, INC. | DÉJÀ VU SHOWGIRLS | 1524 GOLDEN STATE HWY. | BAKERSFIELD | CA | 93301 |
| 2 | CATHAY ENTERTAINMENT, INC./H.D.V. NO. 3, LLC | DÉJÀ VU SHOWGIRLS | 16025 GALE AVENUE, STE. A-11 | CITY OF INDUSTRY | CA | 91745 |
| 3 | NITE LIFE EAST, LLC | LITTLE DARLINGS | 8290 BROADWAY | LEMON GROVE | CA | 91945 |
| 4 | SP STAR ENTERPRISE, INC. | DÉJÀ VU | 710 E. COMMERCIAL ST. | LOS ANGELES | CA | 90012 |
| 5 | COLDWATER, LLC | DÉJÀ VU SHOWGIRLS | 7350 COLDWATER CANYON | NORTH HOLLYWOOD | CA | 91605 |
| 6 | NEW WAVE, INC. | VENUS FAIRE | 6452 LANKERSHIM BLVD | NORTH HOLLYWOOD | CA | 91606 |
| 7 | EYEFULL, INC. | DÉJÀ VU SHOWGIRLS | 5282 MISSION BLVD. | ONTARIO | CA | 91762 |
| 8 | DÉJÀ VU SHOWGIRLS - SACRAMENTO, LLC | DÉJÀ VU SHOWGIRLS | 11252 TRADE CENTER DRIVE | RANCHO CORDOVA | CA | 95742 |
| 9 | CBDM REDLANDS, LLC | LARRY FLYNT'S HUSTLER CLUB | 1331 W. COLTON AVE. | REDLANDS | CA | 92374 |
| 10 | 3610 BARNETT AVE., LLC | ADULT SUPERSTORE | 3610 BARNETT AVE. | SAN DIEGO | CA | 92110 |
| 11 | 4805 CONVOY, INC. | DREAMGIRLS | 4805 CONVOY ST. | SAN DIEGO | CA | 92111 |
| 12 | C.B. & D.M. ENTERTAINMENT, INC. | DÉJÀ VU SHOWGIRLS | 5520 KEARNY VILLA ROAD | SAN DIEGO | CA | 92123 |
| 13 | JOLAR CINEMA OF SAN DIEGO, LTD. | JOLAR CINEMA SHOWGIRLS | 6321 UNIVERSITY AVE. | SAN DIEGO | CA | 92115 |
| 14 | PACERS, INCORPORATED | LARRY FLYNT'S HUSTLER CLUB | 3336 MIDWAY DRIVE | SAN DIEGO | CA | 92110 |
| 15 | SHOWGIRLS OF SAN DIEGO, INC. | DÉJÀ VU SHOWGIRLS | 2720 MIDWAY DRIVE | SAN DIEGO | CA | 92110 |
| 16 | BIJOU - CENTURY, LLC | CENTURY THEATRE | 816 LARKIN ST | SAN FRANCISCO | CA | 94133 |
| 17 | BT CALIFORNIA, LLC | BROADWAY SHOWGIRLS | 412 BROADWAY ST | SAN FRANCISCO | CA | 94133 |
| 18 | CHOWDERHOUSE, INC. | HUNGRY I | 546 BROADWAY ST | SAN FRANCISCO | CA | 94133 |
| 19 | DEJA VU - SAN FRANCISCO, LLC | CENTERFOLDS | 391 BROADWAY | SAN FRANCISCO | CA | 94133 |
| 20 | DEJA VU SHOWGIRLS OF SAN FRANCISCO, LLC | TEMPTATIONS/LITTLE DARLINGS | 312 COLUMBUS ST | SAN FRANCISCO | CA | 94133 |
| 21 | GOLD CLUB - SF, LLC | GOLD CLUB | 648-650 HOWARD ST | SAN FRANCISCO | CA | 94105 |
| 22 | MARKET ST. CINEMA, LLC | MARKET STREET CINEMA | 1128 MARKET ST | SAN FRANCISCO | CA | 94103 |
| 23 | S.A.W. ENTERTAINMENT, LTD. | LARRY FLYNT'S HUSTLER CLUB | 1031 KEARNEY ST | SAN FRANCISCO | CA | 94133 |
| | S.A.W. ENTERTAINMENT, LTD. | CONDOR | 560 BROADWAY ST | SAN FRANCISCO | CA | 94133 |
| 24 | SAN FRANCISCO GARDEN OF EDEN, LLC | GARDEN OF EDEN | 529 BROADWAY | SAN FRANCISCO | CA | 94133 |
| 25 | SAN FRANCISCO ROARING 20'S, LLC | ROARING 20'S | 552 BROADWAY | SAN FRANCISCO | CA | 94133 |
| 26 | STOCKTON ENTERPRISES, LLC | DÉJÀ VU SHOWGIRLS | 4206 N. WEST LANE | STOCKTON | CA | 95204 |
| 27 | BOB MARTIN, INC. | DÉJÀ VU EROTIC ULTRA LOUNGE | 7000 GARDEN GROVE BLVD. | WESTMINSTER | CA | 92683 |
| 28 | DÉJÀ VU - COLORADO SPRINGS, INC. | DÉJÀ VU | 2145 "B" STREET | COLORADO SPRINGS | CO | 80906 |
| 29 | DÉJÀ VU SHOWGIRLS OF TAMPA, L.C. | DÉJÀ VU | 6805 ADAMO DRIVE | TAMPA | FL | 33619 |
| 30 | CINEMA ART THEATRE OF SPRINGFIELD, INC. | DÉJÀ VU | 3220 LAKE PLAZA DRIVE | SPRINGFIELD | IL | 62703 |
| 31 | DÉJÀ VU SHOWGIRLS - WASHINGTON PARK, LLC | LARRY FLYNT'S HUSTLER CLUB | 5420 BUNKUM ROAD | WASHINGTON PARK | IL | 62204 |
| 32 | DÉJÀ VU SHOWGIRLS OF HAMMOND, LLC | DÉJÀ VU | 3850 179TH STREET | HAMMOND | IN | 46323 |
| 33 | DÉJÀ VU OF HAMMOND, INC. | DÉJÀ VU | 2491 RIPLEY ST. | LAKE STATION | IN | 46405 |
| | DÉJÀ VU OF HAMMOND, INC. | DREAMGIRLS | 2493 RIPLEY ST. | LAKE STATION | IN | 46405 |
| 34 | LOVE BOUTIQUE - MICHIGAN CITY, LLC | DÉJÀ VU LOVE BOUTIQUE | 412 W. US HWY. 20 | MICHIGAN CITY | IN | 46360 |
| 35 | DÉJÀ VU OF KENTUCKY, INC. | DÉJÀ VU | 485 NEW CIRCLE ROAD NW | LEXINGTON | KY | 40511 |
| 36 | TAYLOR BLVD. THEATRE, INC. | DÉJÀ VU | 3421 TAYLOR BLVD. | LOUISVILLE | KY | 40215 |
| 37 | 411 BURLESQUE CLUB, INC. | LITTLE DARLINGS | 411 BOURBON STREET | NEW ORLEANS | LA | 70130 |
| 38 | DÉJÀ VU SHOWGIRLS OF NEW ORLEANS, LLC | DÉJÀ VU SHOWGIRLS | 226-228 BOURBON STREET | NEW ORLEANS | LA | 70130 |
| 39 | H.D.V. NO. 1, LLC | LARRY FLYNT'S HUSTLER CLUB | 225 BOURBON STREET | NEW ORLEANS | LA | 70130 |
| 40 | D.V. II - SHREVEPORT, LLC | DÉJÀ VU | 202 COMMERCE STREET | SHREVEPORT | LA | 71101 |
| 41 | SB ENTERTAINMENT, INC. | BARELY LEGAL | 423-427 BOURBON STREET | NEW ORLEANS | LA | 70130 |
| 42 | H.D.V. BALTIMORE II, LLC | LARRY FLYNT'S HUSTLER CLUB | 409 EAST BALTIMORE STREET | BALTIMORE | MD | 21202 |
| 43 | HDV GREEKTOWN, LLC/K & P, INC. | SHAMPOO/THE ZOO BAR | 415 E. CONGRESS ST. | DETROIT | MI | 48226 |
| 44 | FLINT THEATRICAL ENTERPRISES, INC. | DÉJÀ VU SHOWGIRLS | 2402 S. DORT HWY. | FLINT | MI | 48507 |
| 45 | LOVE BOUTIQUE - PORT HURON, LLC | DEJA VU/DEJA VU LOVE BOUTIQUE | 3811 24TH AVE | FORT GRATIOT | MI | 48059 |
| 46 | DÉJÀ VU - HIGHLAND PARK, LLC | DÉJÀ VU | 16549 WOODWARD AVENUE | HIGHLAND PARK | MI | 48203 |
| 47 | CINEMA THEATRE OF KALAMAZOO, INC. | DÉJÀ VU SHOWGIRLS | 1336 RAVINE ROAD, STE. C | KALAMAZOO | MI | 49004 |
| 48 | DV KALAMAZOO, LLC | LITTLE DARLINGS | 1336 RAVINE ROAD, STE. A | KALAMAZOO | MI | 49004 |
| 49 | CIN-LAN INC. | DÉJÀ VU SHOWGIRLS | 1000 W. JOLLY ROAD | LANSING | MI | 48910 |

| | CORPORATE NAME | DOING BUSINESS AS: | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| 50 | HDV - LINCOLN PARK, LLC | LARRY FLYNT'S HUSTLER CLUB | 980 JOHN A. PAPALAS DRIVE | LINCOLN PARK | MI | 48146 |
| 51 | DV SAGINAW, LLC | DÉJÀ VU SHOWGIRLS | 6530 BAY ROAD | SAGINAW | MI | 48604 |
| 52 | YPSILANTI ART THEATRE CORP. | DÉJÀ VU SHOWGIRLS | 31 NORTH WASHINGTON | YPSILANTI | MI | 48197 |
| 53 | DÉJÀ VU ENTERTAINMENT ENTERPRISES OF MINNESOTA, INC. | DÉJÀ VU SHOWGIRLS | 315 WASHINGTON AVENUE NORTH | MINNEAPOLIS | MN | 55401 |
| 54 | MINNEAPPLE ENTERPRISES OF MINNESOTA, INC. | DREAMGIRLS | 12 N. 5TH STREET | MINNEAPOLIS | MN | 55404 |
| 55 | DÉJÀ VU SHOWGIRLS OF LAS VEGAS, LLC | DÉJÀ VU SHOWGIRLS | 3247 INDUSTRIAL ROAD | LAS VEGAS | NV | 89109 |
| 56 | LAS VEGAS ENTERTAINMENT, LLC | LARRY FLYNT'S HUSTLER CLUB | 3131 PONDEROSA HWY. | LAS VEGAS | NV | 89118 |
| 57 | LITTLE DARLINGS OF LAS VEGAS, LLC | LITTLE DARLINGS | 1514 WESTERN AVE. S. | LAS VEGAS | NV | 89102 |
| 58 | VEGAS VALLEY FOOD & BEVERAGE, LLC | DÉJÀ VU EROTIC ULTRA LOUNGE | 4740 S. ARVILLE ST. | LAS VEGAS | NV | 89103 |
| 59 | HDV - MANHATTAN, LLC | LARRY FLYNT'S HUSTLER CLUB | 641 W. 51ST STREET | NEW YORK | NY | 10019 |
| 60 | DÉJÀ VU OF CINCINNATI, LLC | DÉJÀ VU | 516 BATAVIA PIKE | CINCINNATI | OH | 45244 |
| 61 | HDV - CLEVELAND, LLC | LARRY FLYNT'S HUSTLER CLUB | 1045 OLD RIVER ROAD | CLEVELAND | OH | 44113 |
| | HDV - CLEVELAND, LLC | LARRY FLYNT'S HUSTLER CLUB | 1101 CENTER STREET | CLEVELAND | OH | 44113 |
| 62 | LOVE BOUTIQUE - DAYTON, LLC | DÉJÀ VU LOVE BOUTIQUE | 1267 N. KEOWEE | DAYTON | OH | 45404 |
| 63 | DÉJÀ VU - TOLEDO, INC. | DÉJÀ VU | 135 S. BYRNE ROAD | TOLEDO | OH | 43615 |
| 64 | 59TH ST LD OKLAHOMA CITY, LLC | LITTLE DARLINGS | 1500 SOUTH EAST 59TH STREET | OKLAHOMA CITY | OK | 73129 |
| 65 | DÉJÀ VU OF NASHVILLE, INC. | DÉJÀ VU | 1214 DEMONBREUN ST. | NASHVILLE | TN | 37203 |
| 66 | DÉJÀ VU-LAKE CITY, INC. | DÉJÀ VU | 14556 BOTHELL WAY NE | LAKE FOREST PARK | WA | 98155 |
| 67 | DÉJÀ VU TACOMA, INC. | DÉJÀ VU | 8920 W. TACOMA WAY | LAKEWOOD | WA | 98409 |
| 68 | DÉJÀ VU SEATTLE, LLC | LITTLE DARLINGS | 2027 WESTLAKE | SEATTLE | WA | 98121 |
| 69 | DREAMGIRLS OF SEATTLE, LLC | DREAMGIRLS | 1530 1ST AVENUE SOUTH | SEATTLE | WA | 98134 |
| 70 | SEATTLE AMUSEMENT CO., INC. | DÉJÀ VU SHOWGIRLS OF SEATTLE | 1510 1ST AVE. (UPPER) | SEATTLE | WA | 98101 |
| | SEATTLE AMUSEMENT CO., INC. | DÉJÀ VU ADULT SUPERSTORE | 1510 1ST AVENUE | SEATTLE | WA | 98101 |
| | SEATTLE AMUSEMENT CO., INC. | FANTASY UNLIMITED | 2027 WESTLAKE AVE. | SEATTLE | WA | 98121 |
| 71 | DÉJÀ VU-SPOKANE, INC. | DÉJÀ VU | E. 87722 SPRAGUE AVE. | SPOKANE | WA | 99206 |
| 72 | DÉJÀ VU-TUKWILA, INC. | DÉJÀ VU | 15011 TUKWILA INT'L. BLVD. | TUKWILA | WA | 98188 |

# CASH PAYMENT CLAIM FORM

In order to make a claim for a one-time cash payment, you ***must*** provide all of the information requested below ***and*** return it to the Settlement Administrator ***no later than:*** ▮▮▮▮▮▮▮▮▮▮▮▮▮. Late forms will not be accepted and you will ***not*** receive a Cash Payment.  Keep a signed copy for your records.

**NOTE:**  You *may **not*** claim both the Cash Payment and Rent Credits.  If you wish to receive the Rent Credit, ***do not*** complete or mail in this claim form.

In order to receive a Cash Payment you must provide **all** of the following information.  PRINT LEGIBLY!

1. Legal Name: _____

2. Address: _____  City/State: _____  Zip Code: _____

3. Social Security Number: _____

4. Please Identify the LAST Deja Vu-Affiliated Nightclub where you performed between June 28, 2005 and the present date, and the approximate dates you performed there, your stage name, and the number of days you performed at that club:

   The last club at which I performed was: _____

   City/state of last club: _____

   The approximate dates I performed there were:     From: _____  To: _____

   The stage name I used at the club was: _____

   The number of performance dates (or "sets" or "shifts") was: _____

If you do not remember the number of performance dates, your benefits will be calculated based on the club's records. If you have actual receipts from the dates (or "sets" or "shifts") you performed, submit those with your Cash Payment Claim Form, and the Settlement Administrator will use this information to calculate your benefits pursuant to the terms of the Settlement Agreement.

**<u>An IRS Form 1099-MISC will be issued to you for the amount of the cash payment you receive pursuant to the Settlement Agreement. You are responsible for obtaining your own tax advice and paying any taxes incurred as a result of the Settlement.</u>**

I DECLARE THAT ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. I HAVE READ THIS FORM, I UNDERSTAND THE FORM AND WISH TO SUBMIT IT TO RECEIVE MY CASH PAYMENT.  BY EXECUTING THIS FORM, I CONSENT TO JOIN THE COLLECTIVE ACTION KNOWN AS *Doe, et al. v. Cin-Lan, Inc, et al.*, No. 4:08-CV-12719.

DATE: _____        SIGNATURE: _____

Exhibit C to be filed within 7 days

# Deja Vu Class Action
# Exclusion (Opt-Out) Form

The U.S. District Court for the Eastern District of Michigan has granted preliminary approval of a class action settlement in a lawsuit entitled Jane Doe's I-IV, et al. vs. Cin-Lan, Inc, et al, Civil Action 2:08-CV-12719.

Class members have the right to opt out of the proposed settlement if they already have their own lawsuit against the defendants and want to continue with it, or if they want to file their own lawsuit, or simply if they do not want to be included in the class action settlement for any reason whatsoever.

**If you opt out of this class, you will not get any of the financial benefits from this settlement.**

To opt out, you must fully complete (by providing all of the information required below), personally sign this form, and mail it to the address below, so that it is postmarked no later than _____, **2010**. If you do not submit this fully completed form by this date, you will automatically be a member of the class.

☐ **I want to be excluded from the Deja Vu Class Action Settlement. I understand that by doing so, I will not be eligible for any of the financial benefits from this settlement.**

Name: _____

Address: _____

_____

City: _____   State: _____   Zip: _____

Telephone: _____

Signature: _____   Date: _____

Return this form so that is postmarked by _____, 2010 to:

Settlement Administrator
Xxxxxxxx

# TO REMAIN A CLASS MEMBER
# <u>DO NOT</u> SUBMIT THIS FORM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JANE DOE NOS. 1 - 4**, individually, and on behalf of all others similarly situated,

        Plaintiffs,

v.

**CIN-LAN, INC.;**
**DÉJÀ VU CONSULTING, INC.;**
**HARRY V. MOHNEY, ET AL,**

        Defendants.

Case No. 4:08-CV-12719

Honorable Stephen J. Murphy, III

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF NATIONWIDE CLASS ACTION SETTLEMENT, CERTIFYING CLASS FOR PURPOSE OF SETTLEMENT, DIRECTING NOTICE TO THE CLASS AND <u>SCHEDULING FAIRNESS HEARING</u>**

This matter came before the Court pursuant to the Parties' notice that a proposed settlement has been reached that represents a resolution of all class members' claims under the Fair Labor Standard Act, 29 U.S.C. §201, et seq. ("FLSA"), and state wage and hour claims, including those currently pending in other courts and before certain administrative tribunals, and their request to the Court, for settlement purposes only, that it: 1) preliminarily approve the proposed settlement agreement pursuant to Fed. R. Civ. P. 23 (c) and (e) and §216(b) of the Fair Labor Standards Act;  2) preliminarily certify a class action (collectively, the Court will refer to the Rule 23 class and the collective claims pursuant to Section 216(b) of the FLSA as the term "Class"); and 3) schedule a Fairness Hearing to consider final approval of the proposed settlement.

WHEREAS, the Parties have reached a settlement of the above-captioned matter; and

WHEREAS, Plaintiffs Doe I through Doe IV have approved the terms of the settlement; and

WHEREAS, although Defendants assert a variety of defenses and counter-claims and deny any wrongdoing or legal liability with regard to any and all of the claims asserted, in this litigation or in the proposed Second Amended Complaint, Defendants nevertheless desire to settle the asserted Class action claims on the terms and conditions memorialized in the definitive Release and Settlement Agreement ( "Settlement Agreement") for the purpose of avoiding the burden, expense, and uncertainty of trial, and for the purpose of putting to rest the controversies advanced by this and related litigation pending across the country; and

WHEREAS, this Court has conducted an informal preliminary approval hearing on Wednesday July 7, 2010, and is otherwise fully advised of the facts and circumstances of the proposed settlement;

**IT IS HEREBY ORDERED THAT:**

**<u>Preliminary Approval of the Class Settlement Agreement</u>**

1.      The standards for preliminary approval of a class settlement under Fed. R. Civ. P. 23(e) involves a three-step process:

   a.      Preliminary approval of the proposed settlement at an informal hearing;

   b.      Dissemination of mailed and/or published notice of the settlement to all affected Class Members; and

   c.      A formal fairness hearing or final approval hearing, at which Class Members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

*See Fussell v. Wilkinson,* No. 1:03-CV-704, 2005 WL 3132321, at \*3 (S.D. Ohio Nov. 22, 2005) (citing, among other cases, *Williams v. Vukovich,* 720 F.2d 909 (6th Cir. 1983); *Manual for*

*Complex Litigation* § 21.632; § 30.41 (5th Ed. 2004)). This procedure, commonly employed by federal courts, serves the dual function of safeguarding class members' procedural due process rights, and enabling the Court to fulfill its role as the guardian of the interests of the class. Specifically, at his stage:

If the court finds that the settlement is the product of arm's-length negotiations conducted by experienced counsel, the settlement will enjoy a presumption of fairness.… Once the settlement is presumed fair, "it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel."

*In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp.2d 164, 173-74 (S.D.N.Y. 2000)

(quoting *In re Warner Comm. Sec. Litig.,* 618 F. Supp. 735, 746 (S.D.N.Y. 1985)).

    2.    The Court has been advised by all counsel of the basic terms of the Settlement Agreement, which are summarized below:

    a.    Defendants will agree to pay, pursuant to the terms set forth in the Settlement Agreement, $11.3 million for the benefit of the Class certified by the Court to settle all claims brought in this Action and otherwise identified in the Settlement Agreement , and will in exchange receive a class-wide release by all Class members who file a  Cash Payment Claim Form that includes a consent to join this action under §216(b) of the FLSA and by those who do not opt out of the Class pursuant to Rule 23, for both known and unknown claims related to this action and other specified pending proceedings, including all allegations that were not made but arise out of the same transactions or occurrences at issue in the Second Amended Complaint;

    b.    The settlement will involve injunctive relief and monetary relief, including providing for two alternative methods for paying the monetary benefit to Class members: A cash payment or dancer "rent" credit.  Each entertainer  will be eligible to receive either option, and will be afforded the option of choosing which of the two options she wishes to receive.

    c.    $966,666 will be paid as partial payment of attorneys' fees, litigation expenses and class representative incentive awards, including $200,000 to be applied to reimburse plaintiff counsels' litigation costs and an agreed upon settlement administration cost amount, $100,000 in Class representative incentive awards to the Jane Doe Plaintiffs and direct attorneys' fees of  $666,666.

    d.    The balance of the settlement shall be made available to Class members who are eligible to receive benefits as set forth in the Settlement Agreement. Those

payments will take the form of either a: (1) cash payment of up to $500 depending on the number of days that the entertainer had performed at the last Deja Vu-Affiliated Nightclub at which she performed prior to the effective date of the settlement from her "Qualifying Club" ; or (2) a dancer rent credit of up to $1,000 each depending on the number of days that the Entertainer had performed at her Qualifying Club, pursuant to terms outlined in the Settlement Agreement. Plaintiffs' counsel may file, and defense counsel will not object to, a petition for payment of up to 31.489% of the rent credit benefit available under this section from the Class as additional attorneys' fees, with a maximum amount of $2,833,334.00, all of which will be  guaranteed by the Defendants to be paid out in accordance with  the terms of the Settlement Agreement regardless of the number of rent credits used;

e.      Various injunctive relief as outlined in the Settlement Agreement;

f.      The Parties will jointly agree to a settlement Class as set forth in the Settlement Agreement, and will cooperate to effectuate that settlement, obtain final approval, and administer the settlement; and

g.      Any person who is a member of the settlement Class, but who desires to opt-out, may do so by personally signing an opt-out form and submitting  that form pursuant to the terms of the Settlement Agreement.


3.      The record includes many contested motions, some pending and some decided on a preliminary basis, and there are also a variety of anticipated future motions, including class certification under both §216(b) of the FLSA and several state wage and hour laws under Fed. R. Civ. P. 23. The past two years have involved hard-fought litigation as confirmed by the record and this Court's orders. The Court has first-hand experience of the efforts of the Parties' counsel, and has on more than one occasion had many of the Parties in Court.  The Court also notes that the Parties were in Court recently where the Court established a final Case Management Order and a trial date, which is presently set for September, 2011.  The Court is well aware of the many factual and legal issues that remain in dispute between the Parties and that the Parties understand that they each face significant yet unknown consequences relative to the Court's rulings, and then trial.

4.      The Parties have spent much of the past seven months in focused settlement efforts, including most recently the Parties' settlement reports. The Parties have spent a day in face-to-face mediation with a professional mediator, and then have had multiple follow up sessions with the mediator.

5.      The Court has reviewed Settlement Agreement, and the documents that comprise its various exhibits (which include Class notices, claim forms, and Opt Out Form),  and a proposed timetable of events, for purposes of approval under Rule 23(g) and §216(b) of the FLSA, and preliminarily finds that the Settlement Agreement constitutes a fair result given the totality of the circumstances facing Plaintiffs and the Class. The benefits of settlement are great in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of prolonged litigation. "There is an overriding public interest in favor of settlement of class action suits."  *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).  This is particularly true when the substantive issues of the case "reflect a broad public interest in the rights to be vindicated or the social or economic policies to be established."  *Id*. As the Court is aware, the present Class action settlement was reached after prolonged arm's-length negotiations by experienced counsel on both sides. The terms of this settlement as outlined above and as set forth in greater detail in the Settlement Agreement represent, in this Court's opinion, an excellent result achieved by experienced Plaintiffs' and Defendants' counsel.

6.      For the reasons stated by the Court on the record in Court on Wednesday July 7, 2010, and upon further review of the materials submitted by the Parties in furtherance of the entry of this order, the Court hereby grants preliminary approval of the Parties' Release and Settlement Agreement pursuant to Rule 23(c) and (e) of the Federal Rules of Civil Procedure and

§216(b) of the FLSA as agreed to and by the Parties. Approval is based upon: (a) the likelihood of success on the merits weighed against the amount and form of relief offered in the settlement; (b) the risks, expense, and delay of further litigation; (c) the judgment of experienced counsel for all Parties who have competently evaluated the strength of their proofs; (d) the amount of discovery completed and the character of the evidence uncovered, not only by the Parties, but also by the Court; (e) the fairness of the settlement, as set forth on the record by counsel, to the Class members; (f) the fact that the settlement is the product of extensive arms-length negotiations between the Parties; (g) the fact that any proposed Class member who disagrees with the settlement may opt out by personally signing the Opt Out Form and submitting it pursuant to the procedures set forth in the Settlement Agreement; and (h) the fact that this settlement is consistent with the public interest.

### Preliminary Approval of Class

7.      The Court preliminarily finds that the proposed Class, for settlement purposes only, meets the applicable requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and §216(b) of the FLSA, and hereby conditionally certifies the following class under Fed. R. Civ. P. 23(a)(b)(3) and collectively under §216(b) of the FLSA:

> **All entertainers who performed any Deja Vu-Affiliated Nightclub identified on Exhibit A attached to the settlement agreement during the period June 25, 2005, through the present, or during the applicable limitations period for any entertainer who performed at any of the clubs involved in one of the other pending lawsuits, whichever is longer. [1]**

8.      The Court preliminarily finds that Plaintiffs Jane Does I-IV are adequate representatives of the Class for settlement purposes only;

---

[1] The Court notes that an extended statute of limitations may apply to entertainers who performed at Deja Vu of North Hollywood or Deja Vu City of Industry.

9.      If this Class settlement is terminated for any reason or is not consummated for any reason, the certification of the Class shall be void and the Court will vacate the certification, and the Second Amended Complaint filed in accordance with the terms of the Settlement Agreement and any answer/counterclaims filed in response thereto, all *nunc pro tunc*, and Plaintiffs and Defendants shall be deemed to have reserved all of their rights to propose or oppose any and all certification issues;

10.     The Court further preliminarily finds that Plaintiffs Counsel named in the Second Amended Class Action Complaint will fairly and adequately represent the interests of the Class, and hereby appoints them pursuant to Fed. R. Civ. P. 23(g) as Class Counsel for settlement purposes only.

11.     Preliminary approval of a class action settlement includes setting deadlines for providing notice; opting out of the settlement class; objecting to the settlement agreement or to the proposed award of attorneys' fees, costs, expenses and plaintiff incentive awards; scheduling a Fairness Hearing; and submitting claims.

12.     The Court sets the following dates for the Approval Process:

**Proposed Timeline**

| EVENT | ANTICIPATED DATE |
|---|---|
| Motion for Preliminary Approval Order; Settlement Agreement with Exhibits, including Class Notice; and Motion for Leave to File 2nd Amended Class Action Complaint | By October 22, 2010 |
| Entry of Preliminary Approval Order ("Preliminary Approval") | TBD |
| Defendants shall provide the Settlement Administrator with addresses for Class Notice to be mailed. | Preliminary Approval Plus 14 days |

| EVENT | ANTICIPATED DATE |
|---|---|
| Deadline for the Settlement Administrator to mail Class notice, claim forms and Opt Out Forms; deadline for Defendants to and  for Class Counsel to make the above-referenced documents available to the Class on a class web site. | Preliminary Approval Plus 28 days |
| Deadline to file Motion for Final Approval of Settlement, Motion for Class Certification and Petition for Fees. | Preliminary Approval Plus 45 days |
| Deadline to file and serve upon Class Counsel and Defense Counsel Opt Out Notices, Objections and Memorandums of Law in Support of Objections.  All objectors are directed that any objection received by Class Counsel and Defense Counsel *after* the deadline for service shall be deemed untimely. | Preliminary Approval Plus 66 days |
| Plaintiff and Defendants Reply Brief (not to exceed 20 pages) | Preliminary Approval Plus 80 Days |
| Final Fairness Hearing. | To be set by the Court and included in the Class Notice |

13.     Any Class member may object to the Settlement Agreement and/or appear at the Fairness Hearing to object to the Settlement Agreement.  A Class member wishing to object must file with this Honorable Court and serve on Class Counsel and counsel for Defendants a written statement; (i) objecting to the settlement; and (ii) providing supporting factual and/or legal bases for the objection. Class members wishing to appear at the Fairness Hearing to object must also file with this Court, and serve upon Class Counsel and counsel for the Defendants, written notice of any intention to appear. Such written statement and/or notice must be filed with this Court at least 14 days before the Fairness Hearing. Class members who fail to comply with these provision shall be deemed to have waived any objections, and shall be foreclosed from making any objection, whether by appeal or otherwise, to the settlement.

14.     All proceedings in this Action not related to settlement shall be stayed pending the Fairness Hearing pursuant to  Fed. R. Civ. P. 23(e), to determine the fairness, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved..  Further, all Class members who did not personally sign and file a timely notice of their intent to opt out, or who filed a timely claim under § 216(b) of the Fair Labor Standards Act, shall be enjoined from commencing or taking any other action based upon the claims at issue in the Second Amended Class Action Complaint.

15.     The Court expressly reserves the right to adjourn the Fairness Hearing from time to time without further notice and to approve the Settlement Agreement at or after the Fairness Hearing.

DATED:

_____
The Honorable Steven J. Murphy, III
U.S. District Court Judge

4827-2328-9607, v.  3

<div style="border:1px solid">

*UNITED STATES DISTRICT COURT – EASTERN DISTRICT OF MICHIGAN*

# Notice of Settlement of Nationwide Class Action

***If You Performed at any "Deja Vu-Affiliated Nightclub" as an Exotic Dancer, a Proposed Class Action Settlement May Affect Your Rights. You May Be Entitled to a Cash Payment of up to $500 or Credits of up to $1000.***

</div>

**A U.S. Federal Court has authorized this Notice.**
**It is not from a lawyer. You are not being sued.**

You are receiving this notice because there is a proposed settlement of a nationwide class action lawsuit brought by a Professional Entertainer (hereinafter "Plaintiff") against Deja Vu Consulting Inc., Harry V. Mohney, Cin-Lan Inc. and other Deja Vu-Affiliated Nightclubs (referred to as "Deja Vu," or "Defendants"). The lawsuit it captioned *Doe, et al. v. Cin-Lan, Inc, et al.*, No. 4:08-CV-12719, and is pending before Judge Stephen J. Murphy in the United States District Court for the Eastern District of Michigan.

In the lawsuit, the Plaintiff has filed suit under the pseudonym of Jane Doe, and brought her claims on behalf of all other entertainers (the "Class"). Three additional entertainers have joined the lawsuit, each of whom has filed suit using the pseudonym of Jane Doe and collectively they are referred to as Jane Doe's I-IV in this litigation. The lawsuit alleges that the Defendants failed to pay minimum wages and unlawfully confiscated tips belonging to them and other Entertainers performing at nightclubs operating as "Deja Vu," "Little Darlings," "Showgirls," "Larry Flynt's Hustler Club," Gold Club, Barely Legal, and Dream Girls, throughout the United States (collectively referred to as "Deja Vu-Affiliated Nightclubs").

The Defendants have denied and continue to deny all of the allegations in Plaintiffs' Complaint and have filed counter-claims against the Plaintiffs and the Class; including claims that the entertainers should be required to return the mandatory dance fees they retained if the clubs were found to owe them minimum wages.

The Court has not made a determination of the merits of Plaintiff's claims, or Deja Vu's defenses or counter-claims.

Rather than continue to litigate these matters, the parties have reached a settlement. The monetary value of the settlement is $11.3 million dollars. Pursuant to the terms of the settlement, Entertainers may elect to receive, subject to the provisions below, either: (1) a one-time cash payment of up to $500, depending on the numbers of dates the entertainer performed during the class period as defined below; or (2)  a "Rent Credit" of up to $1,000 based upon the number of dates performed during the Class Period. Rent Credits issued pursuant to the settlement can be used at the last club at which an entertainer

performed prior to the effective date of this settlement, and will be good for one year (or until they are exhausted) after the settlement is finally approved and all appeals are exhausted, and the cash payments are determined. These credits may be used to offset future "rent," "stage fees" or the club's share of dance sales.

The Court has preliminarily approved the settlement. However, settlement benefits cannot be distributed until after the Court grants final approval of the settlement and after any possible appeals are resolved.

The Court has certified the Class for settlement purposes as being:

> **All entertainers who performed any Deja Vu-Affiliated Nightclub identified on Exhibit A attached to the settlement agreement during the period June 25, 2005, through the present, or during the applicable limitations period for any entertainer who performed at any of the clubs involved in one of the other pending lawsuits,[1] whichever is longer.**

The time periods set forth in this definition are referred to as the "Class Period."

Your legal rights are affected by the Court's decision to certify a class, and you have a **choice** to make now. Please read the following pages carefully, including the *Summary of Your Rights and Choices* and the *Settlement Benefits and My Options* sections, which are below.

## Summary of Your Rights and Choices:

*Your Legal Rights Are Affected Even If You Do Not Act.*
*Read This Notice Carefully.*

| You May: | Effect of Choosing the Option: | Due Date: |
|---|---|---|
| ***Exclude Yourself*** | You can elect to get out of the Class and keep your right to sue Deja Vu on your own in regard to the claims in the lawsuits. To exclude yourself from participating in the Settlement, you **must** complete and return the attached Opt Out Form. | ***Postmarked or E-Mailed by TBD*** |

---

[1] An extended statute of limitations may apply to entertainers who performed at the Deja Vu of North Hollywood or Deja Vu City of Industry.

- 2 -

| | | |
|---|---|---|
| ***File Objection*** | If you do not exclude yourself, you can remain a Class member and still write to the Court about why you disagree with the settlement. | ***Postmarked or E-Mailed by TBD*** |
| ***Appear at a Hearing*** | If you do not exclude yourself, you can also ask to speak to the Court about the fairness of the settlement. | ***The Notice of Appearance Must be postmarked on or before  TBD __ , 2010 to appear at the final hearing on TBD . at the Federal Courthouse in Detroit, MI*** |
| ***Do Nothing*** | You **will** be bound by the terms of the Settlement and give up your right to sue Deja Vu yourself on these claims later. | |
| ***Select Your form of Settlement Benefit*** | If you wish to be included in the class Settlement, you still have **a choice to make on how to receive your benefit**: (1) You may receive a cash payment by mailing in a completed Cash Payment Claim Form as instructed below; or (2) you may chose to receive a Rent Credit at the Deja Vu-Affiliated Nightclub where you last performed as explained below in sections 6 and 7.  ***If you make no election, you will be considered to have selected to receive the Rent Credit by default. To utilize the Rent Credit, you must follow the instructions in this Notice.*** | ***Cash Payment Claim Form Postmarked or E-Mailed by TBD***<br><br>***Dancer Rent Credit Used Within One Year, or Until Available Rent Credit Funds are Used, Whichever is Shorter*** |

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**

1. Why did I get this Notice? ...................................................................... X
2. What is a Class Action? ........................................................................... X
3. What is this Class Action about?............................................................. X
4. Who are the Class Members?..................................................................X
5. Why is the Class Action Being Settled? ................................................. X

**REMAINING IN THE CLASS**
    6.  What happens if I do nothing and stay in the Class?.................................................X
    7.  If I remain in the Class, what am I giving up?.........................................................X

**SETTLEMENT BENEFITS AND MY OPTIONS**
    8.    What are the Settlement Benefits?    X
    8.    What are my two options to receive Settlement benefits?    X

**EXCLUDING YOURSELF FROM THE CLASS**
    10.  Why would I want to be excluded from the Class?.................................................X
    11.  How do I exclude myself from the Class? ............................................................. X
    12.  How Do I Object to the Settlement?......................................................................X

**THE LAWYERS REPRESENTING YOU**
    13.  Do I have a lawyer representing my interests in this case? .....................................X
    14.  How Will the Lawyers be Paid?.............................................................................X
    15.  How Will the Class Representatives be Paid? ........................................................X

**THE COURT'S FINAL APPROVAL HEARING**
    16.  When and Where will the Court Decide Whether to Approve the Settlement?..........X
    17.  Do I have to attend the Hearing? ....................................................................... X
    18.  Can I have my lawyer appear at the Final Approval Hearing to tell the Court   about my opinions regarding the Settlement? ..............................................................X

**GETTING MORE INFORMATION**
    19.  Where do I obtain more information?................................................................... X

# BASIC INFORMATION

| 1.   Why did I get this Notice? |
|---|

The Court directed this Notice be sent to you because you may have performed as an entertainer at a Deja Vu-Affiliated Club during the Class Period, and therefore may be entitled to benefits pursuant to the terms of the settlement.

If you are a member of the Class, the proposed settlement will affect your legal rights. Therefore, it is important that you read this notice carefully. You have choices to make before the Court decides whether or not to approve the settlement.

| 2.   What is a Class Action? |
|---|

In a class action lawsuit, one or more people called "Representative Plaintiffs" sue one or more defendants on behalf of other people who may have similar claims. All these people together are a "class" or are "class members." The court can determine whether it will allow a lawsuit to proceed as a class action.  If it does, a trial then decides the lawsuit for everyone in the class or the parties may settle without a trial.

In a class action, one court resolves the common issues for everyone in the Class - except for those people who choose to exclude themselves from the Class.

| **3.   What is this Class Action about?** |
|---|

The lawsuit alleges that Deja Vu-Affiliated Nightclubs misclassified entertainers as non-employees and as a result of this misclassification, entertainers were not paid minimum wages and other compensation required under federal and/or various state wage and hour laws. In addition, the lawsuit alleges that Defendants unlawful confiscated Entertainer tips. The Defendants have denied these allegations and have filed counter-claims to recover the value of mandatory dance fees retained by entertainers if the clubs are determined to owe minimum wages.

The Court has approved the certification of the class of entertainers who performed at any Deja Vu-Affiliated Nightclub during the Class Period, concluding that the question of whether Deja Vu is liable under Fair Labor Standard Act ("FLSA") or state wage laws for the purported misclassification of entertainers and whether Deja Vu improperly confiscated tips are common issues deserving class action treatment.

Plaintiffs and Defendants have reached a settlement in this case. The Court has not ruled on the merits of Plaintiffs' claims or on Deja Vu's defenses or counter-claims.  Rather, the Court has simply certified a settlement class and tentatively approved the proposed settlement.

| **4.   Who are the Class Members?** |
|---|

In order to determine if you are entitled to benefits from this settlement, you first must determine if you are a Class Member, defined as:

> **All entertainers who performed any Deja Vu-Affiliated Nightclub identified on Exhibit A attached to the settlement agreement  during the period June 25, 2005, through the present,  or during the applicable limitations period for any entertainer who performed at**

**any of the clubs involved in one of the other pending lawsuits, whichever is longer. [2]**

If you fall within the definition of a Class Member, you may qualify for either a "cash payment" or a "Rent Credit" pursuant to the criteria set forth in the settlement agreement.  You may **not** receive both.  If you are not a Class Member as described above, you do not qualify for settlement benefits.

| 5.   Why is the Class Action Being Settled? |
| --- |

This matter is being settled because both sides have agreed to a settlement of this case in order to avoid the costs and risks of trial.

## SETTLEMENT BENEFITS AND MY OPTIONS

| 6.   What are the Settlement Benefits? |
| --- |

The settlement agreement, if approved, provides both monetary and nonmonetary benefits to the class.  First, each Class Member will have the choice as between one of two monetary benefits. Second, all entertainers will benefit from certain injunctive relief as explained below. Finally, upon final approval of the settlement by the Court, Deja Vu has agreed to dismiss its counter-claims against Plaintiffs and the Class.

As described in greater detail in Section 7 below, the two alternative financial benefits are: (1) a one-time cash payment of up to $500; *or* (2) a Rent Credit of up to $1,000, . You may elect only one of the financial benefits, not both.

As part of the settlement, Defendants have agreed to pay up to $2,000,000 to the Class. This is referred to as the Cash Pool. If the claim forms submitted by Class Members in order to receive cash payments exceed the amount in the Cash Pool, then each Class Member requesting a cash payment will receive a pro rata share of the Cash Pool.  If there are unused funds from the Cash Pool, then the value of those funds will be added to the "Rent Credit Pool" and made available for use as Rent Credits.  The Rent Credit Pool will be $9,000,000 plus an amount equal to any unused Cash Pool funds.

Finally, the Deja Vu-Affiliated Nightclubs have agreed to post notice of all penalties and fees which may be imposed upon an entertainer in connection with her performances at

---

[2] Unless a longer statute of limitations applies as described in the definition of a "Class Member," the "Class Period" is from June 25, 2005 until the date of final approval of the settlement by the Court.  An extended statute of limitations may apply to entertainers who performed at Deja Vu of North Hollywood or Deja Vu City of Industry.

the various Deja Vu-Affiliated Nightclubs.  The Deja Vu-Affiliated Nightclubs will be precluded from imposing any penalty or fee not identified on the posted notice, and any penalty and fees assessed will be required to be documented.

As described below, if the settlement is approved, the attorneys representing the Class ("Class Counsel") will have a portion of their attorney fees paid both from the Cash Pool, and the Rent Credit Pool. Payment of these attorney fees will reduce the available amount of money to the Cash Pool and the available amount of Rent Credits in the Rent Credit Pool.

| 7.   What are my two options to receive Settlement benefits? |
|---|

**Cash Payment:** If you wish to receive a one-time cash payment and not a Rent Credit, **you must** file the Cash Payment Claim Form that is included with this notice.  Only one claim form is needed, and only one form will be accepted. The claim form can be downloaded at the website listed below if you lose your form.

The claim form will assist in the calculation of your cash payment.  Each entertainer electing to receive the cash payment will be paid $50.00 for each date she performed at her "Qualifying Club" (the last Deja Vu-Affiliated Nightclub at which she performed prior to the settlement) during the Class Period, up to a maximum of $500. Should claims exceed the available funds in the Cash Pool, Class Members will be paid on a pro-rata basis. **YOU MUST SUBMIT A TIMELY CLAIM FORM TO RECEIVE A CASH PAYMENT.**   If you select to receive a cash payment, you will receive an IRS Form1099-MISC for the amount of the cash payment made to you. You will responsible for the payment of any federal and state taxes due as a result of the cash payment.

Please read the Cash Payment Claim Form for more detailed instructions on how to submit a claim for a cash payment. If you are a Class Member and you do not fill out either a Cash Payment Claim Form or an Opt-Out Form (as described below), you will automatically be deemed to have elected to receive Rent Credits.

**Rent Credits:**  If you are a member of the Class and do not elect to receive a cash payment from the Cash Pool, you will be entitled to Rent Credits. In order to redeem the Rent Credits, do not submit the Cash Payment Claim Form. Instead, simply contact your Qualifying Club and advise them that you intend to receive your class benefit in the form of Rent Credit. This must be done at least seven (7) days prior the first date you wish to redeem the Rent Credits. You will be given a Rent Credit Claim Form, that must be filled out and returned to the Qualifying Club before you will be permitted to redeem your Rent Credits. If you are not currently performing at your Qualifying Club, Deja Vu-Affiliated Nightclub but wish to return to perform, you must apply for an entertainer position, enter into a contract, and submit the Rent Credit Claim Form to redeem the Rent Credits. However, Deja Vu is under no obligation to permit you to perform. In such circumstance, you will be given additional time to submit a claim for a cash payment if the Cash Pool is not depleted.

Rent Credits vary between $100, $500, or $1,000. The amount of the Rent Credit is based upon the number of dates you performed at your Qualifying Club before the date the settlement becomes effective. If an entertainer performed less than 10 performance dates, then the credit she will be entitled to is $100; if she performed between 10 and 25 performance dates, the Rent Credit she will be entitled to is $500; and if she performed more than 25 performance dates, then the Rent Credit will be the maximum of $1,000. You may receive an IRS Form 1099-MISC for any Rent Credits you redeem. In addition, you may be required to pay federal or state income tax on the value of the Rent Credits redeemed.

The Rent Credits expire when either the Rent Credit Pool runs out or one year from the date that Rent Credits can begin to be redeemed, whichever comes first.

**NO RENT CREDITS CAN BE REDEEMED UNTIL FINAL APPROVAL OF THE SETTLEMENT HAS BEEN RECEIVED FROM THE COURT, ALL APPEALS HAVE BEEN EXHAUSTED, AND ALL VALID CASH PAYMENT CLAIMS HAVE BEEN DETERMINED.**

**Summary:** To summarize, if you wish to remain in the Class and receive a cash payment, then you **MUST** fill in the Cash Payment Claim Form. If you choose a cash payment, you cannot also receive a Rent Credit.

If you are currently performing or want to return to perform at your Qualifying Club and have not chosen a cash payment, you must notify your Qualifying Club of your intent to redeem Rent Credits at least seven (7) days in advance and provide to that club a fully completed Rent Credit Claim Form before being eligible to receive a Rent Credit. The Rent Credits will be applied to the "rent," "stage fees" or the club's share of dance sales.

***You should seek the advice of a tax professional if you have any questions about the tax implications of this settlement.***

# REMAINING IN THE CLASS

| 8. What happens if I do nothing and stay in the Class? |
|---|

If you do nothing, you will be included in the Class, and you will be bound by the terms and conditions of the settlement. Under the terms of the settlement, you may elect to receive either a "cash payment" or a "Rent Credit" as described herein. However, you may not receive both. Please read the Settlement Benefits and My Options section.

| 9. If I remain in the Class, what am I giving up? |
|---|

If the Court approves the settlement, you will have released all Defendants including all of the Deja Vu–Affiliated Nightclubs, from any further claims related to the matters raised in this lawsuit, and you can't ever sue any of the Defendants about these issues based upon conduct that occurred prior to the effective date of the settlement. Should you have any questions about the scope of the release, you may contact Class Counsel.

## EXCLUDING YOURSELF FROM THE CLASS

| 10. Why would I want to be excluded from the Class? |
|---|

You do not have to take part in the settlement or be a member of the Class. You can exclude yourself from the settlement by "opting out." If you exclude yourself, you will not get the benefits of the settlement, nor can you object to the settlement. Any Court orders will not apply to you. By excluding yourself, you keep any right to file or proceed with a lawsuit against Defendants regarding the subject of the settlement.

If you have sued any of the Defendants and want to continue with your suit, you need to personally ask to be excluded from the Class. If you exclude yourself, you will not be legally bound by the Court's judgments in this case. Similarly, if you wish to start your own lawsuit against any of the Defendants, you must exclude yourself from the Class. Should you do so, you will have to hire and pay your own lawyer for that lawsuit and prove your own claims. If you do exclude yourself so you can start or continue your own lawsuit against Deja Vu, you should talk to your own lawyer soon, because your claims may be subject to a statute of limitations.

| 11. How do I exclude myself from the Class? |
|---|

If you are a member of the Class and wish to be excluded from the settlement, you must complete and personally sign the Opt-Out Form included with this notice, or send a written request, signed by you personally, which includes all of the following:

- Your legal name, current address and telephone number;

- The name and number of the lawsuit: *Does v. Cin-Lan, Inc, et al*, No. 4:08-CV-12719.
- A statement, signed personally by you, clearly stating that that you want to be excluded from the Class.

All exclusion requests must be mailed first class United States mail, **postmarked on or before [TBD 2010],** to:

> Settlement Administrator
> In re: Nightclub Litigation
> P.O. Box xxx
> City, State Zip code

***Any request for exclusion must contain your personal signature, which shall be an indication to the Court that you wish to be excluded from the Class***. You cannot exclude yourself by phone or by email.  Further, if you do not follow these instructions properly, you will lose your right to exclude yourself. There are no exceptions.

**UNLESS YOU PROPERLY SIGN AND TIMELY MAIL AN OPT OUT FORM OR REQUEST FOR EXCLUSION, YOU WILL BE BOUND BY ANY JUDGMENT IN THIS CASE AND YOU WILL NOT BE PERMITTED TO PURSUE ANY PENDING OR FUTURE LITIGATION AGAINST DEJA VU REGARDING MATTERS RESOLVED IN THIS SETTLEMENT. SHOULD YOU WISH TO EXCLUDE YOURSELF FROM THIS SETTLEMENT, IT IS IMPORTANT THAT YOU FOLLOW THESE INSTRUCTIONS CAREFULLY.**

## 12.  How Do I Object to the Settlement?

If you don't like the settlement, you may file an objection to it. This means you can tell the Court that you disagree with the settlement or some of its terms. For example, you can say you don't think the settlement is fair or adequate, or that you object to the amount of the attorneys' fees, costs, or expenses. The Court will consider your views but may approve the settlement anyway.

You can object only if you do not exclude yourself from the Class (i.e., you do not opt out). If you opt out, or exclude yourself, you cannot object.

To object, either you or a lawyer of your own choosing must prepare an objection that contains all of the following:

1.  The name and title of the lawsuit: *Does v. Cin-Lan, Inc, et al*, No. 4:08-CV-12719;

2. A written statement of objections clearly specifying the grounds or reasons for each objection;

3. A statement of whether or not you or your lawyer will ask to appear at the Final Approval Hearing to talk about your objections, and, if so, how long you will need to present your objections; and

4. Copies of documents (if any) you or your lawyer will present at the Final Approval Hearing.

Your objection must be filed with the Court and served on Class Counsel and Counsel for the Defendants **no later than _____, 20_____.** Any objection postmarked after that date will be rejected.

*To File an Objection with the Court, Mail Objection to:*

Clerk of the Court
United States District Court
Eastern District of Michigan
231 W Lafayette Blvd # 827
Detroit, MI 48226-2774

*To Serve Class Counsel, Mail Objection to:*

Timothy J. Becker
ZIMMMERMAN REED P.L.L.P.
651 Nicollet Mall; Suite 501
Minneapolis, Minnesota 55402

*and*

Jason J. Thompson, (P47184)
SOMMERS SCHARTZ, P.C.
2000 Town Center, Suite 900
Southfield, Michigan  48075

*To Serve Defendants' Counsel, Mail Objection to:*

Allan S. Rubin
JACKSON LEWIS, LLP
2000 Town Center, Suite 1650
Southfield, MI
48075

Objections postmarked after _____ will be untimely and not be considered by the Court.

# THE LAWYERS REPRESENTING YOU

| **13.  Do I have a lawyer representing my interests in this case?** |
|---|

Yes.  The Court has appointed law firms to represent you and other Class Members. These lawyers are referred to as Class Counsel, and include:

| | |
|---|---|
| Jason J. Thompson, (P47184)<br>SOMMERS SCHARTZ, P.C.<br>2000 Town Center, Suite 900<br>Southfield, Michigan  48075 | Timothy J. Becker, (MN BAR 256663)<br>ZIMMERMAN REED, P.L.L.P.<br>651 Nicollet Mall, Suite 501<br>Minneapolis, Minnesota  55402 |
| Hart Robinovitch (AZ BAR 029100)<br>ZIMMERMAN REED P.L.L.P.<br>14646 North Kierlan Blvd.<br>Suite 145<br>Scottsdale, AZ 85255 | |
| | |

You will not be charged directly by Class Counsel for their lawyers' services, but they will ask the Court to award them a fee from the settlement.  More information about Class Counsel and their experience is available at the websites listed above.  (Add Website for Class Counsel Information)

If you so desire, you may hire your own attorney.  However, you will be responsible for that attorney's fees and expenses.

| **14.  How Will the Lawyers be Paid?** |
|---|

The lawyers who represent the Class will ask the Court for reimbursement of their out of pocket expenses and an award of attorneys' fees based on their work in this litigation. The amount of attorneys' fees to be awarded will be determined solely by the Court. Under the terms of the settlement agreement and subject to Court approval, Class Counsel can petition the Court for a fee of up to Three Million Five Hundred Thousand ($3,500,000.00) dollars. Additionally, the Defendants have agreed to pay two hundred thousand dollars and no cents ($200,000.00) to reimburse Class Counsel for their out-of-pocket costs associated with prosecuting this case and effectuating the settlement.

Attorney fees payable to Class Counsel have been factored into the value of the settlement.

A portion of these fees will be paid from the Cash Pool and another portion  will be paid by the entertainers at the time of redemption of their Rent Credits. In particular, Class Counsel have asked to be paid an attorney fee equal to 1/3 of the value of the Cash Pool, or six hundred sixty-six thousand six hundred sixty-six dollars ($666,666.00).  Payment of these funds will reduce the funds available to the Cash Pool by an equal amount.

In addition to the payment of fees from the Cash Pool, Class Counsel have also requested to be paid from the Rent Credit Pool up to approximately thirty-one point four eight nine percent (31.489%) of all used Rent Credits, but which shall not exceed a total of two million eight hundred thirty four thousand dollars ($2,834,000.00). These fees will be collected from the entertainers as they use their respective Rent Credits.

The settlement agreement provides further details on attorney fees payable to Class Counsel, and a copy of the settlement agreement may be obtained either from Class Counsel or the Court.

| **15.   How Will the Class Representatives be Paid?** |
| --- |

To compensate the Class Representatives (Jane Doe's I-IV) for their work in this litigation on behalf of the Class and for the particular claims they may have, the named Plaintiffs will share an award and incentive payment of $100,000. The Defendants shall pay  this award to the named Plaintiffs over and above the settlement proceeds that are paid to the Class, but the incentive payment has been factored into the value of the settlement.

# THE COURT'S FINAL APPROVAL HEARING

| **16.   When and Where will the Court Decide Whether to Approve the Settlement?** |
| --- |

The Court will hold a Final Approval Hearing at _____, 2011. At this hearing, the Court will consider whether or not the settlement is fair, reasonable, and adequate. If there are written objections, the Court will consider them, and the Court will listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether or not to approve the settlement.

The Hearing will be held at: United States District Court for the Eastern District of Michigan, the Honorable Stephen J. Murphy, III, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Room 564, Detroit, MI 48226.

| **17.   Do I have to attend the Hearing?** |
| --- |

No. Class Counsel will answer questions the Court may have, but you may appear at your own expense. If you send a written objection, the Court will consider it. You may also pay your own lawyer to attend the hearing if you desire.

| 18. | Can my lawyer appear at the Final Approval Hearing to tell the Court about my opinions regarding the Settlement? |
| --- | --- |

Yes.  As long as you don't exclude yourself, you have the right to appear through counsel at the Final Approval Hearing, so long as your Attorney's Notice of Appearance and any written objections you may have are postmarked or received by the Court, Defendants, and Class Counsel by TBD. If you do this, however, the cost of having your lawyer appear will be at your own expense.

# GETTING MORE INFORMATION

| 19. | Where do I obtain more information? |
| --- | --- |

If you want additional information, you may call or write Class Counsel at the following address and phone number listed above.

In addition, Class Counsel has created a specific website containing relevant documents including the operative class action complaint and complete settlement agreement. WWW.(INSERT WEB ADDRESS HERE).Com

The specific terms of the settlement are outlined in the legal documents that have been filed with the Court. You can look at and copy these documents at any time during regular office hours at the Office of the Clerk of Court for the United States District Court for the Eastern District of Michigan, Southern Division, 231 W Lafayette Blvd # 827, Detroit, MI 48226-2774. If you have a PACER account, you may view the documents on the Court's CM/ECF website.

**[date]**

4835-2302-6695, v.  3

Exhibit G to be filed within 7 days