# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**JANE DOE**, individually, and on behalf of all
others similarly situated,

        Plaintiff,

v.

**CIN-LAN, INC.; DÉJÀ VU CONSULTING,
INC.; and HARRY V. MOHNEY,**

        Defendants.

_____/

Case No. 2:08-CV-12719

Honorable Stephen J. Murphy III
Magistrate Judge Michael J. Hluchaniuk

## MOTION TO INTERVENE ON BEHALF OF PLAINTIFF
## CLASS MEMBERS IN CERTIFIED CALIFORNIA CLASS ACTIONS

    Proposed Intervenors, Plaintiff class members in *Arfat, et. al. v. Coldwater, LLC, d/b/a Déjà vu of North Hollywood*, No. BC367362, Superior Court, County Los Angeles, and *Hills, et. al. v. HDV #3 and Cathay Entertainment, d/b/a Déjà vu Showgirls City of Industry*, No. BC385610, Superior Court, County Los Angeles, through undersigned counsel, state for their motion as follows:

    1.    Proposed Intervenors are Plaintiff class members in two class actions **certified** by state courts in California wherein claims nearly identical to those stated herein have been asserted: *Arfat, et. al. v. Coldwater, LLC, d/b/a Déjà vu of North Hollywood*, No. BC367362, Superior Court, County Los Angeles, and *Hills, et. al. v. HDV #3 and Cathay Entertainment, d/b/a Déjà vu Showgirls City of Industry*, No. BC385610, Superior Court, County Los Angeles (hereinafter at times collectively referred to as "California Class," *see* Exs. A and B, orders granting class certification).

2.     Recently filed pleadings in this matter (*see* below) seek to subsume the California Class, thus substantially reducing (or effectively eliminating) Defendants' ultimate liability to its members while increasing proposed class counsels' fees, to the detriment of  the California Class and its counsel.  Stated otherwise, the interests of the California Class are not being adequately represented in this matter and short of intervention, proposed Intervenors cannot protect their interests.

3.     The recently filed Motion For Entry of Proposed Preliminary Approval Order of Class Action Settlement [Doc. No. 189], Motion for Preliminary Injunction Enjoining All Pending Proceedings Filed Against Defendants Nationwide Pending Approval of Proposed Settlement and Permanent Injunction Enjoining All Collective Action Members Who Opt-In and All Rule 23 Class Members Who Do Not Opt-Out from Filing New Lawsuits or Claims Relating to the Settled Matters (Unopposed) [Doc. No. 190], and Settlement Agreement [Doc. No. 192] adversely affect proposed Intervenors' rights because, read together, they purport to enjoin the California Class from continuing to prosecute their claims, while forcing their members to become part of a settlement which is patently inadequate to compensate them, let alone a class as expansive as that sought to be certified herein.  As such, proposed Intervenors have a direct and substantial interest in this litigation which should be protected.

4.     Counsel for the proposed class and defense counsel herein have embarked on a calculated course to keep proposed Intervenors' counsel in the dark by refusing to share information, filing key pleadings under seal and falsely asserting that this case does not include the California Class.  The recently filed pleadings establish otherwise.  Indeed, the motion for preliminary injunction falsely asserts "[t]he parties hereto have entered into a settlement on a **nationwide basis**" [Doc. No. 190 at 3, emphasis added].  Furthermore, the Settlement Agreement defines the class to include "all Entertainers who Performed at any Déjà vu-Affiliated Nightclub

identified on the attached Exhibit A….” The referenced Exhibit A, items 2 and 4 identify the defendants in the California Class.  Notwithstanding, counsel for the California Class was not part of the alleged settlement negotiations and provided no input (e.g. the value of the California Class members' claims).  As such, the California Class' interest is not being adequately represented.

5.      To the extent counsel for the proposed class has or intends to communicate with members of the California Class (e.g. notify its members of a proposed settlement), this would violate ethical duties because members of the California Class are represented by counsel.

6.      For the reasons stated above and in the attached brief, proposed Intervenors should be granted intervention pursuant to Fed. R. Civ. P. 24(a)(2) (intervention by right) or (b) (permissive intervention).  Additionally, this Court should refuse to enjoin the California Class from continuing to prosecute its claims until such time that it is allowed to intervene and be heard on this issue.

7.      Pursuant to LR 7.1(a), concurrence in the relief requested herein was sought and denied.

WHEREFORE, proposed Intervenors pray that this Court grant their motion and that Plaintiff class members in *Arfat, et. al. v. Coldwater, LLC, d/b/a Déjà vu of North Hollywood*, No. BC367362, Superior Court, County Los Angeles, and *Hills, et. al. v. HDV #3 and Cathay Entertainment, d/b/a Déjà vu Showgirls City of Industry*, No. BC385610, Superior Court, County Los Angeles be allowed to intervene.

Respectfully submitted,

MORRIS & DOHERTY, P.C.

s/ *Paul F. Doherty*_____
PAUL F. DOHERTY (P36579)
4000 Town Center, Suite 900
Southfield, MI  48075
(248) 353-7900
pdoherty@morris-dohertypc.com
*Local Counsel for Intervenors Melissa Arfat,*
*Brandi Carter, Quinece Hills and Victoria Omlor*
*on behalf of themselves and as Representative Class*
*Members*


KNAPP, PETERSEN & CLARKE

Stephen M. Harris, Esq. (CA 110626)
K.L. Myles, Esq. (CA 243272)
550 North Brand Blvd., Suite 1500
Glendale, CA  91203-1922
Telephone:  (818) 547- 5149
Facsimile:  (818) 547-5329
Email:  smh@kpclegal.com
Email:  klm@kpclegal.com
*Counsel for Intervenors Melissa Arfat, Brandi*
*Carter, Quinece Hills and Victoria Omlor on behalf*
*of themselves and as Representative Class Members*

Dated:  November 3, 2010

4

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JANE DOE**, individually, and on behalf of all
others similarly situated,

            Plaintiff,

v.

**CIN-LAN, INC.; DÉJÀ VU CONSULTING,**
**INC.; and HARRY V. MOHNEY,**

            Defendants.

_____/

Case No. 2:08-CV-12719

Honorable Stephen J. Murphy III
Magistrate Judge Michael J. Hluchaniuk

**BRIEF IN SUPPORT OF MOTION TO INTERVENE**
**ON BEHALF OF PLAINTIFF CLASS MEMBERS IN**
**<u>CERTIFIED CALIFORNIA CLASS ACTIONS</u>**

## STATEMENT OF ISSUE PRESENTED

I.    SHOULD THE PLAINTIFF MEMBERS OF THE CALIFORNIA CLASS BE ALLOWED TO INTERVENE (BY RIGHT OR PERMISSIVELY) IN THIS ACTION SO TO ASSERT AND PROTECT THEIR INTERESTS?

## INDEX OF AUTHORITY

Federal Cases

*Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987)..........................................................10

*Brewer v. Republic Steel Corp.*, 513 F.2d 1222, 1223 (6th Cir. 1975).....................................10

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 572 (9th Cir. 2004) ..............................................11

*Coalition to Defend Affirmative Action v. Granholm*,
240 F.R.D. 368, 375 (E.D. Mich, 2006) ...................................................................................12

*Donaldson v. United States*, 400 U.S. 517, 532 (1971) ............................................................10

*Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008).....................................................................11

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, n. 13 (1982) ..............................................16

*Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999),
rev'd on other grounds, 539 U.S. 244 (2003) ................................................................ 5, 12-13

*Int'l Union, United Auto, Aerospace and Agric. Implement Workers of America
v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) .................................................. 14-15

*Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)...........................................7, 10
*Linton v. Commissioner of Health and Environment*,
973 F.3d 1311, 1319 (6th Cir. 1992) ...........................................................................................6

*Martin v. Correction Corp. of America*, 231 F.R.D. 532 (D.C. Tenn, 2005) ............................17

*Meyer Goldberg, Inc. v. Goldberg*, 717 F.2d 290, 292 (6th Cir. 1983)...............................10, 13

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997) ........................ 5-6, 10

*NAACP v. New York*, 413 U.S. 345, 366 (1973).........................................................................7

*Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) ...........................................................7

*Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000)...............................................6-7

*Trbovich v. United Mine Workers of America*, 404 U.S. 528, 539 (1972) ..................................6

*United Airlines v. MacDonald*, 432 U.S. 385, 392 (1977) ........................................................11

*United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005) ...............................................5, 18

*United States v. Union Elec. Co.*, 64 F.3d 1152, 1159 (8th Cir. 1995) .......................................9

*Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003) ...............................................................11

State Cases

*Hernandez v. Vitamin Shoppe Industries, Inc.*,
174 Ca. App. 4th 1441, 1459-1460 (2009) ...............................................................................12

*Trotsky v. Los Angeles Fed. Sav. & Loan Assn.*, 48 Cal. App. 3d 134 (1975) ...........................15

Court Rules

Fed. R. Civ. P. 23(h) ...................................................................................................................16
Fed. R. Civ. P. 24(a)(2)................................................................................................................5
Fed. R. Civ. P. 24(b) ...................................................................................................................18
Fed. R. Civ. P. 24(b)(3)...............................................................................................................18

Other Authority

Manual for Complex Litigation (Fourth) ("Manual"), § 21.71 at 336 (2006)...........................16
Manual for Complex Litigation (Fourth) ("Manual"), § 14.11 at 186 (2006)...........................17

## I.      INTRODUCTION

Plaintiff members of the California Class seek to intervene to avoid having their pending, certified claims "settled" as a result of improper and, for the most part, secretive maneuvering by counsel herein. Proposed Intervenors have pending in California state court claims identical to those brought by the *Doe* plaintiffs against Déjà vu and the various entities through which it does business (hereinafter "Déjà vu"). Only through the persistent investigation of counsel for the California Class did it come to light that the parties in *Doe* have reached a tentative "nationwide" settlement purporting to swallow up the California Class claims. The maneuvering also involves attempting to convince this Court to enjoin the California Class from further pursuing its rights. Moreover, if approved, the proposed settlement will undoubtedly result an unlawful communication with parties whom counsel for the parties herein know to be represented by proposed Intervenors' counsel.

Equally important, the proposed gross settlement of about $11 million is not fair, reasonable or adequate to the California Class alone because the monetary component ($1,300,000) is a miniscule, claims made settlement and the remainder, an alleged coupon settlement, will result in no benefit at all. In contrast, one element of proposed Intervenor's damages alone (misappropriated tip income) has a gross value of over $14,000,000. (*See,* Declaration of Stephen M. Harris, Ex. C ¶ 17 and Ex. 10)[1]. The danger to the California Class is real and imminent, as proposed Intervenors seek to avoid being bound by a settlement which their counsel had no role in negotiating, is patently unfair on its face, does not advise class members of the certified classes of the significantly better relief available to them and benefits primarily the Déjà vu defendants and proposed class counsel.

---

[1] References to exhibits following citations to Ex. C refer to numbered exhibits attached to Ex. C.

A.      **Factual Background.**

Proposed Intervenors currently have two certified wage and hour class actions pending in California Superior Court against Déjà Vu.  Exs. A and B.  Plaintiffs in these two actions assert that the defendants, which provide nude, semi-nude, and bikini dance entertainment for customers, have misclassified their dancers as independent contractors, have failed to pay the dancers appropriate compensation, and committed other wage and hour violations related to requiring dancers to share tip income. Plaintiffs in the instant action have filed an essentially identical, competing action, but have failed to advise this Court of the status of proposed Intervenors' certified class cases, and have purported to settle this case inclusive of proposed Intervenors' claims, intruding upon the attorney-client relationship between Intervenors and their counsel of record.  (Ex. C, ¶¶ 2-6 and 13-14 and Ex. 7).

*Arfat* was filed in March 2007.  In October of 2008, the trial court certified a class defined as all dancers who performed at Déjà Vu's club in North Hollywood, California from March 2003 to the present.  Notice of the pendency of the class was served on all class members and the opt-out period closed in March of 2010.  (Ex. C, ¶¶ 2 and 4).   The *Arfat* class is comprised of approximately 700 dancers (Ex. C, Exs. 1-3).

*Hills* was filed in February 2008.  In June of 2010, the trial court certified a class defined as all dancers who performed at Déjà Vu's club in the City of Industry, California from March of 2005 to the present.  The *Hills* plaintiffs also contend that they were misclassified as independent contractors and that the club misappropriated tip income from the dancers. (Ex. C, ¶¶ 3-4 and Ex. 4).  The *Hills* class is comprised of 1,697 dancers. (Ex. C, ¶ 4.)

Plaintiffs in the present action brought their own wage and hour putative class action against multiple defendants, including Déjà Vu, in Michigan in 2008.  Counsel for the plaintiffs

in the *Doe* action also initiated a wage and hour class action against defendant Déjà Vu in California, *Trauth v. Déjà vu*, No. BC 427315, which was filed in December of 2009.  Both the *Doe* and *Trauth* cases assert that Déjà vu has misclassified nude and semi-nude dancers as independent contractors and misappropriated their tip income.  The first amended complaint in *Trauth* states that *Trauth* intends to exclude the North Hollywood club.  (Ex. C and Ex. 7, ¶ 10.)  However, the recently filed proposed second amended complaint in *Doe* reverses this decision.  (Doc. No. 191.)  Since the operative complaint in *Trauth* was filed, that case remained stagnant.  On October 18, 2010, the parties in *Trauth* represented to the court that they expected *Trauth* to be "subsumed" into this case in the coming weeks. (Ex. A, ¶ 6, and Ex. 8.) Starting in June 2010, a series of sealed documents were filed in the present matter.  (Ex. C ¶ 7.)  At the same time, Déjà Vu became increasingly uncooperative with proposed Intervenors' efforts to move the *Arfat* and *Hills* cases forward.  (*Id.*)

**B.    Facts Relating to Intervention.**

In September 2010, after repeated attempts to make progress in the *Arfat* and *Hills* matters, proposed Intervenors' counsel confronted Déjà Vu's counsel regarding Déjà Vu's attempts to stonewall proposed Intervenors' counsel.  Déjà Vu's counsel admitted that Déjà Vu was in the middle of ongoing settlement negotiations with the attorneys handling this case, including Hart Robinovitch, who is also counsel in *Trauth*.  Proposed Intervenors' counsel immediately attempted to contact Mr. Robinovitch on multiple occasions regarding these settlement discussions with no success.  (Ex. C, ¶ 7.)  In late September 2010, proposed Intervenors' counsel was able to make contact with Caleb Marker, another attorney in this case.  Mr. Marker confirmed that settlement negotiations were underway, but stated that these negotiations did not embrace the claims of the California Class.  Mr. Marker further directed

proposed Intervenors' counsel to contact Jason Thompson, additional plaintiffs' counsel in this case, for more details regarding the settlement talks. (Ex. C ¶ 8.)

On October 6, 2010, proposed Intervenors' counsel made contact with Mr. Thompson, who confirmed, for the first time, that a tentative settlement agreement had been reached with Déjà Vu and the terms of the settlement were filed under seal in this case. Mr. Thompson further conceded that the secret settlement terms embraced the state of California and, ostensibly, proposed Intervenors' claims. (Ex. A, ¶ 9). Thereafter, on October 22, 2010, the settlement agreement in this case was filed with this court (Doc. No. 189) confirming the parties herein are attempting to subsume the California Class. Efforts to meet and confer with counsel for Plaintiffs herein (and defense counsel) to obtain their consent to the intervention were unsuccessful. (Ex. A, ¶ 18).

**C.    Intervention Is Necessary and Appropriate To Prevent The Rights of Proposed Intervenors From Being Compromised.**

The heightened scrutiny that the court must apply to class certification requirements in the settlement context demands that proposed Intervenors must be afforded the opportunity to intervene or obtain an order excluding the California Class from the settlement. Moreover, proposed Intervenors should be permitted to move to disqualify defense counsel and Doe's counsel based on any improper communications with the members of the California Class. Also, if the court refuses to sever the California Class, proposed Intervenors must be allowed to conduct the arms-length discovery necessary to determine the true settlement value of this case and whether the proposed settlement is fair, reasonable and adequate as to the California Class. Based upon such discovery, proposed Intervenors will be in a position to make an informed decision about whether to:

(1)     seek to exclude the California Class from the class for which certification is sought herein; or

(2)     seek to reopen settlement negotiations in the present matter to best protect the interests of and maximize the recovery for the California Class, to protect the fees and costs incurred by class counsel for the California Class and determine if a motion to disqualify proposed class counsel in *Doe* is necessary.

The instant motion satisfies each of the requirements for intervention as of right.  To allow plaintiffs to move forward with a secret settlement for a class that purportedly includes the already certified California Class contravenes procedure, fairness and ethical obligations.

## II.     INTERVENTION AS OF RIGHT

 Fed. R. Civ. P. 24(a)(2), gives a party a right to intervene when it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, . . . ."  To determine if a party has the right to intervene, the following factors are relevant:  "(1) Timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by the parties already before the court."  *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997) (citation omitted), *see also, United States v. Michigan,* 424 F.3d 438, 443 (6th Cir. 2005).  Regarding the substance of the legal interest, courts construe Rule 24 broadly in favor of a party seeking to intervene.  *Id*. at 1245-1246; *see also, Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999), *rev'd on other grounds*, 539 U.S. 244, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003) (reiterating the "rather expansive notion" of interests sufficient for intervention).  Regarding the impairment

element, the "burden is minimal" to show impairment of proposed intervenor's interest. *Michigan State, supra*, at 1247.  Finally, as to inadequate representation, the burden is again minimal -- showing that the current parties would not make all of the proposed intervenor's arguments or that they have not appealed can suffice.  *Id*.  A proposed intervenor need show only the potential for inadequate representation.  *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 539, n. 10, 92 S.Ct. 630, 38 L.Ed.2d 686 (1972).  *See also, Linton v. Commissioner of Health and Environment*, 973 F.3d 1311, 1319 (6th Cir. 1992).

Proposed Intervenors can satisfy each element.

### A.    Timeliness.

As the Court is aware, much of what was filed in this matter was filed under seal. Therefore, it was virtually impossible for proposed Intervenors to determine whether, in fact, their rights were being undermined until the veil of secrecy was lifted on October 22, 2010 when the terms of the proposed settlement were disclosed.  There can be no dispute that Proposed Intervenors acted promptly.

Whether intervention is timely "should be evaluated in the context of all relevant circumstances."  *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000).  A variety of factors are usually considered, including (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention. *Jansen v. City of Cincinnati,* 904 F.2d 336, 340 (6th Cir. 1990).

### 1.     <u>The Point To Which The Suit Has Progressed</u>.

In determining the timeliness of a proposed intervention, the Court should consider the intervention in terms of the context of the case, rather than measure any specific length of time. "The absolute measure of time between the filing of the complaint and the motion to intervene is one of the least important of these circumstances.  *See*, *Sierra Club v. Espy,* 18 F.3d 1202, 1205 (5th Cir. 1994) (noting, in the context of measuring the timeliness of a motion to intervene, that "absolute measures of timeliness should be ignored").  A more critical factor is what steps occurred along the litigation continuum during this period of time."  *Stupak-Thrall v. Glickman,* 226 F.3d 467, 475 (6th Cir. 2000).  The United States Supreme Court has long extolled that the propriety of intervention must be measured under "all the circumstances" of that particular case. *NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591 (1973).

In the present matter, proposed Intervenors' motion is timely.  Until October 6, 2010, proposed Intervenors were unaware of the settlement. The *Trauth* case excluded the North Hollywood, California Club and proposed Intervenors were unaware that settlement negotiations were ongoing with Déjà Vu to settle California Class claims.  (Ex.C ¶¶ 6-9.)  In fact, one of *Doe's* attorneys denied that such negotiations were taking place in September of 2010. (*Id.,* ¶ 8.) Finally, on October 22nd the proposed settlement was filed with this court. [Doc. No. 189.]  In light of these facts and in the context of this lawsuit, propose Intervenors' motion is timely in that it seeks to intervene in advance of approval of settlement which involves an improper attempt to communicate with members of a certified class, without permission or consent of their counsel.

## 2.     The Purpose for Which Intervention Is Sought.

Proposed Intervenors seek to intervene to avoid having their outstanding claims settled without their consent, approval or participation, to sever their claims and to disqualify any attorney who has inappropriately communicated with the certified classes represented by Intervenors' counsel.  This is appropriate given the class certification orders already existing in the California Class and is certainly a proper purpose.

## 3.     The Length of time the Intervenors Knew or Should Have Known of Interest.

Starting in June 2010, documents in this case began to be filed under seal, preventing proposed Intervenors from being apprised of any potential encroachment on their claims. (Ex. C ¶¶ 6-9.)  Relatively contemporaneously, counsel for Déjà Vu became increasingly uncooperative with class counsel in *Arfat* and *Hills*, but finally admitting that settlement negotiations were ongoing in this  matter. (*Id.*)  Repeated attempts in September 2010 to contact Mr. Robinovitch, counsel for Doe, regarding the status of these negotiations were rebuffed. (*Id.* ¶ 7.)   In late September, Mr. Marker, counsel for Doe, advised Harris that settlement negotiations were ongoing in this case, but Mr. Marker stated that these negotiations did not include the California litigation.  (*Id.* ¶ 8.)

On October 6, 2010, Mr. Thompson, proposed class counsel, advised counsel for proposed Intervenors that a tentative settlement has been reached with Déjà Vu and filed under seal with this Court.  Mr. Thompson confirmed that the settlement embraced claims in the State of California.  This was the first time that Intervenors became aware that the claims of the California Class were in danger of being compromised. (*Id.* ¶ 9.)  Thereafter, the settlement agreement was filed on October 22nd, and Plaintiffs unsuccessfully attempted to meet and confer

about intervention both before and after the settlement was filed. (*Id.* ¶¶ 12, 18.) The instant motion to intervene was promptly filed following these events.

### 4.      Prejudice to the Original Parties for Failure to Promptly Intervene.

Given that proposed Intervenors only received the settlement agreement on October 22, it is indisputable that proposed Intervenors acted as promptly as possible.  Accordingly, there has been no delay which would prejudice the original parties. Furthermore, the question of prejudice to the original parties focuses on whether there was any delay in moving to intervene, "not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change." *United States v. Union Elec. Co.,* 64 F.3d 1152, 1159 (8th Cir. 1995).  The parties in *Doe* have negotiated a secret settlement (only recently filed) which purportedly embraces claims already certified in the California Class. As such, to the extent any party herein claims prejudice, they alone are responsible.

### 5.      Unusual Circumstances Militating Against or in Favor of Intervention.

The parties to the *Doe* settlement acted with specific intent to deprive the California Class of its rights when they entered into a secret settlement purportedly encompassing California Class claims which was filed under seal so to prevent proposed Intervenors from learning the terms of the settlement until it had been approved.  The Agreement extends the statute of limitations applicable to this lawsuit with the sole purpose of targeting proposed Intervenors' proceedings. [*See* Doc No. 192, ¶¶ 2.3, 3.15, 4.2.]  Moreover, the Agreement is terminated unless *Doe* successfully stays **all** pending cases against Déjà vu and defendants have no obligation to sign it until ten days before final approval. (*Id*, ¶ 12.1 (d)).  *Doe* now seeks to obtain rapid court approval of this deal without advising the court of the status of the certified California Class, all in an attempt to prejudice proposed Intervenors.

Doe's counsel, Mr. Robinovitch, has attempted a like ploy in a similar case against Spearmint Rhino.  (Ex C. ¶¶ 10-12.)  Given the previous encounter with Doe's counsel and the background of the efforts to conceal the threat to proposed Intervenors' interests in this case, this case presents unusual circumstances militating in favor of intervention. Moreover, the existence of already certified class actions representing a much greater recovery for the class, and involving a preexisting attorney-client relationship, also strongly weighs in favor of intervention.

**B.**   **Intervenors' Interest.**

In defining an "interest" within the meaning of Rule 24, the Supreme Court has noted that "[w]hat is obviously meant [by Rule 24(a)(2)] is a significantly protectable interest." *Donaldson v. United States,* 400 U.S. 517, 532 (1971).  Similarly, the Sixth Circuit has required a "direct, substantial interest" in the litigation which must be "significantly protectable." *Jansen v. Cincinnati,* 904 F.2d 336, 341 (6th Cir. 1990);  *Meyer Goldberg, Inc. v. Goldberg,* 717 F.2d 290, 292 (6th Cir. 1983); *Brewer v. Republic Steel Corp.,* 513 F.2d 1222, 1223 (6th Cir. 1975). In *Michigan State AFL-CIO v. Miller,* 103 F.3d 1240 (6th Cir. 1997), the court addressed what constituted such an interest on the part of the intervenor and determined that "[t]his circuit has opted for a rather expansive notion of the interest sufficient to invoke intervention of right.  *Id.* at 1245.  *See also, Bradley v. Milliken,* 828 F.2d 1186, 1192 (6th Cir. 1987) ("[T]his court has acknowledged that 'interest' is to be construed liberally.")."

Here, proposed Intervenors' interests are clear.  The members of the California Class have claims which cannot be negotiated, compromised or settled without the participation and consent of their counsel. The tactics of the *Doe* parties in moving forward with the proposed settlement in such a secretive fashion underscores the pressing need for intervention at this time. The strong preference in favor of intervention is even more pronounced in the class action

10

context.  The protection of the class is itself an important interest worthy of protection through intervention.  *United Airlines v. MacDonald,* 432 U.S. 385  392 (1977).  As each putative class member will be directly affected by the outcome of a class action, the preference for intervention becomes a virtual mandate.

The seventh circuit recently reiterated the appropriateness of allowing intervention for the purposes sought here:  "Class counsel, for instance, might settle claims for significantly less than they are worth, not because they think it is in the class' best interests, but instead because they are satisfied with the fees they will take away.  Intervenors counteract any inherent objectionable tendencies by reintroducing an adversarial relationship into the settlement process and thereby improving chances that a claim will be settled for its fair value." *Vollmer v. Selden,* 350 F.3d 656, 660 (7th Cir. 2003).  Here, these comments are particularly appropriate, since proposed class counsel has in the past negotiated a deal which primarily confers upon them the benefit of an attorney fee award, while simultaneously negotiating modifications to an existing deal which were illusory, hostile to the class' interests, and which diluted the benefits available to the class.

Additionally, the fact that a class member could opt out of a proposed settlement does not change the strong preference for intervention.  Individual claims in a class action are often too small to support litigation by a single plaintiff and asking a class member who is concerned about a settlement to opt out is tantamount to asking her to abandon her ability to pursue the claims at issue.  *Fidel v. Farley,* 534 F.3d 508, 513 (6th Cir. 2008), citing *Churchill Vill., L.L.C. v. GE,* 361 F.3d 566, 572 (9th Cir. 2004) ("Because each objector's claim is too small to justify individual litigation, a class action is the only feasible means of obtaining relief.").  The class members and named plaintiffs in the California Class would be afforded little, if any relief, if

11

their only recourse in the face of the secretive settlement was to opt-out and pursue individual claims.  Accordingly, this factor strongly weighs in favor of intervention by right.

### C.     Impairment Of Interest.

"Proof of that the proposed intervenor's ability to protect its interest may be impaired in the absence of intervention-is not an onerous task."  *Coalition to Defend Affirmative Action v. Granholm,* 240 F.R.D. 368, 375 (E.D. Mich, 2006).  "'To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal.'"  *Grutter v Bollinger,* 188 F.3d 394, 399 (6th Cir. 1999).

As absent class members, named plaintiffs and class members in *Arfat* and *Hills* have no ability, save intervention, to contest the Agreement which purports to settle their claims, let alone ensure that the interests of the class are protected and their recovery is maximized to the fullest extent.  Furthermore, proposed Intervenors have not had an opportunity to conduct discovery, object to the settlement and assess whether the agreement is fair, reasonable, and adequate or if counsel for *Doe* is acting in the best interest of the dancers in the *Arfat* and *Hills* classes. Forcing class members to be represented at settlement talks by counsel other than their own attorneys and being forced to settle claims already raised in their own class actions is clearly demonstrative of a gross impairment of interest.   In *Hernandez v. Vitamin Shoppe Industries, Inc.*, 174 Cal.App.4th 1441, 1459-1460 (2009), it was confirmed that once a class is certified (even conditionally) the class counsel becomes the attorneys for all the class members, and defense counsel or other Plaintiff's counsel are prohibited from communicating with these class members since they are represented by another attorney.  *Herenandez* states:

> We are not aware of a California state court that has directly addressed whether a conditional class certification triggers rule 2-100's "no contact" rules.

As respondents point out, a number of federal courts have found that the certification of a class triggers such rules. (See, e.g., Parks v. Eastwood Ins. Services, Inc. (C.D.Cal.2002) 235 F.Supp.2d 1082, 1083 [citing rule 2-100]; Kleiner v. First Nat. Bank of Atlanta (11th Cir.1985) 751 F.2d 1193 & fn. 28 [stating, based upon a model ABA rule analogous to rule 2-100, that defense counsel had "an ethical duty to refrain from discussing the litigation with members of the class as of the date of class certification," since "class counsel represents all class members as soon as a class is certified"]; Resnick v. American Dental Assn. (D.C.Ill.1982) 95 F.R.D. 372, 378-379 [class certification barred attorney from communicating with absent class members under applicable Rules of Professional Conduct because "without question" absent members are represented by class counsel].) We conclude rule 2-100 was triggered by the court's conditional certification of the class here as well.

Here, counsel for Intervenors is the attorney for all members of the certified classes. Thus, counsel for Intervenors has a substantial interest to protect as part of this intervention. Counsel for Doe and the defense attorneys in this case are actively attempting to subvert this relationship, without even bothering to advise the court of the status of the certified cases.

### D.  <u>Adequacy of Representation</u>.

Finally, the fourth element requires the proposed intervenor to prove the inadequacy of representation by others who are in the case.  Applicants seeking intervention bear the burden of proving that they are inadequately represented by a party to the suit at issue. *Meyer Goldberg, supra* at 293.  This burden has been described as minimal because it need only be shown "that there is a potential for inadequate representation."  *Grutter, supra,* at 400.  To meet this burden, "[i]t may be enough to show that the existing party who purports to seek the same outcome may not make all of the prospective intervenor's arguments."  *Id.*

Here, proposed Intervenors raise a series of concerns about the adequacy of the settlement and the propriety of counsel in purporting to settle claims while the class members and named plaintiffs in *Arfat* and *Hills* were represented by their own counsel and had long certified class actions pending against defendant in another state. Moreover, the secret nature of

13

the accord raises serious concerns about a collusive settlement. The concerns raised above all justify intervention.

Likewise, even a cursory reading of the proposed settlement discloses that the California Class' interests have not been adequately represented. Given that proposed Intervenors need only to show that the potential for inadequate representation exists, it is clear that proposed Intervenors have met this burden. These justifiable concerns are addressed below.

### 1. Intervenors Have Serious Concerns About Whether The Tentative Settlement Agreement Is Fair, Reasonable And Adequate.

In assessing the adequacy, fairness and reasonableness of a settlement agreement, the court considers seven factors to guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3)the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of America v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007) (internal citations omitted).

The tentative settlement agreement, which purportedly includes the settlement of the California Class claims, is not fair, reasonable or adequate. Instead, it is grossly inadequate, and is likely to result in a net benefit to the class of well less than $400,000. (Ex. C, ¶¶ 15-16.) Defendants are not bound by the deal, since they do not have to sign it until fifteen days before final approval, and can rescind if the court fails to stay even one of the other pending proceeding. [Doc. No. 192, Agreement, ¶¶ 12.2 (b) and (d).] Proposed Class counsel has not even been able to obtain a commitment from the defendants to comply with the settlement, thus raising serious concerns about its adequacy.

Moreover, the court has no chance to be involved in administering the coupon portion of the settlement, and the court was never advised that the claims being settled included those of two separate certified class actions. This refusal to advise the court of material information, or to involve the court in administration of the bulk of the alleged class relief, leaving to defendant the decision of how or whether it will effectuate the "coupon" settlement, speaks to its inadequacy. The settlement also contains numerous terms designed to discourage claims by threatening to 1099 dancers when Déjà vu's normal practice is not to do so. [*See* Doc. No. 192, Agreement ¶¶ 5.5.2, 5.6-5.9.]

Moreover, the proposed notice does not advise the class members of the certified classes, and the availability of significantly better monetary relief in the *Hills* and *Arfat* cases. For example, dance fee revenue (an element of damages) exceeds $14 million in the *Arfat* case alone. (Ex. C, ¶ 17.) In *Trotsky v. Los Angeles Fed. Sav. & Loan Assn.*, 48 Cal.App.3d 134 (1975), the settling parties did not inform the court or the class of the existence of a separate lawsuit. On appeal, the court reversed a judgment which had found the settlement, including the contents of the notice, to be fair and reasonable, finding the notice was not fair and reasonable to the class, and denied the court the option of allowing the other attorney to participate to the benefit of the class. *Id.* at 151-152.

Here, the settlement was reached without the involvement of proposed Intervenors. Intervention should be permitted due to the serious inadequacies of the settlement. Moreover, intervention should be permitted to allow the court to address the Doe parties' questionable methods and behavior before it.

## 2.   Serious Concerns Exist About Proposed Class Counsel.

The adequacy of class member representation turns in part on "the competency of class counsel" and in part on the absence of "conflicts of interest." *Int'l Union, United Auto.,*

*Aerospace, and Agric. Implement Workers of America v. Gen. Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007),  citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n. 13, (1982).  Proposed class counsel does not meet the standard requiring representatives who "will vigorously prosecute the interests of the class through qualified counsel."  *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 525 (6th Cir. 1976).  If anything else, proposed class counsel herein have demonstrated a substantial disregard for the rights and interests of the California Class members and the sanctity of the relationship and privilege between them and their counsel. Moreover, the inadequate settlement terms and the refusal to forthrightly advise the court of the California Class, also cast serious doubt on the adequacy of class counsel.

Proposed class counsel in this matter is known to Intervenors' counsel, and recent interactions with Mr. Robinovitch have taught proposed Intervenors' counsel to doubt that proposed class counsel are competent to represent the class.  (Ex. C, ¶¶ 10-12.)  Moreover, the conduct of proposed class counsel raises grounds for their disqualification as attorneys for the class since they have attempted to negotiate and settle claims of parties they know to be represented by counsel in California.

### 3. <u>Intervenors Have Serious Concerns Regarding The Proposed Fee</u>.

The Court has a duty to ensure that any fee award is appropriate under Fed. R. Civ. P. 23(h) and as explained in further detail in the Advisory Committee's notes.  Proposed Intervenors harbor serious concerns about whether the fee proposed in the settlement is fair or proper. (*See also*, Manual For Complex Litigation (Fourth) ("Manual") § 21.71 at 336 (2006) ("Compensating counsel for the actual benefits conferred on the class members is the basis for awarding attorney fees.")  Indeed, the Court may award fees to counsel other than class counsel or to objectors who "provided services that contributed to an increase in the common fund

available to a class, that aided the court's review of class-action settlement, or that otherwise advanced the interests of the class or assisted the court." Manual, § 14.11 at 186.

The concerns regarding the proposed attorneys' fee justify intervention as well. Proposed Intervenors have concerns that the fee request is disproportionate to the terms of the agreement. Proposed Intervenors seek the right to conduct arm's length discovery regarding whether proposed class counsel should be disqualified from representing the class in light of proposed class counsels' conduct. Furthermore, proposed Intervenors' counsel has spent over three years diligently and faithfully prosecuting the claims of the *Arfat* and *Hills* classes and has invested, together with co-counsel, approximately 2,000 hours in both cases combined and has born the burden, together with co-counsel, of over $100,000 in costs for both cases. (Ex, C ¶ 5.) To the extent that the Court approves the settlement of the *Doe* matter or a revised settlement in the *Doe* matter, the efforts of proposed Intervenors' counsel have substantially helped this matter proceed to settlement and have been a catalyst to any such deal. Accordingly, proposed Intervenors' counsel is entitled to be compensated for the fees and costs spent litigating the *Arfat* and *Hills* matters.

Intervenors have met the minimal burden of showing that they are entitled to intervene as of right, especially since courts construe liberally the rule governing intervention as of right and in favor of the proposed intervenor. *Martin v. Correction Corp. of America,* 231 F.R.D. 532 (D.C.Tenn. 2005). Therefore, Intervenors respectfully request that they be allowed to intervene in this action to protect their rights and their claims.

### III.   PERMISSIVE INTERVENTION

Proposed Intervenors have presented sufficient arguments for the Court to grant intervention of right in this matter. However, should the Court find that the facts do not warrant

an intervention of right, the Court should grant permissive intervention.  Rule 24(b) grants the district court discretionary power to permit intervention if the motion is timely, if the applicant's claim or defense and the main action have a question of law or fact in common and if intervention would not unduly delay or prejudice the adjudication of the original parties' rights.  Fed. R. Civ. P. 24(b)(3); *United States v. Michigan,* 424 F.3d 438, 445 (6th Cir. 2005).  The Court should exercise its discretion to permit intervention because the motion is timely, the claims of the California Class and those stated in this case are virtually identical as are the defenses and intervention will not unduly delay the adjudication.  Indeed, any delay has been caused by the parties desire to settle claims which they had no business resolving.

## IV.    CONCLUSION

For the foregoing reasons, proposed Intervenors should be allowed to intervene.

Respectfully submitted,

MORRIS & DOHERTY, P.C.

s/ *Paul F. Doherty*_____
PAUL F. DOHERTY (P36579)
4000 Town Center, Suite 900
Southfield, MI  48075
(248) 353-7900
*Local Counsel for Intervenors Melissa Arfat, Brandi*
*Carter, Quinece Hills and Victoria Omlor on behalf of*
*themselves and as Representative Class Members*

KNAPP, PETERSEN & CLARKE
Stephen M. Harris, Esq. (CA 110626)
K.L. Myles, Esq. (CA 243272)
550 North Brand Blvd., Suite 1500
Glendale, CA  91203-1922
Telephone:  (818) 547- 5149
Facsimile:  (818) 547-5329
Email:  smh@kpclegal.com
Email:  klm@kpclegal.com
*Counsel for Intervenors Melissa Arfat, Brandi Carter,*
*Quinece Hills and Victoria Omlor on behalf of themselves*
*and as Representative Class Members*

Dated:  November 3, 2010

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the United States District Court for the Eastern District of Michigan and upon all opposing counsel using the CM/ECF system which will send notice of its filing to all counsel of record.

*s/ Paul F. Doherty*_____
PAUL F. DOHERTY (P36579)
4000 Town Center, Suite 900
Southfield, MI  48075
(248) 353-7900
pdoherty@morris-dohertypc.com
*Local Counsel for Intervenors Melissa Arfat,*
*Brandi Carter, Quinece Hills and Victoria Omlor*
*on behalf of themselves and as Representative Class*
*Members*

19