# Exhibit C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE, individually, and on behalf of all
others similarly situated,

        Plaintiff,

v.

CIN-LAN, INC.; DÉJÀ VU CONSULTING,
INC.; and HARRY V. MOHNEY,

        Defendants

Case No. 2:08-CV-12719

Honorable Stephen J. Murphy III
Magistrate Judge Michael J. Hluchaniuk

## DECLARATION OF STEPHEN M. HARRIS

I, Stephen M. Harris, declare as follows:

1.    I am an attorney at law duly licensed to practice before all of the courts in the State of California. I am a member of the law firm of Knapp, Petersen & Clarke, counsel of record for Intervenors in this action. The following facts are within my personal knowledge, and if called as a witness, I could and would competently testify thereto.

2.    Knapp, Petersen & Clarke, the law offices of Michael Duberchin, and the law offices of Robert Starr, have two pending class actions against Déjà vu. One was filed in March of 2007, and was certified by the trial court in October of 2008 as a class action on behalf of all dancers from March of 2003 to the present who performed at the North Hollywood, California club of Déjà vu. As stated above, the class certification order was entered in October of 2008, and notice of the pendency of the class action has been served on all class members. The opt-out period has expired. True and correct copies of the class certification order, order concerning

1

class notice (including notice of pendency of class action), and report of the claims administrator, issued after the close of the opt out period in March of 2010, are attached hereto as exhibits 1-3.

      3.     The second class action was filed in February of 2008 against a club located in the City of Industry, California, and was certified as a class action on behalf of all dancers performing at the club from March of 2005 to the present. This certification order was entered in June of 2010. A true and correct copy of this certification order is attached as exhibit 4. This class is composed of 1,697 dancers.

      4.     In both cases, Plaintiffs contend that the dancers have been misclassified as independent contractors, and related relief, and that the clubs have misappropriated tip income from the dancers. True and correct copies of the operative complaints in the two cases are attached hereto as exhibits 5 through 6.

      5.     In these two cases, Plaintiffs counsel (my firm, Mr. Robert Starr's firm, and the law offices of Michael Duberchin) has spent 2,000 hours and in excess of $100,000 in costs. The Doe Plaintiffs have not even bothered to advise the court in their motions for approval, and for a stay, that two of the class actions have been certified. (Proposed Agreement, ¶ 2.3.) The court thus has been deprived of material information upon which it is to base its decision.

      6.     I am aware that a case has been initiated against Déjà vu California clubs, with the named Plaintiff Dawn Trauth. However, the operative complaint in that club excluded the North Hollywood club from the class. A true and correct copy of that lawsuit is attached hereto as exhibit 7. During a status conference of October 18th, the parties in the Trauth litigation represented to the court that they expected the Trauth case to be subsumed into the Doe matter in the coming weeks. A true and correct copy of the transcript of the hearing is attached hereto as exhibit 8.

7.     Commencing in June of 2010, a series of sealed documents were filed in this matter. Beginning in June of 2010, Déjà vu has become increasingly uncooperative with Plaintiffs efforts to move the two certified cases along.  In September of 2010, in response to my direct inquiry, defense counsel conceded that settlement negotiations were ongoing with the attorneys handling a Michigan case against Déjà vu, including Mr. Hart Robinovitch, one of the attorneys who had filed the Trauth lawsuit.  I immediately began attempting to communicate with Mr. Robinovitch about the status of these negotiations.  He ignored these efforts.

8.     During late September of 2010, I was able to reach Caleb Marker, who works with Mr. Robinovitch.  Mr. Marker advised me in response to my inquiry that negotiations were ongoing with Déjà vu but also advised me that these negotiations did not include the California litigation.  Mr. Marker directed me to Mr. Jason Thompson for more details.

9.     Mr. Thompson spoke to me on October 6th, after I made several attempts to contact him. Mr. Thompson advised me that there was a tentative settlement agreement, and that it had been filed under seal in the Michigan case. This was the first time I was aware that an actual agreement had been reached between the parties. Moreover, in response to my direct inquiry, Mr. Thompson conceded that the settlement embraced the state of California.  This is the first time I became aware that there was any alleged settlement agreement, and that the agreement embraced claims in the State of California.  Subsequent to meet and confer efforts with counsel for all parties, about this intervention, my review of the tentative settlement agreement filed on October 22nd, and further efforts to meet and confer, this proceeding was initiated.

10.     I have serious reservations concerning whether any such settlement agreement is fair, reasonable, or adequate for the class and whether proposed class counsel is competent to

represent the class, based on my previous dealings with Mr. Robinovitch. In similar litigation against Spearmint Rhino, I had to threaten to intervene in order to alter terms of a proposed class action settlement secretly negotiated by Doe's counsel herein. The terms which I objected to, and was able to have modified, included an unlawful exculpatory agreement whereby Spearmint Rhino would be immunized for liability for its unlawful acts for 18 months, a term which permitted Spearmint Rhino to reinstate stage fees charged to dancers during this 18 month period, failure to advise class members of the per shift value of their claims, and terms which seriously diluted the non-reversionary aspect of the settlement. Indeed, in return for negotiating an increase of approximately $25,000 in the non-reversionary amount of the settlement, while adding thousands of class members to the case and thus drastically diluting the value of the benefits posed by the settlement, Does counsel provided that the fee payable to it would increase by more than $500,000 than the maximum fee previously negotiated.

11.     All these terms were claimed by proposed class counsel herein to be "improvements" to a deal previously negotiated by me. However, they instead were far inferior to the previous settlement. The only substantial improvement was the proposed increase in the fee to proposed class counsel, and the gross amount of the now diluted settlement.

12.     Now, proposed class counsel negotiated a secret deal, filed under seal with the court, until October 22nd when a tentative unsigned deal was filed with the court. This fact alone raises serious concerns about whether the deal is collusive, and serious concerns about the adequacy of the terms of the settlement and proposed class counsel. That is, the defendant is not bound by the deal, is not obligated to sign it until the eve of preliminary approval, and can terminate it if any of the pending class actions are not stayed. Agreement, ¶ 12.1. That proposed class counsel cannot even get the defendant to commit to the deal at this stage raises serious

concerns about their adequacy, and serious concerns about whether the deal is the product of fraud, collusion, or undue influence.

13.     Moreover, since my firm and the others affiliated with me represent the classes in both the City of Industry and the North Hollywood cases, proposed class counsel herein has no right to negotiate a settlement on behalf of my clients. I contend that this fact alone is poses the potential for disqualification of Doe's counsel.

14.     Thus, the interests of Plaintiffs and their counsel in the certified class action proceedings pending in California, pending against the City of Industry and the North Hollywood clubs, will be substantially impaired unless they are able to intervene in this case, object to the unlawful compromise of their claims, be permitted to conduct discovery, move to sever these cases, or obtain any other relief which is appropriate.

15.     Based on my inspection of the settlement agreement I have serious concerns about its terms. First, the only monetary component is a $1,300,000 cash component which is payable on a claims made basis only. Class members only receive a small monetary sum as part of this deal, ranging from $50.00 to $500.00. Based on my previous experience with class actions involving nude or semi-nude entertainers, I believe a claims rate lower than ten percent is feasible, representing a pay-out of $250,000. I have been involved in over ten cases asserting misclassification of nude and semi-nude dancers, and such a claims rate is not atypical. I have become increasingly focused in these cases upon trying to obtain the largest non-reversionary amount possible in order to ensure that the maximum amount possible is in fact paid by the defendant. Moreover, provisions in the deal advising dancers that they may receive a 1099 are calculated to prey on their fears since Déjà vu does not presently issue any 1099's to dancers. Agreement, Section V; Ex. 9, attached hereto, Section I, D.

16.    The only other monetary payment is a coupon settlement, which will be administered by the defendants only after final approval, without any court supervision. Thus, the court will never know if the deal as a whole was in fact fair, reasonable and adequate for class members, nor be aware of whether defendant in fact offers the coupons to dancers. Moreover, the coupon aspect of the settlement is so vague that it appears to allow the defendant to continue its present business practices. Agreement, ¶¶ 5.6-6.3. The tentative settlement provides for a 60/40 split of dance fees between entertainers and the club, but this is already part of the standard form contract of Déjà vu. Thus, the highly touted 9 million portion of the settlement will not in fact result in any benefit to the dancers. The only parties receiving benefits are defendants (a release) and counsel for Doe, 3.5 million in attorneys' fees. Attached hereto as exhibit 9 are true and correct copies of standard from contracts used by Déjà vu showing that its standard practice is to pay dancers who schedule their performances 60% of each dance fee, and that Déjà vu receives 40% of each dance fee. Thus, it appears that the dance credits do not extend any benefit to dancers since they are being utilized merely to perpetuate the existing practices of the club. Moreover, since dancers are limited to a credit of $100.00 per performance, if they actually receive one, they are in fact worse off since they must pay $20.00 of the credit to the attorneys, thus resulting in the dancers receiving $40.00 instead of $60.00. Moreover, even if this was a legitimate benefit, which is uncertain since the club will administer this aspect of the settlement without court supervision, even 2,000 dancers receiving a $40.00 credit would only receive a net benefit of $80,000.

17.    In intervenors' certified class action against the North Hollywood Club, one element of damages (misappropriated tip income) has a gross value of over $14,000,000. It is estimated that the other case (since the class is larger) will have even more significant damages.

Attached hereto as exhibit 10 is a true and correct copy of Déjà vu's interrogatory responses in the North Hollywood case demonstrating that dance fee damages are over $14,000,000 in that case alone.

18.    On October 22, 2010, I met and conferred with Jason Thompson, counsel for Plaintiffs herein, and Edi Thomas, one of the defense attorneys. I was unable to obtain their agreement to stipulate to the relief sought herein. I again spoke with Mr. Thompson and Tim Becker, both counsel for Doe, on October 27th, after reviewing their tentative settlement agreement, but we were unable to resolve our differences and there was no stipulation agreed to concerning the intervention. I demanded that all parties sever the cases against the City of Industry Club and North Hollywood club on October 27th, but this demand was rejected.

Executed on this 1st day of November, 2010, at Glendale, California.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

/s/ Stephen M. Harris
Stephen M. Harris, Esq. (CA 110626)
550 North Brand Blvd., Suite 1500
Glendale, CA  91203-1922
Telephone:  (818) 547- 5149
Facsimile:  (818) 547-5329
Email:  smh@kpclegal.com

## INDEX TO EXHIBITS

**EXHIBIT**      **DESCRIPTION**

1      ORDER GRANTING AND DENYING CLASS CERTIFICATION

2      ORDER REGARDING CLASS NOTICE

3      NOTICE OF FILING OF DECLARATION OF WESLEY L. NUTTEN RE
       NOTICE TO CLASS, OPT-OUTS, INVALID ADDRESSES, AND
       COMPOSITION OF CLASS

4      COURT MINUTE ORDER DATED JUNE 30, 2010 RE MOTION FOR CLASS
       CERTIFICATION

5      PLAINTIFFS' FIRST AMENDED COMPLAINT

6      PLAINTIFFS' THIRD AMENDED COMPLAINT

7      DEFENDANTS' NOTICE OF REMOVAL AND DEMAND FOR JURY TRIAL

8      REPORTER'S TRANSCRIPT OF PROCEEDINGS DATED OCTOBER 18,
       2010

9      CLUB/PERFORMER CONTRACTS

10     DEFENDANTS' RESPONSES TO PLAINTIFF BRANDI CARTER'S THIRD
       SET OF SPECIAL INTERROGATORIES

# Exhibit C-1

EXHIBIT 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

MELISSA ARFAT; BRANDI CARTER; and VICTORIA OMLOR, on behalf of themselves and as Representative Class Members,

        Plaintiffs,

vs.

DÉJÀ VU OF NORTH HOLLYWOOD, a business organization for unknown; and DOES 1 through 100, inclusive,

        Defendant.

AND RELATED CROSS-ACTION

Case No. BC367362

**ORDER GRANTING AND DENYING CLASS CERTIFICATION**

**FILED**
LOS ANGELES SUPERIOR COURT

OCT 0 6 2008

JOHN A. CLARKE, CLERK

BY J.L. SNYDER, DEPUTY

        Asserting misclassification as independent contractors, plaintiffs allege they are defendant's employees, and thus entitled to overtime compensation and protection under various wage and labor laws. Plaintiffs now seek class certification.

        The proposed class for which plaintiffs seek certification is "All persons who performed as nude and semi-nude dancers at Déjà Vu from March 12, 2003 to the date of entry of judgment."

        Class certification is appropriate when "the question is one of a common or general interest, of many persons, or when parties are numerous and it is impracticable to bring them all before the court." CCP Section 382. "To obtain certification, a party must

1

establish the existence of both an ascertainable class and a well defined community of interest among class members. The community of interest requirement involves three factors: '[1] predominant questions of law or fact; [2] class representatives with claims or defenses typical of the class; and [3] class representatives who can adequately represent the class.'" *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435. A plaintiff must present substantial evidence demonstrating that these factors have been satisfied, as "a certification ruling not supported by substantial evidence cannot stand." *Lockheed Martin Corp. v. Superior Court* (Carrillo) (2003) 29 Cal.4th 1096, 1106.

Numerosity and Ascertainability

Numerosity means the class is sufficiently numerous that individual joinder is impracticable. However, "no set number is required as a matter of law for the maintenance of a class action." *Rose v. City of Hayward* (1981) 126 Cal. App. 3d 926, 934. The class consists of approximately 600 dancers who were all classified as independent contractors. A class of 600 members is sufficiently numerous that joinder is impractical. Accordingly, plaintiffs have met their burden as to numerosity.

An ascertainable class exists after examining "(1) the class definition, (2) the size of the class, and (3) the means available for identifying class members." *Global Minerals & Metals Corp. v. Superior Court (National Metals, Inc.)* (2003) 113 Cal. App. 4th 836, 849. "'Class members are "ascertainable" where they may be readily identified without unreasonable expense or time by reference to official records.'" *Aguiar v. Cintas Corp. No. 2* (2006) 144 Cal.App.4th

2

121, 135. The proposed class definition is sufficiently clear so that a lay person should be able to determine if she is a class member, and the above definition clearly defines the period of time covered by this lawsuit. Plaintiffs have therefore met their burden as to ascertainability.

Typicality

The named plaintiff must be a member of the class. *Petherbridge v. Altadena Federal Savings and Loan Association* (1974) 37 Cal.App.3d 193, 200. Typicality looks to the nature of the claims or defenses, not the specific facts from which the claims or defenses arose or the relief sought. *Seastrom v. Neways, Inc.* (2007) 149 Cal. App. 4th 1496, 1502. "'The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."' *Id.* The class representative's interests, though, need not be identical to those of class members, only similar in key aspects. *Classen v. Weller* (1983) 145 Cal.App.3d 27, 46.

Plaintiffs fail to establish they were actually subject to a "fine," and fail to present evidence defendant maintained a policy mandating "uniforms" by its dancers. This court thus finds that the named plaintiffs lack typicality as to the second and fourth causes of action for illegal wage deductions and failure to reimburse for uniforms. Accordingly, class certification as to those causes of action is denied.

Adequacy

This court must determine the adequacy of the proposed class representative and of the proposed class counsel. To satisfy due process and res judicata requirements, the class representative must adequately represent and protect the class interests. *City of San Jose v. Superior Court (Lands Unlimited)* (1974) 12 Cal.3d 447, 463. The class representative must raise claims "reasonably expected to be raised by the members of the class." *Id.* at 464. There must be no antagonisms or conflict between the class representative and the class members' interests. *J.P. Morgan & Co., Inc. v. Superior Court (Heliotrope General, Inc.)* (2003) 113 Cal.App.4th 195, 212. Still, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470. With respect to class counsel, he or she must be qualified, experienced and generally able to conduct the proposed litigation. *McGhee v. Bank of America* (1976) 60 Cal.App.3d 442, 450. This court finds that plaintiffs and counsel have met this burden, with the exception of plaintiff Omlor.[1]

---

[1] Within two weeks of this order, this court expects plaintiff Omlor to submit a supplemental declaration setting forth her understanding of her role as a class representative.

Commonality

"'The ultimate question in every [purported class action] is whether, given an ascertainable class, the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.'" *Brown v. The Regents of the University of California* (1984) 151 Cal.App.3d 982, 989. Plaintiffs' burden is to provide substantial evidence that common issues predominate. *Lockheed Martin Corp.*, supra, 29 Cal.4th at 1108.

Defendant says that, before this court determines common issues predominate, it must first make a threshold legal finding as to whether "dance fees" are "gratuities" within the meaning of Lab.C. Section 350(e). This court declines to do so. Whether the dancers' contracts properly classify "dance fees" is one of several common issues among the class members. "Certification is a question that is 'essentially ... procedural ... [and] does not ask whether an action is legally or factually meritorious.'" *Hewlett-Packard Company v. Superior Court (Rutledge)* 2008 Cal.App. LEXIS 1467, 10 (citing *Linder*, supra, 23 Cal.4th at 439-440).

An employer's obligation is to make available rest breaks to its employees, not ensure that they are taken. *Brinker Restaurant Corporation vs. Superior Court (Hohnbaum)* (2008) 165 Cal.App.4th 25, 55. Yet, "an employee who has a duty or obligation to remain on the premises during meal periods is not 'free of all duty,'" but "remains subject to the employer's control,"

and must therefore be paid pursuant to IWC Order No. 1-89. *Bono Enters. v. Bradshaw* (1995) 32 Cal.App.4th 968, 975 (disapproved on other grounds in *Tidewater Marine W. v. Bradshaw* (1996) 14 Cal.4th 557).

Plaintiffs present evidence showing the dancers could not leave once arrived for their shift, were required to be on stage at all times, and defendants expected all dancers to perform during "blue light" and other specials. Defendant argues it prevented dancers from leaving the grounds pursuant to a "near universal, industry-wide practice in the exotic dance business that performers are restricted from leaving *and returning* to the premises during their chosen performance dates." (emphasis in original)  But defendant has not shown it was required by law or regulation to prevent dancers from leaving and returning to the premises, or that it did not require dancers to be on stage at any time during the above-referenced "specials." Moreover, this court is unaware of any industry practice or custom that can keep an employer from meeting Labor Code requirements. While industry standards may dictate how the code is carried out, they cannot waive an employer's obligation to meet those requirements. Consequently, at least at this juncture, this argument by defendant cannot defeat class certification.

Accordingly, this court finds that plaintiffs have made a showing of commonality as to their fifth and sixth causes of action for failure to provide meal breaks and violation of Section 12 of the Industrial Welfare Commission, with respect to meal breaks only. Accordingly, this motion is granted in part (with respect to meal breaks only) as to those causes of action.

6

Superiority and Substantial Benefits

A "class action also must be the superior means of resolving the litigation, for both the parties and the court." *Aguiar*, supra, 144 Cal.App.4th at 132-33. The *Aguiar* court indicated class suit is appropriate when the injury is of insufficient size to warrant individual action, and/or denial of class relief will result in an unjust advantage to the wrongdoer. *Id.* And, the judge must "carefully weigh respective benefits and burdens and . . . allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts." *Linder*, supra, 23 Cal.4th at 435.

This court has considered both the benefits that a class action would yield, as well as the potential unfairness to defendant, which might result from litigation of plaintiffs' claims through aggregate procedures rather than through separate trials. This court finds that judicial economy and efficiency are promoted in several but not all respects by this lawsuit.

Accordingly, class certification is granted as to plaintiffs' first (failure to pay minimum wage or overtime wages), third (illegal tip taking), seventh (waiting time penalties), eighth (Bus. and Prof. C. Section 17200) and ninth (Lab.C. Section 226(a)) causes of action. Class certification will be granted *in part* as to plaintiffs' fifth (failure to provide meal breaks) and sixth (violation of IWC Section 12) causes of action, but as to meal breaks only.

This motion is denied, and class certification denied, as to plaintiffs' second (illegal wage deductions) and fourth (failure to reimburse for uniforms) causes of action. This motion is

denied *in part* as to plaintiffs' fifth (failure to provide rest breaks) and sixth (violation of IWC Section 12) causes of action, but as to rest breaks only.

DATED: October ___, 2008

Judge of the Superior Court



# Exhibit C-2

EXHIBIT 2

81

1  Michael S. Duberchin, Esq. (State Bar No. 108338)
   msdlaw@earthlink.net
2  LAW OFFICES OF MICHAEL S. DUBERCHIN
   P.O. Box 8806
3  Calabasas, CA 91372
   Telephone: (818) 223-8700
4  Facsimile: (818) 223-8788

5  Robert L. Starr, Esq. (State Bar No. 183052)
   THE LAW OFFICES OF ROBERT L. STARR
6  23277 Ventura Boulevard
   Woodland Hills, California 91364-1002
7  Telephone: (818) 225-9040
   Facsimile: (818) 225-9042

8
   Stephen M. Harris, Esq. (State Bar No. 110626)
9  smh@kpclegal.com
   KNAPP, PETERSEN & CLARKE
10 550 North Brand Boulevard, Suite 1500
   Glendale, California 91203-1922
11 Telephone: (818) 547-5000
   Facsimile: (818) 547-5329

12
   Attorneys for Plaintiffs and Cross-defendants
13 MELISSA ARFAT, BRANDI CARTER and
   VICTORIA OMLOR, on behalf of themselves and as
14 Representative Class Members

15          SUPERIOR COURT OF THE STATE OF CALIFORNIA

16                  COUNTY OF LOS ANGELES

17 MELISSA ARFAT, BRANDI CARTER and      ) NO.   BC367362 (Non-Complex)
   VICTORIA OMLOR, on behalf of          ) [CLASS ACTION]
18 themselves and as Representative Class )
   Members,                              ) Assigned for All Purposes To:
19                                        ) The Hon.:    Rex Heeseman - Dept. 81
              Plaintiffs,                 ) Date Action Filed:      March 5, 2007
20                                        ) Trial Date:             None
          v.                             )
21                                        ) **ORDER REGARDING CLASS**
   DEJA VU OF NORTH HOLLYWOOD, A         ) **NOTICE**
22 business organization form unknown, and )
   DOES 1-100, inclusive,                )
23                                        )
              Defendants.                 )
24 _____    )
                                          )
25                                        )
   AND RELATED CROSS-ACTION.             )
26                                        )

27

28

**FILED**
LOS ANGELES SUPERIOR COURT

AUG 21 2009

JOHN A. CLARKE, CLERK

BY J.L. SNYDER, DEPUTY

**REC'D**

JUL 31 2009

**FLING WINDOW**

KNAPP,
PETERSEN
& CLARKE

-1-
*ORDER RE CLASS NOTICE*

680070.1  08000/00844

1    On April 23, 2009, the motion of Plaintiffs for an order permitting the issuance of

2  notice to the Class came on for hearing before the honorable Rex Heeseman, in Department

3  81 of the Los Angeles Superior Court. After considering the moving, opposing and reply

4  papers, and such oral argument as was allowed at the hearing of the matter, the court

5  ordered that the notice attached hereto as exhibit 1 be transmitted to the class, and

6  ORDERS as follows:

7    This court has a supervisory role over class notification.  A purpose behind such a

8  role is to assure that any notice neither promotes nor discourages the assertion of claims.

9  *Gainey v. Occidental Land Research* (1986) 186 Cal.App.3d 1051, 1058 ("It is essential

10 that the class members' decision to participate or to withdraw be made on the basis of

11 independent analysis of its own self-interest. It is the responsibility of the Court as neutral

12 arbiter, and the attorneys in their adversary capacity, to insure this type of free and

13 unfettered decision").  Furthermore, once the content of the notice has been approved, a

14 defendant is precluded from sending out its own competing and argumentative notice and

15 invitation for the class members to opt out. *Id.*

16    Therefore, to ensure that the class members are not influenced by either side on

17 whether to remain a member of the class or opt out, all parties and counsel herein are

18 precluded from encouraging or discouraging a member to opt out.  Still, there is no reason

19 to preclude any party or counsel from communicating with any class member if she calls or

20 communicates with them (i.e., to respond to questions or concerns).

21    After reviewing the proposed class notices submitted by both sides, this court prefers

22 the notice offered by defendant.  Accordingly, this court approves defendant's notice,

23 subject to the following modifications:

24    Personal notification should be given unless impractical. There does not seem to be a

25 reason why a substantial percentage of the class cannot be notified by personal service (i.e.,

26 personal delivery or mail); publication thus does not seem necessary at this time.

27 Publication notice, along with personal notification, might later be utilized.  Before

28 publication notice can be granted, though, the parties must provide this court with

KNAPP,
PETERSEN
& CLARKE

-2-
*ORDER RE CLASS NOTICE*

680070.1   08000/00844

1  information, including where the publication will occur, how many times notice by

2  publication will occur, and a proposed publication notice (i.e., a short form notice).

3      Although defendant may need to look at over 600 contracts to ascertain that

4  information, this court does not find that search to be overly burdensome, or to outweigh

5  the interest of the class and any prejudice that may lie if class members do not receive

6  notice. Still, defendant should not bear the cost on its own. Accordingly, the parties will

7  share the expense of obtaining and recording social security and drivers' license numbers

8  equally.

9      The class members' social security and drivers' license numbers need not be

10  disclosed to plaintiffs or class counsel. This information will instead be provided to the

11  Claims Administrator, which will use it for notification purposes only, and will otherwise

12  maintain it in confidence.

13      This Court therefore orders the following reasonable means of notification:

14      1.    Mailing: The Claims Administrator will mail the class notice to the last

15  known address of the class members. If any notice is returned, it will be re-mailed to any

16  provided forwarding address. If no forwarding address is provided, then the notice is to be

17  subjected to a skip trace search or computer search utilizing the class member's social

18  security and/or driver's license number. Costs for such mailing shall be borne by plaintiffs.

19      2.    Personal delivery: Defendant will personally deliver the class notice to

20  dancers currently performing, by handing each dancer a copy of the notice when she is

21  signed in by the door attendant. The notice shall be in a plain envelope. The door attendant

22  shall check off each dancer's name who receives a copy of the notice. This shall persist for

23  a period of two weeks, commencing at or about the same time as the mailing of the notice.

24  Costs for said personal delivery will be borne by defendant. Defendant's employees shall

25  deliver the notice to the dancers, avoiding commentary. If a dancer inquires about the notice

26  any response shall be limited to communicating that the notice relates to a lawsuit, and

27  please read the notice.

28  ///

KNAPP,
PETERSEN
& CLARKE

3.    The exclusion form shall be pre-addressed and pre-paid, with costs of return postage to be shared equally.

This court sets the following schedule:

1.    Within 45 days of this order, defendant will provide the Claims Administrator only with the names of the class members, their last known addresses, their last known telephone numbers, their social security number (if known) and their driver's license number (if known);

2.    Within 20 days after the class list is provided, the Claims Administrator will mail the class notices;

3.    Within 20 days after the class list is provided, the defendant shall personally deliver the class notice to currently performing dancers;

4.    Any class member shall have 45 days from the date the notice is mailed or hand delivered to her to postmark her Request for Exclusion/Opt-out to the Claims Administrator;

5.    Within 10 days for receipt of the returned class notice, the Claims Administrator shall perform a skip-trace search and re-mail the notice to any newer address it locates;

6.    Within 15 days of the close of the opt-out period, defendant shall file and serve a declaration attesting that the class notice was delivered to all current dancers who performed during the two week hand-out period;

7.    Within 15 days after the close of the opt-out period, the Claims Administrator shall:

a.    Submit a declaration, which is to be filed with this court, attesting to the completion of the notification procedures, the total number of notices mailed (and/or re-mailed), the total number of returned (undeliverable) notices and the total

-4-

*ORDER RE CLASS NOTICE*

KNAPP, PETERSEN & CLARKE

680070.1 08000/00844

1      number who opted out. The Claims Administrator shall not

2      provide this court with the names or identities of the members

3      who opted out, in order to protect those members' identities;

4   b.   Provide class counsel and defense counsel with a list of all class

5      members (i.e., those who have not opted out) with their contact

6      information, but not their social security or drivers' license

7      numbers; and

8   c.   Provide class counsel and defense counsel with a list of the

9      names of all members who opted out, but not their contact

10     information (i.e., address and telephone number), social security

11     or drivers' license numbers;

12   d.   Provide class counsel and defense counsel with a list of the

13     names of all dancers whose notice was returned (undeliverable).

14     At this time, Defendant does not seek to recover punitive damages or any monetary

15 relief (other than in the form of an offset or set off) against any class member other than

16 Plaintiff Arfat. If Defendant wishes to seek punitive damages or any monetary relief (other

17 than in the form of an offset or set off) against any class member other than Plaintiff Arfat,

18 Defendant must obtain permission from the Court by way of a noticed motion establishing

19 an appropriate reason for seeking such relief against class members.

20 Dated: July 30, 2009         KNAPP, PETERSEN & CLARKE

21

22

23                 By: _____

24                    STEPHEN M. HARRIS
                     Attorneys for Plaintiffs and Cross-

25                    Defendants MELISSA ARFAT,
                     BRANDI CARTER and VICTORIA

26                    OMLOR, on behalf of themselves and
                     as Representative Class Members

27

28

KNAPP,
PETERSEN
& CLARKE

*ORDER RE CLASS NOTICE*

680070.1  08000/00844



1  Dated: July 30 , 2009          MARKUN ZUSMAN & COMPTON, LLP

2

3                                 By: _____

4                                     Daria Dub Carlson
                                      Attorneys for Defendant and Cross-
5                                     Complainant COLDWATER, LLC dba
                                      DEJA VU OF NORTH
6                                     HOLLYWOOD

7

8                                 **ORDER**

9       IT IS SO ORDERED:

10

11  Dated: July _____ , 2009       _____

12                                 Rex Heeseman - Dept. 81
                                   Judge of the Superior Court of the State of
13                                 California

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KNAPP,
PETERSEN
& CLARKE

                                        -6-
                           *ORDER RE CLASS NOTICE*

680070.1 08000/00844

# NOTICE OF CLASS ACTION

### If you are or were an exotic dancer
### who performed at Déjà vu of North Hollywood
### a class action lawsuit may affect your rights.

*A court has authorized this notice.*

- Three dancers ("Plaintiffs") who formerly performed at Déjà vu of North Hollywood ("Déjà vu") have filed suit against Déjà vu. They allege that Déjà vu misclassified dancers as "independent contractors" rather than "employees". They are seeking to have dancers classified as employees entitled to compensation for minimum wage, overtime, meal breaks, reimbursement of dance fees (which they claim are "tips"), penalties, interest, and attorney fees.

- The lawsuit is known as Melissa Arfat vs. Déjà vu of North Hollywood, Los Angeles Superior Court Case No. BC367362. It was filed in the *Los Angeles Superior Court and has been assigned to Judge Rex Heeseman for all purposes.* The Judge has ordered the lawsuit certified as a class action on behalf of all persons who danced at Déjà vu from March 5, 2003 to the present.

- Déjà vu denies any wrongdoing. Déjà vu has asserted various defenses and has filed a Cross Complaint against the dancers seeking an offset or credit for the dance fees the dancers received under the contract if the dancers are found to be employees entitled to damages. Déjà vu is seeking to have this off set or credit be applied against any award of wages found to be due to the dancers.

- The Court has not decided whether the *Plaintiffs'* claims are valid nor has it decided *whether Déjà vu did anything wrong or whether Déjà vu would be entitled to an offset or credit.* There is no money available now, and no guarantee there will be. However, your legal rights are affected, and you have a choice to make now:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **DO NOTHING** | **Stay in this lawsuit. Await the outcome. Give up certain rights.**<br><br>By doing nothing,, you STAY IN THIS LAWSUIT and keep the possibility of getting money or benefits that may come from an award or a settlement. But, you give up any rights to sue separately about the same legal claims in this lawsuit. |
| **ASK TO BE EXCLUDED** | **Get out of this lawsuit. Get no benefits from it. Keep rights.**<br><br>If you ASK TO BE EXCLUDED (LET OUT OF THIS LAWSUIT) and money or benefits are later awarded, you won't share in those. But, you *keep any rights to sue separately about the same legal claims in this lawsuit.* |

- Your options are explained in this notice. To ask to be excluded (let out of the lawsuit), you must complete and mail in the attached pre-addressed and postage paid "Exclusion Form". This form must be postmarked before _____, 2009.

- The Plaintiffs' lawyers must prove the claims against Déjà vu at a trial to be set in the future. If it is determined that dancers should have been classified as employees and money or benefits are awarded as a result, you will be notified about how to ask for a share.

680192_1 08000/00844

1

EX. 1 ✓

## BASIC INFORMATION

**1.  Why did I get this notice?**

The Court ordered Déjà vu to provide a list of the names and addresses of all dancers who performed at Déjà vu under a contract between March 5, 2003 and the present.  Your name and address was obtained from that list, and this notice is to inform you about the lawsuit, as it relates to all dancers who performed at Déjà vu during that time period.  This notice explains that the Court has certified a class action lawsuit that may affect you.  You have legal rights and options that you may exercise before the Court holds a hearing to decide whether the claims against and by Déjà vu are correct.

**2.  What is this lawsuit about?**

This case was originally filed by Plaintiff Melissa Arfat who performed as an exotic dancer at Déjà vu. Two other dancers, Brandi Carter and Victoria Omlor have joined the lawsuit. These Plaintiffs' lawsuit claims that Déjà vu misclassified exotic dancers as independent contractors rather than employees.  This lawsuit seeks to have dancers classified as employees entitled to compensation for minimum wage, overtime, meal breaks, dance fees, penalties, interest, and attorney fees.

**3.  What is a class action and who is involved?**

In a class action lawsuit, one or more people called "Class Representatives" (in this case Melissa Arfat, Brandi Carter and Victoria Omlor) are appointed to represent all similarly situated dancers to sue Déjà vu. The dancers together are "Class Members."  The company they sued (Déjà vu) is called the Defendant.  A trial will be held, unless there is a settlement, to resolve the issues for everyone in the Class *except* for those people who choose to exclude themselves ("opt out") from the Class.

**4.  Why is this lawsuit a class action?**

The Judge decided that this lawsuit can be a class action and move towards a trial because it meets the legal requirements which govern class actions in this setting.  Specifically, the Court found that:
- There are approximately 600 dancers who performed at Déjà vu during the class period;
- There are legal questions and facts that are common to each of them;
- The Plaintiffs' claims are typical of the claims of the rest of the Class;
- Melissa Arfat, Brandi Carter and Victoria Omlor, and the lawyers representing the Class will adequately represent the interests of all dancers in the class;
- The common legal questions and facts are more important than questions that affect only individuals; and
- This class action will be more efficient than having many individual lawsuits.

### THE CLAIMS IN THE LAWSUIT

**5.  What does the lawsuit complain about?**

In the lawsuit, Plaintiffs contend that Déjà vu misclassified dancers as independent contractors rather than as employees.  Plaintiffs are seeking to have dancers classified as "employees" entitled to minimum wage, overtime, meal breaks, dance fees, penalties, interest, and attorney fees.



**6.   How did Déjà vu respond to the lawsuit?**

Déjà vu denies that it did anything wrong.  It claims that dancers are properly classified as independent contractors, not employees.  Déjà vu also filed a Cross Complaint seeking a credit or offset of dance fees earned under the contract against any wages found to be due the dancers, claiming it would be unjust for dancers to receive both wages and dance fees earned under their contract with Déjà vu.  Déjà vu seeks this remedy only in the event there is a finding that dancers were "employees" who should have been paid minimum wages.  The Plaintiffs contest defendant's position, claiming that the dance fees are tips and thus not wages.  Plaintiffs contend that since dance fees are tips, and not wages, Déjà vu has no right to offset or set off dance fees from wages otherwise due to Class Members in connection with any judgment entered in this case.

**7.   Has the Court decided who is right?**

There has been no finding on whether Plaintiffs or Déjà vu is correct. By establishing the Class and issuing this Notice, the Judge is not suggesting that the Plaintiffs will win or lose this case.  *The Plaintiffs must prove their claims at a trial to be scheduled in the future.*

**8.   Is there any money available now?**

No money or benefits are available now because the Court has not yet decided whether Déjà vu  did anything wrong, or whether Déjà vu will be entitled to credit for monies paid the dancers under the contracts, and the two sides have not settled the case. There is no guarantee that money or benefits ever will be obtained. If they are, you will be notified about how to ask for a share if you are a member of the Class and do not opt out of the Class.

### WHO IS IN THE CLASS

You need to decide whether you are affected by this lawsuit.

**9.   Am I part of this Class?**

The definition of the class is: all dancers who performed at Déjà vu at any time between March 5, 2003 and the present.

**10.   Which dancers are included?**

You fall within this definition if you performed at Déjà vu at any time between March 5, 2003 and the present.

**11.   Do I need to retain any records?**

Yes.  You should retain all records and documents pertaining to your work as an exotic dancer at Déjà vu, including as examples any schedules, calendars, daily diary, contracts, receipts for monies, offers of employment or any other document relating to your work at Déjà vu.

### YOUR RIGHTS AND OPTIONS

YOU MUST DECIDE whether to stay in the Class or ask to be excluded, and you have to decide this NOW.

**12.   What happens if I do nothing at all?**

BY DOING NOTHING YOU REMAIN IN THE LAWSUIT. If you stay in the lawsuit and the Plaintiffs obtain a ruling that dancers should be classified as employees and there are resulting money damages awarded, either as a result of the hearing or a settlement, you will be notified about how to apply for a share (or how to ask to be excluded from any settlement).

Keep in mind that if you do nothing now, regardless of whether the Plaintiffs win or lose the trial, you will not be able to sue Déjà vu about the same legal claims that are the subject of this lawsuit. You also may be required to account for and offset any dance fees you received for performing at Déjà vu against any money damages that may be awarded. You will also be legally bound by all of the Orders and Judgments of the Court in this class action.

**13.   Why would I ask to be excluded (let out) of this Lawsuit?**

One reason would be if you already have your own lawsuit against Déjà vu and want to continue with it, or want to sue Déjà vu on your own, then you need to ask to be excluded (let out) from the lawsuit. Another reason would be that you do not agree with the goals of the lawsuit (requiring dancers to be employees rather than independent contractors), or you do not want the Plaintiffs or the appointed lawyers representing you or your interests.

However, if you exclude yourself from the Class – which means removing yourself from the Class or "opting-out" of the Class – you won't get any money or benefits from this lawsuit even if the Plaintiffs obtain them as a result of the trial or from any settlement, and you also will not be legally bound by any Orders or Judgments in this class action.

**14.   How do I ask the Court to exclude me or let me "opt out" from the lawsuit?**

TO BE EXCLUDED FROM THIS LAWSUIT, you must complete and mail the "Exclusion Request" stating that you want to be excluded (to "opt out"). Be sure to include your name and address, and sign the Exclusion Request. It is already addressed and has the postage prepaid. To be effective, a signed Exclusion Request must be mailed no later than _____, 2009 If you do not sign and mail this "Exclusion Request", you will remain in this lawsuit.

*If you wish to remain in the Class and obtain the potential benefits of this Class Action, you do not need to do anything.* You only need to complete and mail the "Exclusion Request" if you do not want to be included in the Class Action.

### THE LAWYERS REPRESENTING YOU

**15.   Do I have a lawyer in this case?**

Yes, if you remain in the lawsuit you will be a member of the Class, and the Court has agreed that the class will be represented by Stephen M. Harris, KNAPP, PETERSEN & CLARKE, 550 N. Brand Boulevard, Suite 1500, Glendale, CA 91203, Michael S. Duberchin, P. O. Box 8806, Calabasas, CA 91372, Robert L. Starr, 23277 Ventura Boulevard, Woodland Hills, CA 91364. These firms are "Class Counsel".

**16.   Should I get my own lawyer?**

You do not need to hire your own lawyer because Class Counsel has been appointed to represent you. However, if you prefer, you may hire your own lawyer. You can ask him or her to appear for you if you want someone other than Class Counsel to speak for you.



**17.** How will the lawyers be paid?

If Class Counsel obtains a ruling that includes money or benefits for the Class, they will ask the Court to award fees and expenses. You won't have to pay these fees and expenses if the Court awards them. If the Court awards fees and expenses, those amounts would be either deducted from any money obtained for the Class or demanded separately from Déjà vu.

### THE HEARING

There has been no hearing or trial set yet to decide who is right in this case.

**18.** How and when will the Court decide who is right?

As long as the case isn't resolved by a settlement or otherwise, the Plaintiffs and their Counsel will have to prove their claims at a trial and Déjà vu will have to prove its cross complaint. During the trial, the Court and jury will hear all of the evidence to help reach a decision about whether the Plaintiffs or Déjà vu are right about the claims in this lawsuit. There are no guarantees concerning who will win, or whether any money will be awarded to the Class.

**19.** Notice of Change of Address

If you move after receiving this notice or if it was misaddressed, you should send your new or corrected address to:

Insert claims administrator address

**20.** Will I get money after the hearing?

If the Plaintiffs obtain money or benefits as a result of the hearing or a settlement, you will be notified about how to participate. We do not know how long this will take.

### GETTING MORE INFORMATION

**21.** Are more details available?

You may look at and copy any records or pleadings in the Court's file at the Los Angeles Superior Court during regular business hours. The case name and number is: Melissa Arfat vs. Déjà vu of North Hollywood, Los Angeles Superior Court Case No. BC367362.

Dated: _____, 2009

**THIS FORM MUST BE COMPLETED BY YOU
IF YOU WISH TO BE EXCLUDED (TO "OPT OUT" OR BE LET OUT) FROM THE
CLASS.
IT MUST BE MAILED BEFORE _____
OR IT WILL NOT BE EFFECTIVE**

**ELECTION TO BE EXCLUDED (LET OUT)
AND TO "OPT OUT" OF THE CLASS ACTION LAWSUIT**

I, _____, hereby elect to be excluded (to "opt out") of the
　　　[print full legal name]

Class Action lawsuit described above.

Dated: _____

_____
Name

_____
Street Address

_____
City, State, Zip Code

_____
Telephone No.

**PROOF OF SERVICE**
Arfat v. Déjà vu
BC367362

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and am not a party to the within action. My business address is 550 North Brand Boulevard, Suite 1500, Glendale, California 91203-1922. On July 31, 2009, I caused the foregoing document(s) described as ORDER REGARDING CLASS NOTICE to be served on the interested parties in this action as follows:

     by placing a true copy thereof enclosed in sealed envelope(s) addressed as stated on the attached mailing list.

[X]    **BY MAIL:** I sealed and placed such envelope for collection and mailing to be deposited in the mail on the same day in the ordinary course of business at Glendale, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     Executed on July 31, 2009, at Glendale, California.

Marlinda Ochoa
(Type or print name)          (Signature)

681906.1  08000/00844

1

2

**SERVICE LIST**
**Arfat v. Déjà vu**
**BC367362**

3 | Edith A. Thomas, Esq.
4 | 214 North Ridge Drive, Suite B
   | Fallbrook, CA 92028

5

Tel: 888-349-3940
Fax: 760-728-9518
Attorney for Defendant and Cross-Complainant
Coldwater, LLC dba Déjà vu of North
Hollywood

6 | Michael B. Margolis, Esq.
   | Linda M. Toutant, Esq.
7 | Margolis & Tisman
   | 444 South Flower Street, Suite 2300
8 | Los Angeles, CA 90071

Tel: 213-683-0300
Fax: 213-683-0303
Attorneys for Defendant and Cross-Complainant
Coldwater, LLC dba Déjà vu of North
Hollywood

9 | Daria Dub Carlson, Esq.
   | Markun Zusman & Compton, LLP
10 | 17383 Sunset Boulevard, Suite A380
   | Pacific Palisades, CA 90272

11

Tel: 310-454-5900
Fax: 310-454-5970
Attorneys for Defendant and Cross-Complainant
Coldwater, LLC dba Déjà vu of North
Hollywood

12 | Michael Duberchin, Esq.
   | 4704 Park Granada, #195
13 | Calabasas, CA 91302

14

Tel: (818) 223-8700
Fax: (818) 223-8788
Co-Counsel for Plaintiff and Cross-Defendant
Melissa Arfat, and Plaintiffs Brandi Carter and
Victoria Omlor, on behalf of themselves and as
Representative Class Members

15

16 | Robert L. Starr, Esq.
   | The Law Offices of Robert L. Starr
   | 23277 Ventura Boulevard
17 | Woodland Hills, CA 91364

18

Tel: 818-225-9040
Fax: 818-225-9042
Co-Counsel for Plaintiff and Cross-Defendant
Melissa Arfat, and Plaintiffs Brandi Carter and
Victoria Omlor, on behalf of themselves and as
Representative Class Members

19

20

21

22

23

24

25

26

27

28

681906.1  08000/00844