**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JANE DOE NOS. 1-4, Individually and on behalf
of all others similarly situated,

    Plaintiff,

v.

CIN-LAN, INC., DEJA VU CONSULTING, INC.,
HARRY V. MOHNEY, AND THE DEJA VU
AFFILIATED NIGHTCLUBS IDENTIFIED ON
EXHIBIT "A" ATTACHED HERETO

    Defendants.

_____/

Case No. 08-cv-12719

Hon: Stephen J. Murphy III

Mag. Judge Michael J. Hluchaniuk

## DEFENDANT CIN-LAN, INC. AND THE SCHEDULE A DEFENDANTS SECOND AMENDED COUNTERCLAIM

NOW COME the Counter-Plaintiffs, CIN-LAN, INC. ("Cin-Lan") and the DEJA VU AFFILATED NIGHTCLUBS IDENTIFIED ON EXHIBIT "A" ("Nightclubs") (collectively referred to herein as "Counter-Plaintiffs") by and through counsel, and for their Second Amended Counterclaim against JANE DOES 1-4 and the Putative Class (collectively referred to herein as the "Counter-Defendants") states as follows:

### PARTIES

1.  Counter-Plaintiffs are Corporations or other legal entities which operate nightclubs throughout the United States. These nightclubs are specially licensed and generally occupy specially zoned properties and permit adult oriented entertainment to be lawfully conducted on their premises.

2.  The Counter-Defendants are the named Plaintiffs and the putative class which have: (1) performed at the Counter-Plaintiffs' nightclubs as entertainers; (2) have either opted into the collective class or have failed to opt out of the Rule 23 class; and (3) have executed any

1

Agreement (either in writing or by acquiescence), which may include Dancer Performance Leases ("DPL")[1], Licensing Agreement, Club-Performer Contract, Revenue Sharing Contract and/or Entertainer Applications,  (all of which are collectively referred to as "Agreements").

3.      This Court has jurisdiction to adjudicate the relief sought herein pursuant to Fed. R. Civ. P. 13(a).

4.      It is Counter-Plaintiffs' standard business practice to offer entertainers the opportunity to perform as an employee entertainer or alternatively, a contract entertainer under a written Agreement with Counter-Plaintiffs.  Copies of sample Agreements, including a document titled "To All Persons Desiring to Perform as Entertainers at This Club" and hereafter referred to collectively as "Entertainer Application") a DPL, and a Club Performer contract  have previously been filed with this Court, (*See, e.g.*, Doc. No. 70-2 and 70-3, Doc No.194-8), the terms of all of which Agreements are incorporated hereto by reference as if fully restated herein.

5.      At all relevant times, Counter-Defendants, by their actions, represented to Counter-Plaintiffs that they agreed to the financial arrangement set forth in the Agreements whereby the Counter-Defendants would be entitled to a portion of the mandatory dance fees in addition to all of her "tips" or "gratuities", either by their express agreement (*See e.g.*, DPL, ¶¶ 11, 12, DLP-C,§IV, ¶ 1) and/or by their actions.

6.      At all relevant times, Counter-Defendants represented to Counter-Plaintiffs that they had the legal capacity to contract and that they desired to enter into an agreement with one or more of the Counter-Plaintiffs under the financial terms agreed upon.

7.      The terms of the Agreements, the parties' oral agreements, and/or in practice

---

[1] The term Agreement includes the California nightclubs' dancer-club agreements, a copy of which has previously been filed as Doc. No. 194-8. Where necessary to distinguish the California agreements from the DPL, that document will be referred to as the "DPL-C".

(collectively, the "parties' Agreements") all had a lawful objective, including but not limited to establishing how the proceeds from individual (non-stage) dances sold by Counter-Defendants at Counter-Plaintiffs' business were to be allocated as between Counter-Defendants and Counter-Plaintiffs.  In particular, these Agreements provided that a substantial percentage of the mandatory dance fees paid by customers for individual dances would be retained by, or paid over to, Counter-Defendants.

8.     The parties' Agreements and actions had lawful objectives; the Agreement contained advantageous conditions to Counter-Defendants and provided for Counter-Defendants to earn far more than the minimum standards provided for under state laws or the FLSA.

9.     During each of Counter-Defendants' performance dates, there was a mandatory, fixed and posted dance fee charged to patrons for individual dances at Counter-Plaintiffs' establishments.

10.     The Agreements, in particular those signed by Counter-Defendants who performed at Counter-Plaintiffs nightclubs operating in California, provided that Counter-Defendants would require patrons to deposit mandatory dance fees into a collection box or bill acceptor machine to distinguish mandatory dance fees from "tips".

11.     Patrons were permitted, but not required, to give a dancer a "tip" or "gratuity" over and above the mandatory dance fee, at the patron's discretion.

12.     During each of Counter-Defendants' performance dates, Counter-Defendants, upon information and belief, performed individual dances for patrons, and charged patrons the mandatory dance fee for each dance performed.

13.     Upon information and belief, during each of Counter-Defendants' performance dates, Counter-Plaintiffs maintained records concerning the number of dances and the price of

dances Counter-Defendants performed, constituting a record of the amounts of monies Counter-Defendants received from mandatory dance fees, exclusive of "tips" received by Counter-Defendants directly from patrons.

14.     During each of Counter-Defendants' performance dates, the Counter-Defendants received dance fees in excess of minimum wage, exclusive of "tips" (*See, e.g*. Doc. No. 70-4).

15.     During each of Counter-Defendants' performance dates, Counter-Defendants adopted a pattern and practice of non-employee conduct; by way of example only, Counter-Defendants: (a) retained or were paid dance fees from dance sales according to their Agreement; (b) collected tips which Counter-Defendants did not report to Counter-Plaintiffs; (c) selected if, when, where and for whom Counter-Defendants would perform; (d) selected the dates and times of work without control by Counter-Plaintiffs; (e) did not clock in or out as an employee or perform employee-services for Counter-Plaintiffs such as waitressing or bartending duties or act in any capacity outside that of a professional entertainer; and (f) was not subject to federal or state tax withholding; some or all of which constitutes conduct unlike that required of Counter-Plaintiffs' employees.

16.     Pursuant to the parties' Agreements Counter-Defendants retained or were paid a portion of the proceeds from individual dance fees; Counter-Defendants also retained all tips given to Counter-Defendants by patrons.

17.     Pursuant to the parties' Agreements Counter-Defendants agreed that patrons would pay for dance fees at the posted amount and, at the end of her performance date Counter-Defendants completed a dance sales and allocation accounting.

18.     During the time Counter-Defendants performed they collected and/or received a portion of the proceeds from dance sales from patrons and acknowledged the accuracy of the

accounting by signing a receipt for each of their performance dates.

19.    By the parties' Agreements and actions, Counter-Defendants acknowledged and agreed to the financial arrangement outlined above.

20.    By the parties' Agreements and actions during the relevant time period, Counter-Defendants acknowledged and agreed that their right to retain or be paid a portion of the proceeds from dance sales was based upon their Agreements with Counter-Plaintiffs. (*See, e.g.* DPL¶¶ 11, 12, DPL-C, §IV ¶ 1.)

21.    Counter-Defendants now seek to: (a) repudiate their agreement; (b) to retain all monies they retained or collected from mandatory dance fees; (c) to have mandatory service fees re-classified into "tips"; (d) a return of rents paid or dance fees retained by Counter-Plaintiffs; and (e) an hourly wage in addition to the substantial dance fees retained under the terms of the parties' Agreements.

22.    At all times, Counter-Plaintiffs abided by the terms of the parties' Agreement and have fully performed their obligations thereunder, including permitting Counter-Defendants to retain or collect substantial portions of the mandatory dance fees, not requiring tip reporting, as well as conceding to Counter-Defendants important controls Counter-Plaintiffs would have reserved for itself, including among other things selecting schedules, selecting patrons for whom Counter-Defendants would or would not perform, avoiding participation in Counter-Plaintiffs' promotions and advertising, wearing costumes of their choice, exercising their option to work at other unrelated dance venues, and avoiding duties other than dancing.

23.    After financially benefiting from their actions as agreed upon and representing to Counter-Plaintiffs that Counter-Defendants desired and intended to perform and be compensated according to the parties' Agreements, Counter-Defendants now seek the payment of additional

monies and other benefits for all times that they performed as an entertainer at Counter-Plaintiffs' business and, further, to retain all dance fees they collected or were paid under the terms of the parties' Agreements, a return of rents and/or dance fees collected or retained by Counter-Plaintiffs, and a reclassification of mandatory dance fees as "tips."

24.    Pursuant to the Agreements, in the event of repudiation, the Counter-Defendants agreed, amongst other matters, to return to the Counter-Plaintiffs all dance fees collected by Counter-Defendants under the terms of their Agreements. (*See,* DPL, ¶ 12(C), DPL-C, §IV, ¶ 2).

25.    In addition, pursuant to the terms of the parties Agreements, the Counter-Defendants agreed that any claims arising out the Agreements or their relationship would be resolved only through binding arbitration, conducted by the American Arbitration Association, in conformity with the Federal Arbitration Act ("FAA"), and that no Counter-Defendant would seek to arbitrate a claim as a class or collective action (*See,* DPL, ¶ 20, DPL-C, §IV, ¶6).

## <u>COUNT I</u>
## <u>BREACH OF AGREEMENT – OFFSET</u>

26.    Counter-Plaintiffs incorporate all prior paragraphs of this Counter-Complaint as if fully restated herein.

27.    Counter-Plaintiffs entered the Agreements with Counter-Defendants based upon Counter-Defendants' express agreement that they wished to be classified as non-employees and be compensated pursuant to the Agreements between the parties.

28.    Based on the parties' Agreements, Counter-Defendants and Counter-Plaintiffs allocated the proceeds of dance sales according to the terms agreed to by the parties.

29.    Based on the parties' Agreements, Counter-Defendants collected, were paid or retained a substantial portion of dance sales according to the terms agreed to by the parties, exclusive of tips.

30.     Counter-Defendants seek to nullify and/or repudiate their Agreements with Counter-Plaintiffs and now claim they are entitled to all the proceeds of dance sales in addition to hourly wages, and a return of rent and/or all monies retained by the Counter-Plaintiffs from the proceeds of dance sales; all in breach of their agreement with Counter-Plaintiffs.

31.     Counter-Defendants have not returned the dance fees or allowed for an offset against wages as they agreed to do in the event Counter-Defendants are deemed entitled to wages, claiming that all the dance fees they retained were "tips".  Allowing Counter-Plaintiffs to set off the dance fees received by Counter-Defendants will not result in sub-minimum wage payments to Counter-Defendants.

32.     In the event there is a determination that Counter-Defendants are entitled to minimum wage, or any additional monies, the monies Counter-Defendants received as dance fees should be offset against their claim of entitlement to hourly wages and/or any other amounts outlined in their complaint, pursuant to the terms of their Agreements with Counter-Plaintiffs.

33.     As a direct and proximate result of the repudiation and breach by Counter-Defendants, Counter-Plaintiffs have been damaged and are entitled to a monetary offset against any liability arising from Counter-Defendants' claims.

34.     Counter-Plaintiffs are entitled to an award of damages against the Counter-Defendants, in an amount equal to the proceeds from dance sales (exclusive of tips) retained by Counter-Defendants as a result of their performing at any of Counter-Plaintiffs' businesses under the Agreement that they entered into with Counter-Plaintiffs and to offset against any award of wages or other accouterments of employment to which Counter-Defendants are ever found to be entitled.

## COUNT II
## UNJUST ENRICHMENT – OFFSET (Alternatively)

35.     Counter-Plaintiffs incorporate all prior paragraphs of this Counter-Complaint as if fully restated herein.

36.     If Counter-Defendants are successful in their claim that they should receive additional monies as alleged in their complaint, Counter-Defendants will be unjustly enriched by receiving both wages and mandatory dance fees collected by Counter-Defendants under the terms of the parties Agreements, while at the same time having retained the substantial amount of dance fees under the parties' Agreements in addition to non-monetary benefits associated with her status as a non employee contractor.

37.     Counter-Defendants obtained Counter-Plaintiffs' consent to the parties' financial arrangement through various representations and conduct and thereby obtained financial and other benefits from Counter-Plaintiffs, including the right to retain a portion of mandatory dance fees.

38.     If Counter-Defendants prevails in their claims, they will obtain the full benefit of using Counter-Plaintiffs' facilities, personnel, advertising, good-will, and all other assets of Counter-Plaintiffs to generate revenue and will simultaneously retain all such revenue, including dance fees generated from their performance in addition to wages and other employee benefits, while Counter-Plaintiffs will retain no benefit from Counter-Plaintiffs' use of Counter-Plaintiffs' assets and labor and the dance sales generated thereby, and Counter-Defendants will thus be unjustly enriched by their actions.

39.     As a direct and proximate result of the conduct of Counter-Defendants, Counter-Plaintiffs have been damaged and are entitled to a monetary offset against any potential liability arising from Counter-Defendants' claims.

40.     Counter-Plaintiffs are entitled to an award of all dance fees (exclusive of tips) retained by or paid over to Counter-Defendants as a result of their performing at the business of Counter-Plaintiffs to offset against any award of wages or other accouterments of employment to which Counter-Defendants claims to be entitled.

41.     Allowing Counter-Plaintiffs to set off the dance fees received by Counter-Defendants will not result in sub-minimum wage payments to Counter-Defendants.

### COUNT III
### BREACH OF CONTRACT - MANDATORY ARBITRATION

42.     Counter-Plaintiffs incorporate all prior paragraphs of this Counter-Complaint as if fully restated herein.

43.     Each of the Counter-Defendants executed an Agreement with Counter-Plaintiffs and/or by their actions, agreed to the terms of those Agreements.

44.     Pursuant to the terms of the Agreements, the parties expressly agreed that any dispute between them is required to be resolved only by arbitration and then, only on an individual basis.

45.     Pursuant to the FAA, the arbitration agreement is fully enforceable.

46.     Counter-Defendants, by pursuing the action, have breached their Agreements with Counter-Plaintiffs..

47.     Counter-Plaintiffs have been damaged by the Counter-Defendants breach of the Agreements.

48.     Requiring Counter-Defendants to comply with the arbitration provisions of the Agreements will not result in the loss of statutory rights.

### COUNT IV
### BREACH OF CONTRACT - CONVERSION

9

49.     Counter-Plaintiffs incorporate all prior paragraphs of this Counter-Complaint as if fully restated herein.

50.     Each of the Counter-Defendants executed an Agreement with Counter Plaintiffs, and/ by their actions, agreed to the terms of those agreements.

51.     Pursuant to the terms of the Agreements, in particular those signed by Counter-Defendants who performed at Counter-Plaintiffs nightclubs operating in California, provided that Counter-Defendants would require patrons to deposit mandatory dance fees into a collection box or bill acceptor machine for subsequent allocation of the monies according to the terms of their Agreements.

52.     Counter-Defendants had an absolute duty to require patrons to deposit all mandatory dance fees into the collection box or bill acceptor machines.

53.     Counter-Plaintiffs had a property right and ownership interest in the mandatory dance fees.

54.     Counter-Defendants, with no legal justification and with the intent or purpose to exercise dominion over the Counter-Plaintiff's property rights and ownership interest in the mandatory dance fees, and to interfere with Counter-Plaintiff's right to ownership, possession and/or control of those fees, intentionally failed and/or refused, in breach of their Agreements and duty to do so, to require patrons to deposit mandatory dance fees into the collection box or bill acceptor machines.

55.     Counter-Defendants actions in failing or refusing to require patrons to deposit the mandatory dance fees into the collection box or bill acceptor machines was done without Counter-Plaintiff's knowledge or consent.

56.     The breach of the Agreements and the absolute duty to require patrons to deposit

mandatory dance fees constituted a conversation of Counter-Plaintiff's property.

57.     Counter-Plaintiffs have been damaged by the Counter-Defendants breach of the Agreement, their duty and resulting conversion.

**PRAYER FOR RELIEF**

WHEREFORE, Counter-Plaintiffs prays for Judgment against Counter-Defendants as follows:

1.     For a set off of the total amount of mandatory dance fees retained by, paid over to, or converted by Counter-Defendants as against any award of wages or other accouterments of employment to which Counter-Defendants are ever found entitled;

2.     For any actual, consequential or other damages caused by Counter-Defendants breaches;

3.     For an order compelling Counter-Defendants to pursue this suit individually and then only through arbitration;

4.     For the costs of suit;

5.     For interest;

6.     For attorneys fees; and

For such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/Allan S. Rubin

DATED: November 12, 2010        ALLAN S. RUBIN (P44420)
JACKSON LEWIS LLP
Attorneys for Exhibit A Defendants and Lead
Defense Counsel
2000 Town Center, Suite 1650
Southfield, Michigan 48075
Telephone: (248) 936-1900
Facsimile: (248) 936-1901
rubina@jacksonlewis.com

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November, 2010, I electronically filed the above described document with the United States District Court for the Eastern District of Michigan by its electronic filing system, thereby serving the same upon all opposing counsel.

/s/ Allan S. Rubin
Attorney for Defendant Exhibit A Defendants

4843-3424-2056, v. 1