## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JANE DOE, individually, and on behalf of all others similarly situated,

        Plaintiff,

v.

CIN-LAN, INC.; DÉJÀ VU CONSULTING, INC.; and HARRY V. MOHNEY,

        Defendants

Case No. 2:08-CV-12719

Honorable Stephen J. Murphy III
Magistrate Judge Michael J. Hluchaniuk

**OBJECTIONS TO CLASS ACTION SETTLEMENT, APPLICATION FOR ATTORNEYS FEES AND COSTS OF CLASS COUNSEL AND NOTICE OF INTENT TO APPEAR AT FINAL FAIRNESS HEARING; MEMORANDUM OF POINTS AND AUTHORITIES**

1165991 08000/00871

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

STATEMENT OF ISSUES PRESENTED................................................................... x

STATEMENT OF CONTROLLING AUTHORITIES................................................ xi

I.     THE SETTLEMENT IS NOT FAIR, REASONABLE, OR ADEQUATE ..................... 1

       A.     The Settlement Provides No Benefits to the 35,000 Class Members ................... 1

              1.     The Rent Credit Is Misleading, Grossly Inadequate, And
                     Unfair ........................................................................................... 6

              2.     Class Counsel Profits By Endorsing Misclassification Of
                     Dancers And Unlawful Fines................................................... 8

       B.     The Settlement Should Not Be Approved Since It Is Unfair................................ 9

              1.     The Failure To Analyze Class Damages Warrants Denial
                     Of Approval ............................................................................... 10

              2.     The Defenses In The Agreement Are Invalid ......................... 11

              3.     The Claims Made Nature Of The Settlement Is Properly
                     Considered When Reviewing The Benefit To Class
                     Members ..................................................................................... 13

              4.     The Injunctive Relief Is Illusory ............................................. 13

II.    THE AGREEMENT IS NOT FAIR AND REASONABLE TO THE
       CALIFORNIA CLASS............................................................................................. 14

       A.     California Class Members Claims Are More Valuable Than Those
              Of Class Members In Other States........................................................ 14

       B.     The Spearmint Rhino Settlement Demonstrates The Strength Of
              The California Claims............................................................................ 15

       C.     Defendants Position Concerning The California Labor Code Is A
              Red Herring............................................................................................ 16

       D.     The Agreement Unjustifiably Interferes With Two Certified Class
              Action Proceedings ............................................................................... 17

III.   THE SETTLEMENT IS UNFAIR SINCE IT FAVORS CURRENT
       DANCERS OVER FORMER DANCERS .................................................................. 18

-i-

IV.     THE AGREEMENT IS UNFAIR AND UNREASONABLE BY
        REQUIRING CLASS MEMBERS TO PERSONALLY OPT OUT ............................. 19

V.      THE NOTICE TO THE CLASS IS INADEQUATE ........................................................ 21

        A.      Class Members Are Not Advised Of Other Lawsuits .......................................... 21

        B.      The Notice Does Not Adequately Advise Class Members Of The
                Relief Available To Them Under The Settlement .................................................. 22

        C.      Notice Is Not Adequate Since It Only Uses Last Known Address
                of Class Members ....................................................................................................... 22

        D.      Claim Forms Are Unduly Onerous ........................................................................ 23

        E.      The Opt Out Period Is Unreasonable ..................................................................... 23

VI.     THE RELEASE IS OVERLY BROAD ........................................................................... 23

VII.    THE INCENTIVE AWARDS ARE GROSSLY DISPROPORTIONATE
        TO THE BENEFITS AVAILABLE TO CLASS MEMBERS ....................................... 25

VIII.   THE ATTORNEYS FEES ARE UNREASONABLE AND ANY COURT
        RULING SHOULD BE DEFERRED ............................................................................. 25

        A.      Awarding Fees Is Premature At This Time Since The Court Cannot
                Assess The Benefit Of The Settlement .................................................................... 25

        B.      Insufficient Information Is Submitted Concerning The Time Spent
                By Class Counsel ......................................................................................................... 27

        C.      Class Counsel Is Not Adequately Representing The Class And
                Thus The Court Should Revoke Its Order Appointing Class
                Counsel ........................................................................................................................ 28

IX.     CLASS CERTIFICATION ISSUES ............................................................................... 28

        A.      Plaintiffs Are Not Adequate Representatives ...................................................... 29

X.      FINAL APPROVAL SHOULD BE DENIED ................................................................ 30

XI.     NOTICE OF INTENT TO APPEAR AT FINAL FAIRNESS HEARING ................... 31

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acosta v. Trans Union, LLC,*
   243 F.R.D. 377 (C.D. Cal. 2007) ........................................................................13, 18, 20, 26

*Aguilar v. Association for Retarded Citizens,*
   234 Cal.App.3d 21 (1991) ........................................................................16

*Alberto v. GMRI, Inc.,*
   252 F.R.D. 652 (E.D. Cal. 2008) ........................................................................25

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591, 117 S. Ct. 2231, 138 L.Ed.2d 689 (1997)........................................................................28, 30

*Andrews Farms v. Calcot, Ltd.,*
   No. CV-F-07-0464 LJO, 2009 WL 1211374 ........................................................................29

*Bailey v. Great Lakes Canning, Inc.,*
   908 F.2d 38 (6th Cir.1990) ........................................................................1

*Barnhill v. Robert Sanders & Co.,*
   125 Cal.App.3d 1 (1981) ........................................................................15

*Berry Petroleum Co. v. Adams & Peck,*
   518 F.2d 402 (2d Cir.1975)........................................................................20

*Bolanos v. Superior Court,*
   169 Cal.App.4th 744 (2008) ........................................................................11

*Bronson v. Board of Education,*
   604 F.Supp.68 (S.D. Ohio 1984) ........................................................................30

*Buchet v. ITT Consumer Financial Corp.,*
   845 F. Supp. 684 (D. Minn. 1994)........................................................................7

*Carnegie v. Household Intern., Inc.,*
   371 F. Supp. 2d 954 (N.D. Ill. 2005) ........................................................................7

*Churchill Vill., L.L.C. v. GE,*
   361 F.3d 566 (9th Cir. 2004) ........................................................................21

*Clark v. American Residential Services, LLC,*
   175 Cal.App.4th 785 (2009) ........................................................................10

*Clement v. American Honda Finance Corp.*,
   176 F.R.D. 15 (D. Conn. 1997)...........................................................................7

*Consolidated Edison, Inc. v. Northeast Utilities*,
   332 F.Supp.2d 639 (D.C.N.Y.2004.) .................................................................23

*Cortez v. Purolator Air Filtration Prods*
   23 Cal.4th 163 (2000) ......................................................................................16

*Detroit Police Officers Ass'n v. Young*,
   920 F. Supp 755 (E.D.Mich.1995)....................................................................30

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir.2008) .............................................................................20

*Figueroa v. Sharper Image Corp.*,
   517 F.Supp. 2d 1292 (S.D. Fla. 2007) ......................................................... 6, 7fn.

*Franks v The Kroger Co.*,
   649 F.2d 1216 (6th Cir. 1981) .............................................................................1

*Granada Invs., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir.1992) ..............................................................................9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir.1998) .................................................................18, 20, 29

*Harrell v. Diamond A Entertainment, Inc.*,
   992 F. Supp (M.D. Fla. 1992).............................................................................10

*Harris v. Investor's Business Daily, Inc.*,
   138 Cal.App.4th 28 (2006) ...............................................................................16

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)...........................................................................................28

*Hernandez v. Vitamin Shoppe Industries, Inc.*,
   174 Cal.App.4th 1441 (2009) ............................................................................17

*Hoffman-La Roche Inc. v. Sperling*,
   493 U.S.165 (1989)............................................................................................21

*In re Am. Med. Sys.*,
   75 F.3d 1069 (6th Cir.1996) ..............................................................................29

1165991.1   08000/00871

*In re Cardizem CD Antitrust Litigation*,
  218 F.R.D. 508 (E.D. Mich. 2003) .......................................................................1

*In re Delphi Corp. Securities, Derivative & "ERISA" Litigation*,
  248 F.R.D. 483 (E.D. Mich.2008) ......................................................................27

*In re Enron Corp. Securities, Derivative & ERISA Litig.*,
  No. MDL-1446, 2008 WL 4178151 (S.D.Tex. Sept. 8, 2008) ..........................19fn.

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
  726 F.2d 1075 (6th Cir.1984) ............................................................................21

*In re General Motors Corp. Pick-up Truck Fuel Tanks Products Liability Litigation*,
  55 F.3d 768 (3d Cir. 1995)......................................................................7, 18, 26

*In re Lease Oil Antitrust Lit.*,
  186 F.R.D. 403 (S.D. TX. 1999)........................................................................20

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.1997) ........................................................................19

*In re Portal Software Inc., Securities Litig.*,
  No. C-03-5138 VRW, 2007 WL 4171201 (N.D.Cal. Nov. 26, 2007)....................19

*In re TJX Companies Retail Sec. Breach Litigation*,
  584 F. Supp. 2d 395 (D. Mass. 2008) ...............................................................26

*Int'l Union United Auto., Aerospace, and Agric. Implement Workers of America v.
  Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ......................................................................28, 29

*IUE-CWA v. General Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich., 2006) .....................................................................1

*Jackson v. S.A.W. Enmnt. Ltd.*,
  629 F. Supp. 2d 1018 (N.D. Cal. 2009) ...................................................12, 12fn.

*Jones v. Déjà*,
  419 F.Supp. 2d 1146, 1148 (N.D. Cal. 2005) .....................................................12

*Kasky v. Nike, Inc.*,
  27 Cal.4th 939 (2002) ......................................................................................16

*Kogan v. AIMCO Fox Chase, L.P.*,
  193 F.R.D. 496 (E.D.Mich.2000) .........................................................................9

1165991.1   08000/00871

*Kullar v. Foot Locker Retail, Inc.*,
 168 Cal.App.4th 116 (2008) ...................................................................................10

*Lessard v. City of Allen Park*,
 372 F.Supp.2d 1007 (E.D.Mich.2005)........................................................................1

*Levell v. Monsanto Research Corp.*,
 191 F.R.D. 543 (S.D.Ohio 2000) ........................................................................13, 18

*Lu v. Hawaiian Gardens Casino, Inc.*,
 50 Cal.4th 592 (2010) ..............................................................................................16

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*,
 834 F.2d 677 (7th. Cir.1987) ..............................................................................10, 29

*Moody v. Razooly*,
 2003 WL 464076 ......................................................................................................11

*Moulton v. United States Steel Corp.*,
 581 F.3d 344 (6th Cir.2009) .....................................................................................27

*Mullane v. Cent. Hanover Bank & Trust Co.*,
 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)....................................................21

*Murray v. GMAC Mortgage Corp.*,
 434 F.3d 948 (7th Cir. 2006) ....................................................................................25

*Pacific Merchant Shipping Ass'n v. Aubry*,
 918 F.2d 1409 (9th Cir. 1990) ..................................................................................16

*People v. Los Angeles Palm, Inc.*,
 121 Cal.App.3d 25 (1981) ........................................................................................15

*Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*,
 880 F. Supp. 292, 1995-1 Trade Cas. (CCH) ¶ 70958 (M.D. Pa. 1995)...............7, 19

*Ramey v. v. Cincinnati Enquirer, Inc.*,
 508 F.2d 1188 (6th Cir.1974) ...................................................................................26

*Ramirez v. Yosemite Water Co., Inc.*,
 20 Cal.4th 785 (1999) ..............................................................................................16

*Reich v. ABC/York-Estes Co.*,
 157F.R.D.68 (N.D. Ill.1994) (7th Cir.1995)............................................................10

1165991.1   08000/00871

*Reich v. ABC/York-Estes Corp.,*
  1997 WL 264379 (N.D. Ill.1997) ........................................................................10

*Reich v. Circle C Investments Inc.,*
  998 F. 2d 324 (5th Cir. 1993) ...........................................................................10

*Reich v. Priba Corp.*
  890 F.Supp. 586 (N.D. Tex. 1995) ....................................................................10

*Reich v. Walter W. King Plumbing & Heating Contractor, Inc.,*
  98 F.3d 147 (4th Cir.1996) ...............................................................................14

*Schachter v. Citigroup, Inc.,*
  126 Cal.App. 4th 726 (2005) .............................................................................11

*Schwartz v. Dallas Cowboys Football Club, Ltd.,*
  157 F.Supp.2d 561 (D.Pa.2001)........................................................................25

*Senter v. Gen. Motors Corp.,*
  532 F.2d 511 (6th Cir.1976) .............................................................................28

*Smillie v. Park Chem. Co.,*
  710 F.2d 271 (6th Cir.1983) .............................................................................27

*Steiner v. Fruehauf Corp.,*
  121 F.R.D. 304 (E.D.Mich.1988) ........................................................................9

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,*
  17 Cal.4th 553 (1998) .......................................................................................16

*Sylvester v. Cigna Corp.,*
  369 F.Supp.2d 34 (D.ME. 2005)..................................................................3, 4, 13

*Trotsky v. Los Angeles Fed. Sav. & Loan Assn.,*
  48 Cal.App.3d 134 (1975) ............................................................................21, 22

*UAW v. Ford,*
  2006 WL 1984363 (E.D. Mich. 2006) ..................................................................2

*UAW v. GM,*
  2006 WL 891151 (E.D. Mich. 2006).....................................................................2

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir.) ...............................................................................27fn.

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir.1983) ........................................................................................9

*Zucker v. Occidental Petroleum Corp.*,
    192 F.3d 1323 (9th Cir. 1999) ...................................................................................26

**STATUTES**

29 U.S.C. § 218(a) and (b).............................................................................................16

California. Business and Professions Code § 17208 ....................................................17

California Civil Code § 1542 ..........................................................................................24

California Labor Code
    § 202................................................................................................... 15fn.
    § 203................................................................................................... 15fn.
    § 221................................................................................................... 15fn.
    § 224................................................................................................... 15fn.
    § 226.7................................................................................................ 15fn.
    § 350................................................................................................... 15fn.
    §§ 350-351...................................................................................12, 14, 16
    § 350(e) ................................................................................. 12, 15fn., 16
    § 351................................................................................................... 15fn.
    § 353................................................................................................... 15fn.
    § 401................................................................................................... 15fn.
    § 402................................................................................................... 15fn.
    § 1197................................................................................................. 15fn.
    § 1194................................................................................................. 15fn.

**MISCELLANEOUS**

29 CFR § 778.5 ..............................................................................................................16

Chin, Wiseman, Callahan & Exelrod, California Practice Guide:  Employment Litigation
    ¶¶ 11:665-11:670 (The Rutter Group 2008) ..........................................................15

////

////

////

1165991.1  08000/00871

Fed. R. Civ. P.

   3(e)(1)(B) ........................................................................................................21
   23(a)(2) ..........................................................................................................29
   23(a)(3) ..........................................................................................................29
   23(a)(4) ..........................................................................................................29
   23(h) ...............................................................................................................25
   23(e)(1)(A) .......................................................................................................1

Manual For Complex Litigation (Fourth) (2006)

   § 21.71 ...........................................................................................................25

1165991.1  08000/00871

## STATEMENT OF ISSUES PRESENTED

### Issues Presented

### 1. Should this Court deny final approval of the Release and

### Settlement Agreement entered into among the parties?

### Objectors State: Yes

1165991 08000/00871

## STATEMENT OF CONTROLLING AUTHORITIES

### In regard to whether Final Approval of Class Settlement should be denied:

*Lessard v. City of Allen Park*, 372 F.Supp.2d 1007, 1009 (E.D.Mich.2005) (citing

*Williams v. Vukovich*, 720 F.2d 909, 921-23 (6th Cir.1983)); *In re Cardizem CD Antitrust*

*Litigation*, 218 F.R.D. 508, 522 (E.D. Mich. 2003). *UAW v. GM*, 2006 WL 891151 at *21 (E.D.

Mich. 2006), citing *Heit v. Van Ochten*, 126 F.Supp.2d 487, 490-491 (W.D.Mich.2001)); *UAW v.*

*Ford*, 2006 WL 1984363 at *26 (E.D. Mich. 2006). *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d

1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.1983); *Kogan v.*

*AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501-02 (E.D.Mich.2000); *Steiner v. Fruehauf Corp.*,

121 F.R.D. 304, 305-06 (E.D.Mich.1988).

## I.   THE SETTLEMENT IS NOT FAIR, REASONABLE, OR ADEQUATE

Pursuant to Federal Rules Civil Procedure 23(e) (1) (A), a certified class action settlement requires court approval. In determining whether final settlement approval should be given to a proposed class settlement, the Court's role is to determine whether the terms proposed are "fair, adequate, and reasonable to those it affects" and "in the public interest." *Lessard v. City of Allen Park*, 372 F.Supp.2d 1007, 1009 (E.D.Mich.2005) (citing *Williams v. Vukovich*, 720 F.2d 909, 921-23 (6th Cir.1983)); *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 522 (E.D. Mich. 2003). In making this determination, the court considers whether the interests of the class as a whole are better served if the litigation is settled rather than pursued. *Id*.

Here, the interests of the class are not served by the settlement.

## A.   The Settlement Provides No Benefits to the 35,000 Class Members

The settlement is not fair reasonable and adequate to the 35,000 class members since it does not in fact bestow benefits upon them.[1] *Franks v The Kroger Co.*, 649 F.2d 1216, 1225, 1227 (6th Cir. 1981) (stating settlement not fair, reasonable or adequate when it benefits class counsel and the named Plaintiffs at the expenses of the class). The Court must ensure that "the interests of counsel and the named plaintiffs are not unjustifiably advanced at the expense of unnamed class members.' " *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir.1990). "Courts may [also] scrutinize settlements to determine whether absent class members have lost out in favor of attorneys and named class members." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich., 2006).

When considering whether the settlement is fair, and, in particular, whether the negotiations were free of collusion, "some courts look to whether (1) the named plaintiffs' claims are treated more favorably than other plaintiffs' claims, and (2) the fee agreement suggests

---

[1] See, Docket 190, p. 3.

1

collusion." *UAW v. GM*, 2006 WL 891151 at *21 (E.D. Mich. 2006), citing *Heit v. Van Ochten*, 126 F.Supp.2d 487, 490-491 (W.D.Mich.2001)); see *UAW v. Ford*, 2006 WL 1984363 at *26 (E.D. Mich. 2006).

Here, the settlement is grossly unfair to class members, and benefits only Plaintiffs, their counsel, *and Déjà vu*. The settlement is divided into two separate components, monetary compensation, and dance fee credits.[2] However, each of these components is inadequate. The settling parties *repeatedly* assure the court that the value of the compromise is $11,300,000.[3] This assertion is inaccurate. The 35,000 Dancers can claim $1,333,333 in cash, and approximately $6,000,000 in rent credits, according to the settling parties. However, the available rent credits are not $6,166,000 as touted by the settling parties, but $3,699,000. This is because the $9,000,000 in available rent credits is subject to the following deductions:

- $2,834,000 in attorneys fees, and,

- **$2,466,400 by Déjà vu**. Docket 344-1, ¶ 3.36; §§ V-VI.

The sum seized by Déjà vu represents a direct payment to it of a portion of settlement benefits which would otherwise be available for class members. Since Déjà vu is lopping off over 2.4 million of rent credits, the real value of the settlement is approximately $8.5 million. *Id.* The parties never bother to advise the court that this is the case, and thus the final approval papers filed by the parties are misleading since they fail to discuss material information concerning the terms of the settlement.

---

[2] There is also an illusory injunctive relief component, discussed below.
[3] The Agreement refers to a settlement valued at 11.3 million, with $2,000,000 (minus fees) constituting the cash pool, and $9,000,000 (minus fees and deductions by Déjà vu) constituting the rent credit portion. The preliminary approval order establishes that the sum of $300,000---representing class counsel expenses, claims administration expenses, and enhancement awards---is deducted from the gross settlement amount, before creation of the two separate pools of "benefits." Docket 344-1, ¶ 3.36; §§ V-VI; Docket 355, ¶ 2, c; see, also Dockets 373, 375.

This means that attorneys' fees are over 40% of the gross settlement amount, not 30% as represented by class counsel.[4] The total value of the cash payment, after all deductions, when divided by 40,000 class members, equates to $32.50.[5] The total value of rent credits (including subtraction of those sums representing Déjà vu's theft of settlement proceeds from class members) when subject to the same analysis, represents a payment of $92.00 to each class member.[6] Docket 190, p. 3; Docket 344-1, ¶ 3.36; §§ V-VI.

Moreover, the settlement (even after being reduced by the deductions set forth above) adopts a claims made procedure, with any unclaimed benefits reverting to the defendant. Docket 344-1, ¶ 5.6.8. It is expected that the value of claims will not exceed $500,000, representing a ten percent claims rate. Settlement terms permitting a large portion of the unclaimed funds to be returned to the defendant, and a clear sailing clause wherein the defendant agrees not to oppose the fee request up to a stated amount, are collusive on their face.[7] This is exactly what is involved here. Docket 344-1, ¶ 5.6.8; § VI. When these terms lead to the vast bulk of settlement benefits being paid to class counsel and the defendant, the settlement is properly rejected as not fair, reasonable or adequate to the class. *Sylvester v. Cigna Corp.*, 369 F.Supp.2d 34, 44-49 (DME. 2005). As stated in *Sylvester*:

> With this agreement in hand, Plaintiffs' Counsel seems content to rationalize the low claims rate and correspondingly low payout to the Class by citing the age-old adage, "You can lead a horse to water, but you can't make him drink." (Dec. 6, 2004 Hearing Transcript at 62 (statement by Mr. Hansel).) While there may be some truth to this saying, it does not capture the fiduciary

---

[4] Of course, adding the expense reimbursement portion of the settlement would only make this percentage higher.
[5] This would rise to approximately $38.00 if the class is 35,000 or $55.00 if the class numbers 30,000.
[6] This number would be $123.00 if the number of class members was 30,000.
[7] Here, the parties go beyond a reversionary settlement and allow Déjà vu to misappropriate over 2.4 million in settlement benefits even if all money was in fact claimed, thus dramatically reducing the actual "value" of the settlement. Docket 344-1, §§ V.-VI.

> relationship between a lawyer and a group of clients. As fiduciaries to the Class, it is the responsibility of Plaintiffs' counsel to ensure that the settlement provides real value (or, to extend the metaphor of the just quoted aphorism, 'actual drinks') to their 39,769 clients. In this case, it appears that Plaintiffs' Counsel secured a $3.4 million pool and also secured (to the extent possible) approximately a third of that pool for themselves. Nonetheless, they did not obtain the same level of security for their clients. This arrangement has satiated Plaintiffs' counsel, but, in this Court's assessment, it has ultimately left the Class parched. (*Id.* pp. 48-49.)

The settlement leaves the class here seriously parched. First, it is subject to the grossly excessive deductions, discussed above. Second, Class Counsel also connives with Déjà vu to reduce available benefits by agreeing to a claims made settlement. Docket 344-1, ¶ 5.6.8. Third, the notice program is seriously deficient since it fails to adequately update class members' addresses, and because the claim forms are unduly onerous. Docket 344-1, §§ VIII-IX, Ex.'s B-D, G; Harris Declaration, Ex.'s 10-13. Fourth, the notice to the class does not sufficiently advise them of their options, and fails to clearly explain the settlement terms, e.g., the notice to the class fails to advise them of the deductions to be taken from rent credits. Docket 344-1, Ex. F. Fifth, Class counsel disregards its fiduciary duties to the class by agreeing that Déjà vu can administer settlement benefits after final approval, without judicial supervision.[8] Docket 344-1, §§ V.-VI. The rent credits, the vast majority of the benefits the settlement allegedly bestows on dancers, are only administered by the clubs themselves, after final approval of the settlement. Thus, the court cannot assess whether these rent credits are fair, reasonable, and adequate since this alleged benefit is offered to dancers by the clubs without any court supervision or oversight. Sixth, the rent credits are offered only to dancers who agree to work for Déjà vu, on its terms. The benefits of the settlement are unfairly tilted toward those who currently work for Déjà vu, thus unfairly treating former dancers who no longer desire to pursue this occupation. *Id.;* see, also, Harris Decl., Ex. 25, Docket 383, 359.

---

[8] See, Harris Decl., Ex. 14, p. 36, Ex. 15, p. 10; Ex.'s 16-19.

Seventh, Déjà vu's unfettered control over settlement funds extends not only to rent credits, but the cash pool, since Déjà vu can refuse to rehire former dancers, relegate them to the cash pool, and thus seriously dilute cash pool benefits, well after the court is asked to finally approve this lousy deal. The court will never know the ultimate value of the cash pool benefits, based on Déjà vu being given a free pass to seriously dilute this portion of the settlement. Docket 344-1, § V., Ex.'s B-C, F-G.

Eighth, class counsel has colluded with defense counsel to impose a grossly unfair release on the class. The release not only extends to those claims made in the lawsuit, but to *any and all* claims dancers may have, including wrongful termination claims, any employment related claim, retaliation claims, and any unknown claims. There is no way that the settlement properly extends to such individual matters as wrongful termination claims, or any and all claims they may have, and class members are thus giving up a myriad of individual claims for a pittance. Docket 344-1, § XI.

Ninth, the settlement improperly targets certified state court actions, pending in California, fails to compensate California class members for their claims which are stronger than those of other class members (e.g., a tip credit is unavailable in California) improperly extends the statute of limitations applicable to these claims, and interferes with the existing attorney-client relationship between class counsel and his clients in the certified California class actions. Docket, 344-1, ¶¶ 2.3, 3.15, 4.2; Docket 197-1, C-1 to 6.

Tenth, the attorney fee requested is grossly excessive, inadequately documented, and premature. The court should refuse to rule on any fee application until it is aware of what benefits (if any) have been bestowed on the class, and until more detailed information is furnished by class counsel concerning its lodestar information. Eleventh, the class

representatives proposed enhancements are grossly disproportionate to class members' benefits, representing 275 to 750 times the average value of payments offered to dancers. Docket 344-1, §§ V.-VI.

Twelfth, the class representatives do not adequately represent all class members since their claims on behalf of some class members are barred by the statute of limitations, and they are not adequate representatives of all class members' claims, unknown claims, or wrongful termination claims. These multiple, inherently individual claims should not be the subject of a class settlement, or a release. Docket 191, ¶ 79; Docket 344-1, ¶¶ 2.3, 3.1.5, 4-2; Docket 197-1, C-1 to 6.

### 1.   The Rent Credit Is Misleading, Grossly Inadequate, And Unfair

The manner in which the settlement is represented to the court thus fails to take into account how Déjà vu misappropriates what are alleged to be settlement benefits for class members, and class counsel attorney fees. Thus, rather than offering rent credits of $1,000, $500.00 or $100.00, the settlement actually offers rent credits of $400.00, $200.00 and $40.00. The settlement also restricts such alleged rent credits to a maximum of $100.00 for any date that a dancer works. This means that the most any dancer could obtain in rent credits would be $40.00 for each "performance date." Docket 344-1, §§ V.-VI.

Essentially, the coupon or rent credit portion of the settlement is a promotion designed to generate additional income for Déjà vu, where it pays dancers a minimal amount to ensure that they comply with its contract provisions, including scheduling performances in advance, remaining for the entire amount of the scheduled shifts, cooperating with club promotions, paying penalties endorsed by class counsel, appearing on stage, and soliciting nude and semi-nude dances. Docket 373, Ex.'s 2-4; Harris Decl., Ex.'s 6-8; See, *Figueroa v. Sharper Image Corp.*, 517 F.Supp. 2d 1292, 1327-1329 (S.D. Fla. 2007) (condemning coupon settlements which

do not benefit the class since they do not involve disgorgement of wrongfully obtained gains but rather merely enhance defendant's business);[9] *In re General Motors Corp. Pick-up Truck Fuel Tanks Products Liability Litigation*, 55 F.3d 768, 807 (3d Cir. 1995) (noting that "the certificate settlement might be little more than a sales promotion for GM, in just the way that the Bloyed court characterized the settlement as a "tremendous sales bonanza" for GM. *Bloyed v. General Motors Corp.*, 881 S.W.2d at 431."); *Carnegie v. Household Intern., Inc.*, 371 F. Supp. 2d 954, 957 (N.D. Ill. 2005) (rejecting settlement that proposed to provide $6 coupons redeemable only for defendant's tax preparation services where "[i]t seems likely that the $6 coupon fee would simply be lost in higher fees, and it is at any rate too little to be meaningful. The coupons here appear to be the classic free advertising, which [defendant] is free to provide but which cannot be given value in considering the reasonableness of a settlement"); *Clement v. American Honda Finance Corp.*, 176 F.R.D. 15, 27-28, (D. Conn. 1997) (disapproving settlement because, inter alia, settlement consisted in large part of restricted and speculative coupons which were "essentially worthless" to class members); *Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 880 F. Supp. 292, 295, 1995-1 Trade Cas. (CCH) ¶ 70958 (M.D. Pa. 1995) (rejecting coupon settlement in which each class member was to receive six certificates redeemable in six successive six-month periods given failure of settlement proponents to present "evidence concerning likely redemption rates"); *Buchet v. ITT Consumer Financial Corp.*, 845 F. Supp. 684, 692, (D. Minn. 1994), opinion amended, 858 F. Supp. 944 (D. Minn. 1994) (rejecting settlement where coupons

---

[9] This is due to three common problems with coupon settlements: "they often do not provide meaningful compensation to class members; they often fail to disgorge ill-gotten gains from the defendant; and they often require class members to do future business with the defendant in order to receive compensation." *Figueroa v. Sharper Image Corp.*, supra, 517 F.Supp.2d 1292, 1302, citing Christopher R. Leslie, "The Need to Study Coupon Settlements in Class Action Litigation," 18 Geo. J. Legal Ethics 1395, 1396-97.

offered to class members toward the purchase of new or refinanced loans were too speculative in value)).

Here, the rent credit portion of the settlement is in reality designed to benefit Déjà vu, and affords no real value to the class. Moreover, the rent credits themselves appear to be illusory since they perpetuate the same practices which Déjà vu currently engages in and are extended only to dancers who sign a contract with Déjà vu, thereby endorsing the very practices challenged in the lawsuit. That is, the rent credit mirrors the way Déjà vu compensates dancers, giving them 60% of dance fees if they schedule performances and remain for their entire shift. Thus, this case presents the very real danger that Déjà vu, administering the settlement itself, without judicial oversight and after final approval, will merely compensate the dancers the way it normally does, without any increased benefit at all being paid to dancers. In this scenario, 35,000 dancers would only be given an opportunity to claim $1.3 million, with the remainder of the money paid to Deja vu, the attorneys and their clients. See, e.g., Docket 373, Ex.'s 2, 4; Harris Decl., Ex.'s 6-8.

2.      **Class Counsel Profits By Endorsing Misclassification Of Dancers And Unlawful Fines**

The decision to bless the way Déjà vu does business extends to the attorneys who challenge the misclassification of dancers. The attorneys are taking most of their fee from the rent credits which dancers will purportedly earn, but only if they sign Déjà vu's unlawful standard form contract, claimed in the lawsuit to result in misclassification of class members. Class counsel is thus directly benefiting from the very practices they condemned. Moreover, the attorneys endorse Déjà vu's practice of fining dancers. Class counsel has negotiated illusory injunctive relief that Déjà vu notify dancers of what penalties they are already subject to, and

8

provide dancers some type of vague appeal right, without procedures governing the appeal. The penalties are already set forth in the standard from dancer contracts, offered to dancers on a take or leave it basis. Thus, the injunctive relief is illusory and offers no benefit to dancers. Docket 344-1, §§ V-VI, X; Docket 373, Ex.'s 2, 4; Harris Decl., Ex.'s 6-8; Ex's 14, p. 33; 15, pp. 8-9, 19-22.

**B.**     **The Settlement Should Not Be Approved Since It Is Unfair**

The determination of whether a proposed class settlement is fair, reasonable and adequate requires the Court to consider and balance several factors, which include:

(a) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (b) the risks, expense, and delay of further litigation; (c) the judgment of experienced counsel who have competently evaluated the strength of their proofs; (d) the amount of discovery completed and the character of the evidence uncovered; (e) whether the settlement is fair to the unnamed class members; (f) objections raised by class members; (g) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and (h) whether the settlement is consistent with the public interest. See *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.1983); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501-02 (E.D.Mich.2000); *Steiner v. Fruehauf Corp.*, 121 F.R.D. 304, 305-06 (E.D.Mich.1988).

Here, the settlement is not fair to class members. This includes the grossly inadequate terms discussed above, and the failure to recognize the comparatively stronger claims of California class members. Moreover, the settlement terms clearly indicate that the accord is collusive, and not in the public interest. The papers in support of the settlement also fail to evaluate what the value of the case is, and the risk of not prevailing. Thus, it is impossible to evaluate whether the value of the settlement is adequate.

9

1.      **The Failure To Analyze Class Damages Warrants Denial Of Approval**

The court cannot assess whether the settlement is fair, adequate, or reasonable since class

counsel has not furnished any information concerning the potential for prevailing, and how the

value of the settlement is a reasonable compromise in light of the gross value of the case. *Mars*

*Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 682 (7th. Cir.1987) (A

court must assess the settlement figure in light of the total value of the case, risk of loss, and

value of settlement); An "…informed evaluation cannot be made without an understanding of the

amount that is in controversy and the realistic range of outcomes of the litigation." *Kullar v. Foot*

*Locker Retail, Inc.*, 168 Cal.App.4th 116, 128-133 (2008) (stressing the need to consider the

strength of Plaintiffs case in light of the available damages); see also *Clark v. American*

*Residential Services, LLC*, 175 Cal.App.4th 785, 801 (2009); See, subpart I, B.

Here, no effort is made to analyze the gross value of the case, and whether the settlement is a

reasonable compromise in light of the gross value. Moreover, although the issue of employment

status has been subject to differing results, it is not a clear cut defense in this case, and in fact this

court found Doe had a substantial likelihood of succeeding on the merits of her claim that she

was an employee. Docket 41. In California, and in other states, dancers have frequently prevailed

in class actions or other proceedings concerning employment status. See e.g., Harris Decl., Ex.'s

20-21; Docket 350-1, Ex. 9, fn.'s 3-5; *Harrell v. Diamond A Entertainment, Inc.*, 992 F. Supp,

1343, 1347-48 (M.D. Fla. 1992); *Reich v. Circle C Investments Inc.*, 998 F. 2d 324 (5th Cir.

1993); *Reich v. Priba Corp.* 890 F.Supp. 586 (N.D. Tex. 1995); *Reich v. ABC/York-Estes Corp.*,

1997 WL 264379 (N.D. Ill.1997); *Reich v. ABC/York-Estes Co.*,157 F.R.D.68 (N.D. Ill.1994)

rev'd on other grounds, 64 F.3d 316 (7th Cir.l995). Moreover, the State of California issued an

opinion that nude dancers are employees. Harris Decl., Ex. 23. But here, there is no effort made

to evaluate the prospects for succeeding on employment status, and class certification (a barrier already crossed in the certified California state cases) and how the settlement figure is reasonable in light of those quantified risks.

### 2.  The Defenses In The Agreement Are Invalid

The Agreement cites a series of defenses which are invalid and thus do not justify the compromise of viable claims. (Docket 344-1, ¶ 2.6.) The defense that the class members are not misclassified (and are not in fact employees) is very tenuous, based on the evidence referred to above, in subpart I, B, 1. Moreover, Judge Philips, in a similar case pending in the Central District of California against Spearmint Rhino, has opined that the structure of the relationship supports employment status. Harris Decl., Ex. 15, pp. 20-22. Moreover, the standard form contract of Déjà vu, presented on a take it or leave it basis, does not permit the inference that dancers accept employment status, or that dancers would reject employment status if properly offered to them. See, e.g., Docket 373, Ex.'s 2, 4 to Krontz Decl.; Harris Decl., Ex.'s 4-5; Ex. 15, pp. 20-22.

The parties attach as an exhibit a 2004 jury verdict in an individual wrongful termination case. It is impossible to determine what evidence was introduced in the case, whether the practices of the club are the same as the certified California state court cases, or what factors the jury considered in making that decision. Thus, this case provides no support for the parties' contentions regarding a good faith dispute concerning employment status. Moreover, trial court decisions have no precedential value and are not citable authority in California courts. *Bolanos v. Superior Court,* 169 Cal.App.4th 744, 761 (2008); *Schachter v. Citigroup, Inc.,* 126 Cal.App. 4th 726, 738 (2005). Finally, reliance upon *Moody v. Razooly,* 2003 WL 464076 is misplaced for two reasons. First, it is unpublished and thus not citable as authority in California. Second, it

11

predates the enactment of Labor Code Section 350 (e), and thus is no longer valid authority. See, also, docket 350, Ex. 9, footnote 4.

More importantly, based on the evidence cited herein, independent contractor status is certainly not a slam dunk, and in fact there is a substantial likelihood that the dancers would be found to be employees. However, the parties never evaluate the odds of success, nor do they evaluate the gross value of the case and what discount factor they apply to that value.

The offset defense raised by Déjà vu is invalid in California, and thus Déjà vu is not entitled to a credit for tips paid to dancers. Moreover, the California statute directly applies to specify that dance fees paid to dancers are tips as a matter of law. Cal. Labor Code §§ 350-351. Docket 350, Ex. 9, footnote 4; Harris Decl., Ex. 3, Ex. 14, p. 35. Nor have class counsel addressed whether or not similar statutes apply in the other states which are included in the settlement.

Déjà vu's arbitration clause is unconscionable. *Jones v. Déjà vu, Inc.*, 419 F.Supp. 2d 1146, 1148 (N.D. Cal. 2005). Moreover, California law holds that class action waivers are unconscionable and will not be enforced. See, e.g., *Jackson v. S.A.W. Enmnt. Ltd.*, 629 F. Supp. 2d 1018, 1023-1031 (N.D. Cal. 2009). Thus, the arbitration clause (including its preclusion of class actions) is not a viable defense.[10] Moreover, in the two California certified class actions brought by counsel for the objectors, the arbitration defense was never raised. Docket 351, Harris Decl., ¶ 3. This is merely another reason why the settlement is unfair to the California class members, since their claims (although much stronger than other class members) are being devalued based on defenses which do not even apply to them.

---

[10] Moreover, the court in *Jackson* also found the provision limiting the statute of limitations to six months, as Déjà vu's contract does, to be substantively unconscionable. *Id.* at 1028-1029; Harris Decl., Ex. 6, § IV, 7.

Finally, a finding of willfulness under the FLSA is not necessary in California, since California state law provides a superior remedy. Nor would this finding be necessary in other states whose wage and hour laws are not solely predicated on the FLSA. Thus, since Déjà vu's defenses are invalid, there is no justification for the drastic discount offered to Déjà vu when assessing the gross value of the claims of the class, e.g., the tip misappropriation claim on behalf of one Déjà vu California club is worth $14 million alone. Docket 197-1, Ex. 10.

### 3.  The Claims Made Nature Of The Settlement Is Properly Considered When Reviewing The Benefit To Class Members

The settlement is not fair, reasonable, or adequate to class members due to the claims made process adopted by the parties. Docket 344-1, ¶ 5.6.8. Normally, the claims rate in class action litigation is approximately ten percent or less. *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007); *Sylvester v. CIGNA Corp.*, 369 F.Supp.2d 34, 52 (D. ME. 2005) ("'claims made' settlements regularly yield response rates of 10 percent or less"). If the claims rate in this case is approximately ten percent then the total benefit to class members is $500,000, which is paltry in comparison to the value of the cash to the attorneys, the named representatives, and Déjà vu. Thus, the claims made nature of the settlement establishes that the accord is not fair, reasonable or adequate to class members.

### 4.  The Injunctive Relief Is Illusory

The injunctive relief provision of the settlement does not change Déjà vu's practice of penalizing dancers. Docket 344-1, § X. Instead, it institutionalizes and endorses this practice by requiring that Déjà vu post notice of the penalties dancers can expect to be imposed on them. Thus, this settlement provision offers no benefit to dancers. *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 544-45 (S.D.Ohio 2000) ("[A] defendant's promise to do that which the law

already requires is not a valuable benefit.") (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir.1981) (finding little benefit to class members from settlement agreement provisions that obligated defendant "to do what the law generally requires"); *Reich v. Walter W. King Plumbing & Heating Contractor, Inc.*, 98 F.3d 147, 150 (4th Cir.1996) (defendant not the "prevailing party" under a settlement that merely obligated plaintiff to do that which the law already required).

Here, similarly, the settlement merely institutionalizes Déjà vu's practice of unfairly penalizing class members, and is not legitimate injunctive relief. Moreover, dancers are already advised in their contracts of Déjà vu's unlawful penalties. The provision that permits the dancer to complain to someone above the manager is so vague as to be illusory as well. There are no clear cut procedures governing how dancers' appeals will be processed or handled. No is there any limitation on what type of penalties can be imposed on dancers, which would be what injunctive relief should consist of. Thus, the "injunctive relief" portion of the settlement is inadequate and illusory. Docket 344-1, § X; Docket 373, Ex.'s 2, 4; Harris Decl., Ex.'s 6-8; Ex. 14, p. 33; Ex. 15, pp. 8-9, 19-22.

## II.   THE AGREEMENT IS NOT FAIR AND REASONABLE TO THE CALIFORNIA CLASS

### A.   California Class Members Claims Are More Valuable Than Those Of Class Members In Other States

Class members in California have stronger claims than class members in other states since the employment argument is stronger, and California has a statute prohibiting offset of tips from wages owed to dancers. And, generally, California prohibits offset of any debts to the employer from wages owed to the employee. See, part I, B, 1-2. See, California Labor Code §§ 350-351;

14

*Barnhill v. Robert Sanders & Co.,* 125 Cal.App.3d 1, 6 (1981); *People v. Los Angeles Palm, Inc.,* 121 Cal.App.3d 25, 35 (1981); See, e.g., Docket 350, Ex.'s 9, 11-13.[11] The offset defense appears to be the biggest weakness of the Michigan case when analyzing the claims of non-California dancers. Docket 159, 347. However, the settlement fails to provide benefits to California class members which would recognize the comparative strength of their claims.[12]

**B.**     **The Spearmint Rhino Settlement Demonstrates The Strength Of The California Claims**

The Spearmint Rhino litigation pending in California settled nationwide for $10,000,000, with 70% of the gross settlement proceeds devoted to the California class members. Spearmint Rhino involves 11,000 dancers, a more favorable notice program, legitimate injunctive relief banning stage fees, compelling reclassification of dancers to employees or partners, and a non-reversionary settlement amount that the defendant must pay. The court also refused to permit defendant to have any role in administration of settlement funds, in contrast to the proposed settlement here. Docket 350, Ex.'s 3, 7, 8, 9; Harris Decl., Ex. 14, pp. 12, 30-31, 33, 36; Ex. 15, p. 10; Ex.'s 16-19.

In contrast, as established above, the settlement here has three times the number of class members, a lower gross settlement amount ($8.5 million) is 100% reversionary, offers illusory injunctive relief, and allows defendant unfettered control over administration of the alleged settlement benefits, without any judicial supervision, oversight, or control.

---

[11] See, Chin, Wiseman, Callahan & Exelrod, Cal. Prac. Guide: Employment Litigation, ¶¶ 11:665-11:670 (The Rutter Group 2008.)

[12] For example, the tip misappropriation claim for one of the clubs is worth over $14 million dollars alone. Docket 197-1, Ex. 10. California class members would also have claims based on denial of rest breaks, meal breaks, failure to provide itemized wage statements, and failure to pay 30 days wages to terminated employees, in addition to minimum wage claims, all making the value of their cases far more than those of dancers in other states. See, e.g., California Labor Code §§ 202, 203, 221, 224, 226.7, 350(e), 350, 351, 353, 401,402, 1197, 1194.

**C.     Defendants Position Concerning The California Labor Code Is A Red Herring**

Defendants are expected to argue that *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal.4th 592,

601, 603-604 (2010) invalidates the tip misappropriation claim. This argument is spurious since

California's Unfair Competition statute permits a cause of action to be based on Labor Code

Sections 350 and 351 regardless of whether the statutes confer a private right of action. *Kasky v.*

*Nike, Inc.*, 27 Cal.4th 939, 950 (2002); *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17

Cal.4th 553, 573 (1998); *Cortez v. Purolator Air Filtration Prods*. Co., 23 Cal.4th 163 (2000).

The four year statute of limitations applicable to this claim provides a substantial benefit to the

California class since it permits Plaintiffs in the certified cases to seek recovery of

misappropriated tips from 2003 to the present in the North Hollywood case and from 2005 to the

present in the City of Industry case.

Defendants' argument also disregards the Court's comments in Lu that common law claims

such as conversion would be available to challenge tip misappropriation. (*Id.* 50 Cal.4th at 603-

604.) Moreover, the contention that dance fees are service charges under the FLSA, and that this

finding is also mandated by state law in order to avoid running afoul of the supremacy clause, is

equally spurious. First, if dancers are found to be employees, this does not change the fact that

defendants misappropriated tip income from dancers since California law establishes that dance

fees paid directly to dancers are tips as a matter of law. Labor Code § 350 (e).  Second, the FLSA

does not preempt state laws providing more generous treatment to employees. 29 USC § 218(a)

and (b); 29 CFR § 778.5; *Aguilar v. Association for Retarded Citizens*, 234 Cal.App.3d 21, 34–

35 (1991); *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal.4th 785, 795 (1999); *Pacific Merchant*

*Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1426–1427 (9th Cir. 1990). Nor does the FLSA preempt

state laws that provide remedies for violations of the FLSA that are not available under the

FLSA. *Harris v. Investor's Business Daily, Inc.*, 138 Cal.App.4th 28, 38 (2006) [class action

under Bus. & Prof.C. § 17200 action based on FLSA violation allows class members to "opt out" although FLSA requires class members to "opt in"].

The statute of limitations set forth in the FLSA also does not supersede the governing four year statute of limitations in California. Cal. Business and Professions Code, Section 17208. Finally, California law obviously provides superior remedies to those of the FLSA, and thus the FLSA does not offer California class members any relief that they could not otherwise obtain. Moreover, California law provides a superior remedy since, as established above, an offset claim is without merit, and there is a longer statute of limitations.

**D.**      **The Agreement Unjustifiably Interferes With Two Certified Class Action Proceedings**

The settlement agreement targets the two certified class actions pending in California against Déjà vu. The settlement extends the statute of limitations applicable to these lawsuits, but offers no additional benefits. Moreover, the settlement disregards the class certification orders in the North Hollywood and the City of Industry cases, appointing class counsel in those cases. Docket, 344-1, ¶¶ 2.3, 3.15, 4.2; Docket 197-1 Ex.'s 1to 6.

In *Hernandez v. Vitamin Shoppe Industries, Inc.*, 174 Cal.App.4th 1441, 1459-1460 (2009), it was confirmed that once a class is certified (even conditionally) the class counsel becomes the attorneys for all the class members, and defense counsel or other Plaintiff's counsel are prohibited from communicating with these class members since they are represented by another attorney. *Hernandez* states:

> We are not aware of a California state court that has directly addressed whether a conditional class certification triggers rule 2-100's "no contact" rules. As respondents point out, a number of federal courts have found that the certification of a class triggers such rules. (See, e.g., Parks v. Eastwood Ins. Services, Inc. (C.D.Cal.2002) 235 F.Supp.2d 1082, 1083 [citing rule 2-100]; Kleiner v. First Nat. Bank of Atlanta (11th Cir.1985) 751 F.2d 1193 & fn. 28 [stating, based upon a model ABA rule analogous to rule 2-100, that defense counsel had "an ethical duty to refrain from discussing the litigation with members of the class as of the date of class certification," since "class counsel represents all class members as soon as a class is certified"]; Resnick v. American Dental Assn. (D.C.Ill.1982) 95 F.R.D. 372, 378-379

[class certification barred attorney from communicating with absent class members under applicable Rules of Professional Conduct because "without question" absent members are represented by class counsel].) We conclude rule 2-100 was triggered by the court's conditional certification of the class here as well.

Here, counsel for the objectors is the attorney for all members of the certified classes. Counsel for Doe and the defense attorneys in this case are actively attempting to subvert this relationship, and did not even bother to advise the court of the status of the certified cases in their preliminary approval papers. Nor does the ability of dancers individually to opt out rectify this omission, since the opt-out rate in class action litigation is normally one percent or less. *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 388-389 (C.D. Cal. 2007).

## III.   THE SETTLEMENT IS UNFAIR SINCE IT FAVORS CURRENT DANCERS OVER FORMER DANCERS

The settlement is heavily tilted to favor current dancers at Déjà vu, since only dancers who sign a contract and agree to perform at Déjà vu are given rent credits. Déjà vu is not obligated to rehire former dancers, and instead can relegate them to the cash pool at its sole and exclusive discretion. Docket 344-1, §§ V.-VI.; Harris Decl., Ex. 25; Docket 383, 359. Thus, approval should be denied since the agreement favors one group at the expense of another. *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 558 (S.D.Ohio 2000); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 388 (C.D. Cal. 2007).

Courts generally are wary of settlement agreements where some class members are treated differently than others. See, e.g., *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 808 (3rd Cir.1995) ("One sign that a settlement may not be fair is that some segments of the class are treated differently from others."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir.1998); (rejecting objection to settlement where settlement "does not propose different terms for different class members"). While differential treatment of class

18

members may be appropriate where "the settlement terms are rationally based on legitimate

considerations," this does not appear to be the case here. *In re PaineWebber Ltd. P'ships Litig.*,

171 F.R.D. 104, 131 (S.D.N.Y.1997), quoting *In re "Agent Orange" Product Liability Litig.*,

611 F.Supp. 1396, 1411 (E.D.N.Y.1985). See also *In re Portal Software Inc., Securities Litig.*,

No. C-03-5138 VRW, 2007 WL 4171201, at *6 (N.D.Cal. Nov. 26, 2007) (approving

distribution of "settlement proceeds according to the relative strengths and weaknesses of the

various claims"); *Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 880 F.Supp. 292, 300-01

(M.D.Pa.1995) **("[W]hile disparate treatment of class members may be justified by a**

**demonstration that the favored class members have different claims or greater damages ...**

**no such demonstration has been made here."** Emphasis supplied.).[13]

Here, there is no justification for treating current dancers more favorably than former

dancers. Approval should be denied since some class members are being treated more favorably

than others.

## IV.   THE AGREEMENT IS UNFAIR AND UNREASONABLE BY REQUIRING CLASS MEMBERS TO PERSONALLY OPT OUT

The settlement agreement requires class members to personally opt out, as opposed to

permitting them to do so through their attorneys. Docket 344-1, § IX. However, at least in the

two California cases which have been certified as class actions, this provision of the settlement is

not fair or reasonable. This is particularly true with respect to the case against Déjà vu's North

Hollywood, California club. In that case, class members were given notice of the lawsuit, and an

opportunity to opt out. Those who did not exclude themselves already expressed their preference

---

[13] There is a presumption that class members receive relief "based on the type and extent of their damages." *In re Enron Corp. Securities, Derivative & ERISA Litig.*, No. MDL-1446, 2008 WL 4178151, at *2 (S.D.Tex. Sept. 8, 2008), citing *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D.Pa.2000).

to remain in the case. Docket, 344-1, ¶¶ 2.3, 3.15, 4.2; Docket 197-1, Ex.'s 1 to 6. Thus, it is not fair and reasonable to insist that these class members all personally decide whether to opt out. Indeed, cases holding that the opt out decision must be an individual one are confined to situations where class members have not been given notice of the class action. *Hanlon v. Chrysler Corp.*, supra, 150 F.3d 1011, 1024-25; *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 412 (2d Cir.1975); *In re Lease Oil Antitrust Lit.*, 186 F.R.D. 403, 438-440 (S.D. TX. 1999).

The trial court opines in its preliminary approval order that class members will be able to opt out if they find the settlement objectionable, and continue with their pending legal actions against Déjà vu. Docket 355. However, this disregards that the certified classes in California have already had an attorney appointed to represent their interests. Moreover, in the North Hollywood case, the class members were all given an opportunity to opt out, after notice. It is unfair, and a direct violation of the existing relationship between class members who remained in the class, after notice, to send them notice of the settlement in this lawsuit.

The individual right to opt out is also illusory in any event. Less than one percent of class members routinely opt out of class settlements. *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 388-389 (C.D. Cal. 2007). Individual claims in a class action are often too small to support litigation by a single plaintiff and asking a class member who is concerned about a settlement to opt out is tantamount to asking her to abandon her ability to pursue the claims at issue. *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir.2008) citing *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 572 (9th Cir. 2004) ("Because each intervenor's claim is too small to justify individual litigation, a class action is the only feasible means of obtaining relief.").

Here, the individual opt out clause tramples on the right of class members in the certified California classes.

## V.   THE NOTICE TO THE CLASS IS INADEQUATE

Before ratifying a proposed settlement agreement, a district court also must "direct notice in a reasonable manner to all class members who would be bound" by the settlement. Fed.R.Civ.P. 23(e)(1)(B). The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); see also *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir.1984).

Moreover, the notice must be "timely, accurate, and informative." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S.165, 172 (1989). Likewise, claims forms must be informative and accurate. *Id.* p. 172; *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The class notice agreed upon by the parties is seriously deficient here.

### A.   Class Members Are Not Advised Of Other Lawsuits

The notice to the class which the court approved as part of its preliminary approval order is inadequate on its face to advise class members of their options. The notice does not contain any reference to the other lawsuits filed against Déjà vu, so that class members can assess whether they wish to remain in this case, or opt out. Moreover, the proposed notice does not even advise the class members of the certified classes, and the availability of significantly better monetary relief in the Hills and Arafat cases. Harris Decl., Ex. 10. For example, dance fee revenue (an element of damages) exceeds 14 million dollars in the *Arafat* case alone. Docket 197-1, Ex. 10. In *Trotsky v. Los Angeles Fed. Sav. & Loan Assn.*, 48 Cal.App.3d 134 (1975), the settling parties did not inform the court or the class of the existence of a separate lawsuit. On appeal, the court reversed a judgment which had found the settlement, including the contents of the notice, to be fair and reasonable, finding the notice was not fair and reasonable to the class, and denied the

21

court the option of allowing the other attorney to participate to the benefit of the class. *Id.* at 151-152.

Here, the notice is totally inadequate since it does not advise the class members of other pending litigation, or describe for them the pros and cons of staying in this action, or opting out and participating in the other actions. Nor does the notice describe the benefits of remaining in the certified, California class actions.

**B.**    **The Notice Does Not Adequately Advise Class Members Of The Relief Available To Them Under The Settlement**

The notice transmitted by mail to the class fails to discuss how rent credits are reduced by payment to Déjà vu of 40% of available rent credits and payment to the attorneys of 20% of rent credits. Nor do the claim forms contain this information. Instead, these settlement terms are only addressed in the notices posted at Déjà vu clubs, which may or not be located in a manner readily available for inspection. Thus, the notice to the class is not reasonably calculated to advise them of the benefits available to them. Harris Decl., Ex.'s 10-13; Docket 344-1, Ex. G.

**C.**    **Notice Is Not Adequate Since It Only Uses Last Known Address of Class Members**

The settlement does not go far enough in notifying class members. It transmits notice only to the last known address, and to any forwarding address provided in connection with returned mail. No effort is made to update addresses to ensure that notice actually is received by class members. Docket 344-1, § VIII, ¶ 8.6. Nor is there any provision in the agreement requiring notification to the court of how many of the addresses turn out to be invalid. *Id.*, § VIII.

The notice program is facially inadequate. This is particularly true since dancers as a whole are prone to move frequently, and their last known address is often invalid. In fact, Déjà vu itself has argued frequently that notice to a last known address is not reasonably calculated as a matter

of law to furnish due process notice to nude and semi-nude dancers. Harris Decl., Ex. 1, ¶ 11; Ex. 2, ¶ 7.

Here, the notice program is not reasonably calculated to reach class members. This is because there are no provisions addressing the difficulties of furnishing notice to dancers identified by Déjà vu. Nor are there any provisions in the agreement which mandate that the claims administer search for current addresses of class members. The claims administrator is limited to sending notice to addresses identified along with returned notices, but nothing else. Docket 344-1, § VIII. Since notice of the settlement is inadequate, approval should be denied.

**D.    Claim Forms Are Unduly Onerous**

Claims are discouraged by having dancers estimate the shifts they performed, and provide other detailed information such as what club they worked at, when the clubs already have that data. The claim forms are designed to discourage claims, not promote them. Harris Decl., Ex.'s 11-12.

**E.    The Opt Out Period Is Unreasonable**

The right to opt out extends to only March 20th (a Sunday) while there is a right to claim monetary compensation for up to one year. The abbreviated time to opt out is thus unreasonable and unfair to all class members. Docket 344-1, § IX; Harris Decl., Ex.'s 10-13, Docket 344-1, Ex. G.

## VI.    THE RELEASE IS OVERLY BROAD

Courts must take special care when a class-action settlement purports to release claims not asserted within the class action or not shared alike by all class members and should decline to permit the uncompensated release of claims resting on a separate factual predicate from that settled in the class action. *Consolidated Edison, Inc. v. Northeast Utilities*, 332 F.Supp.2d 639, 651-653 (D.C.N.Y.2004.)

The release granted defendant here is far too broad. It extends to such claims as wrongful termination, any claims related to employment, retaliation, or any unknown claims concerning any matters which class members presently have, which are entirely outside the scope of the allegations of the class action. It extends to *any and all claims class members may have had against Déjà vu during the class period*, thus far exceeding the scope of the allegations settled. Docket 344-1, § XI. The fact that Doe 1 has a retaliatory termination claim cannot be bootstrapped into a release of all wrongful termination claims or retaliation claims of class members. Nor does the second amended complaint assert such claims on a class basis. Docket 191. Claims such as wrongful termination and retaliation present uniquely individual issues, not amenable to class treatment. These claims (as well as many of the known and unknown claims of class members on any theory) could never be certified as a class, and the paltry settlement benefits are grossly inadequate to compensate for them.

Moreover, the decision of class counsel to sell out their clients, by agreeing to a broad release of any and all claims they may have, regardless of whether they relate to the facts underlying the class action, is strong evidence that the settlement is collusive. Here, the named representatives are dividing $100,000 and this sum serves as partial compensation to Doe 1 for her termination claim. Docket 344-1, ¶ 6.5. No other class member receives a similar benefit, and thus the settlement is grossly inadequate to compensate class members for their termination claims. Similarly, the release of unknown claims under California Civil Code Section 1542 extends far beyond the claims being resolved, and is unfair to the class, compromising rights that they are not being paid for.

The court should decline to grant final approval to the compromise. When class-action attorneys would benefit from receiving compensation larger than justified by the result, and the

defendant would receive very broad releases in return for a modest outlay of cash, while the class members would receive only a modest benefit, it is appropriate to deny final approval. *Schwartz v. Dallas Cowboys Football Club, Ltd.,* 157 F.Supp.2d 561, 570-582 (D.Pa.2001).

## VII.   THE INCENTIVE AWARDS ARE GROSSLY DISPROPORTIONATE TO THE BENEFITS AVAILABLE TO CLASS MEMBERS

The incentive awards of $25,000 each to the four class representatives are grossly disproportionate to the average benefit of $62.25 per class member.[14] Docket 344-1, ¶ 6.5. Providing the class members with over 400 times the amount an average class member will receive is so grossly excessive as to be unfair and unreasonable on its face. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669-670 (E.D. Cal. 2008).

## VIII.   THE ATTORNEYS FEES ARE UNREASONABLE AND ANY COURT RULING SHOULD BE DEFERRED

### A.   Awarding Fees Is Premature At This Time Since The Court Cannot Assess The Benefit Of The Settlement

The court has a duty to ensure that any fee award is appropriate under Federal Rule of Civil Procedure 23 (h) and as explained in further detail in the Advisory Committee's notes. See, also, Manual For Complex Litigation (Fourth) ("Manual") § 21.71 at 336 (2006). ("Compensating counsel for the actual benefits conferred on the class members is the basis for awarding attorney fees."). Moreover, the fees of over 40% of benefits available (but not likely to be claimed) to the class are grossly disproportionate to the class recovery, raising the real probability of impropriety.

---

[14] This benefit was calculated by adding the average benefit of the two settlement pools and dividing by two.

The acquiescence of the defendant in a class action to an attorney-fee request does not relieve the court of its obligation to examine the fee request to ensure that the awarded fees are fair and reasonable; rather, judicial examination of a fee-award agreement in a class action is necessary to deter class counsel from accepting less-than-optimal settlement terms for the class in exchange for red-carpet treatment on fees. *In re TJX Companies Retail Sec. Breach Litigation*, 584 F. Supp. 2d 395, 399 (D. Mass. 2008); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 393-394 (C.D. Cal. 2007) (fee award grossly disproportionate to class benefits raises specter of impropriety); See also *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 802 (3d Cir.1995) ("At its worst, the settlement process may amount to a covert exchange of a cheap settlement for a high award of attorneys fees."); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328-1329, fn. omitted. (9th Cir. 1999) ("In a class action, whether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper. This duty of the court exists independently of any objection.")

In *Ramey v. v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir.1974), six factors were identified as necessary for consideration in determining the reasonableness of a fee award:

1. The value of the benefit rendered to the class;

2. Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

3. Whether the services were undertaken on a contingent fee basis;

4. The value of the services on an hourly basis;

5. The complexity of the litigation; and,

6. The professional skill and standing of counsel on both sides. See also *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir.1983).

The structure of the settlement does not permit the court to consider the benefits of the accord, one of the essential factors the court must scrutinize when assessing the fee claims. *Moulton v. United States Steel Corp.*, 581 F.3d 344, 351-352 (6th Cir.2009) (wherein the court considered the benefit to the class after the claims period had closed, and rejected intervenors' focus on claims made when the unclaimed funds were donated to charity, rather than being returned to defendant as here); *In re Delphi Corp. Securities, Derivative & "ERISA" Litigation*, 248 F.R.D. 483, 503 (E.D. Mich.2008) ("The primary factor in determining a reasonable fee is the result achieved on behalf of the class.") The court cannot perform its duty to assess the fee award in light of the benefit rendered to the class until the close of the claims period, and administration of the rent credits by Déjà vu, which the court should not allow Déjà vu to have control of in any event. Moreover, the court cannot even assess the value of the cash pool at the time of final approval since Déjà vu can unilaterally assign dancers to this pool rather than permitting them to return to work in order to obtain rent credits. This could seriously dilute the value of the cash pool benefits available to dancers.[15]

Thus, if the court does not deny final approval (which objecting parties' claim it must) then the court must at a minimum refuse to rule on the motion until it can adequately assess the benefits of the settlement.

**B.      Insufficient Information Is Submitted Concerning The Time Spent By Class Counsel**

It is impossible to evaluate the validity of the lodestar claimed since the data class counsel submits is sparse and generalized. There is no detailed billing submitted so that it can be

---

[15] In evaluating the reasonableness of the fee award, the court must take into account all the circumstances of the case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir.), cert. denied sub nom. *Vizcaino v. Waite*, 537 U.S. 1018, 123 S.Ct. 536, 154 L.Ed.2d 425 (2002).

determined whether or not class counsel's work was unreasonably duplicative, excessive, or unnecessary. Hours that are "excessive, redundant, or otherwise unnecessary" must be excluded from fee request hours. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Moreover, there are serious questions about the duplicative nature of the work, e.g., why is it necessary for three or more attorneys on behalf of class counsel to attend every hearing?

**C.    Class Counsel Is Not Adequately Representing The Class And Thus The Court Should Revoke Its Order Appointing Class Counsel**

The adequacy of representation turns in part on "the competency of class counsel" and in part on the absence of "conflicts of interest." *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of America v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007), citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13, (1982). Class counsel does not meet the standard of case law, requiring representatives who "will vigorously prosecute the interests of the class through qualified counsel," *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir.1976). The inadequate settlement terms, fully discussed herein, demonstrate that class counsel cannot discharge its duty to the class as a whole. Moreover, class counsel in the *Doe* matter have demonstrated a substantial disregard for the rights and interests of the *Arafat* and *Hills* classes and the sanctity of the relationship and privilege between the certified *Arafat* and *Hills* classes and their counsel. Class counsel also disregard the stronger claims of the California class members.

### IX.    CLASS CERTIFICATION ISSUES

The court must given heightened scrutiny to a settlement before class certification. We must pay "undiluted, even heightened, attention" to class certification requirements in a settlement context. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 2248, 138

L.Ed.2d 689 (1997); *Mars Steel Corp. v. Continental Illinois National Bank & Trust Co.*, 834 F.2d 677, 681-682 (7th Cir. 1987); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998).

A.     <u>**Plaintiffs Are Not Adequate Representatives**</u>

Plaintiffs are not adequate representatives of the California certified class actions since they do not possess the same claims as members of the class. That is, Plaintiffs are barred by the statute of limitations from asserting those claims. (Docket 191, ¶ 79.) Moreover, the non-California Plaintiffs are not adequate class representatives since they are subject to an offset defense which is inapplicable to California class members, both because of the absence of an offset defense and because the agreement is unconscionable under California law. Rule 23(a) (3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members. *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir.1996). To be an adequate representative, the class representatives' interests must align with those of the class. *Andrews Farms v. Calcot, Ltd.*, No. CV-F-07-0464 LJO, 2009 WL 1211374, at *11. Here, the named representatives cannot possibly be adequate representatives of the California certified classes, since they do not possess the same claims as the California class members.

Finally, the adequacy requirements of Rule 23(a) (4) are not satisfied. In measuring the adequacy of representation of the representative parties, the court must be assured that the representatives have common interests with unnamed members of the class and it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *UAW v. GMC*, 497 F.3d 615, 626 (6th Cir. 2007). To a large extent, the adequacy requirement tends to merge with the commonality and typicality criteria of Rule 23(a) (2) and

(3). *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Here, the grossly inadequate settlement terms, the effort to release claims of class members which are well beyond the scope of the allegations of the lawsuit, the effort to target the California certified classes, and the failure of the class representatives to have claims in common with all California class members, demonstrate that Plaintiffs and their counsel are not adequate representatives of the class.

## X.    FINAL APPROVAL SHOULD BE DENIED

The trial court has the power to either approve or disapprove the parties' settlement proposal, at the time of final approval. *Bronson v. Board of Education*, 604 F.Supp.68, 73 (S.D. Ohio 1984); *Detroit Police Officers Ass'n v. Young*, 920 F. Supp 755, 761 (E.D.Mich.1995).

Here, since the agreement is not fair, reasonable, or adequate to the class, and instead is the product of collusion, the court should deny approval.

////

////

////

////

////

////

////

////

////

////

30

## XI.   NOTICE OF INTENT TO APPEAR AT FINAL FAIRNESS HEARING

Please take notice that counsel for the objectors, Stephen M. Harris, intends to personally

appear at the final fairness hearing presently scheduled for hearing on April 14, 2011, at two p.m.

in the United States District Court for the Eastern District of Michigan.


Dated:  March 18, 2011                    Respectfully Submitted,

MORRIS & DOHERTY, P.C.                    KNAPP, PETERSEN & CLARKE

Paul F. Doherty                          */s/ Stephen M. Harris*
Morris & Doherty, P.C.                    Stephen M. Harris, Esq. (CA 110626)
4000 Town Center                         550 North Brand Boulevard, Suite 1500
Suite 900, Southfield, MI 48075          Glendale, CA  91203-1922
(248) 353-7900                           Telephone:  (818) 547- 5149
pdoherty@morris-dohertypc.com            Facsimile:  (818) 547-5329
www.morris-dohertypc.com                 Email:  smh@kpclegal.com

*Local Counsel for Objectors Melissa Arfat,*   *Counsel for Objectors Melissa Arfat, Brandi Carter,*
*Brandi Carter, Quinece Hills, and Victoria*   *Quinece Hills, and Victoria Omlor on behalf of*
*Omlor on behalf of themselves and as*         *themselves and as Representative Class Members*
*Representative Class Members*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 18, 2011, I electronically filed the foregoing document with the

United States District Court for the Eastern District of Michigan and upon all opposing counsel

using the CM/ECF system which will send notice of its filing to all counsel of record.


Notice has also been delivered by First Class U. S. Mail to:

Jason J. Thompson
Sommers Schwartz, P.C.
2000 Town Center
Suite 900
Southfield, MI 48075
248-355-0300
Fax: 248-436-8453
Email: jthompson@sommerspc.com

Allan S. Rubin
Jackson Lewis LLP
2000 Town Center
Suite 1650
Southfield, MI 48075
248-936-1900
Fax: 248-936-1901
Email: Rubina@jacksonlewis.com

Timothy J. Becker
Zimmerman Reed
80 South Eighth Street
1100 IDS Center
Minneapolis, MN 55042
612-341-0400
Fax: 612-341-0844
Email: Timothy.becker@zimmreed.com


MORRIS & DOHERTY, P.C.

Paul F. Doherty
Morris & Doherty, P.C.
4000 Town Center
Suite 900
Southfield, MI 48075
248-353-7900
pdoherty@morris-dohertypc.com
www.morris-dohertypc.com

*Local Counsel for Objectors Melissa Arfat,
Brandi Carter, Quinece Hills, and Victoria
Omlor on behalf of themselves and as
Representative Class Members*

KNAPP, PETERSEN & CLARKE

*/s/ Stephen M. Harris*
Stephen M. Harris, Esq. (CA 110626)
K.L. Myles, Esq. (CA 243272)
550 North Brand Blvd., Suite 1500
Glendale, CA  91203-1922
Telephone:  (818) 547- 5149
Facsimile:  (818) 547-5329
Email:  smh@kpclegal.com
Email:  klm@kpclegal.com

*Counsel for Objectors Melissa Arfat, Brandi Carter,
Quinece Hills, and Victoria Omlor on behalf of
themselves and as Representative Class Members*